Joseph G. Went
Nevada Bar No. 9220
Sydney R. Gambee
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
jgwent@hollandhart.com
srgambee@hollandhart.com

K. Issac deVyver (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
MCGUIREWOODS
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200
Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

*Attorneys for Wells Fargo Bank, N.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No. 2:22-cv-00529-GMN-NJK<br><br>Assigned for All Purposes to:<br>Hon. Gloria M. Navarro<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its counsel of record, hereby moves this court for dismissal of Plaintiffs' Consolidated Class Action Complaint. This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and based upon

the following Memorandum of Points and Authorities and supporting documentation, the papers and pleadings on file herein, and any argument that the Court may allow.

DATED: August 4, 2022

Respectfully submitted,

**HOLLAND & HART**

By: */s/ Sydney R. Gambee*

Joseph G. Went
Nevada Bar No. 9220
Sydney R. Gambee
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
jgwent@hollandhart.com
srgambee@hollandhart.com

K. Issac deVyver (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
MCGUIREWOODS
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200
Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

*Attorneys for Wells Fargo Bank, N.A.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Eyeing above-market returns of 10-15%, Plaintiffs Barret Henzel, Allan Carso, Gary Lundin, Joshua Luekenga, Craig Rodney Michaelis, Bryce Kelly, Clint McDaniel and Dan Michael (collectively, "Plaintiffs") chose to invest with non-parties Jeffrey Judd, his entities J&J Consulting Services Inc. and J&J Consulting LLC (collectively, "Judd"), and Matthew Beasley and Beasley Law Group PC (collectively, "Beasley"). Following an armed stand-off between Beasley and the FBI that brought the investment scheme to a halt, Plaintiffs brought this lawsuit against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") based on allegations that Wells Fargo is somehow liable to them for their failed investments.

Plaintiffs predicate their four claims against Wells Fargo only upon Wells Fargo's participation as the deposit bank. These four claims are for: (1) aiding and abetting fraud, (2) aiding and abetting breach of fiduciary duty, (3) Violation of the Uniform Fiduciaries Act, Nev. Rev. Stat. Ann. §§ 162.010, *et seq*., and (4) negligence. At its core, Plaintiffs' claims must be dismissed because their claims are based on nothing more than allegations that Wells Fargo *should have known* of the Scheme based upon routine banking activity.

As an initial matter, Plaintiffs Barrett Henzel, Rodney Michaelis, Joshua Luekenga, Bryce Kelly, Clint McDaniel and Dan Michael (the "LLC Plaintiffs") should be dismissed as they lack standing to bring their claims. The LLC Plaintiffs allege they invested money not through personal accounts using personal funds, but rather through limited liability companies using company funds. Under the state laws governing each of the LLCs, the LLC Plaintiffs do not have a direct ownership interest in the LLC's property or assets. Therefore, any loss of use of funds or injury to the LLC is not an injury to the individual member, but rather an injury to the company.

*First*, Plaintiffs' aiding and abetting fraud claim fails under Rules 8 and 9 of the Federal Rules of Civil Procedure because they do not allege particular facts—including the who, what, when, or how—to plausibly demonstrate Wells Fargo had actual knowledge of and substantially assisted any underlying fraud. Plaintiffs allege no facts about when or where Wells Fargo obtained this alleged knowledge or substantially assisted any scheme; and do not allege any details about

what it supposedly learned given its limited interactions with Judd and Beasley. Plaintiffs' generic allegations of Customer Identification Program, Know Your Customer and Anti-Money-Laundering obligations fail to plausibly connect Wells Fargo to actual knowledge of ***this*** specific Scheme.

*Second,* Plaintiffs' claim for violation of the Uniform Fiduciaries Act ("UFA") fails out of the gate because Judd and Beasley did not owe Plaintiffs any fiduciary duties—a prerequisite to any breach of fiduciary duty claim. The claim additionally fails because Plaintiffs do not allege facts establishing the second prong: that Wells Fargo had *actual* knowledge of any alleged breach of fiduciary duties or that it performed banking transactions in bad faith.

*Third,* Plaintiffs' aiding and abetting breach of fiduciary duty claim similarly fails for two independent reasons. First, Plaintiffs do not allege facts that show the existence of any underlying fiduciary duty that Beasley or Judd owed them. Second, they do not allege facts that would support a finding that Wells Fargo had actual knowledge of any underlying fiduciary duty owed to Plaintiffs or that Wells Fargo knowingly participated in the breach of any underlying fiduciary duty.

*Fourth*, Plaintiffs' negligence claim fails because they have not identified any cognizable duty that Wells Fargo owed them in their individual capacity under common law or under any statute. Wells Fargo cannot breach a non-existent duty; and regardless, Plaintiffs have not alleged how Wells Fargo directly ***caused*** Plaintiffs to suffer any damages as they contributed to these investments, as Plaintiffs were lured instead by Judd and Beasley' claims of significant returns well beyond traditional investments.

For these reasons, and as further detailed below, these deficiencies are fatal to Plaintiffs' claims. Accordingly, Wells Fargo respectfully requests the Court dismiss Plaintiffs' entire complaint without leave to amend given these deficiencies cannot be cured by amendment.

## II. FACTUAL ALLEGATIONS

### A. The Underlying Scheme

Plaintiffs allege that starting in 2017, Judd and Beasley orchestrated a Ponzi scheme marketing and selling fractional interests in personal injury settlements (the "Scheme"). Dkt. 37 ("Compl.") ¶¶ 1, 30. Judd and Beasley represented to investors that their capital investments provided short-term funding for plaintiffs in settled legal claims before the settlement payment was

due. *Id.* at ¶ 30. Judd and Beasley stated the plaintiffs, through their attorneys, would sell their interest in the settlement proceeds to Judd or Beasley, Judd or Beasley would "advance" the proceeds, and the plaintiff would repay the borrowed proceeds plus substantial interest and fees 90 days later. *Id.* Judd and Beasley promised investors returns of 10% to 15% to be paid every 90 days, which translates to a 50% annual interest rate, along with additional payments if the returns were delayed. *Id.* at ¶ 32. In early 2022, after an armed standoff, the FBI arrested Beasley and subsequently filed criminal charges against him on March 4, 2022. *Id.* ¶¶ 2, 36.

**B. Wells Fargo's Only Alleged Involvement in the Scheme is Routine Banking**

Plaintiffs allege that Judd and Beasley ran their fraud through the Beasley Law Group IOLTA account maintained at Wells Fargo (the "Trust Account"). *Id.* ¶ 4. Judd and Beasley directed investors to make payments to Beasley's Trust Account. *Id.* at ¶ 34. Plaintiffs also allege Judd and Beasley used Wells Fargo accounts to make distributions to investors. *Id.* at ¶ 160. Judd and Beasley used Beasley's Trust Account to pay investor returns and make transfers back to Judd and Beasley. *Id.* at ¶¶ 148, 150, 160.

