1  Eric H. Gibbs (pro hac vice)                Daniel C. Girard (pro hac vice)
   David K. Stein (pro hac vice)               Jordan Elias (pro hac vice)
2  Emily Beale (pro hac vice)                  Makenna Cox (pro hac vice)
   **GIBBS LAW GROUP LLP**                     **GIRARD SHARP LLP**
3  1111 Broadway, Suite 2100                   601 California Street, Suite 1400
   Oakland, California 94607                   San Francisco, California 94108
4  (510) 350-9700 (tel.)                       (415) 981-4800 (tel.)
   (510) 350-9701 (fax)                        (415) 981-4846 (fax)
5  ehg@classlawgroup.com                       dgirard@girardsharp.com
   ds@classlawgroup.com                        jelias@girardsharp.com
6  eb@classlawgroup.com                        mcox@girardsharp.com
7
8  Interim Co-Lead Counsel
9  [Additional counsel on signature page]
10
11              **UNITED STATES DISTRICT COURT**
12                  **DISTRICT OF NEVADA**
13  *IN RE: J&J INVESTMENT LITIGATION*        Case No. 2:22-cv-00529-GMN-NJK
14
15                                            **PLAINTIFFS' MOTION TO
                                              COMPEL DISCOVERY UNDER
                                              FED. R. CIV. P. 37(a)(3)(B)(iv)**
16
17                                            Judge:    The Hon. Gloria M. Navarro
18                                                      The Hon. Nancy J. Koppe
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2  INTRODUCTION ...................................................................................................... 1

3  BACKGROUND ...................................................................................................... 2

4      1.  Plaintiffs' factual allegations relevant to this motion ........................................ 2

5      2.  Plaintiffs' request documents related to Wells Fargo's knowledge ..................... 3

6      3.  Wells Fargo objects to the request based on SAR privilege ............................... 5

7      4.  The parties engage in meet-and-confer efforts, but ultimately reach an impasse ............... 5

8  LEGAL STANDARD ...................................................................................................... 6

9  LAW AND ARGUMENT ...................................................................................................... 6

10     I.  The SAR privilege is narrow, extending only to SARs themselves and

11         documents that reveal with "effective certainty" whether a SAR was filed ..................... 6

12     II. Wells Fargo has asserted privilege far more broadly than the law supports ..................... 8

13  CONCLUSION ...................................................................................................... 12

14  APPENDIX ...................................................................................................... 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

<u>Cases</u>

*Ackner v. PNC Bank, Nat'l Ass'n*,

    No. 16-cv-81648, 2017 WL 1383950 (S.D. Fla. Apr. 12, 2017) ................................................. 9

*Camenisch v. Umpqua Bank*,

    No. 20-cv-05905, 2021 WL 9880547 (N.D. Cal. Sept. 14, 2021) ........................................... 10

*Cotton v. PrivateBank & Tr. Co.*,

    235 F. Supp. 2d 809 (N.D. Ill. 2002) ..................................................................................... 11

*Erhart v. Bofl Holding, Inc.*,

    No. 15-cv-2353, 2018 WL 5994417 (S.D. Cal. Nov. 15, 2018) ................................................ 8

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*,

    No. 05-cv-1059, 2007 WL 1726558 (D. Nev. June 11, 2007) .................................................. 4

*First Am. Title Ins. Co. v. Westbury Bank*,

    No. 12-cv-1210, 2014 WL 4267450 (E.D. Wis. Aug. 29, 2014) ....................................... 6, 7, 11

*Freedman & Gersten, LLP v. Bank of Am., N.A.*,

    No. 09-5351, 2010 WL 5139874 (D.N.J. Dec. 8, 2010) ........................................................ 11

*Hallett v. Morgan*,

    296 F.3d 732 (9th Cir. 2002) .................................................................................................. 6

*Hinostroza v. Denny's Inc.*,

    No. 17-cv-02561, 2018 WL 3212014 (D. Nev. June 29, 2018) ................................................ 6

*In re JPMorgan Chase Bank, N.A.*,

    799 F.3d 36 (1st Cir. 2015) ...................................................................................... 7, 8, 10, 11

*In re Whitley*,

    No. 10-10426C-7G, 2011 WL 6202895, (Bankr. M.D.N.C. Dec. 13, 2011) ........................... 11

*Jasso v. Wells Fargo Bank, N.A.*,

    No. 2:20-cv-00858, 2021 WL 3549891 (D. Nev. Aug. 11, 2021) ............................................ 7

*Jasso v. Wells Fargo Bank, N.A.*,

    No. 2:20-cv-0858, 2022 WL 18141573 (D. Nev. Nov. 29, 2022) ............................................ 8

*Jasso v. Wells Fargo Bank, N.A.*,

   No. 2:20-cv-0858, 2021 WL 6118709 (D. Nev. Dec. 27, 2021) ........................................ 7, 9

*Jasso v. Wells Fargo Bank, N.A.*,

   No. 2:20-cv-0858, 2022 WL 4227332 (D. Nev. Sept. 13, 2022) ........................................... 10

*Magdaluyo v. MGM Grand Hotel, LLC*,

   No. 14-cv-1806, 2016 WL 2731672 (D. Nev. May 9, 2016) ...................................................... 5

*Markley v. U.S. Bank Nat'l Ass'n*,

   No. 19-cv-01130, 2020 WL 12602882 (D. Colo. Dec. 29, 2020) ............................................. 9

*V5 Techs. v. Switch, Ltd.*,

   334 F.R.D. 306 (D. Nev. 2019) ................................................................................................. 6

*Wiand v. Wells Fargo Bank, N.A.*,

   981 F. Supp. 2d 1214 (M.D. Fla. Oct. 25, 2013) .................................................................... 10

*Wultz v. Bank of China Ltd.*,

   56 F. Supp. 3d 598 (S.D.N.Y. 2014) ...................................................................................... 11

*Zeitlin v. Bank of Am., N.A.*,

   No. 2:18-cv-01919, 2021 WL 2595102 (D. Nev. June 24, 2021) ..................................... 6, 7, 8

<u>Statutes and Rules</u>

31 U.S.C. § 5318 ............................................................................................................................ 7

31 U.S.C. § 5311 ............................................................................................................................ 3

12 C.F.R. § 21.11 ....................................................................................................................... 7, 8

31 C.F.R. § 1020.320 ..................................................................................................................... 7

Fed. R. Civ. P. 26 ........................................................................................................................... 3

Fed. R. Civ. P. 37 ........................................................................................................................... 6

**INTRODUCTION**

This litigation stems from the $500 million "J&J" Ponzi scheme perpetrated using Wells Fargo bank accounts, including a Wells Fargo attorney trust account (or "IOLTA"). Plaintiffs allege that Wells Fargo not only knew about the scheme, but benefited from it, as Wells Fargo accepted millions of dollars per month into the accounts at issue. Plaintiffs have alleged in detail the facts supporting their allegations of Wells Fargo's knowledge. And with Wells Fargo denying those allegations, what the bank knew about the scheme and its perpetrators has become the central issue in the case.

