UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

In re J&J Investment Litigation ) Case No.: 2:22-cv-00529-GMN-NJK
)
) **ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 39), filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Plaintiffs Barrett Henzel, *et. al.*, ("Plaintiffs") filed a Response, (ECF No. 45), to which Wells Fargo filed a Reply, (ECF No. 52). For the reasons discussed below, Wells Fargo's Motion to Dismiss is **GRANTED in part and DENIED in part**.

**I.        BACKGROUND**

This case arises from the fallout of a Ponzi scheme that ended with an armed standoff between a lawyer and the FBI. (*See* Am. Compl. ¶ 35, ECF No. 37). In 2017, non-parties Matthew Beasley and Jeffrey Judd, along with several promoters working at their direction, began offering would-be investors the opportunity to buy "lawsuit settlement contracts." (*Id.* ¶ 29). Beasley and Judd claimed to offer an investment opportunity when personal-injury litigants reached a settlement with an insurance company and needed the settlement funds immediately, before the settlement payment was due. (*Id.* ¶ 30). Injured parties would purportedly sell their interest in settlement proceeds to various "J&J Entities" owned by Judd. (*Id.*). The J&J Entity would then advance funds to the injured parties with investors' money, and ninety days later, the injured parties would repay the advanced funds, plus interest and fees. (*Id.*). Beasley and Judd promised investors attractive rates of return with little to no risk. (*Id.* ¶ 1). Because Beasley was an attorney, investors were further assured that their investments would be deposited into a Wells Fargo Interest on Lawyers' Trust Account ("IOLTA") for added security. (*Id.*). The problem, however, was that no injured parties seeking the

advancement of funds existed, and the investment opportunity had been nothing more than a Ponzi scheme. (*Id.* ¶ 2).

Plaintiffs in this case are members of a class of natural and legal persons who invested in a J&J Entity lawsuit settlement contract between January 2017 and March 2022. (*Id.* ¶ 190). The Defendant is Wells Fargo, N.A., the bank which administered Beasley's IOLTA. (*Id.* ¶ 1). Plaintiffs allege that Beasley and Judd could not have carried out their scheme without Wells Fargo's assistance. (*Id.* ¶ 3). Specifically, Plaintiffs contend that Wells Fargo tracked the account activity of the IOLTA and saw that Beasley was mis-using the IOLTA to operate an investment enterprise but failed to terminate the account or stop further fraudulent account activity. (*Id.*).

Plaintiffs allege that the account activity on Beasley's IOLTA did not reflect the normal practices associated with an IOLTA.[1] (*See id.* ¶¶ 154–83). For example, the account activity did not contain notations matching transactions to clients, and deposits were made to Beasley only. (*Id.* ¶ 4). Additionally, Wells Fargo consistently processed outgoing transactions that bore no resemblance to a small firm's practice. (*Id.*). Moreover, Wells Fargo allowed Beasley to withdraw over a million dollars in cash, even though cash withdrawals from IOLTAs are generally inadvisable. (*Id.*).

Upon opening the account, Beasley told Wells Fargo that he was a solo practitioner generating $350,000.00 in annual sales, but the account activity reflected deposits far exceeding what one would reasonably expect a small law firm to procure. (*Id.* ¶ 5). And the deposits, which often came from entities with "Investment" or "Financial" in their title or included transfer-notations indicating that the money was being sent for investment purposes, did not

---

[1] An IOLTA is a specialized account for use by lawyers that typically holds multiple clients' funds and requires a clear audit trail. (Am. Compl. ¶ 4). Generally, deposits and incoming transfers into an IOLTA are made out to both law firm and client as co-payees, and outgoing transfers are made out to a client, lienholder, or the attorney's operating account to the extent the attorney has already earned a fee. (*Id.*).

match the description of Beasley's firm as a personal-injury and family-law practice on his IOLTA application. (*Id.* ¶ 6).