Plaintiffs do not allege any specific facts to substantiate Wells Fargo's alleged knowledge of, or participation in, the Scheme at issue. Rather, Plaintiffs' allegations are based solely on what Plaintiffs contend Wells Fargo purportedly should have known. Plaintiffs allege Wells Fargo's compliance with Customer Identification Program ("CIP") and Anti-Money-Laundering ("AML") laws *should have* alerted the bank to the Scheme. Compl. ¶¶ 92-93, 103, 133. According to Plaintiffs, this is based on Wells Fargo's obligation to "maintain a customer due diligence program"[1] that allows it to comply with AML laws. *Id.* at ¶¶ 92-94. Plaintiffs claim these CIP and AML regulations allowed Wells Fargo to predict the type and frequency of transactions in which its customers are "***likely*** to engage," "***likely*** triggered added scrutiny," and the "personnel and

---

[1] Plaintiffs are likely referring to BSA's requirement that banks implement "KYC/CIP" (Know Your Customer and Customer Identification Program) policies and procedures. *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-CV-02778-TSH, 2019 WL 3503109, at *6 (N.D. Cal. Aug. 1, 2019) (citing *Sterling Sav. Bank v. Poulsen*, 2013 WL 3945989, at *19 (N.D. Cal. July 29, 2013)).

automated systems ***likely*** detected" and "***likely*** caught" Judd and Beasley's account activity. *Id.* at 94, 153, 166 (emph. added).

Plaintiffs also aver Wells Fargo allegedly knew about the inner workings of Judd and Beasley's Scheme as it witnessed account activity that contradicted predicted activity. Compl. ¶¶ 103, 129, 133, 137, 140, 147, 154, 165, 170. However, Plaintiffs' only alleged facts in support of these conclusory allegations are generic references to the existence of Beasley's Trust Account, deposits into the Trust Account, and transfers in and out of the Trust Account. *Id.* Nevertheless, Plaintiffs contend Wells Fargo "chose not to terminate its relationship with Beasley" and "continued providing banking services to Beasley." Compl. ¶ 97. Plaintiffs allege Wells Fargo's benefit from the Scheme was bank transaction fees and using deposited funds to boost its deposit average metrics. *Id.* at ¶¶ 210, 216, 22

**C. Plaintiffs' Investments in the Scheme**

Plaintiffs allege they made investments into the Scheme from family trust accounts, LLCs and individual accounts and never received back their principal investments. Compl. ¶¶ 37-91. Their investments are summarized as follows:

| Plaintiff | Entity Invested Through | Investment Amount | Promised Rate of Return | Date of Investment |
|---|---|---|---|---|
| Barret Henzel | Henzelhaus, LLC, Nevada limited liability company | $400,000 | 12.5% | Starting in December 2019 |
| Allan Carso | Carso Family Trust | $280,000 | 12.5% | Starting in February 2020 |
| Bryce Kelly | K2K Investments, LLC, a Washington limited liability company | $500,000 | 12% | Starting in October 2021 |
| Clint and Dan McDaniel | Waymaker McD, LLC, a California limited liability company | $1,185,000 | 15% | Starting in October 2021 |
| Rodney Michaelis | Vista Land Solutions LLC, a Washington limited liability company | $80,000 | 12.5% | Starting in December 2021 |

| | | | | |
|---|---|---|---|---|
| Gary Lundin | N/A | $200,000 | 10% | Starting in December 2021 |
| Joshua Luekenga | JC Luekenga, LLC, a Utah limited liability company | $160,000 | 15% | Starting in March 2021 |

## III. PROCEDURAL BACKGROUND

Before filing this consolidated complaint, various investors filed four separate putative class action lawsuits against Wells Fargo in the United States District Court for the District of Nevada. *See Henzel, et al. v. Wells Fargo Bank, N.A.*, 2:22-cv-00529-GMN-NJK, (D. Nev. Mar. 25, 2022), ECF Nos. 1, 22 ("*Henzel*"); *Dowdy v. Wells Fargo Bank, N.A.,* 2:22-cv-00631-ART-DJA, (D. Nev. Apr. 15, 2022), ECF No. 1 ("*Dowdy*"); *PMM3 LLC, et al. v. Wells Fargo Bank, N.A.*, 2:22-cv-00654-APG-NJK, (D. Nev. Apr. 20, 2022), ECF No. 1 ("*PMM3*"); *Lewis, et al., v. Wells Fargo Bank, N.A., et al*., Case No. A-22-850036-C, ECF No. 1.[2]

On June 3, 2022, the court consolidated the four cases pursuant to the parties' filed stipulations. *See* Order Granting Stipulation Consolidating Cases and Appoint Counsel, *Henzel*, ECF No. 34; *Dowdy,* ECF No. 24; *PMM3,* ECF No. 19; *Lewis,* ECF No. 29.

On July 5, 2022, Plaintiffs filed this consolidated class action complaint. Plaintiffs seek to certify a nationwide class of similarly situated "natural and legal persons who invested in a J&J Entity lawsuit settlement contract between January 2017 and March 2022." Compl. ¶ 190. Plaintiffs seek to recover damages in excess of $5,000,000 in damages, punitive damages, attorneys' fees and costs, and such other relief the Court deems just and proper. *Id.* at ¶ 16; p. 57 (Prayer for Relief).

## IV. LEGAL STANDARD

A court must dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept allegations of fact as true and construe them in the light most favorable to the nonmoving party,

[2] On April 20, 2022, Wells Fargo removed the *Lewis* action from Nevada state court to the United States District Court for the District of Nevada. Petition for Removal, *Lewis*, ECF No. 1.

"conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

"[A] complaint . . . must plead enough facts to state a claim to relief that is plausible on its face." *Id.* at 1067-68. While a complaint "does not require detailed factual allegations" a complaint must contain "sufficient factual matter to state a claim to relief that is plausible on its face." *Diaz v. Chase*, 416 F. Supp. 3d 1090, 1094 (D. Nev. 2019) (internal quotations omitted). "[W]hile a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Buenaventura v. Champion Drywall, Inc.*, 803 F. Supp. 2d 1215, 1216 (D. Nev. 2011) (internal quotations omitted).

Claims sounding in fraud, including aiding and abetting fraud, require a plaintiff to satisfy Rule 9(b) and "state with particularity the circumstances constituting fraud" or the claim must be dismissed. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing Fed. R. Civ. P. 9(b)); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (the "who, what, when, where, and how" required). Additionally, the Court should deny leave to amend where amendment would be futile. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

## V. ARGUMENT

### A. Certain Plaintiffs Lack Standing as their *Business* Suffered the Alleged Injury

As an initial matter, the Plaintiffs who chose to invest through their LLC and not personally should be dismissed as they lack standing to pursue their claims. The LLC Plaintiffs chose to invest in the Scheme through their respective LLCs organized under the laws of Nevada, California, Washington and Utah. Compl. ¶¶ 53, 60, 84. These Plaintiffs must be dismissed because they lack standing to bring this lawsuit. Their business is the proper plaintiff who suffered injury, not them.

To establish Article III standing, a plaintiff must establish: "(i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Under the laws of the state in which these LLCs were organized, an LLC is a separate legal entity, and the property owned by the LLC is not the

property of the members. Nev. Rev. Stat. Ann. § 86.351 (West) (the interest of each member of a limited-liability company is personal property; a member does not own a direct interest in the property owned by the company); Nev. Rev. Stat. Ann. § 86.311 (West) (the real and personal property owned by a company must be held and owned, and conveyance made, in the name of the company); Cal. Corp. Code § 17701.04(a) (West) ("A limited liability company is an entity distinct from its members."); Wash. Rev. Code Ann. § 25.15.246(1) (West) ("A member has no interest in specific limited liability company property."); Utah Code Ann. § 48-3a-104(1) (an LLC is a distinct entity from its members).