Plaintiffs served several document requests directed at Wells Fargo's knowledge of the scheme. For example, Wells Fargo uses sophisticated software to monitor account activity for signs of fraud, money-laundering, and other misuses of the bank's services. Plaintiffs have requested documents identifying the systems Wells Fargo uses, including how those systems reacted to the unorthodox activity in the IOLTA (which, by 2021, was receiving more than $20 million monthly, though the account belonged to a solo practitioner). Plaintiffs also requested documents showing what actions Wells Fargo personnel took in response to the system's alerts. Wells Fargo, however, refuses to produce many of the documents Plaintiffs requested, invoking the Bank Secrecy Act (BSA) as a shield covering all of this activity. The parties met and conferred at length, committing their positions to writing, and holding multiple meet-and-confer calls. A ruling is now needed to adjudicate the scope of the privilege at issue.

The privilege underlying the BSA prohibits banks from turning over "suspicious activity reports" or "SARs." But this privilege is narrow. As various courts have held, including Judge Weksler in a case involving Wells Fargo, the BSA only prohibits discovery of SARs themselves and other documents that would reveal with "effective certainty" that a bank did (or did not) file a SAR in a given instance.

Yet Wells Fargo is withholding a much broader scope of documents and information: Wells Fargo refuses to produce generally applicable internal policies and procedures, even though they do not reveal whether the bank filed a SAR in any given instance. Wells Fargo also claims the privilege extends to alerts triggered by unusual or suspicious activity, even though the

1

alerts say nothing about whether a SAR is later filed or not filed. Wells Fargo has also withheld all documents relating to investigations it undertook, even though the case law makes clear that investigatory documents are only protected to the extent they reveal the decision to file or not file a SAR—with any SAR-specific references redacted to comply with the privilege.

Plaintiffs respectfully request that the Court overrule Wells Fargo's objections and direct it to produce the requested documents.

## BACKGROUND

**1.  Plaintiffs' factual allegations relevant to this motion**

Las Vegas attorney Matthew Beasely admitted operating a Ponzi scheme using Wells Fargo accounts. ¶¶ 1-3.[1] The scheme was promoted by an acquaintance of Beasley's, Jeffrey Judd, as well as several other individuals. ¶¶ 29-34. In just over five years, Beasley and the others involved ran nearly $500 million through their Wells Fargo accounts. ¶ 5. Wells Fargo always pays close attention to the transaction activity within its accounts, and pays even closer attention still when that volume of money is at issue. ¶¶ 99-103, 112-15.

Plaintiffs are investors victimized by the scheme. They bring class claims against Wells Fargo, including for aiding and abetting breaches of fiduciary duty and fraud. ¶¶ 200-30. To prove that Wells Fargo had the required knowledge of the misconduct, Plaintiffs have sought discovery directed at Wells Fargo's oversight of the accounts maintained by Beasley and his co-conspirators at the bank. The discovery seeks information regarding:

- Account-opening procedures: When it opens accounts, Wells Fargo must comply with "Know Your Customer" procedures. ¶¶ 92, 99-100. Among other things, this involves assigning the customer a "risk rating," which the bank adjusts over time. ¶ 101. Here, Wells Fargo learned that Beasley ran a one-person law firm, with a "local" Las Vegas practice, which grossed $350,000 annually. ¶ 129.

- Account-monitoring systems: Wells Fargo uses automated systems, equipped with artificial intelligence, to monitor account activity. ¶¶ 116-17. One such system is

---

[1] All "¶" citations refer to Plaintiffs' consolidated complaint, ECF No. 37.

called "Actimize." *Id.* The systems detect signs of unusual or suspicious activity—including a list of well-known "red flags." When the systems detect red flags, they set off alarms to alert Wells Fargo personnel. ¶ 117. Plaintiffs allege that many alerts were likely triggered by Beasley's banking activity: His transaction volume (nearly $500 million) was exponentially higher than forecast ($350,000); his transactions were mostly large, round-dollar transfers to shell companies; and his account was used across the country—most frequently in Utah—though Beasley had told Wells Fargo he had a "local" Nevada practice. ¶¶ 137-53, 162-65.

- Account reviews and investigations by bank personnel: In other instances, a bank employee may take note of an unusual or suspicious transaction and sound an alert within the bank. ¶ 110. Regardless of whether an alert triggers from personnel or an automated system, once Wells Fargo detects unusual or suspicious activity, bank personnel are required to review the account in greater detail and investigate as needed. ¶ 117. Investigations conducted by Wells Fargo of Beasley or the other accounts tied to the Ponzi scheme are thus highly relevant to Plaintiffs' claims.

- Corporate policies and procedures: Plaintiffs allege that the Wells Fargo systems and processes described above are set forth in policies and procedures. ¶¶ 105-06, 110. Wells Fargo undertakes these account-monitoring efforts for a variety of reasons, ranging from its own interest in preventing account fraud to complying with federal anti-money laundering requirements. ¶¶ 99-102. The federal requirements are set forth, *inter alia*, in the BSA, 31 U.S.C. §§ 5311, *et seq*.

2. **Plaintiffs request documents related to Wells Fargo's knowledge**

   Plaintiffs sent Wells Fargo their initial requests for production on July 29, 2022, which were later deemed served when the parties held their Rule 26 conference. ECF No. 62-1, Declaration of David Stein, ("Stein Decl.") ¶ 2; *see generally* Fed. R. Civ. P. 26(d)(2).