In addition to these facts suggesting potential misuse of an IOLTA, Plaintiffs also allege facts that align with indicators of money laundering and fraud.[2] (*Id.* ¶ 7). For example, the account activity on the IOLTA reflected large, round-number deposits followed by similarly large, round-number transfers out of the IOLTA in amounts incompatible with legitimate business activity. (*Id.* ¶¶ 146–50). The account activity was also inconsistent with the operation of a legitimate investment fund in settlement contracts; no payments were made to insurance companies, law firms, or third-party personal-injury plaintiffs. (*Id.* ¶¶ 184–86). Furthermore, the IOLTA's activity did not match Beasley's law firm's location or reach. (*Id.* ¶ 8). Beasley told Wells Fargo that his firm had a "local" practice in Nevada, but Wells Fargo accepted deposits into the IOLTA in at least forty-three different Wells Fargo branches across the country, as well as incoming wire transfers to the IOLTA from investors in Australia, Taiwan, and Singapore. (*Id.*).

Plaintiffs further allege that this "suspicious activity" did not go unnoticed by Wells Fargo. (*Id.* ¶ 9). The Amended Complaint details Wells Fargo's sophisticated electronic monitoring system, dedicated personnel, and various programs employed to ensure compliance with federal and state law and detect suspicious banking activity. (*Id.* ¶¶ 92–131). As a result of these protocols, Wells Fargo employees working in at least one Nevada branch flagged concerns regarding the account activity in the IOLTA. (*Id.* ¶ 9). Despite these concerns, Wells Fargo continued to provide Beasley with the requested services on his account. (*Id.*).

Following the scheme's collapse, the Securities and Exchange Commission sued Beasley, his law firm, Judd, the J&J Entities, and others for violations of federal law in

---

[2] Plaintiffs rely on publications from the Federal Financial Institutions Examination Council ("FFIEC") to identify these "red flags." (*See* Am. Compl. ¶ 96).

connection with the scheme. (*See* Compl., ECF No. 1 in Case No.: 2:22-cv-00612-CDS-EJY). Plaintiffs then brought the instant suit against Wells Fargo for the following four causes of action: (1) Violations of the Uniform Fiduciaries Act ("UFA"), NRS §§ 162.010 *et seq.*; (2) Aiding and Abetting Breach of Fiduciary Duty; (3) Aiding and Abetting Fraud; and (4) Negligence. (Am. Compl. ¶¶ 200–30). Wells Fargo now seeks dismissal of all four claims. (*See generally* Mot. Dismiss, ECF No. 39).

## II.     LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v.*

*Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

In the instant Motion, Wells Fargo first argues that certain Plaintiffs lack standing because their businesses suffered the alleged injury, not the Plaintiffs themselves. (Mot. Dismiss 6:18–8:7).  Additionally, Wells Fargo asserts that each of the four counts in the Amended Complaint fail to state a claim upon which relief can be granted. (*Id.* 1:24–2:21). The Court will evaluate each argument in turn.

#### A. Standing

"The irreducible constitutional minimum of standing" is comprised of three elements: (1) The plaintiff must have suffered an "injury-in-fact," which is a "concrete and particularized" invasion of a legally protected interest; (2) there must be a "causal connection" between the plaintiff's injury and the defendant's action; and (3) it must be "likely" that the plaintiff's injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560–61 (1992) (citation omitted).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

"In addition to these Article III elements, certain prudential requirements for standing must also be met with regard to each respective claim asserted in a complaint." *Carton v. B & B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1242 (D. Nev. 2011).  In evaluating prudential standing, the court considers "whether the alleged injury is more than a 'mere generalized grievance,' whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim 'falls within the zone of interests to be protected or regulated by the constitutional guarantee in question.'" *Id.* (quoting *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 848–49 (9th Cir.2007)) (cleaned up).

Wells Fargo contends that "the Plaintiffs who chose to invest through their LLC and not personally should be dismissed [because] they lack standing to pursue their claims." (Mot. Dismiss 6:19–20).  "In general, shareholders of a corporation or members of an LLC lack prudential standing to assert individual claims based on harm to the corporation or LLC in which they own shares." *Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols.*, No. 2:19-cv-02544-JAM-DB, 2021 WL 3077470, at *3 (E.D. Cal. July 21, 2021).  But "[w]here an LLC is being used simply as a vehicle through which investments are made" and the members invest their own money into a Ponzi scheme, "the investors have standing because there is a direct correlation between the investment and their membership interests." *Carton*, 827 F. at 1250; *see also Burnett v. Rowzee*, No. SA 07-cv-641-DOC-ANX, 2007 WL 2735682, at *9 (C.D. Cal. Aug. 28, 2007) (finding that plaintiffs had standing to assert claims to recover money lost in Ponzi scheme despite use of LLC to invest in scheme).