Plaintiffs contend that as a result of Wells Fargo's conduct, they have been injured by losing a significant portion of the funds invested with Judd and Beasley and have been denied use of those funds since March 2022. Compl. ¶¶ 11, 217, 223. But the LLC Plaintiffs invested through their respective limited liability companies with each LLC's funds. Compl. ¶¶ 53, 60, 84. Because these six of the eight Plaintiffs made investments with their businesses' funds, not with their personal funds, the individuals did not suffer any injury that can be redressed here. *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958, 962 (9th Cir. 2002) ("Members own and control most LLCs, yet the LLCs remain separate and distinct from their members."); *Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols.,* No. 2:19-CV-02544-JAM-DB, 2021 WL 3077470, at *3 (E.D. Cal. July 21, 2021) (holding plaintiffs lacked standing to assert individual claims based on harm to the LLC) (citing *Paclink Commc'n Int'l v. Superior Court*, 90 Cal.App.4th 958, 965 (Cal. App. 2001) ("[B]ecause members of the LLC hold no direct ownership interest in the company's assets the members cannot be directly injured when the company is improperly deprived of those assets.")); *Denevi v. LGCC, LLC*, 121 Cal. App. 4th 1211, 1214 n.1 (2004) ("Like corporate shareholders, members of a limited liability company hold no direct ownership interest in the company's assets."); *Williams v. PRK Funding Servs., Inc*., 596 B.R. 375, 381 (W.D. Wash. 2019) ("LLC members have no ownership in property owned by the LLC…and [] assets") *aff'd*, 817 F. App'x 524 (9th Cir. 2020); *Woods View II, LLC v. Kitsap County*, 352 P.3d 807, 818 (Wash. Ct. App. 2015) (harms to LLC not actionable by managing member, sole owner, and agent of LLC); *Finley v. Takisaki*, No. C05-1118JLR, 2006 WL 1169794, at *3 (W.D. Wash. Apr. 28, 2006) (noting that members of a

LLC did not have standing to personally pursue damages suffered by the LLC and would have to allege "an injury distinct from those of any other LLC member"); *Dansie v. City of Herriman*, 2006 UT 23, ¶ 11, 134 P.3d 1139, 1144 (affirming district court's dismal of claims that should have been brought derivatively because plaintiffs' injuries were not individual in nature, but rather their injuries occurred because the Company was injured). As property owned by the LLC is not the property of the members, a member of an LLC cannot be directly injured when an LLC is deprived of its assets and these Plaintiffs must be dismissed for a lack of standing.

**B. Plaintiffs' Aiding and Abetting Fraud Claim Should be Dismissed Because They Fail to Allege the Required Elements**

Plaintiffs' aiding abetting claim should be dismissed because they fail to allege with particularity facts that Wells Fargo had knowledge of the Scheme, beyond conclusory statements stemming from processing banking transactions, and fail to allege how Wells Fargo substantially assisted the Scheme. To state a claim for aiding and abetting an intentional tort like fraud, a defendant must "know[ ] that the other's conduct constitutes a [violation of the intention tort] and gives substantial assistance or encouragement to the other so to conduct himself." *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 111 (Nev. 1998), overruled on other grounds by *GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001). Knowledge cannot be presumed and "[t]o state such a claim in Nevada, plaintiffs must demonstrate that . . . [Wells Fargo] was aware of its role in promoting [Judd and Beasley's tort] at the time it provided assistance." *CMB Infrastructure Grp. IX, LP v. Cobra Energy Inv. Fin., Inc.*, No. 2:21-CV-00214-JAD-DJA, 2021 WL 5304175, at *7 (D. Nev. Nov. 15, 2021) (quoting *Dow Chem. Co.*, 970 P.2d at 112) (internal quotations omitted).

Claims like these that are grounded in fraud are subject to Rule 9(b)'s heightened pleading standard and must be pled with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (allegations that defendant engaged in fraudulent conduct are "grounded in fraud" or "sound in fraud" and "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"); *Winer v. Strickland*, No. 2:13-CV-0231-JAD-CWH, 2017 WL 5180426, at *4 (D. Nev. Nov. 7, 2017) ("Rule 9(b) of the Federal Rules of [Civil Procedure] states that any

allegation of fraud must be plead with particularity.”). Because Plaintiffs fail to adequately allege both elements of knowledge and substantial assistance, their claims should be dismissed.

**1. Plaintiffs Fail to Adequately Allege Actual Knowledge to Maintain Their Aiding and Abetting Claims**

Plaintiffs do not allege with particularity any facts supporting their contention that Wells Fargo had knowledge of the Scheme. Their Complaint, which is replete with conclusory allegations of actual knowledge and substantial assistance, does not satisfy their heightened burden of alleging particular, and plausible, facts to support the claim.

The Ninth Circuit has confirmed that conclusory allegations of aiding and abetting are insufficient to state a claim, where they lack facts to plausibly support the claim. *Paskenta Band of Nomlaki Indians v. Umpqua Bank*, 846 F. App’x 589, 590 (9th Cir. 2021) (holding that allegations of “various irregularities requir[ing] further investigation by Umpqua Bank” were not sufficient to allege actual knowledge and further stating that “conclusory statements . . . are not entitled to the presumption of truth”), *aff’d*, 854 F. App’x 872 (9th Cir. 2021). Nevada district courts are in accord. *See, e.g., Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. v. Wells Fargo Bank, N.A., 2012*, No. 3:18-CV-00181-LRH-WGC, 2019 WL 489095, at *3 (D. Nev. Feb. 7, 2019) (dismissing aiding and abetting fiduciary fraud claim because “[i]nstead of alleging specific facts, it has simply repeated the essential elements of a civil aiding and abetting claim.”); *Bagley v. Beville*, No. 2:13-CV-01119-JCM-CWH, 2014 WL 28999, at *3 (D. Nev. Jan. 2, 2014) (dismissing claim for aiding and abetting breach of fiduciary duty for lack of “any details regarding what specific acts performed by the defendants constituted aiding and abetting or how any individual defendant contributed to the alleged breach of fiduciary duty”); *Wisdom v. U.S.*, No. 3:06-CV-00094-PMP, 2010 WL 3981712, at *7 (D. Nev. Oct. 8, 2010) (dismissing aiding and abetting fraud claim because it failed to allege the “what, when, where, and how” defendant “aided, abetted, and/or ratified this course of conduct”).

Here, Plaintiffs fail to plead with particularity the knowledge component of their aiding and abetting fraud claim. At each turn, Plaintiffs’ Complaint asserts only labels and conclusions which do not satisfy the fundamental pleading requirements of Federal Civil Rules 8 and 9(b). Despite

Plaintiffs' barrage of allegations concluding Wells Fargo "knew" Beasley's use of the Trust Account bore no resemblance to predicted activity, they wholly omit the most crucial allegations of the "who, what, when, where, and how" of Wells Fargo's knowledge of the fraud. Compl. ¶¶ 103, 129, 133, 137, 140, 147, 154, 165, 170.

*First,* Plaintiffs fail to identify in their allegations a single Wells Fargo employee who was actually aware of the Scheme—the plausible "*who*" is devoid from the Complaint. Although the Complaint references employees who allegedly processed transactions and <u>observed</u> "suspicious activity," including a former (and unnamed) Regional Banking District Manager of a Wells Fargo branch in Henderson, Nevada, this does not equate to knowledge of the Scheme because the Ninth Circuit has held allegations of various irregularities are not sufficient to allege actual knowledge. Compl. ¶ 135, 177-78; *see Paskenta Band of Nomlaki Indians*, 846 F. App'x at 590. The Complaint lacks a single reference to any specific individual at Wells Fargo—a teller, banker, relationship manager, or otherwise—who worked, interacted with, or processed any transaction or conducted due diligence that gave them, or Wells Fargo, who had *knowledge* of the Scheme. Suspicious behavior is not enough. Plaintiffs do not allege any person who plausibly knew any specific Judd and Beasley' representations to be false, misleading, or inaccurate.