   The requests at issue focus on what Wells Fargo knew about the accounts belonging to Beasley, Judd, and the others involved in the scheme. The requests seek documents relating to the same mechanisms for monitoring account activity as alleged in the complaint and described

above. The requests at issue are:

- Request for Production No. 13 seeks "Compliance-related policies and procedures (including employee training materials) concerning Wells Fargo demand deposit accounts, including but not limited to "Know Your Customer" policies and procedures; . . . account due diligence; Bank Secrecy Act requirements . . . ; policies and procedures concerning transactional "red flags;" policies and procedures concerning the termination of account relationships; . . . [and] policies and procedures concerning risk evaluations and referrals."

- Request for Production No. 14 requests "Documents and Communications concerning suspected or possible unlawful or improper account activity" concerning Beasley, Judd, and the other Ponzi conspirators.

- Request for Production Nos. 1 and 15, which ask for documents concerning Wells Fargo's account-opening "risk ratings" and any later "risk assessment" of Beasley, Judd, and the other Ponzi conspirators.

- Requests for Production Nos. 16 and 17 seek "Alerts, reports, and other Documents generated by or accessible from the 'Actimize' banking activity monitoring system" or "any banking activity monitoring system other than Actimize," as well as "any related investigation files, Documents, and Communications."

- Request for Production No. 19 requests "Documents not otherwise requested identifying the systems and processes used by Wells Fargo in the ordinary course of business to identify potentially unlawful or improper banking activity."

*See* Stein Decl., Ex. 1, Plaintiffs' First Set of Requests for Production ("RFP"). The full text of each of these requests is appended to this motion pursuant to District of Nevada LR 26-6(b).[2]

_____

[2] Due to page limitations, Plaintiffs provide the written discovery requests and responses in an appendix. *See Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, No. 05-cv-1059, 2007 WL 1726558, at *5 n.3 (D. Nev. June 11, 2007) ("Given the number of requests at issue and the page limitation on motions . . . it was more practical in this case to summarize the disputed discovery requests in the motion so long as copies of the discovery requests and responses were attached to the motion . . . ."); *cf. Magdaluyo v. MGM Grand Hotel, LLC*, No.

The instructions that Plaintiffs served with these requests state: "These Requests do not seek, and expressly exclude, Suspicious Activity Reports (SARs) and any Document or portion thereof that indicates that a SAR was or was not filed." RFP at 6 (Instruction 11).

**3.   Wells Fargo objects to the requests based the SAR privilege.**

In response to each of the above requests, Wells Fargo objected and asserted the SAR privilege, writing in relevant part:

> Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

*See* Stein Decl., Ex. 2, Defendant's Responses to Plaintiffs' First Set of Requests for Production ("RFP Responses") (the response to Request No. 19 differs slightly from the others, omitting the phrase "and declines to respond," but it still states that "Wells Fargo does not agree to search for or produce documents"). The full text of Wells Fargo's responses is appended to this motion pursuant to District of Nevada LR 26-6(b).

**4.   The parties engage in meet-and-confer efforts, but ultimately reach an impasse.**

After receiving Wells Fargo's responses, Plaintiffs requested to meet and confer pursuant to District of Nevada LR IA 1-3(f). Stein Decl., ¶ 3. Plaintiffs sent Wells Fargo a letter before the call, highlighting anticipated areas of discussion, including the SAR privilege. *Id.*, Ex. 3 ("November 28 Letter"). The parties then held three telephonic conferences on November 29, 2022, November 30, 2022, and December 1, 2022. *Id.* at ¶ 6.

During the conferences, both sides recognized that their divergent views as to the scope of the SAR privilege would require prompt adjudication. *Id.* at ¶ 7. Following the telephonic conferences, the parties exchanged letters memorializing their positions, which confirmed they had reached an impasse as to the issue of SAR privilege. *See id.*, Exs. 4-6.

_____

14-cv-1806, 2016 WL 2731672, at *1 n.3 (D. Nev. May 9, 2016) (finding that discovery request would not be considered when it was not referenced in the Motion or attached as an exhibit).

**LEGAL STANDARD**

If a party fails to provide requested discovery, the requesting party may move to compel. Fed. R. Civ. P. 37(a)(3)(iv). "The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019). To meet this burden, the objecting party must explain "how each of its objections is applicable, by providing the relevant standard for each objection and a meaningfully developed argument as to how the standard has been met." *Hinostroza v. Denny's Inc.*, No. 17-cv-02561, 2018 WL 3212014, at *1 (D. Nev. June 29, 2018) (citations omitted). The court is vested with broad discretion to overrule objections and order discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

**LAW AND ARGUMENT**

The privilege protecting a bank's filing of a suspicious activity report is narrow. The privilege covers the SAR itself and, beyond that, just those documents that reveal with "effective certainty" that the bank filed (or did not) file a SAR. Although Plaintiffs did not request documents within the SAR privilege, Wells Fargo has asserted privilege to place a broad range of documents off limits to discovery. By asserting privilege this broadly, Wells Fargo has rationalized withholding just about every document that would tend to show what it knew about the J&J scheme.

1. **The SAR privilege is narrow, extending only to SARs themselves and documents that reveal with "effective certainty" whether a SAR was filed.**

Banks routinely monitor customers' accounts for signs of unusual and suspicious activity. They do this because "detecting fraud is a part of a bank's ordinary course of business." *Zeitlin v. Bank of Am., N.A.*, No. 2:18-cv-01919, 2021 WL 2595102, at *3 (D. Nev. June 24, 2021) (quoting *First Am. Title Ins. Co. v. Westbury Bank*, No. 12-cv-1210, 2014 WL 4267450, at *3 (E.D. Wis. Aug. 29, 2014)).

In addition to the bank's ordinary anti-fraud efforts, under the BSA, banks also must report transactions that suggest a "possible violation of law or regulation." 31 U.S.C. § 5318(g)(1). Banks comply with the BSA by filing a suspicious activity report. Under federal

6

law, the SAR itself is privileged, as are documents that reveal a SAR's existence or non-existence. 31 C.F.R. § 1020.320(e)(1)(i); 12 C.F.R. § 21.11(k)(1)(i).