Here, the Amended Complaint alleges that certain individual Plaintiffs invested in the scheme through LLCs. (*See* Am. Compl. ¶¶ 37–91).  Contrary to Wells Fargo's assertions, (*see* Reply 14:18–21, ECF No. 52), Plaintiffs have alleged facts showing a direct correlation

between their investments and membership interests in their respective LLCs. In each case, the Amended Complaint alleges that the individual Plaintiffs invested their *own* money into the scheme. (*See, e.g.*, Am. Compl. ¶¶ 42, 48, 56, 65, 71, 79, 81, 87) (identifying invested money as "his funds," "his money," or "their money").

Additional facts alleged in the Amended Complaint suggest that the LLCs were simply used as vehicles for investing in the scheme. For example, Plaintiffs allege that Plaintiff Joshua Luekenga, who invested $160,000 into the scheme through JC Luekenga, LLC, opened the LLC for the specific purpose of investing in the scheme. (*Id.* ¶ 60). Furthermore, most of the entities in question were held solely by the individual Plaintiff or by a small number of individuals. (*See, e.g.*, *id.* ¶¶ 37, 53, 84). Lastly, the Amended Complaint meticulously describes how promoters of the scheme enticed individual Plaintiffs to invest, the methods by which individual Plaintiffs deposited their money, and the losses individual Plaintiffs incurred. (*See generally id.* ¶¶ 37–91). The Court finds that these Plaintiffs have standing regardless of the vehicle through which they invested their funds into the scheme. *See Burnett*, 2007 WL 2735682, at *9. Having found that all Plaintiffs have standing, the Court next evaluates the facial plausibility of Plaintiffs' claims.

### B. Aiding and Abetting Fraud

Plaintiffs sufficiently allege their claim for aiding and abetting fraud. Under Nevada law, to state a claim for aiding and abetting fraud, a plaintiff must allege the following three elements: "(1) the primary violator [committed fraud] that injured the plaintiff, (2) the alleged aider and abettor 'was aware of its role in promoting [the fraud] at the time it provided assistance,' and (3) the alleged aider and abetter [sic] 'knowingly and substantially assisted' the primary violator in committing the [fraud]." *Terrell v. Cent. Washington Asphalt, Inc.*, 168 F. Supp. 3d 1302, 1314 (D. Nev. 2016) (quoting *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev.

2001)). "The second and third elements should be weighed together, that is, greater evidence supporting the second element requires less evidence of the third element, and vice versa." *Id.* Wells Fargo challenges Plaintiffs' allegations concerning the second and third elements of this claim.

### 1. Actual Knowledge

Wells Fargo argues that Plaintiffs' aiding and abetting claim should be dismissed because they fail to adequately allege actual knowledge with particularity in accordance with Rule 9. (Mot. Dismiss 9:3–14:18). Rule 9 of the Federal Rules of Civil Procedure states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, *knowledge*, and other conditions of a person's mind *may be alleged generally*." Fed. R. Civ. P. 9(b) (emphasis added). Based on the plain language of Rule 9, the Court disagrees with Wells Fargo's assertion that Plaintiffs' aiding and abetting fraud claim should be dismissed for failure to allege actual knowledge with particularity. Other district courts in this Circuit agree. *See, e.g.*, *In re Woodbridge Invs. Litig.*, No. 18-cv-103-DMG (MRWX), 2020 WL 4529739, at *5 (C.D. Cal. Aug. 5, 2020) ("Rule 9 is clear that plaintiffs may plead knowledge generally."); *Camenisch v. Umpqua Bank*, No. 20-cv-05905-RS, 2021 WL 9181171, at *3 (N.D. Cal. Jan. 28, 2021) (same); *Chang v. Wells Fargo Bank, N.A.*, No. 19-cv-01973-HSG, 2020 WL 1694360, at *5 (N.D. Cal. Apr. 7, 2020) (same).[3]