*Second*, Plaintiffs fail to identify "*when*" or "*where*" Wells Fargo purportedly obtained knowledge of Judd and Beasley' fraud and Scheme. Plaintiffs contend the Scheme generally "started in 2017," and continued until Beasley's standoff with the FBI in March 2022, but Plaintiffs fail to elaborate on when during that time Wells Fargo, or any of its employees, obtained actual knowledge or purportedly had actual knowledge about the Scheme. Plaintiffs fail to allege where Wells Fargo allegedly learned of the scheme—beyond allegations that Wells Fargo in-branch employees processed wire transfers for a handful of Plaintiffs—entirely omitting all factual allegations which gave Wells Fargo knowledge about the Scheme. Wells Fargo and the Court do not have any clue when or where Wells Fargo allegedly obtained knowledge of the Scheme based on the allegations in Plaintiffs' Complaint. These omissions violate both Rules 8 and 9(b).

*Third*, Plaintiffs fail to allege "*what*" Wells Fargo purportedly learned about the Scheme or Judd and Beasley's activities that directly gave it knowledge of the fraud. Beasley had a Trust

Account with Wells Fargo, [Compl. ¶ 4], but the existence of an account does not equate to knowledge of the Scheme—let alone knowledge of fraud—at the time the fraud occurred. Plaintiffs refer to misrepresentations Judd and Beasley made about their investment opportunities in personal injury settlements [*see, e.g.,* Compl. ¶¶ 29-33], but fail to explain how Wells Fargo knew that money flowing through a Trust Account were in reality a disguise for investor capital contributions into the Scheme.

*Fourth,* to bolster their thin allegations, Plaintiffs generally allege Wells Fargo's CIP, AML, and KYC obligations gave Wells Fargo an understanding of the "unique financial activity" of Judd and Beasley and saw banking activity that "bore no resemblance to that predicted activity." Compl. ¶¶ 92-93, 103, 133. However, general allegations of KYC and AML obligations, without any specific supporting facts, fail to support a finding of knowledge. As the Second Circuit succinctly observed,

> [Defendant's] "Know Your Customer" obligations are, standing alone, far from sufficient to support a strong inference that it had actual knowledge of [the] fraud. As an initial matter, plaintiffs do not identify any particular monitoring obligation on the part of [defendant], the proper exercise of which would have alerted it to [the] fraud. Moreover, even if such an obligation were identified, the strongest inference one could draw therefrom is that [defendant] should have known of [the] wrongdoing, not that it had actual knowledge thereof. Otherwise, brokerage firms would be liable for aiding and abetting every time a fraudster used brokerage accounts in service of its fraud in a detectable manner. That is not the law.

*Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 95-96 (2nd Cir. 2012); *see also, e.g., Lorenz v. E. W. Bancorp, Inc.*, No. 2:15-CV-06336-CAS(FFMx), 2016 WL 199392, at *8 (C.D. Cal. Jan. 14, 2016) (general allegations that enhanced due diligence procedures "*would have* set off alarm bells" is insufficient, standing alone, to allege actual knowledge); *Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at *16 (11th Cir. Oct. 19, 2021) (at most, the banking activity and wire gave "reason to be suspicious about the account activity, but suspicion about account activity is not the same as knowledge of the underlying fraud."); *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771, 2017 WL 5514370, at *4 (S.D. Fla. Nov. 15, 2017) ("detect[ion of] suspicious activity . . . only demonstrates knowledge of the symptoms of the Ponzi scheme, not [] actual knowledge."), *aff'd, Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296 (11th Cir. 2020); *Liu Yao-Yi v. Wilmington*

*Tr. Co.*, 301 F. Supp. 3d 403, 420 (W.D.N.Y. 2017) (know your customers obligations at most could only create an inference of constructive knowledge); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 469 (S.D.N.Y. 2008) ("Even where a bank was on notice of 'red flags' that indicated certain accounts may have been vehicles for fraudulent activity and referred the case to its internal fraud unit, the bank had only suspicions but not actual knowledge of the fraud.")

Plaintiffs do not allege how Wells Fargo would plausibly know that its customer, an attorney (Beasley), conspired with a third-party (Judd and his entities) to solicit investor funds and funnel them through an attorney's IOLTA account. Nor does the Complaint allege sufficient facts to show Wells Fargo plausibly knew Judd and Beasley defrauded investors by soliciting investment money to instead pay existing investors or themselves.

And, if Plaintiffs seek to rely on specific transactions that gave Wells Fargo knowledge about the Scheme, they have not alleged facts supporting how the mere transfer of funds into, between, and out of an account on its face would demonstrate the existence, or Wells Fargo's knowledge of, a criminal, and fraudulent enterprise. Plaintiffs' own Complaint concedes that alleged facts they rely upon to try to allege Wells Fargo's knowledge of the Scheme are just tangential. *See, e.g.*, Compl. ¶¶ 154 (Judd and Beasley account activity were "***likely*** caught in various ways by Wells Fargo") (emph. added), *Id.* (transactions "***likely*** triggered added scrutiny") (emph. added), *Id.* at ¶ 166 (Wells Fargo's "automated systems ***likely*** detected" red flags) (emph. added). Without more, these inferences supporting knowledge are too implausible and too far of a leap for the Court to make. *See, e.g., Paskenta Band of Nomlaki Indians*, 846 F. App'x at 590 (holding that the Tribe "failed to plausibly allege that Umpqua Bank actually knew that processing transactions requested by [the Tribe's] authorized signatories, assisted those employees in committing a specific tort" and allegations of "various irregularities requir[ing] further investigation by Umpqua Bank" was not sufficient to allege actual knowledge); *Tai-Si Kim v. Kearney*, No. 2:09-CV-02008-PMP-PAL, 2010 WL 3433130, at *9 (D. Nev. Aug. 30, 2010) (dismissing aiding and abetting fraud claim as Plaintiffs failed to allege Defendant's awareness of her role in any alleged fraud or that she knowingly assisted); *Angell v. Allergan Sales, LLC*, No. 3:18-CV-282-J-34JBT, 2019 WL 3958262, at *15 (M.D. Fla. Aug. 22, 2019) (transfers of funds from attorney fiduciary accounts to personal accounts

is "insufficient to establish actual knowledge of fraud"); *Impac Warehouse Lending Grp. v. Credit Suisse First Boston Corp.*, No. SA CV 04-1234 AHS (CWx), 2006 WL 6935318, at *7 (C.D. Cal. June 20, 2006) (knowledge may not be presumed; rather, "an aider and abettor to a fraud must have actual and not merely constructive knowledge of the fraud at the time the alleged assistance is rendered."), *aff'd*, 270 F. App'x 570 (9th Cir. 2008).