Accordingly, the scope of privileged documents—beyond the SAR itself—is narrow. To qualify for privilege, the document must reveal with "effective certainty" whether a SAR was filed. *Jasso v. Wells Fargo Bank, N.A.*, No. 2:20-cv-00858, 2021 WL 3549891, at *3 (D. Nev. Aug. 11, 2021); *accord Zeitlin*, 2021 WL 2595102, at *3; *First Am. Title Ins. Co.*, 2014 WL 4267450, at *3 ("any explicit statement as to whether or not a SAR was or was not filed is privileged").

This means that even though a SAR is privileged, "[t]he underlying facts, transactions, and documents upon which a SAR is based" are not. 12 C.F.R. § 21.11(k)(1)(ii)(A)(2). The First Circuit, in the sole federal appellate decision to discuss the privilege, excluded from protection any documents that "identify suspicious activity but [which] do not reveal whether a SAR exists." *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 40-41 (1st Cir. 2015) (quoting Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75593, 75595 (Dec. 3, 2010)). The court went on to provide examples of the limited type of documents that fall within the privilege:

- a draft SAR
- documents reflecting the decision-making process as to whether a SAR should be filed
- documents reflecting the process of preparing a SAR,[3] and
- documents attempting to explain the content of a SAR post-filing.

*Id.* at 44; *see also id.* ("the court declines Chase's invitation to view the 'privilege' as extending to any document that might speak to the investigative methods of financial institutions").

In recent decisions, Judge Weksler has cited the First Circuit's opinion favorably. *See, e.g.*, *Jasso v. Wells Fargo Bank, N.A.*, No. 2:20-cv-0858, 2022 WL 18141573 (D. Nev. Nov. 29,

---

[3] This third bullet point has in mind documents that reflect the preparation of a particular SAR—not merely generic policies and procedures that pertain to AML or SAR-preparation. *See, e.g.*, *Jasso v. Wells Fargo Bank, N.A.*, No. 2:20-cv-0858, 2021 WL 6118709, at *3 (D. Nev. Dec. 27, 2021) (holding that the "Unusual Activity Referral and Suspicious Activity Report Policy" was not privileged since it did not "suggest, directly or indirectly, that a SAR was or was not filed.").

2022) (referencing the above list); *Zeitlin*, 2021 WL 2595102, at *2. In those cases, Judge Weksler held that the SAR privilege does not apply to "documents [that] may give rise to suspicious conduct [but which] do not include any specific discussion of a SAR or non-SAR filing." *Jasso*, 2022 WL 18141573, at *3; *see also Erhart v. Bofl Holding, Inc.*, No. 15-cv-2353, 2018 WL 5994417, at *6 (S.D. Cal. Nov. 15, 2018) ("supporting documents" not privileged if they "would not necessarily divulge information regarding whether an actual SAR was eventually filed").

**2.  Wells Fargo has asserted privilege far more broadly than the law supports.**

Plaintiffs drafted their document requests against the backdrop of the BSA case law. Plaintiffs did not request SARs, draft SARs, or other documents discussing whether SARs had been filed. November 28 Letter at 5; RFP at 6 (Instruction 11). Wells Fargo nevertheless asserts privilege in response to seven of Plaintiffs' requests, spanning a range of relevant documents.

Below, Plaintiffs discuss the applicable requests and explain why Wells Fargo's broad assertion of privilege lacks support under the law.

<u>Request No. 13 – Policies and Procedures</u>

Plaintiffs' thirteenth request seeks Wells Fargo's "policies and procedures" bearing on the bank's efforts to detect unusual and suspicious account activity. RFP at 8-9. This includes policies pertaining to the detection of "red flags," the termination of accounts, and the prevention of fraud and money laundering. *Id.*

Wells Fargo objected to the request, asserting SAR privilege, and claiming it cannot produce policies that would reveal "why or when [the bank] would consider certain suspicious activity as requiring a SAR." Stein Decl., Ex. 5 ("December 16 Letter") at 13. To date, Wells Fargo has not produced a single policy or procedure. *Id.* at ¶ 8.

Wells Fargo's objection should be overruled. Nothing in Wells Fargo's policy and procedure documents will reveal with "effective certainty" whether the bank filed a SAR in any particular instance. As discussed above, courts have "decline[d the] invitation to view the [SAR] 'privilege' as extending to any document that might speak to the investigative methods of financial institutions." *In re JPMorgan Chase Bank*, 799 F.3d at 44.

Instead, when it comes "to policies and procedures," "courts have routinely found [them] to be not protected by the SAR privilege." *Markley v. U.S. Bank Nat'l Ass'n*, No. 19-cv-01130, 2020 WL 12602882, at *6 (D. Colo. Dec. 29, 2020); *see also Ackner v. PNC Bank, Nat'l Ass'n*, No. 16-cv-81648, 2017 WL 1383950, at *2 (S.D. Fla. Apr. 12, 2017) ("Plaintiffs' argument that the policies and procedures regarding Defendant's fraud detection processes are not protected by the SAR privilege is correct.") (collecting cases).

In *Jasso*, for example, Judge Weksler overruled Wells Fargo's assertion of SAR privilege as to its "Unusual Activity Referral and Suspicious Activity Report Policy," holding that the policy does not "suggest, directly or indirectly, that a SAR was or was not filed." *Jasso v. Wells Fargo Bank, N.A.*, No. 2:20-cv-0858, 2021 WL 6118709, at *3 (D. Nev. Dec. 27, 2021) (quotation omitted).

<u>Request Nos. 16-17 – Automated "Red Flag" Alerts</u>

Plaintiffs' sixteenth and seventeenth requests seek the production of automated alerts and other documents generated by, or accessible from, the automated systems that Wells Fargo uses to monitor account activity. RFP at 9. One such system, discussed in the complaint, is called "Actimize." *See* Dkt. 37, ¶¶ 116-17; Stein Decl., ¶¶ 10-11.

Wells Fargo objected to these requests, asserting SAR privilege, and claiming that "its alert tracking systems are also subject to the SAR privilege." December 16 Letter at 9. This objection too lacks merit—except to the limited and specific extent that a given document (i) is a SAR itself, or (ii) states that a SAR was or was not filed.