///

---

[3] Wells Fargo cites several cases in support of its argument that Rule 9 applies to the knowledge prong of aiding and abetting fraud. (Mot. Dismiss 9:9–25). Having reviewed Wells Fargo's argument and its supporting citations, the Court notes that these cases simply reiterate the well-known proposition that conclusory statements and mere recitation of elements are insufficient to state a claim, *see Paskenta Band of Nomlaki Indians v. Umpqua Bank*, 846 F. App'x 589, 590 (9th Cir. 2021); *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, No. 3:18-cv-00181-LRH-WGC, 2019 WL 489095, at *3 (D. Nev. Feb. 7, 2019), or dismiss aiding and abetting fraud claims for failure to allege specific acts *performed by the defendants* that constitute aiding and abetting, *see Bagley v. Beville*, No. 2:13-cv-01119-JCM, 2014 WL 28999, at *3 (D. Nev. Jan. 2, 2014); *Wisdom v. United States*, No. 3:06-cv-00094-PMP, 2010 WL 3981712, at *7 (D. Nev. Oct. 8, 2010). None of these cases apply Rule 9 to the actual knowledge prong.

Here, Plaintiffs allege that Wells Fargo had actual knowledge of the scheme. Although Wells Fargo is correct that "the Ninth Circuit has held allegations of various irregularities are not sufficient to allege actual knowledge," (Mot. Dismiss 10:9–11) (citing *Paskenta Band of Nomlaki Indians v. Umpqua Bank*, 846 F. App'x 589, 590 (9th Cir. 2021)), Plaintiffs allege more than mere irregularities. The Amended Complaint states that "Wells Fargo knowingly allowed the IOLTA to be operated in a manner that bore no reasonable resemblance to how such trust accounts are appropriately used." (Am. Compl. ¶ 221). Further, the Amended Complaint specifies the extent to which Wells Fargo monitors accounts, the red flags associated with the IOLTA at issue, and that Wells Fargo employees contacted a corporate group within Wells Fargo to report the suspicious activity associated with the IOLTA. (*Id.* ¶¶ 98–126, 135, 137–186). The Court finds that Plaintiffs have plausibly alleged that Wells Fargo had actual knowledge of the scheme. *See Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged.") (emphasis added).

**2. Substantial Assistance**

Wells Fargo also argues that Plaintiffs' claim for aiding and abetting fraud should be dismissed because Plaintiffs fail to allege that Wells Fargo provided substantial assistance to Beasley and Judd in the operation of the scheme. (Mot. Dismiss 14:19–14). The substantial assistance prong of aiding and abetting is met if a defendant substantially assists *or* encourages the third-party tortfeasor. *Dow Chem. Co.*, 970 P.2d at 112 (citing Restatement Torts 2d § 876); *see also Halberstam v. Welch*, 705 F.2d 472, 482 (D.C. Cir. 1983) ("Vicarious liability can of course be based on acts of assistance as well as words of encouragement."). When substantial assistance is based on encouragement, "such encouragement must take the form of a direct communication, or conduct in close proximity, to the tortfeasor." *Id.* at 113.

///

Here, Plaintiffs allege that Wells Fargo "substantially assisted the continued operation of an attorney trust account to perpetuate the scheme and continued to execute all requested banking transactions involving the IOLTA" despite witnessing "systematic, continuous evidence of money laundering and fraudulent activity." (Am. Compl. ¶ 221).  Wells Fargo argues that ordinary banking transactions "are not sufficient to impose aiding and abetting liability on Wells Fargo [because] they do not constitute a 'direct communication, or conduct in close proximity, to the tortfeasor.'" (Mot. Dismiss 15:9–12) (quoting *Dow Chem. Co.*, 970 P.2d at 113).  But Plaintiffs' allegation of substantial assistance is based on acts of assistance, not encouragement. (*See* Am. Compl. ¶ 221).  Plaintiffs need not allege direct communication with or proximity to the tortfeasor to adequately allege the substantial assistance prong; "'[O]rdinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort." *In re First All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (quoting *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)).

As discussed above, Plaintiffs allege that Wells Fargo had actual knowledge of the fraudulent scheme. (Am. Compl. ¶ 221).  Plaintiffs further allege that Wells Fargo executed the requested banking transactions despite its knowledge that the transactions were assisting Beasley in committing fraud, thus perpetuating the scheme. (*Id.*).  Indeed, Wells Fargo allegedly continued to assist in the operation of the scheme even after Wells Fargo employees raised concerns about the IOLTA. (*Id.* ¶ 9).  The Court finds that Plaintiffs adequately alleged

///
///
///
///

the substantial assistance prong.[4]  Accordingly, the Court DENIES Wells Fargo's Motion as to the aiding and abetting fraud claim.