Likewise, stripped of Plaintiffs' conclusory allegations of improper "banking activity" [Compl. ¶ 96], all the Complaint does is repackage what are, in effect, allegations suggesting constructive knowledge—which are plainly insufficient. Plaintiffs attempt to stitch together a string of banking activity by Judd and Beasley that "bore no resemblance to [] predicted activity" that purportedly show actual knowledge. As the Ninth Circuit recently emphasized, however, these types of allegations—which are akin to a mere suspicion of wrongdoing—are insufficient to allege actual knowledge. *See Paskenta Band of Nomlaki Indians*, 846 F. App'x at 590. Indeed, most courts across the country have consistently held that constructive knowledge of a fraudulent scheme is insufficient to state a claim for aiding and abetting. *See, e.g., Tai-Si Kim*, 2010 WL 3433130, at *9 (dismissing aiding and abetting fraud claim as Plaintiffs failed to allege Defendant's awareness of her role in any alleged fraud or that she knowingly assisted); *Impac Warehouse Lending Grp.*, 2006 WL 6935318, at *7 (knowledge may not be presumed; rather, "an aider and abettor to a fraud must have actual and not merely constructive knowledge of the fraud at the time the alleged assistance is rendered."); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118-19 (C.D. Cal. 2003) (allegations that defendant "should have known" does not satisfy the actual knowledge requirement); *In re Agape Litig.*, 773 F. Supp. 2d 298, 311 (E.D.N.Y. 2011) ("conclusory allegation that 'no legitimate business' would have the pattern of account activity" at most could support constructive knowledge); *Litson-Gruenber v. JPMorgan Chase & Co.*, No. 7:09-CV-056-0, 2009 WL 4884426, at *3 (N.D. Tex. Dec. 16, 2009) ("Plaintiff's factual narrative is, at best, merely a story of suspicious activity that Plaintiff contends should have provided Defendant notice of the ponzi scheme.").

Further, it makes no difference that Judd and Beasley operated their investment fraud through Beasley's IOLTA account. Plaintiffs claim that the IOLTA account transferring millions

to pay title companies for real estate supports their conclusion that Wells Fargo knew about the Scheme, but transferring money to title companies is in fact a permissible purpose for an IOLTA account under Nevada law, so Wells Fargo had no reason to be suspicious. S.C.R. 78(1)(a) (active members of the Nevada state bar may deposit funds into an escrow IOLTA account); *see e.g., Washington Legal Found. v. Legal Found. of Washington*, 271 F.3d 835, 862 (9th Cir. 2001), *aff'd sub nom. Brown v. Legal Found. of Washington*, 538 U.S. 216 (2003) (explaining title companies' practice to deposit funds into IOLTA accounts). Unlike a "typical trust account in which a Bank might know the identity of specific beneficiaries, an IOLTA Account can contain funds of multiple and ever-changing beneficiaries, as well as third party funds and fees earned by the attorney." *Rosemann v. St. Louis Bank*, 858 F.3d 488, 498 (8th Cir. 2017) (affirming summary judgment on all claims stating that moving large sums of money between an IOLTA account and other accounts is not evidence that the bank had a duty to investigate the transactions). This is especially true considering that banks owe depositors no duty to investigate suspicious activities. *Id.*; *see also Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1149 (Cal. Ct. App. 2005) ("We pause to note that under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder").

Accordingly, Plaintiffs' aiding and abetting claims should be dismissed because they fail to allege specific, and particularized facts establishing Wells Fargo had knowledge of the Scheme.

**2. Plaintiffs' Aiding and Abetting Claims Should Be Dismissed Because They Fail to Allege Wells Fargo Provided Substantial Assistance**

To establish the second element of Plaintiffs' aiding and abetting fraud claim, Plaintiffs must allege Wells Fargo "substantially assist[ed] or encourage[d] another's conduct" in causing the alleged injury. *Dunham*, 2019 WL 489095, at *3 (citing *G.K. Las Vegas Limited P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006)). "To amount to substantial assistance, such encouragement must take the form of a direct communication, or conduct in close proximity, to the tortfeasor." *Dow Chem. Co.*, 970 P.2d at 113; *c.f., Newton v. Uniwest Fin. Corp.*, 802 F. Supp. 356, 359 (D. Nev. 1990) (in aiding and abetting a securities fraud claim, plaintiff "must show a substantial causal connection 'between the culpable conduct of the alleged aider and abetter and

the harm to the plaintiff' in order to establish substantial assistance in the wrong."), *aff'd*, 967 F.2d 340 (9th Cir. 1992); *see also, e.g., Evans v. ZB, N.A.*, 779 F. App'x 443, 444-45 (9th Cir. 2019) (aiding and abetting liability arises only when the bank "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act."); *In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596, at *16 (N.D. Cal. Dec. 12, 2005) (holding that failure to act "does not constitute substantial assistance or encouragement").

Plaintiffs support their "substantial assistance" allegation through a single, innocuous act—Wells Fargo's processing of ordinary banking transactions for its customer by accepting deposits into and processing transfers from Beasley's Trust Account.  Compl. ¶¶ 3, 10, 147-148.  Ordinary banking transactions alone, however, are not sufficient to impose aiding and abetting liability on Wells Fargo as they do not constitute a "direct communication, or conduct in close proximity, to the tortfeasor."  *Dow Chem. Co.*, 970 P.2d at 113; *see also, e.g., In re Mortg. Fund '08 LLC*, 527 B.R. 351, 365 (N.D. Cal. 2015) (for "ordinary business transactions," to satisfy the "substantial assistance" requirement, the bank must have actually known that "the transactions assisted the commission of the specific tort."); *Su v. Henry Glob. Consulting Grp.*, No. 2:20-CV-02235 ODW (PLAx), 2022 WL 19392, at *3 (C.D. Cal. Jan. 3, 2022) (same); *In re First All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (quoting *Casey*, 127 Cal. App. 4th at 1145 ("'[O]rdinary business transactions' . . . can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort."); *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 62 (2d Cir. 2012) ("A bank's provision of 'its usual banking services to a customer . . . does not in and of itself rise to the level of substantial assistance.'") (quoting *Rosner v. Bank of China*, No. 06-CV-13562, 2008 WL 5416380, at *12 (S.D.N.Y. Dec. 18, 2008)).  If they did, any tortfeasor engaged in a Ponzi scheme with a bank account at a financial institution would automatically satisfy the substantial assistance element of an aiding and abetting claim.  Such a perverse outcome deprives the law from having any material significance.  *See, e.g., Su*, 2022 WL 19392, at *3 (dismissing plaintiffs' claims for aiding and abetting because plaintiff failed to allege ordinary business transactions were performed with the specific knowledge that the transactions were assisting in the commission of a specific tort); *Casey*,

127 Cal. App. 4th 1138 (affirming dismissal of plaintiffs' aiding and abetting claims because plaintiff failed to allege participation in the primary wrong with knowledge when completing ordinary business transactions).

Plaintiffs have not alleged any facts that Judd and Beasley directly communicated with Wells Fargo—orally or in writing—to *substantially assist* the Scheme. Nor do Plaintiffs allege that Wells Fargo promoted the Scheme, solicited any investors to contribute money to the Scheme, or encouraged Judd and Beasley to continue their fraudulent activities. As pled, Judd and Beasley simply held accounts at Wells Fargo. The mere, routine transfer of funds between accounts does not constitute "conduct in close proximity" with the tortfeasors. *Id.* Plaintiffs' fleeting references to earning an unidentified amount of "fees" [Compl. ¶¶ 210, 216, 222]—bank fees that are lawfully charged pursuant to the terms governing each Wells Fargo account—do not plausibly support a finding of knowing substantial assistance with or encouragement of the Scheme.