In *Jasso*, again, Judge Weksler rejected Wells Fargo's argument that all alerts triggered by these systems qualify for SAR privilege, reasoning that it was unclear *"*how these alerts 'would' reveal with effective certainty, either directly or indirectly, that Wells Fargo did or did not file a SAR." 2021 WL 3549891, at *4. In a subsequent ruling in the same case, Judge Weksler held that to the extent the plaintiffs "seek to confirm if Wells Fargo employees received alerts regarding fraudulent activity on [the relevant] accounts (including any wire transfers), why such alerts would have been generated, and how [Wells Fargo employees] responded to such alerts, they are free to do so." *Jasso v. Wells Fargo Bank, N.A.*, No. 2:20-cv-0858, 2022 WL

9

1   4227332, at *6 (D. Nev. Sept. 13, 2022).

2          Judge Weksler's holdings were consistent with the general recognition that banks

3   monitor account activity in the ordinary course of their business. These monitoring efforts are

4   generally not privileged. *See, e.g.*, *Camenisch v. Umpqua Bank*, No. 20-cv-05905, 2021 WL

5   9880547, at *2 (N.D. Cal. Sept. 14, 2021) (SAR privilege inapplicable to documents that "reflect

6   initial reports of unusual activity"); *Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214,

7   1218 (M.D. Fla. Oct. 25, 2013) (no SAR privilege for "a report generated by the bank in the

8   ordinary course of business in monitoring unusual activity."); *In re JPMorgan Chase Bank*, 799

9   F.3d at 40 (SAR privilege does not extend to documents that "identify suspicious activity but

10  [which] do not reveal whether a SAR exists").

11         Request No. 19 – "Red Flag" Monitoring Systems

12         Relatedly, Plaintiffs' nineteenth request seeks documents identifying any other systems

13  and process that Wells Fargo uses to identify unusual and suspicious activity. RFP at 9. This

14  includes the name of the fraud-detection systems that Wells Fargo uses, which Wells Fargo has

15  declined to reveal. *See* December 16 Letter at 9.

16         As discussed above, the process by which Wells Fargo monitors unusual and suspicious

17  activity, automated or not, is not privileged. *See, e.g.*, *Camenisch*, 2021 WL 9880547, at *2

18  (SAR privilege inapplicable to documents that "reflect an information-gathering process"); *In re

19  JPMorgan Chase*, 799 F.3d at 44 (SAR privilege does not extend "to any document that might

20  speak to the investigative methods of financial institutions."). Nor are the names of alert systems

21  privileged. *See Jasso*, 2021 WL 3549891, at *5 ("The Court strains to see how the names of

22  fraud-detection alert systems would reveal with effective certainty whether Wells Fargo filed a

23  SAR.").

24         Request No. 14 – Documents Relating to Unusual and Suspicious Account Activity

25         Plaintiffs' fourteenth request seeks documents concerning suspected improper activity by

26  Beasley, Judd, or the other Ponzi scheme promoters. RFP at 9. As described in Plaintiffs'

27  complaint, Wells Fargo not only monitors for signs of unusual or suspicious activity, but once an

28  alert is sounded, the bank investigates. *See* Dkt. 37, ¶¶ 98-117.

Wells Fargo has objected to this request too, asserting privilege over any documents "relating to monitoring of and suspected or possible unlawful or improper account activity[.]" December 16 Letter at 13. Wells Fargo's objection should be overruled.

"[I]nvestigatory documents do not by themselves reveal the existence of a SAR" and are not privileged. *Wultz v. Bank of China Ltd.*, 56 F. Supp. 3d 598, 602 (S.D.N.Y. 2014). "[A]ny bank, including [defendant bank], has its own reasons for investigating suspicious activity other than the statutory obligation to file a SAR—including to protect itself from fraud and to make sure it does not violate or abet the violation of other banking regulations and statutes, such as money laundering statutes. Thus, investigatory documents do not by themselves reveal the existence of a SAR." *Id.* at 601-02.

Because it is "a standard business practice for banks to investigate suspicious activity as a necessary and appropriate measure to protect the bank's interests," the "internal bank reports or memorandum generated by the bank regarding such an investigation are not protected by SAR privilege." *In re JPMorgan Chase Bank*, 799 F.3d at 41 (quoting *In re Whitley*, No. 10-10426C-7G, 2011 WL 6202895, at *4 (Bankr. M.D.N.C. Dec. 13, 2011)); *see also Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 814 (N.D. Ill. 2002) ("[U]nderlying documents do not become confidential by reason of being attached or described in a SAR.").

Even where an investigation ultimately leads to a SAR, that does not make all of the investigatory documents privileged. "Although a bank may undertake 'an internal investigation in anticipation of filing a SAR, it is also a standard business practice for banks to investigate suspicious activity.'" *First Am. Title Ins. Co.*, 2014 WL 4267450, at *3 (quoting *Freedman & Gersten, LLP v. Bank of Am., N.A.*, No. 09-5351, 2010 WL 5139874, at *3 (D.N.J. Dec. 8, 2010)); *accord Wultz*, 56 F. Supp. 3d at 601-02. Thus, investigatory documents generated because of unusual or suspicious account activity investigations are discoverable, "even if this fraud investigation parallels the process of preparing a SAR." *First Am. Title Ins. Co.*, 2014 WL 4267450, at *3; *accord Wiand*, 981 F. Supp. 2d at 1218 (no SAR privilege for "a report generated by the bank in the ordinary course of business in monitoring unusual activity."); *Jasso*, 2022 WL 18141573, at *3 (no SAR privilege for "documents [that] may give rise to suspicious

conduct, [but] do not include any specific discussion of a SAR or non-SAR filing.").

Consequently, Wells Fargo should produce the "memoranda or documents drafted in response to the suspicious activity at issue in this case." *Freedman & Gersten, LLP*, 2010 WL 5139874, at *3. To the extent a portion of the investigative documents reference SARs, those references can be redacted. *See Wiand*, 981 F. Supp. 2d at 1218 n.5 (ordering bank to produce internal documents, reports, and transaction documents with specific pages redacted based on SAR privilege).

Request Nos. 1 and 15: Risk-Assessment Documents

Finally, Plaintiffs' first request asks for various "Account opening Documents," including Wells Fargo's account-opening risk assessment documents, and Plaintiffs' fifteenth request asks for any later risk-assessment documents. RFP at 6-7. Wells Fargo asserts privilege in response to both requests. RFP Responses at 9-10, 30-31. But the requested documents are not covered by the SAR privilege.