### C.   Aiding and Abetting Breach of Fiduciary Duty

The Court similarly finds that Plaintiffs sufficiently allege their claim for aiding and abetting breach of fiduciary duty.  Under Nevada law, to state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege the following four elements: (1) that a fiduciary relationship exists; (2) that the fiduciary breached the fiduciary relationship; (3) that the defendant knowingly participated in the breach; and (4) that the breach of the fiduciary relationship resulted in damages. *In re Amerco Derivative Litig.*, 252 P.3d 681, 701 (Nev. 2011).  Wells Fargo argues that Plaintiffs' aiding and abetting breach of fiduciary duty claim fails because no underlying fiduciary relationship exists and because Plaintiffs fail to allege knowledge and substantial assistance. (Mot. Dismiss 20:8–12).  The Court has already found that Plaintiffs sufficiently allege that Wells Fargo knew about the scheme and substantially assisted the scheme. (*See supra* III).  Accordingly, the Court will address only whether Beasley owed fiduciary duties to Plaintiffs.

"[A] fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another." *Lopez v. Javier Corral, D.C.*, 367 P.3d 745 (Nev. 2010) (citation omitted).  "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, since the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the

---

[4] Wells Fargo argues that if a bank's provision of banking services to a customer rose to the level of substantial assistance, "any tortfeasor engaged in a Ponzi scheme with a bank account at a financial institution would automatically satisfy the substantial assistance element of an aiding and abetting claim." (Mot. Dismiss 15:20–26) (citing *Su v. Henry Glob. Consulting Grp.*, No. 2:20-cv-02235-ODW-PLAX, 2022 WL 19392, at *3 (C.D. Cal. Jan. 3, 2022)).  But Wells Fargo's citation for this proposition belies its argument: As stated in *Su*, "Ordinary business transactions *can* satisfy the substantial assistance element *if performed with the specific knowledge that those transactions were assisting in the commission of a specific tort*." *Su v. Henry Glob. Consulting Grp.*, 2022 WL 19392, at *3 (emphasis added).

dependent party." *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986) (citation omitted). Nevada law recognizes a fiduciary relationship between an investment advisor and an investor, *see Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1120 (D. Nev. 2014), as well as between an attorney and his or her client, *Edwards v. 360 Commc'ns*, 189 F.R.D. 433, 434 (D. Nev. 1999). Lenders, however, do not have a fiduciary duty to borrowers, "unless the borrowers can plead facts in which a special relationship arose." *Potter v. BAC Home Loans Servicing, LP.*, No. 2:10-cv-02095-GMN, 2011 WL 2971204, at *7 (D. Nev. July 19, 2011).

Although Beasley was an attorney and held Plaintiffs' money in an IOLTA, a specialized account for lawyers to hold clients' money, Plaintiffs were not Beasley's clients. (*See* Resp. 18:27–19:1). But "[w]hen an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party." *Johnstone v. State Bar*, 410 P.2d 617, 618 (Cal. 1966).[5] Wells Fargo distinguishes the facts of this case from the facts of *Johnstone*, which involved attorney disciplinary proceedings concerning the professional rules of responsibility for misappropriating funds. (*See* Reply 9:4–8). The differing fact patterns notwithstanding, Plaintiffs allege that Beasley used his position as an attorney, and especially his access to an IOLTA with Wells Fargo, to hold himself out as worthy of trust. (*See, e.g.*, Am. Compl. ¶ 42) ("[Plaintiff] Henzel felt more secure sending his funds to an attorney trust account."). That is, even though Plaintiffs do not allege an attorney-client relationship, Plaintiffs allege that they placed trust in Beasley based on his position as a lawyer and the security that supposedly comes with having funds managed through an IOLTA. *Cf. Hoopes*, 725 P.2d at 242.

///

///

---

[5] Nevada courts look to California law where Nevada case law is silent. *InjuryLoans.com, LLC v. Buenrostro*, 529 F. Supp. 3d 1178, 1185 (D. Nev. 2021).

Plaintiffs adequately allege the existence of a fiduciary duty because they allege that "[Beasley, Judd, and the promoters] held themselves out as worthy of trust and confidence and plaintiffs in fact reposed trust and confidence in them to invest plaintiffs' monies wisely and to make truthful statements about the investments." *Takiguchi*, 47 F.Supp 3d at 1120.[6] Accordingly, the Court DENIES Wells Fargo's Motion as to Plaintiffs' claim for aiding and abetting breach of fiduciary duty.