Given that Plaintiffs have failed to plausibly allege "substantial assistance" or "encouragement in another's conduct," their aiding and abetting claim for fraud must be dismissed.

### C. Plaintiffs' Claim for Violation of the UFA Should Be Dismissed Because they Fail to Allege a Fiduciary Duty, Wells Fargo's Knowledge of the Alleged Breach, or Bad Faith

Plaintiffs' claim for violation of the UFA must be dismissed because there is no fiduciary relationship between Plaintiffs and Beasley, Plaintiffs fail to allege Wells Fargo had actual knowledge of the breach of the non-existing duty or bad faith on Wells Fargo's part.

To state a claim for violation of the UFA, Plaintiffs must allege (1) Judd and Beasley were fiduciaries, (2) Plaintiffs were principals as defined under the Act, and (3) Wells Fargo had "***actual knowledge*** that the fiduciary is committing a breach of his or her obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith." Nev. Rev Stat. § 162.080 (emph. added). The UFA governs, and limits, a bank's liability for the actions of a fiduciary who holds an account with the bank. The UFA "was clearly meant to relax the standards of care owed by banks to principals and third parties when dealing with fiduciary accounts." *Guild v. First Nat'l Bank of Nevada*, 553 P.2d 955, 958 (Nev. 1976). As such, "[l]iability

cannot be predicated on a showing of lack of due care, or negligence." *Id.* Rather, under the UFA, liability is predicated on actual knowledge or bad faith. Without such knowledge or bad faith, "banks may not be held liable." *Id.* (internal citations omitted).

"[A] claim for breach of fiduciary duty is 'limited to rare and exceptional cases.'" *Hanover Ins. Co. v. Terra S. Corp.*, No. 2:18-CV-00675-KJD-EJY, 2019 WL 12043524, at *3 (D. Nev. Sept. 27, 2019) (quoting *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997)). "The special or confidential relationship necessary to create a fiduciary duty does not come easily." *Id.* The "relationship only exists where 'one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence.'" *Id.* (quoting *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982)). Therefore, the nature of certain relationships implies a fiduciary duty by one party to another. *Id.* at *2; *see, e.g., Murray v. Provident Trust Group, LLC*, No. 2:18-cv-01382-MMD-GWF, 2019 WL 1779567, at *5 (D. Nev. Apr. 23, 2019) (dismissing breach of fiduciary duty claim because the governing contract between the parties did not identify a fiduciary relationship or "create [a] trust-type relationship[ ]"); *Potter v. BAC Home Loans Servicing, LP*, No. 2:10-cv-02095-GMN-LRL, 2011 WL 2971204, at *7 (D. Nev. July 19, 2011) (under Nevada law, "lenders do not have a fiduciary duty to borrowers, unless the borrowers can plead facts in which a special relationship arose"); *Martin v. State Farm Mut. Auto. Ins. Co.*, 960 F. Supp. 233, 235 (D. Nev. 1997) (dismissing breach of fiduciary duty claim because there is no fiduciary relationship or duty between an insurer and insured); *Paskenta Band of Nomlaki Indians v. Crosby*, 122 F. Supp. 3d 982, 993 (E.D. Cal. 2015) (dismissing breach of fiduciary duty claim because pension consulting firm owed no fiduciary duty and for the bank defendant, "the relationship between a bank and its depositor is that of a debtor-creditor, and is not a fiduciary one");[3] *cf., Edwards v. 360 Commc'ns,* 189 F.R.D. 433, 434 (D. Nev. 1999) ("In Nevada, legal representation creates a fiduciary relationship between attorney and client.").

---

[3] Nevada courts look to California law where Nevada case law is silent. *See Comm. Standard Ins. Co. v. Tab Constr., Inc.*, 583 P.2d 449, 451 (Nev. 1978).

Plaintiffs have failed to state a claim under the UFA for two reasons.  **First**, Plaintiffs fail to plausibly allege that they are principals within the meaning of Nev. Rev. Stat. § 162.020(c).[4]  The Act defines "principal" as any person to whom a fiduciary duty is owed.  Nev. Rev. Stat. Ann. § 162.020(c).  Despite Plaintiffs' conclusory allegations that there was a fiduciary relationship between the Plaintiffs and Beasley and Judd and Beasley, they have not alleged facts to establish the existence of a fiduciary relationship.  *Id.*

The question is whether Beasley's or Judd's actions created the type of "special relationship" or "confidential relationship" necessary to impose a fiduciary duty.  Unlike a trustee-beneficiary relationship where a trustee manages assets for the sole benefit of the designated beneficiary, Judd and Beasley were not bound to act for the benefit of Plaintiffs as required with a fiduciary relationship.  *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986) (A fiduciary relationship arises where one party is bound to act for the benefit of the other party).  Similar to that of a lender-borrower relationship, Plaintiffs merely were promised they were lending money through Judd and Beasley to third-party legal settlement beneficiaries in exchange for interest payments.  Compl. ¶¶ 30, 32; *see Gonzales v. Bank of Am., N.A.*, No. 2:14-CV-00088-GMN, 2015 WL 4744432, at *2 (D. Nev. Aug. 10, 2015) (no fiduciary duty because Plaintiff and Defendants have a lender/borrower relationship and Plaintiff does not sufficiently plead a special relationship).  Therefore, Plaintiffs fail to adequately allege any fiduciary duty owed to them by Beasley or Judd and Beasley and fail to allege any "special relationship" or "exceptional circumstances" that would even give rise to a fiduciary duty.  Plaintiffs seek to argue that Beasley owes a fiduciary duty to *would be, potential* clients—investors without a client-relationship with Beasley—for transferring funds into Beasley's Trust Account.[5]  This is insufficient.  Plaintiffs do not allege they are Beasley's clients and there

---

[4] Although Beasley was the trustee of the IOLTA account and considered a fiduciary within the meaning of Nev. Rev. Stat. Ann. § 162.020(b), Plaintiffs were not clients of Beasley nor had any special relationship to give rise to a fiduciary relationship to be considered principals within the meaning of Nev. Rev. Stat. Ann. § 162.020(c).

[5] Plaintiffs themselves recognize this in their Complaint stating, "attorneys owe fiduciary duties to their ***clients*** in connection with the funds in the IOLTA."  Compl. ¶ 206.

exists no special relationship to form a fiduciary obligation owed by Beasley or Judd and Beasley. Plaintiffs generically allege Judd and Beasley "owed fiduciary duties to Plaintiffs. . . in connection with the funds in the Beasley law firm's IOLTA" [Compl. ¶ 205], but fail to allege specific facts to support how a relationship between consultants and their customers establishes a fiduciary relationship. Nor does the law support finding such a fiduciary duty. Moreover, any fiduciary duty that may exist would be owed to the entities through which the LLC Plaintiffs invested and not owed to them in their individual capacities.

**Second**, under Nevada law, Wells Fargo is presumptively not liable to Plaintiffs, or any investors, unless Plaintiffs plausibly allege facts supporting that Wells Fargo had ***actual knowledge*** that Beasley committed a breach of his fiduciary obligations or that Wells Fargo deposited investors' checks in bad faith. As pled, Plaintiffs have not met this standard because they allege routine banking activity. *Guild*, 553 P.2d at 958 (noting the UFA limits a bank's liability, holding plaintiff did not demonstrate actual knowledge or bad faith to support liability, and emphasizing the UFA "was clearly meant to relax the standards of care owed by banks to principals and third parties when dealing with fiduciary accounts").

In *Guild*, the Nevada Supreme Court affirmed the district court's dismissal of a complaint brought against the bank under N.R.S. § 162.100. In *Guild*, the plaintiff alleged the bank had actual knowledge of the fiduciary's misappropriation of trust funds because it received deposits and paid checks stemming from "trust" funds by the fiduciary, the fiduciary also had a personal checking account at the same bank, and the deposits were for large amounts of money. *Id.* at 957-58. The court held this circumstantial evidence of knowledge was insufficient to show the bank "actually knew or suspected that funds were being misappropriated." *Id.* at 958. The court reasoned that cashing the personal checks of a fiduciary and depositing the funds into the fiduciary's personal account are permitted under Nev. Rev. Stat. § 162.100, and that "[i]t would defeat the purpose of the statute[] to allow misconduct to be inferred from acts specifically permitted by the statute[]." *Id*. Thus, without a showing of conscious misconduct, the bank was shielded from liability under the UFA.

/ / /

As in *Guild*, Plaintiffs—who do not even have a fiduciary relationship with Judd and Beasley—have failed to allege actual knowledge of a breach by Judd and Beasley. Indeed, Plaintiffs have alleged nothing more than Wells Fargo engaging in routine banking activities. Wells Fargo, under Nev. Rev. Stat. § 162.100, is permitted to deposit into Beasley and Judd and Beasley' personal accounts any checks made payable to them without inquiring into whether the fiduciary is committing a breach of their fiduciary obligation as a fiduciary. *See Dunham Trust Co. v. Wells Fargo Bank, N.A.*, No. 3:18-cv-000181, 2019 WL 5684172, at *3 (D. Nev. Oct. 31, 2019) ("*Dunham II*") ("a bank has no obligation to piece together various transactions by a fiduciary, but rather it is permitted to engage in the presumption that the fiduciary is acting in accord with the fiduciary's lawful authority for each transaction."). Further, Plaintiffs seek to use impermissible circumstantial evidence that Wells Fargo should have known Beasley was breaching his alleged fiduciary duty by transferring money to his personal accounts or engaging in transaction activity inconsistent with predicted account activity which does not rise to the level of actual knowledge or constitute bad faith. *See Guild,* 553 P.2d at 484 ("A mere failure to make inquiry, even though there are suspicious circumstances, does not constitute 'bad faith' unless the failure is due to a deliberate desire to evade knowledge because of a belief or fear that the inquiry would disclose a vice or defect in the transaction.").

At best, Plaintiffs' allegations support their theory Wells Fargo "should have known" Beasley breached its fiduciary obligations. This is woefully insufficient to satisfy the actual knowledge requirement under the UFA. Because Plaintiffs fail to adequately allege the existence a fiduciary relationship and that Wells Fargo either had actual knowledge of a breach or acted in bad faith, Plaintiffs' UFA claim should be dismissed.

**D.      Plaintiffs' Aiding and Abetting Fiduciary Duty Claim Likewise Fails because There Is No Underlying Fiduciary Duty Owed to Plaintiffs by Anyone**

Echoing the arguments above, Plaintiffs' aiding and abetting breach of fiduciary duty claim fails for similar reasons.

To maintain an aiding and abetting breach of fiduciary duty claim, Plaintiffs must allege: "(1) a fiduciary relationship exists, (2) the fiduciary breached the fiduciary relationship, (3) the third

party knowingly participated in the breach, and (4) the breach of fiduciary duty resulted in damages." *New England Life Ins. Co. v. Lee*, No. 2:14-CV-1797 JCM NJK, 2015 WL 1413391, at *7 (D. Nev. Mar. 27, 2015) (citing to *In re Amerco Derivative Litig*., 252 P.3d 681, 702 (Nev. 2011)) (Nevada has adopted the standard applied by Delaware courts requiring that "the third party knowingly participated in the breach"); *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001) (knowing participation requires the third party "act with the knowledge that the conduct advocated or assisted constitutes such a breach.").

Plaintiffs' aiding and abetting breach of fiduciary duty claim fails first and foremost because, as explained above, there is no underlying fiduciary duty owed to Plaintiffs. *Infra*, Section V.C.

Second, their claim for aiding and abetting breach of fiduciary duty fails because — like their aiding and abetting fraud claim — Plaintiffs fail to allege "knowledge" and "substantial assistance." As to breach of fiduciary duty, Plaintiffs' allegations are at best a "should have known" which does not satisfy the standard for actual knowledge. Likewise, Plaintiffs do not identify any substantial assistance on Wells Fargo's part aside from ordinary banking transactions. These elements "should be weighed together, that is, greater evidence supporting [knowledge] requires less evidence of [substantial assistance], and vice versa." *Dow Chem. Co.*, 970 P.2d at 112. Plaintiffs do not identify sufficient facts that would establish actual knowledge nor do they identify the requisite "substantial assistance" to support an aiding and abetting claim. *See infra*, Section V.A.2.

**E. Plaintiffs' Negligence Claim Should Be Dismissed Because Wells Fargo Owes No Duty to Plaintiffs, Has Not Breached Any Duty, and Did Not Cause Plaintiffs' Damages**

"[T]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Elliott v. Prescott Cos., LLC*, No. 2:15-CV-01143 APG-VCF, 2018 WL 3731087, at *2 (D. Nev. Aug. 6, 2018) (quoting *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009) (internal quotations omitted)). Plaintiffs' negligence claim should be dismissed because they fail to sufficiently allege facts supporting three of the four required elements.

*First,* Plaintiffs have not alleged a cognizable duty of care owed by Wells Fargo to Plaintiffs that was breached. Absent extraordinary circumstances not present here, a bank does not owe a duty to Plaintiffs. *Giles v. General Motors Corp.,* 494 F.3d 865, 881 (9th Cir. 2007) (providing examples of duties, including a doctor and patient, attorney and client, spouses, fiancés, corporate officers or directors and corporations, "confidential relationships," or "special relationships"). Here, Plaintiffs allege Wells Fargo "owed a duty to Plaintiffs and other members of the class with respect to the maintenance and use of the Beasley firm's IOLTA and the funds held therein." Compl. ¶ 228. Plaintiffs rely on, and argue, the "duty exists by operation of law, Nev. Rev. Stat. Ann. §§ 162.010, *et seq*., and arises independently from any contract." *Id.* Plaintiffs misstate a bank's duty owed to non-customers.

Nevada law does not impose a duty on banks under Nev. Rev. Stat. Ann. §§ 162.010, *et seq*. Notably, the statute does not include a single reference to "duty." *Id.* Plaintiffs allege Wells Fargo allowed Plaintiffs deposits into Beasley's IOLTA account with Wells Fargo, which implicates § 162.080 (deposits made in a bank to the credit of a fiduciary). In this instance, Wells Fargo "is authorized to pay the amount of the deposit or any part thereof . . . without being liable to the principal [Plaintiffs]" unless it has actual knowledge of a breach or knowledge that payment of the check is bad faith. Nev. Rev. Stat. Ann. § 162.080. The statute explicitly identifies what Wells Fargo is permitted to do, and it does not impose any cognizable duty on the bank. *See Johnson as Trustee of Nina J. Cummings Revocable Living Trust v. Wells Fargo Bank, N.A.*, No. 2:22-cv-00196-JCM-EJY, 2022 WL 2124392, *2 (citing to *Guild*, 553 P.2d at 958 ("The UFA was clearly meant to relax the standards of care owed by banks to principals and third parties when dealing with fiduciary accounts.")).

Plaintiffs have not identified any special relationship between Wells Fargo and Plaintiffs. They have only alleged a relationship between Wells Fargo and Beasley, the holder of the IOLTA account maintained at Wells Fargo. *See generally* Compl.; *see also, e.g.*, *Kerr v. Bank of America, N.A.*, No. 3:15-cv-00306-MMD-WGC, 2016 WL 54670, *4 (D. Nev. Jan. 5, 2016) ("[A] lender owes no fiduciary duties to a borrower absent exceptional circumstances, such as when a special relationship exists between the two parties.").

Moreover, Plaintiffs and the other class members allege they "did not enter into relevant contracts with Wells Fargo," yet seek to impose a non-existent duty on Wells Fargo that can only exist if they are customers. *InjuryLoans.com, LLC v. Buenrostro*, 529 F. Supp. 3d 1178, 1185 (D. Nev. 2021) ("Generally, a bank's duty of care arises by contract and is therefore limited to its customers;" dismissing with prejudice all of plaintiffs' negligence claims and theories because the bank does not owe any duty of care to non-customer plaintiffs under common law, the Patriot Act, the Bank Secrecy Act, associated federal Know Your Customer and Customer Due Diligence Regulations, and plaintiff failed to allege a cognizable claim under the Uniform Commercial Code ("UCC")); *North v. Bank of Am. Corp.*, No. 2:11-CV-00136-RLH, 2011 WL 3419515, at *5 (D. Nev. July 29, 2011) (dismissing negligence claim against bank as bare assertion that the bank owed a duty of care simply because a contract existed, without reference to a specific duty in the contract, does not hold that such duty exists). Plaintiffs Henzel, Luekenga, Michaelis and Kelly neither allege they are Wells Fargo customers nor any terms of a contract between Wells Fargo and Plaintiffs establishing a duty of care.[6] *See* Compl. ¶¶ 82-84. Plaintiffs cannot establish any duty of care based on the BSA or associated KYC and Customer Due Diligence regulations. Without any recognized duty of care owed by Wells Fargo to Plaintiffs, Wells Fargo could not have breached its duty of care. *Id*. Plaintiffs' generic allegation that Wells Fargo breached its duty of care continuing to process banking transactions is a phantom breach unsupported by Nevada law.

*Second*, Plaintiffs have not alleged Wells Fargo ***caused*** Plaintiffs to incur any damages.[7] *See, e.g., Dunham*, 2019 WL 489095, at *4 (dismissing negligence claim against bank with

---

[6] Plaintiffs Lundin, Dan McDaniel and Client McDaniel allege they funded their investments into the Scheme through their respective LLC's Wells Fargo accounts. Compl. ¶¶ 177-178. However, Plaintiffs in their individual capacities are not customers that Wells Fargo owes a duty to, but rather, Wells Fargo may have owed a duty to the LLCs through a deposit agreement with the LLC.

[7] To show causation, Plaintiffs must show that Wells Fargo's conduct was both the actual cause and the proximate cause of the alleged injury. *Doe v. State, State Dep't of Educ.*, No. 02:03-CV-01500-LRH-RJJ, 2006 WL 2583746, at *6 (D. Nev. Sept. 7, 2006) (citing to *Goodrich v. Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 120 Nev. 777 (Nev. 2004). Actual causation is demonstrated when the plaintiff shows that, but for the defendant's conduct, the injury would not have occurred. *Id*. "The second component, proximate cause, is essentially a policy consideration

prejudice because "the UFA displaced any common law negligence claim involving a fiduciary and a bank" and because the complaint failed to explain "how [the bank's] alleged conduct was the proximate cause of the damages it allegedly suffered"); *In re ShengdaTech, Inc.*, 519 B.R. 292, 301 (D. Nev. 2014) (granting dismissal of negligence claim because plaintiff failed to plead sufficient facts to show the defendant discovered misconduct). The Complaint is devoid of any facts asserting Wells Fargo solicited Plaintiffs or class members to invest in Judd and Beasley' Lawsuit Settlement Agreements relating to personal injury settlements. Rather, the allegations confirm that Judd and Beasley solicited prospective investors through their shared church and gyms without any assistance from or encouragement by Wells Fargo. Compl. ¶ 31. And, Plaintiffs participated in the investments based on alleged representations by Judd and Beasley—not Wells Fargo. *Id.*; *supra, Dunham,* 2019 WL 489095, at *6. Judd and Beasley' decision to allegedly misappropriate those funds directly caused Plaintiffs to incur damages. For these reasons, Plaintiffs' negligence claim must be dismissed with prejudice.

## VI. CONCLUSION

Plaintiffs' allegations against Wells Fargo fail to state a claim under even the most liberal pleading standards. Given Plaintiffs' inability to plead such a claim, Wells Fargo respectfully requests that the Complaint be dismissed with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

that limits a defendant's liability to foreseeable consequences that have a reasonably close connection with both the defendant's conduct and the harm which that conduct created." *Id.* (citing *Dow Chem. Co.*, 970 P.2d 98 (Nev.1998)). Proximate cause is more specifically defined as "'any cause which in natural [foreseeable] and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the results would not have occurred.'" *Id.*

DATED: August 4, 2022            Respectfully submitted,

**HOLLAND & HART**

By:   */s/ Sydney R. Gambee*
      Joseph G. Went
      Nevada Bar No. 9220
      Sydney R. Gambee
      Nevada Bar No. 14201
      HOLLAND & HART LLP
      9555 Hillwood Drive, 2nd Floor
      Las Vegas, NV 89134
      Phone: 702.669.4600
      Fax: 702.669.4650
      jgwent@hollandhart.com
      srgambee@hollandhart.com

      K. Issac deVyver (*pro hac vice*)
      Alicia A. Baiardo (*pro hac vice*)
      Anthony Q. Le (*pro hac vice*)
      MCGUIREWOODS
      1800 Century Park East, 8th Floor
      Los Angeles, CA 90067
      Phone: 310.315.8200
      Fax: 310.315.8210
      KdeVyver@mcguirewoods.com
      ABaiardo@mcguirewoods.com
      ALe@mcguirewoods.com

      *Attorneys for Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2022, a true and accurate copy of **DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was served on counsel below by submitting electronically for filing and/or service with the U.S. District Court, District of Nevada's e-filing system and served on counsel electronically.

Miles N. Clark (NBN 13848)
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
miles.clark@knepperclark.com

*Liaison Counsel*

Eric H. Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Iudis Sominskaia (pro hac vice)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
ds@classlawgroup.com
eg@classlawgroup.com
ids@classlawgroup.com

*Interim Co-Lead Counsel*

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
dgirard@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

*Interim Co-Lead Counsel*

Jeffrey C. Schneider (pro hac vice)
Jason K. Kellogg (pro hac vice)
Marcelo Diaz-Cortes (pro hac vice)
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
Citigroup Center, 22nd Floor
Miami, FL 33131
jcs@lklsg.com
jk@lklsg.com
md@lklsg.com

*Interim Co-Lead Counsel*

Robert L. Brace (pro hac vice)
Maria Fernanda Elosu (pro hac vice)
LAW OFFICES OF ROBERT L. BRACE
1807 Santa Barbara St.
Santa Barbara, CA 93101
rlbrace@rusty.lawyer
mariaelosulaw@gmail.com

*Interim Co-Lead Counsel*

*/s/ Joyce Heilich*
an employee of Holland & Hart, LLp