Documents regarding Wells Fargo's risk assessments will not universally "reveal with effective certainty, either directly or indirectly, that Wells Fargo did or did not file a SAR." *Jasso*, 2021 WL 3549891, at *3-4. This is especially true for documents created at the time of account opening. But if, for example, a document states that Wells Fargo's risk assessment later changed due to the filing of a SAR, the whole document would not need to be withheld, and the reference to the issuance of a SAR can be redacted. *See Wiand*, 981 F. Supp. 2d at 1218 n.5. As detailed above, factual documents that do not reveal whether a SAR was filed are not privileged. *See, e.g.*, *Jasso*, 2022 WL 18141573, at *3 (directing bank to prepare a witness to answer questions about "account opening documents," including how the bank defined a "high-risk business").

**CONCLUSION**

Wells Fargo has asserted the SAR privilege far more expansively than the law supports, effectively applying it as a blanket protection covering all of Wells Fargo's investigative activity. Plaintiffs ask that the Court overrule Wells Fargo's assertion of privilege and direct it to produce the requested documents, except to the limited extent that the documents, or a portion thereof (in

12

1   which case the portion may be redacted), reveal that a SAR was or was not filed.

2

3       January 17, 2023                        Respectfully submitted,

4                                               By: */s/ Miles N. Clark*_____

5                                               Miles N. Clark (NBN 13848)
6                                               **LAW OFFICES OF MILES N. CLARK, LLC**
                                                5510 S. Fort Apache Rd., Suite 30
7                                               Las Vegas, NV 89148-7700
                                                (702) 856-7430
8                                               miles@milesclarklaw.com

9                                               *Liaison Counsel*

10

11                                              Daniel C. Girard (pro hac vice)
                                                Jordan Elias (pro hac vice)
12                                              Makenna Cox (pro hac vice)
                                                **GIRARD SHARP LLP**
13                                              601 California Street, Suite 1400
                                                San Francisco, California 94108
14                                              Telephone: (415) 981-4800
                                                Facsimile: (415) 981-4846
15                                              dgirard@girardsharp.com
                                                apolk@girardsharp.com
16                                              jelias@girardsharp.com
                                                mcox@girardsharp.com
17

18                                              Eric Gibbs (pro hac vice)
                                                David K. Stein (pro hac vice)
19                                              Emily Beale (pro hac vice)
                                                **GIBBS LAW GROUP LLP**
20                                              1111 Broadway, Suite 2100
                                                Oakland, CA 94607
21                                              Telephone: (510) 350-9700
                                                Facsimile: (510) 350-9701
22                                              ds@classlawgroup.com
                                                eg@classlawgroup.com
23                                              eb@classlawgroup.com

24

25                                              Jeffrey C. Schneider (pro hac vice)
                                                Jason K. Kellogg (pro hac vice)
26                                              Marcelo Diaz-Cortes (pro hac vice)
27                                              **LEVINE KELLOGG LEHMAN SCHNEIDER**
                                                **+ GROSSMAN LLP**
28                                              100 SE 2nd Street

Miami Tower, 36th Floor
Miami, FL 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789
jcs@lklsg.com
jk@lklsg.com
md@lklsg.com

Robert L. Brace (pro hac vice)
**LAW OFFICES OF ROBERT L. BRACE**
1807 Santa Barbara St.
Santa Barbara, CA 93101
Telephone: (805) 886-8458
rlbrace@rusty.lawyer

*Interim Co-Lead Counsel*

**APPENDIX**

REQUEST FOR PRODUCTION NO. 1:

Account opening Documents concerning the Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, including: i. Signature cards; ii. Deposit account agreements; iii. Wire transfer authorization agreements; iv. Funds transfer request authorizations; v. Post-account opening reviews; vi. Know Your Customer Documents (including those relating to client profiles and risk ratings); vii. Documentation on which transactions to expect; and viii. Customer Identification Program (CIP) Documents.

RESPONSE TO REQUESTS FOR PRODUCTION NO. 1:

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "Know Your Customer" and "Customer Identification Program (CIP)" are not defined and subject to various interpretations as to their meaning.

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, which Wells Fargo objects to for the reasons stated in its objections to the definitions. Wells Fargo further objects to this Request as vague and ambiguous because the term "Judd Accounts" is not defined.  In responding to this Request, "Judd Accounts" means those accounts in the name of Jeffrey Judd. This Request is also vague insofar as it seeks "Documentation on which transactions to expect," which does not specify the categories of information sought with sufficient particularity to allow Wells Fargo to search for or produce information in response to this portion of the Request.

Wells Fargo further objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive in scope by targeting dozens of accounts, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties, particularly at this

15

stage of the litigation before the Court has ruled on Wells Fargo's pending motion to dismiss Plaintiffs' complaint.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo agrees to produce (1) signature cards, (2) deposit account agreements, (3) monthly statements, (4) deposit slips, (5) withdrawal slips (6) records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits), and (7) records for and copies of checks in Response to Requests Nos. 1 and 2 for the accounts identified in Wells Fargo's June 16, 2022 Certified Statement in SEC v. Matthew Beasley et. al., No 2:22-cv-00612. Wells Fargo began a rolling production on October 7, and will continue rolling productions until the close of the discovery period.

REQUEST FOR PRODUCTION NO. 13:

Compliance-related policies and procedures (including employee training materials) concerning Wells Fargo demand deposit accounts, including but not limited to "Know Your Customer" policies and procedures; Financial Industry Regulatory Authority ("FINRA") "Know Your Customer" requirements; account maintenance and monitoring regulations, 31 C.F.R. §§ 1020.220(a)(1),(2); account due diligence; BSA requirements, 12 C.F.R. § 21.21; Federal Financial Institutions Council (FFIEC) Bank Secrecy Anti Money Laundering Manual

compliance; policies and procedures concerning transactional "red flags;" policies and

procedures concerning the termination of account relationships; customer exit policies; and

policies and procedures concerning wire transfers, electronic fund transfers, and check deposits

and withdrawals; policies and procedures concerning risk evaluations and referrals.

RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Wells Fargo objects to this Request on the basis that the terms "Know Your Customer,"

"due diligence," "red flags," and "risk evaluations and referrals" are vague, ambiguous, and

undefined.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope,

calls for production of information not relevant to the claims or defenses, and will impose an

undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no

attempt to limit the time and scope of this Request. On subject matter, the Request seeks all

policies and procedures that relate to approximately thirteen different topics, any one of which

could encompass voluminous results. On time, there is no time specification or limitation

identifying the relevant time period Plaintiffs seek this information for. Since there is no time

limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells

Fargo's initial formation. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL,

2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as

overbroad because it did not include any time limitation.).

On scope, the inclusion of "employee training materials" is overbroad, particularly as the

Request seeks documents regarding a variety of different categories (i.e., deposit accounts,

account maintenance, account monitoring, account due diligence, account terminations, "red

flags," risk evaluations, etc.), and does not specify which Wells Fargo employees it is

referencing. A majority of the training materials regarding these topics will have no relevance to

the claims and defenses at issue in this case. Similarly, the inclusion of policies and procedures

concerning the termination of account relationships and customer exit policies is overbroad and

irrelevant. These policies have no relevance to the claims or defenses at issue in this case. There

1  are no allegations of, or claims related to, termination of customer accounts by Wells Fargo;

2  thus, this Request calls for the production of information that imposes a burden on Wells Fargo

3  that outweighs any benefit to the parties.

4      Further, Plaintiffs fail to identify the specific aspects of "Know Your Customer"

5  obligations they request Wells Fargo produce that are directly relevant to the allegations in

6  support of their aiding and abetting (among other) claims. For instance, Plaintiffs cite to 31

7  C.F.R. § 1022.220(a)(2), which identifies the information that a "bank must obtain, at minimum,

8  . . . from the customer" including name, date of birth for individuals, address, and identification

9  number. Yet, Plaintiffs' complaint does not allege any facts asserting that Wells Fargo failed to

10  obtain this information, or that the information it allegedly did obtain on these specific data

11  points were indicative of fraud. Without any allegations implicating these "Know Your

12  Customer" obligations or identifying the specific facets of Wells Fargo's anti-money laundering

13  compliance program that it allegedly failed to comply with, and without limiting the scope of the

14  Request to any particular accounts, the requested information is not relevant to Plaintiffs' claims

15  in this case and will impose an undue burden on Wells Fargo that outweighs any benefit to the

16  Parties. *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-CV-00342-JCM, 2014 WL 496936, at *3 (D.

17  Nev. Feb. 6, 2014) ("[T]he scope of discovery is not without limits… courts must regulate the

18  breadth of sweeping or contentious discovery."); *Randolph v. Gittere*, No.

19  308CV00650LRHCLB, 2020 WL 2572532, at *2 (D. Nev. May 20, 2020) ("[C]ourts do not

20  allow a petitioner to "use federal  discovery for fishing expeditions to investigate mere

21  speculation." (quoting *Calderon v. United States Dist. Ct. (Nicolaus)*, 98 F.3d 1102, 1106 (9th

22  Cir. 1996)).

23      Wells Fargo also objects and declines to respond to this Request to the extent it seeks

24  disclosure of information relating to statutory and regulatory requirements for detecting and

25  reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to

26  12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory

27  guidance.

28

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Indeed, Wells Fargo's internal procedures are proprietary and highly confidential, and given their sensitivity it would be disproportionately harmful on Wells Fargo to produce policies that are not narrowly tailored and are otherwise irrelevant to the matters at issue in this litigation.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as some of these policies and procedures may reflect the legal advice of Wells Fargo's attorneys regarding the method and procedures used to respond to particular situations covered by those policies.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

REQUEST FOR PRODUCTION NO. 14:

Documents and Communications concerning suspected or possible unlawful or improper account activity concerning Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Conspirators, or the J&J Conspirator Accounts.

RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "suspected or possible unlawful or improper account activity" is not defined and subject to various interpretations as to its meaning. *Sinanyan v. Luxury Suites*

19

*Int'l, LLC*, No. 2:15CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive because it seeks Documents and Communications about more than 40 individuals or businesses, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See e.g.*, *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it did not include a time limitation); *Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (same). On scope, the Request is not narrowly tailored or limited because it seeks all documents and communications regarding any possible "unlawful or improper account activity" related to dozens of accounts, which will encompass documents that do not have any relevance to Plaintiffs' claims in the complaint. *Guerrero v. Wharton*, No. 216CV01667GMNNJK, 2017 WL 7314240, at *5 (D. Nev. Mar. 30, 2017) ("As a rule, requests for 'any and all' documents or communications are facially overbroad.") (citing *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020)).

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo legal counsel may have been involved in responding to any allegations of improper activity in the referenced accounts.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

REQUEST FOR PRODUCTION NO. 15:

Documents and Communications concerning any risk assessment of Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the term "risk assessment" is not defined and subject to various interpretations as to its meaning. *See e.g.*, *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons

21

1   stated in its objections to the definitions.

2        Wells Fargo objects to this Request on the basis that it is overbroad in time and scope,

3   calls for production of information not relevant to the claims or defenses, and will impose an

4   undue burden on Wells Fargo that outweighs any benefit to the parties. For example, on scope,

5   Plaintiffs' Request is not narrowly tailored or limited because it seeks all "Documents and

6   Communications concerning any risk assessment . . ." and includes documents which may not

7   have any relation to the claims at issue or the allegations in Plaintiffs' complaint. It is overly

8   expansive in scope by targeting dozens of entities, without any temporal limitation, and imposes

9   a burden on Wells Fargo that outweighs any benefit to the parties. On time, Plaintiffs have made

10  no attempt to limit the time and scope of this Request. There is no time specification or limitation

11  identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v.*

12  *Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at \*7 (D. Nev. Jan. 27,

13  2016) (objection to discovery request sustained as overbroad because it did not include any time

14  limitation.); *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (same).

15       Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of

16  information relating to statutory and regulatory requirements for detecting and reporting

17  potentially suspicious transaction activity as described in 31 U.S.C. section 5318, pursuant to 12

18  C.F.R. section 21.11, 31 C.F.R. section 103.18, 31 U.S.C. section 5318(g)(2)(A)(i) and

19  applicable regulatory guidance.

20       Wells Fargo objects on the basis that this Request seeks production of confidential,

21  business proprietary, or other non-public protected information of third parties and, thus, creates

22  confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act,

23  15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder.

24       Wells Fargo objects to this Request to the extent it requests information,

25  communications, or material that is protected by the work-product doctrine or attorney-client

26  privilege, as this Request could encompass communications with Wells Fargo's legal counsel

27  seeking or providing advice with respect to these accounts.

28

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

REQUEST FOR PRODUCTION NO. 16:

Alerts, reports, and other Documents generated by or accessible from the "Actimize" banking activity monitoring system concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," and "investigation files" are not defined and subject to various interpretations as to their meaning. *See, e.g.*, *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022)

1  (objection to discovery request sustained as overbroad because it sought "any and all" documents

2  without a time limitation).

3        On scope, this Request is overly expansive by seeking all alerts and reports generated by

4  "Actimize" regarding more than 40 individuals or businesses and imposes a burden on Wells

5  Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No.

6  314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the

7  trial judge with broad discretion to tailor discovery narrowly.") (citing *Crawford–El v. Britton*,

8  523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*,

9  163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's

10  documents because it was considered "a fishing expedition, "not reasonably calculated to lead to

11  the discovery of admissible evidence.").  The Request is also overbroad and overly expansive in

12  that it seeks information concerning "any related investigation files."

13        Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of

14  information relating to statutory and regulatory requirements for detecting and reporting

15  potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R.

16  §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

17        Wells Fargo objects on the basis that this Request seeks production of confidential,

18  business proprietary, or other non-public protected information of third parties and, thus, creates

19  confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act,

20  15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

21        Wells Fargo objects to this Request to the extent it requests information,

22  communications, or material that is protected by the work-product doctrine or attorney-client

23  privilege, as Wells Fargo's legal counsel may have been involved in any investigation into or

24  about the accounts alleged to be at issue in this litigation.

25        Wells Fargo invites Plaintiffs to meet and confer about the underlying information they

26  seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and

27  claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells

28

1    Fargo anticipates it will be able to provide a supplemental response and produce documents

2    responsive to this Request within thirty (30) days of the parties reaching an agreement on the

3    parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to

4    search for or produce documents in response to this Request on the basis of these objections.

5    REQUEST FOR PRODUCTION NO. 17:

6            Alerts, reports, and other Documents generated by or accessible from any banking

7    activity monitoring system other than Actimize (including without limitation Fiserv FraudLink

8    and Radar World Check) concerning the Beasley Accounts, the J&J Accounts, or the J&J

9    Conspirator Accounts, and any related investigation files, Documents, and Communications.

10   RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

11           Wells Fargo objects to this Request on the ground that the Request is vague and

12   ambiguous, in that the terms "alerts," "reports," "banking activity monitoring system" and "any

13   related investigation files" are not defined and subject to various interpretations as to its

14   meaning. *See e.g.*, *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL

15   1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of

16   accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad

17   definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents"

18   and "Communications," which Wells Fargo objects to for the reasons stated in its objections to

19   the definitions.

20           Wells Fargo objects to this Request on the basis that it is overbroad in time and scope,

21   calls for production of information not relevant to the claims or defenses in this litigation, and

22   will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs

23   have made no attempt to limit the time and scope of this Request. On time, there is no time

24   specification or limitation identifying the relevant time period for which Plaintiffs seek this

25   information. Since there is no time limitation, it unreasonably asks Wells Fargo to search for

26   documents dating back to Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D.

27   61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought

28

"any and all" documents without a time limitation).

On scope, this Request is overly expansive by seeking all "[a]lerts, reports, and other Documents generated by or accessible from any banking activity monitoring system. . ." for more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence.").

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318 (g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as it would necessarily include any documents by or communications with members of Wells Fargo's legal department.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the

26

1   parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to

2   search for or produce documents in response to this Request on the basis of these objections.

3       REQUEST FOR PRODUCTION NO. 19:

4       Documents not otherwise requested identifying the systems and processes used by Wells

5   Fargo in the ordinary course of business to identify potentially unlawful or improper banking

6   activity.

7       RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

8       Wells Fargo objects to this Request on the ground that the Request is vague and

9   ambiguous, in that the phrases "not otherwise requested identifying the systems and processes"

10  and "unlawful or improper banking activity" are not defined and subject to various

11  interpretations as to its meaning. Responsive documents are not being withheld on the basis of

12  this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016

13  WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing"

14  and "using" were vague and ambiguous because it was unclear what type of testing would be

15  responsive). Further, this Request includes Plaintiffs' overbroad definition of "Documents,"

16  which Wells Fargo objects to for the reasons stated in its objections to the definitions.

17      Wells Fargo objects to this Request on the basis that it is overbroad in time and scope,

18  calls for production of information not relevant to the claims or defenses, and will impose an

19  undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no

20  attempt to limit the time and scope of this Request. On time, there is no time specification or

21  limitation identifying the relevant time period Plaintiffs seek this information for. Since there is

22  no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to

23  Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022)

24  (objection to discovery request sustained as overbroad because it sought "any and all" documents

25  without a time limitation). Additionally, such information is highly confidential.

26      On scope, this Request is overly expansive by seeking all documents identifying

27  "systems and processes" Wells Fargo uses to identify any potentially unlawful activity and

28

1   imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, as drafted,

2   this Request seeking information regarding unlawful actives that have no relation to Plaintiffs'

3   allegations in this case (i.e. are unrelated to the Ponzi scheme). *Strohmeyer v. Belanger*, No.

4   314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the

5   trial judge with broad discretion to tailor discovery narrowly.") (citing *Crawford–El v. Britton*,

6   523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998).

7        Wells Fargo objects to this Request on the basis that it is improper "discovery on

8   discovery." There is no claim or defense in this action related to Wells Fargo's "systems and

9   processes used by Wells Fargo in the ordinary course of business to identify potentially unlawful

10   or improper banking activity," so this Request seeks information that is completely unrelated to

11   any claims or defenses.

12        Wells Fargo objects on the basis that this Request seeks production of confidential,

13   business proprietary, or other non-public protected information of third parties and, thus, creates

14   confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act,

15   15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

16        Wells Fargo objects to this Request to the extent it seeks disclosure of information

17   relating to statutory and regulatory requirements for detecting and reporting potentially

18   suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31

19   C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

20        Wells Fargo does not agree to search for or produce documents in response to this

21   Request on the basis of its objections.

22

23

24

25

26

27

28