### D.   Violation of UFA

The Court finds that Plaintiffs sufficiently allege their UFA claim.  Nevada enacted the Uniform Fiduciaries Act ("UFA") "to relax the standards of care owed by banks to principals and third parties when dealing with fiduciary accounts." *Guild v. First Nat. Bank of Nevada*, 553 P.2d 955, 958 (Nev. 1976).  A bank becomes liable under the UFA when the bank pays a check with "actual knowledge that [a] fiduciary is committing a breach of his or her obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith." NRS § 162.080.  This means that to survive a motion to dismiss, Plaintiffs must show that (1) an underlying fiduciary relationship exists, and (2) Wells Fargo had actual knowledge that a fiduciary was violating a fiduciary duty or that there were facts known to Wells Fargo such that it would be bad faith to fail to investigate the fiduciary's conduct. *See id.*  The Court has already determined that Plaintiffs adequately alleged that

---

[6] Wells Fargo dismisses Plaintiffs' reliance on *Takiguchi* because, according to Wells Fargo, "the court held a relationship between an investor and an investment advisor gave rise to a fiduciary relationship." (Reply 9:26–10:1).  Wells Fargo misreads *Takiguchi*.  That case also involved an alleged "massive Ponzi scheme" in which defendants, through misrepresentations, assured potential and existing investors that the business was legitimate, and that investors' monies would be secure. *Takiguchi*, 47 F.Supp 3d at 1108.  The plaintiffs argued that the relationship between plaintiffs and defendants in that case was "*more akin* to that between an investment advisor and an investor." *Id.* at 1120 (emphasis added).  The court agreed with the plaintiffs that the defendants owed the plaintiffs fiduciary duties because the plaintiffs "allege[d] that the defendants held themselves out as worthy of trust and confidence and plaintiffs in fact reposed trust and confidence in them to invest plaintiffs monies wisely and to make truthful statements about the investments." *Id.*  The Court finds that the relationship at issue in *Takiguchi* is analogous to the relationship between Plaintiffs and Beasley here.

Beasley had a fiduciary duty to Plaintiffs and that Wells Fargo had actual knowledge of the scheme.[7] Accordingly, the Court DENIES Wells Fargo's Motion as to Plaintiffs' UFA claim.

### E. Negligence

The Court finds that Plaintiffs fail to state a claim for negligence upon which relief can be granted. Plaintiffs bring their negligence claim in the alternative to their UFA claim. (Am. Compl. ¶ 225). "[T]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009).

Plaintiffs allege that Wells Fargo's duty arises under the UFA. (Am. Compl. ¶ 228). The UFA, however, "displaced any common law negligence claim involving a fiduciary and a bank." *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, No. 3:18-cv-000181-LRH-WGC, 2019 WL 5684172, at *4 (D. Nev. Oct. 31, 2019). Indeed, under the UFA, liability cannot be predicated on a showing of negligence. *Guild*, 553 P.2d at 958. "The fact that the legislature specifically excluded negligent conduct from the definition of good faith is a clear indication of its intent to supplant liability for common law negligence." *Dunham Tr. Co.*, 2019 WL 489095, at *4. Accordingly, the Court DISMISSES Plaintiffs' negligence claim "without leave to amend because there is no longer a common law claim for negligence between a bank and a fiduciary." *Id.* (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (concluding that leave to amend should not be granted when amendment would be futile)).

///

///

///

---

[7] The parties' arguments regarding the UFA claim overlap with their arguments regarding the aiding and abetting claims. (*See generally* Mot. Dismiss); (Resp., ECF No. 45).

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 39), is **GRANTED in part and DENIED in part**. The Court **DENIES** Defendant's Motion to Dismiss Plaintiffs' claims for: (1) Violations of the Uniform Fiduciaries Act ("UFA"), NRS §§ 162.010 *et seq.*; (2) Aiding and Abetting Breach of Fiduciary Duty; and (3) Aiding and Abetting Fraud. The Court **GRANTS** the motion to dismiss Plaintiffs' claim of Negligence. The Negligence claim is dismissed with prejudice as amendment would be futile.

**DATED** this __18__ day of March, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT