Emily Beale (*pro hac vice*)
**GIBBS MURA LLP**
136 Madison Avenue, Suite 541
New York, NY 10016
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
eb@classlawgroup.com

Eric H. Gibbs (*pro hac vice*)
David K. Stein (*pro hac vice*)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
ehg@classlawgroup.com
ds@classlawgroup.com

Interim Co-Lead Counsel

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No.: 2:22-cv-00529-GMN-NJK<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND SUPPLEMENTAL INTERROGATORY RESPONSE**<br><br>Judge:　　Hon. Gloria M. Navarro<br>　　　　　Hon. Nancy J. Koppe |

**TABLE OF CONTENTS**

INTRODUCTION .............................................................................................................................1

BACKGROUND ..............................................................................................................................2

I.     Wells Fargo's knowledge relating to Beasley is the core issue in the litigation.........................2

II.    Plaintiffs long ago serve the discovery requests at issue to establish Wells Fargo's knowledge. ......................................................................................................................3

III.   Discovery reveals new ███████████████████████████ ....................4

IV.   Plaintiffs attempt to negotiate a limited production to avoid the need for this motion. .............6

LEGAL STANDARD........................................................................................................................8

ARGUMENT ....................................................................................................................................8

I.     Unusual circumstances exist in this case to allow for Plaintiffs' motion. ................................8

    A.    Factors 1-3: Although the discovery deadline has passed, Plaintiffs only recently learned of this discovery. ..............................................................................9

    B.    Factor 4: The delay is attributable to Wells Fargo........................................................10

    C.    Factors 5-6, 8: Although dispositive motions have been briefed, there is no trial date, and the discovery will not disrupt any aspect of the schedule. ...........................11

    D.    Factor 7: Wells Fargo faces no prejudice by narrowly supplementing its discovery, especially since it should have done so months ago. ...................................11

II.    The discovery sought is relevant and proportional to the needs of the litigation. ....................12

    A.    Wells Fargo should be required to supplement its document production pursuant to Requests for Production Nos. 14-17, 21, and 25. ......................................................13

    B.    Wells Fargo should also be required to supplement its answer to Plaintiffs' Interrogatory No. 2..........................................................................................14

CONCLUSION................................................................................................................................15

APPENDIX.....................................................................................................................................17

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    Page(s)

*Alvarado-Herrera v. Acuity*,
  2022 WL 18108429 (D. Nev. Nov. 8, 2022) ........................................................ 13, 14, 15

*Camenisch v. Umpqua Bank*,
  2022 WL 17740285 (N.D. Cal. Dec. 16, 2022) ............................................................ 12

*Cardoza v. Bloomin' Brands, Inc.*,
  141 F. Supp. 3d 1137 (D. Nev. 2015) .......................................................................... 4

*Century-Nat'l Ins. Co. v. Gardner*,
  2023 WL 2843538 (D. Nev. Mar. 20, 2023) ............................................................... 11

*Depetro v. Minev*,
  2023 WL 5726258 (D. Nev. Aug. 25, 2023) ................................................................. 8

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*,
  2007 WL 1726558 (D. Nev. June 11, 2007) ................................................................. 3

*Fitzpatrick v. Las Vegas Metro. Police Dep't*,
  2019 WL 3859743 (D. Nev. Aug. 16, 2019) .......................................................... 10, 11

*Herndon v. City of Henderson*,
  507 F. Supp. 3d 1243 (D. Nev. 2020) .......................................................................... 9

*Ignite Spirits, Inc. v. Consulting by AR, LLC*,
  2022 WL 3346754 (D. Nev. Aug. 11, 2022) ................................................................. 9

*Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*,
  316 F.R.D. 327 (D. Nev. 2016) ................................................................................... 14

*Nevada Power Co. v. Monsanto Co.*,
  151 F.R.D. 118 (D. Nev. 1993) ..................................................................................... 4

*Paulo v. Williams*,
  2021 WL 6973771 (D. Nev. Nov. 8, 2021) ................................................................. 15

*ProDox, LLC v. Pro. Document Servs., Inc.*,
  341 F.R.D. 679 (D. Nev. 2022) ..................................................................................... 9

*Reflex Media Inc. v Does No. 1*,
  2022 WL 20328162 (D. Nev. Aug. 25, 2022) ............................................................... 8

ii

*Riverport Ins. Co. v. State Farm Fire & Cas. Co.*,
    2018 WL 6435883 (D. Nev. Dec. 6, 2018) ............................................................... 13

*Shuffle Master, Inc. v. Progressive Games, Inc.*,
    170 F.R.D. 166 (D. Nev. 1996) ................................................................................. 4

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
    346 F. Supp. 3d 473 (S.D.N.Y. 2018) ...................................................................... 12

*Simi Mgmt. Corp. v. Bank of Am., N.A.*,
    930 F. Supp. 2d 1082 (N.D. Cal. 2013) .................................................................... 12

*Software,Inc. v. M2 Commc'ns, LLC*,
    214 F.R.D. 499 (C.D. Cal. 2003) ............................................................................... 9

*V5 Techs. v. Switch, Ltd.*,
332 F.R.D. 356 (D. Nev. 2019) ........................................................................ 8, 10, 11


Statute

Nev. Rev. Stat. §§ 162.010, *et seq.* .................................................................................... 3


Rules

Fed. R. Civ. P. 26. ................................................................................ 1, 11, 13, 15
Fed. R. Civ. P. 33. .................................................................................. 1, 7, 11, 15

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

## INTRODUCTION

Wells Fargo recently provided discovery that Plaintiffs first requested in 2022. The discovery ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Documents reflecting why ████████████ are highly pertinent to the most important issue in this litigation: Wells Fargo's knowledge of Beasley's misuse of funds in his Wells Fargo accounts.

Plaintiffs seek limited supplemental discovery regarding these ███████████████ ████████████. Specifically, Plaintiffs seek an order directing a supplemental production in response to Plaintiffs' Requests for Production Nos. 14-17, 21, and 25—namely: (1) the above employees' communications (*i.e.*, emails and instant messages) concerning Beasley or his accounts, sent or received within five days ██████████████████; (2) the files within Wells Fargo's system(s) that reflect why these employees ██████████████; and (3) to the extent those searches reveal previously undisclosed alerts, investigations, or other actions taken by Wells Fargo, production of the complete file for that activity. Finally, Plaintiffs seek an order requiring Wells Fargo to supplement its response to Plaintiffs' Interrogatory No. 2, pursuant to Federal Rules of Civil Procedure 26(e) and 33, which asks Wells Fargo to identify "each person who reviewed or interacted . . . or took action Relating to anti-money laundering (AML), Bank Secrecy Act (BSA), Know Your Customer (KYC), due diligence (including enhanced due diligence), risk ratings, wire approval, or monitoring for unusual, suspicious, or unlawful activity" related to Beasley's attorney trust account or firm operating account.

Plaintiffs acknowledge that their motion comes after the close of discovery and after the Court-ordered deadline for discovery motions. But Plaintiffs respectfully request that the Court deem this motion timely since Plaintiffs could not have brought it earlier. None of Wells Fargo's prior document productions or discovery responses ever revealed that these ██████████████████ ████████████████████████████████. Before fact discovery closed, Plaintiffs filed a timely motion to compel, requesting, among other things, an order directing Wells Fargo to

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

produce an employee access log for Beasley's accounts. *See* ECF 148 at 8-9. On March 11, 2025, the Court denied Plaintiffs' motion—without prejudice—and directed the parties to continue meeting and conferring. ECF 196. Consistent with the Order, the parties met and conferred, and Wells Fargo agreed to produce the access log. *See* ECF 214.

On May 16, 2025, Wells Fargo produced ███████████████████████████████████████████████████████████████████████████████████████ On June 2, 2025, ███████████████████████████████████████████████████████. On July 3, 2025, after prodding, Wells Fargo ████████████████████████████████████████████████████████████████████ listed above. Since that time, Plaintiffs have repeatedly attempted to reach agreement with Wells Fargo to avoid the need for this motion. Despite a series of conferences, the parties have been unable to resolve the issue. The parties confirmed the impasse on August 8, 2025, and Plaintiffs promptly brought this motion.

Given the heightened relevance of ████████████████████████████████████████████, and the unusual circumstances that precluded Plaintiffs from bringing this motion before the discovery-motion deadline, Plaintiffs respectfully request that the Court deem the motion timely and grant the requested relief.

## BACKGROUND

**I.    Wells Fargo's knowledge relating to Beasley is the core issue in the litigation.**

What Wells Fargo knew about the business and banking practices of its customer attorney Matthew Beasley is critical to Plaintiffs' claims. From 2017 through 2022, Beasley ran a $500 million Ponzi scheme through his Wells Fargo attorney trust account. Dozens of other Wells Fargo accounts were also involved. Plaintiffs contend that Wells Fargo knew Beasley was misusing funds in his trust account and committing fraud. They sue for aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and for a statutory violation that likewise focuses on what Wells Fargo knew and when. *See generally* Nev. Rev. Stat. §§ 162.010, *et seq.*; *see also* ECF 250 at 21-32 (summary-judgment briefing summarizing the knowledge requirements and proof compiled to date).

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

Most of the pretrial litigation has centered around proof of what Wells Fargo knew and when it knew it. Wells Fargo's motion to dismiss, for example, argued that Plaintiffs failed to adequately allege knowledge. *See* ECF 39. Likewise, the pending motion for class certification and pending motion for summary judgment focus on Wells Fargo's knowledge. *See* ECF 188 (Plaintiffs' motion for class certification); ECF 198 (Wells Fargo's opposition to class certification); ECF 219 (Wells Fargo's motion for summary judgment); ECF 250 (Plaintiffs' opposition to summary judgment).

As the more recent briefing reflects, much of Plaintiffs' proof of Wells Fargo's knowledge stems from ████████████████████████████. *See generally* ECF 250 at 21-35. ████████████████████████████████████████████ ████████████████. *See id.*, Statement of Facts ("SOF") ¶¶ 22-23.

**II.    Plaintiffs long ago serve the discovery requests at issue to establish Wells Fargo's knowledge.**

Before the December 5, 2024, discovery cutoff, Wells Fargo produced documents showing that ████████████████████████████████████████████ Declaration of Emily Beale ("Decl."), ¶ 14; *see also* ECF 250, SOF ¶ 25. ████████████████████████████████ ECF 250, SOF ¶¶ 26-46, 52-59. Based on the documents Wells Fargo produced, which revealed those investigations, the parties negotiated further document searches, and Plaintiffs eventually deposed ████████████ ████████████████████████ Decl. ¶ 14.

Seeking a complete picture of who at Wells Fargo had interacted with Beasley's accounts, back in July 2022, Plaintiffs had served a document request for any "access log" showing which Wells Fargo employees accessed the accounts at issue. *See* Ex. 1 at 11 (RFP No. 22) (requesting production of "[a]ny electronic record or log showing each time a Wells Fargo employee access Wells Fargo's electronic systems" in connection with certain accounts, including Beasley's attorney trust account).[1] Plaintiffs served a related interrogatory asking Wells Fargo to identify "each person who reviewed or interacted . . . or took action Relating to anti-money laundering (AML), Bank Secrecy Act (BSA),

---

[1] Plaintiffs provide the written discovery requests and responses in an appendix. *See Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, 2007 WL 1726558, at *5 n.3 (D. Nev. June 11, 2007).

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

Know Your Customer (KYC), due diligence (including enhanced due diligence), risk ratings, wire approval, or monitoring for unusual, suspicious, or unlawful activity" related to Beasley's attorney trust account and other accounts at issue. *See* Ex. 5 at 186 (Interrog. No. 2).

Wells Fargo initially objected and refused to produce the access log.[2] *See* ECF 148 at 8-9 (Plaintiffs' initial motion to compel); ECF 156 at 6-8 (Wells Fargo's opposition); *see also* Ex. 6 at 195-97 (objecting in part to Interrogatory No. 2 and failing to identify all employees that had accessed the trust account); Decl. ¶ 15. And while Wells Fargo's initial disclosures identified financial-crimes personnel who had accessed Beasley's accounts, the disclosures listed only those personnel who appeared in the documents that Wells Fargo produced at that time. Decl. ¶ 14.

Plaintiffs moved to compel production of the access log (and moved on other issues) on October 2, 2024. ECF 148. In opposing that motion, Wells Fargo represented that the access log "will show nothing more than what Plaintiffs and the Receiver already know . . . ." ECF 156 at 11. The discovery period closed on December 5, 2024, with Plaintiffs' motion still pending. *See* ECF 139.

On March 11, 2025, the Court denied Plaintiffs' motion—without prejudice—and directed the parties to continue meeting and conferring. ECF 196. It set a 30-day deadline for any further motions to compel.[3] *Id.* at 5. Consistent with the Order, the parties met and conferred and, as detailed below, reached an agreement, subject to certain mutual reservations of rights and understandings, through which Wells Fargo agreed to produce its access log(s). Decl. ¶¶ 11-14; ECF 214.

**III.    Discovery reveals** ████████████████████████████████████.

Consistent with the Court's Order, Plaintiffs promptly contacted Wells Fargo to conduct the Court-ordered meet-and-confer efforts. Decl. ¶ 11. Through a series of discussions, the parties were

---

[2] During the parties' protracted meet-and-confer efforts, Plaintiffs limited the request for access log documents to seven key accounts: Beasley's attorney trust account (ending in 5598), as well as Beasley's firm operating account (5580), Beasley's second attorney trust account (8898), J&J Consulting (0153), J&J Purchasing (7037), Jager Capital (6508), and Stirling Consulting (6558). *See* ECF 148 at 9.

[3] The Court's order additionally requires any future discovery motion to include a certification that the filing attorney has read in their entirety the following cases: *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137 (D. Nev. 2015); *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166 (D. Nev. 1996); and *Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118 (D. Nev. 1993). ECF 196 at 5. The undersigned has complied with this requirement. Decl. ¶ 10.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

able to resolve many—and, indeed, what appeared at the time to be *all*—of their disputes. *Id.* ¶¶ 12-14; ECF 214.

So, within just 16 days of the Court's order, on March 27, 2025, the parties had agreed that Wells Fargo would investigate whether it possessed any log(s) showing which of its employees had accessed key accounts and—if so—would produce the log(s) to Plaintiffs. Decl. ¶ 14. Based on that agreement, and the parties' resolution of their other prior disputes, Plaintiffs informed the Court on April 1, 2025, that the parties had reached agreement on the issues raised in their October motion to compel. ECF 214.

On May 16, 2025, Wells Fargo produced ████████████████████████ Decl. ¶ 16. ████████████████████████████████████ *Id.*; *see also* Ex. 12, WF_JJ_00114017. ████████████████████████████████████ [4] Decl. ¶ 16; Ex. 12, WF_JJ_00114017, at Column I. ████████████████████████ Decl. ¶ 16.

After examining ████████████████, on June 2, 2025, Plaintiffs asked Wells Fargo to confirm that it had completed its production of employee-access information. *Id.* ¶ 17. After Wells Fargo confirmed that it had done so, Plaintiffs asked Wells Fargo for a conference. *Id.* ████████████████████████████████████ *Id.* The parties held a telephonic conference on June 12, 2025. *Id.* ¶ 18. After several follow-up inquiries by Plaintiffs, Wells Fargo provided the requested ████████████████ on July 3, 2025. *Id.* ¶ 19. ████████████████████████████████████ Among those identified were:

[4] ████████████████████████ *See* Ex. 12, WF_JJ_00114017, at Column M.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK



*Id.*

*Id.* ¶ 20. In addition,

*Id.*

**IV.     Plaintiffs attempt to negotiate a limited production to avoid the need for this motion.**

Upon receiving this new information, Plaintiffs promptly asked for a conference with Wells Fargo. *Id.* ¶ 21. Plaintiffs sought information relating to what search-and-collection efforts Wells Fargo had already made relating to ███████████████, and why Wells Fargo had never previously identified them ████████████████████. *Id.* Plaintiffs also requested that Wells Fargo formally provide the information that it had just recently provided in its July 3, 2025, email (████████████████████) through a supplemental response to Interrogatory No. 2 so that the information would be admissible at trial. *Id.*; *see also* Ex. 5 at 186 (Interrog. No. 2).

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

The parties held a telephonic conference on July 14, 2025. Decl. ¶ 22. Wells Fargo refused to provide any new information about the extent (if any) of its discovery collection efforts for the ███ ███████████, invoking work product protection. *Id.* Wells Fargo also declined to provide any additional information, conduct any further investigation, or produce any additional documents showing ████████████████████████████████████████████████████████████████████. *Id.* Wells Fargo also declined to supplement its response to Interrogatory No. 2, standing on its objection that the interrogatory was overbroad. *Id.*

Three days later, on July 17, 2025, Plaintiffs made a proposal to Wells Fargo to try to avoid motion practice. They proposed a narrow supplemental production for the newly identified employees: (1) their communications (*i.e.*, emails and instant messages), ████████████████████████████████████████████████████████; (2) the files within Wells Fargo's system(s) showing ████████████████████████████████████; and (3) to the extent these searches uncovered previously undisclosed alerts, investigations, or other actions taken relating to Beasley, the complete file related to those efforts. *Id.* ¶ 23.[5] The requested search and production would be responsive to Plaintiffs' Requests for Production Nos. 14-17, 21, and 25. *Id.*; *see also* Ex. 1 at 10-11. Plaintiffs also reiterated their request that Wells Fargo supplement its response to Interrogatory No. 2 to incorporate ████████████ by reference, under Rule 33(d), and to list ████████ ████████████████████████████████. Decl. ¶ 23.

The parties met and conferred by email, letter, and telephone conference—including telephonic conferences on August 6, 2025, and on August 20, 2025. *Id.* ¶ 24. The parties have been unable to reach agreement, as Wells Fargo has declined to conduct any additional document searches and has declined to supplement its response to Interrogatory No. 2. *Id.* ¶ 25.

The parties are at impasse. *Id.* Plaintiffs bring this motion after consulting with, among others, Receiver Geoff Winkler, given the importance of the discovery to the broader issues at stake in the two related cases. *Id.*

---

[5] Plaintiffs also reiterated their request that Wells Fargo, if unable to locate any of those requested documents, produce documents sufficient to identify the newly identified employees' job responsibilities ███████████████████████████████████—though Plaintiffs do not now seek to compel production of those documents through this motion.

7

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

**LEGAL STANDARD**

"[T]he Court retains discretion in appropriate circumstances to consider discovery motions filed after the . . . deadline." *Depetro v. Minev*, 2023 WL 5726258, at *1 (D. Nev. Aug. 25, 2023) (Koppe, J.). While motions to compel discovery after the discovery deadline are considered untimely absent unusual circumstances, "judges are given broad discretion to manage the overall process in the interests of dispatch and fairness." *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 361 (D. Nev. 2019) (Koppe, J.) (citation omitted).

**ARGUMENT**

**I.    Unusual circumstances exist in this case to allow for Plaintiffs' motion.**

As Plaintiffs' motion comes after the Court-ordered deadline for motions to compel, Plaintiffs must show "unusual circumstances" that justify bringing the motion after the Cout-ordered deadline. *See id.* at 360-61 & n.3. Courts have considered the following non-exhaustive factors in making this determination:

> (1) the length of time since expiration of the discovery deadline; (2) the length of time the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom discovery is sought; and (8) disruption of the Court's schedule.

*Id.* at 360-61 (collecting cases); *accord Reflex Media Inc. v Does No. 1*, 2022 WL 20328162, at *1 (D. Nev. Aug. 25, 2022).

Plaintiffs discuss those factors below. To summarize, Plaintiffs bring this motion now, rather than before the discovery-motion deadline, because Wells Fargo's production of ▮▮▮▮▮▮ has only recently revealed important new information. When a party complies with discovery deadlines, but still only learns "whether information could be gleaned from other sources" after the close of discovery due to the other party's discovery deficiencies, that favors a finding of timeliness. *Ignite Spirits, Inc. v. Consulting by AR, LLC*, 2022 WL 3346754, at *4 (D. Nev. Aug. 11, 2022). Wells Fargo has only recently revealed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Decl. ¶¶ 19-20. Based on this new

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

information—which Plaintiffs could not have obtained earlier—Plaintiffs seek documents that fall within the scope of their long-standing discovery requests. Because "courts generally favor issues be decided on their merits," and the "form" of this deadline should not "supersede substance, especially if it is a bar to relevant evidence," the Court should consider this motion timely. *Ignite Spirits*, 2022 WL 3346754, at *4 (citation omitted).

**A. Factors 1-3: Although the discovery deadline has passed, Plaintiffs only recently learned of this discovery.**

Plaintiffs had no way of knowing until July 3, 2025, that ██████████████████████████ ████████████████████████████████████████████. In fact, Wells Fargo had already said that the log would *not* reveal previously undisclosed information, telling the Court (in opposing Plaintiffs' earlier motion): "Quite frankly, such information [the requested access log] *will show nothing more than what Plaintiffs and the Receiver already know* based on review of the voluminous account records produced and the depositions . . . that have already been conducted." ECF 156 at 7 (emphasis added); *see also ProDox, LLC v. Pro. Document Servs., Inc.*, 341 F.R.D. 679, 685-86 (D. Nev. 2022) (Koppe, J.) (acknowledging that discovery may be permitted after the discovery cutoff if the "movant relied to its detriment on representations from opposing counsel" (citing *M2 Software, Inc. v. M2 Commc'ns, LLC*, 214 F.R.D. 499, 500 (C.D. Cal. 2003)); *Herndon v. City of Henderson*, 507 F. Supp. 3d 1243, 1250 (D. Nev. 2020) (Koppe, J.) (explaining that "some courts have excused a delay in filing a motion to compel arising out of reasonable reliance on an opposing party's promises" and that a "movant properly relies on such an excuse" if they can "present[ ] a firm factual showing that there was an expressed commitment to provide the discovery in dispute on which there was reliance").

Plaintiffs have also acted diligently in all respects relating to ████████ and this new information. Plaintiffs moved swiftly after the Court denied their prior motion without prejudice. Within a week, Plaintiffs requested to meet and confer and then, within just 16 days, Plaintiffs had secured Wells Fargo's agreement to produce ████████. Decl. ¶¶ 11-14. Wells Fargo then took six weeks to produce ████. *See id.* ¶ 16. Once produced, Plaintiffs devoted about two weeks to reviewing ████████████████████████████████████████████. *Id.* ¶¶ 16-17. On June 9, 2025,

9

Plaintiffs asked Wells Fargo to identify ███████████████████████████ ████████ *Id.* ¶ 17. After another call between the parties and Plaintiffs' successive follow-ups, on the afternoon of July 3, 2025, Wells Fargo provided the requested information. *Id.* ¶¶ 18-19. It was only then—in July—that Plaintiffs realized that ████████████████████ ███████████████████████████████████. *Id.* ¶ 20. Since that time, Plaintiffs have repeatedly attempted to negotiate an agreement with Wells Fargo that would have avoided the need for bringing the dispute to the Court.

Plaintiffs have thus "known about the discovery" for less than two months—and have complied with their obligation to meet and confer in good faith before moving to compel. *See id.* ¶¶ 21-25; *V5 Techs.*, 332 F.R.D. at 364. On July 9, 2025, less than a week after Wells Fargo provided ███████, Plaintiffs asked Wells Fargo to update its earlier interrogatory answer and to explain why Wells Fargo's document collection efforts failed to turn up the documents relating to ███████████ ███████████. Decl. ¶ 21. The parties had multiple meet-and-confer calls and exchanged correspondence in attempting to work out the issue—but reached an impasse on August 8, 2025. *Id.* ¶¶ 22-25.

**B. Factor 4: The delay is attributable to Wells Fargo.**

Wells Fargo, which has sole custody of the records at issue, never previously disclosed that ██ ██████████████████████████████████████████████ Plaintiffs are thus not responsible for the delay in seeking discovery relating ██████████████████ ███████. *See V5 Techs.*, 332 F.R.D. at 364. "[T]his is not a case in which Plaintiffs either did not request the sought-after documents during discovery or sat on their hands after they were not produced." *Fitzpatrick v. Las Vegas Metro. Police Dep't*, 2019 WL 3859743, at *4 (D. Nev. Aug. 16, 2019). Instead, Wells Fargo first delayed producing █████████████████████████████, and then refused to remedy its tardy production. *See id.* at *4-5. Plaintiffs acted promptly to address Wells Fargo's long-delayed production of ███████ once they received this new information. *See Century-Nat'l Ins. Co. v. Gardner*, 2023 WL 2843538, at *1-2 & n.2 (D. Nev. Mar. 20, 2023) (Koppe, J.) (opposing party's "untimely disclosure" provided "good reason why" movant "needs this discovery now (and why it did not obtain it previously)").



PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

This factor thus weighs heavily in favor of timeliness.

**C. Factors 5-6, 8: Although dispositive motions have been briefed, there is no trial date, and the discovery will not disrupt any aspect of the schedule.**

To the extent the Court considers the current case schedule, these factors should be considered neutral or tip in favor of the discovery being ordered. *V5 Techs.*, 332 F.R.D. at 364. While the older of the two related actions is over three years old, and dispositive motions are now pending and briefed, the case was stayed for six months while the parties mediated, *see* ECF 130, 132, and the Court has yet to set a pretrial conference or trial date.

Thus, requiring Wells Fargo to complete the narrow supplemental discovery would not endanger any trial deadlines that may come into effect once the Court rules on the pending motions. And, while it's true that class-certification and summary-judgment motions are currently pending, Plaintiffs are *not* asking to delay the ruling on those motions. They merely seek to be able to use this new evidence at an eventual trial. Decl. ¶ 26. So, even though dispositive motions have been briefed, this discovery motion will not delay the Court in deciding those pending motions—and will not jeopardize the remaining schedule, since the trial schedule has yet to be set.

**D. Factor 7: Wells Fargo faces no prejudice by narrowly supplementing its discovery, especially since it should have done so months ago.**

Finally, the Court should consider "[a]ny prejudice to the party from whom the discovery is sought." *V5 Techs.*, 332 F.R.D. at 365. There is no such prejudice here, so the factor weighs in favor of timeliness.

With respect to Interrogatory No. 2, Plaintiffs ask the Court merely to enforce Wells Fargo's obligations under Rules 26 and 33 by supplementing its interrogatory response to provide the same information *it has already provided informally* via attorney correspondence. Wells Fargo need only add a few lines of text to its Answer to Interrogatory No. 2, thereby making admissible the late-disclosed information.

And with respect to Plaintiffs' request for document searches, Plaintiffs have targeted ███

11

█████ . Wells Fargo has articulated no burden associated with conducting these small supplemental productions.

At bottom, ████████████████████████████████ that should have been identified long ago. In response to receiving this information, Plaintiffs are moving to compel only a fraction of what Wells Fargo might have been obligated to otherwise. Plaintiffs do not seek wide-ranging document discovery and do not seek to take any additional depositions. Wells Fargo can thus point to no significant prejudice that would stem from complying with the relief Plaintiffs are seeking.

## II.   The discovery sought is relevant and proportional to the needs of the litigation.

The limited discovery that Plaintiffs seek is highly relevant to their claims, which hinge on what Wells Fargo knew about Beasley's wrongdoing. Wells Fargo's monitoring of, and investigations into, Beasley's banking activities is highly relevant because, if such surrounding circumstances suggest the bank "must have known," a jury may find actual knowledge. *See Camenisch v. Umpqua Bank*, 2022 WL 17740285, at *3 (N.D. Cal. Dec. 16, 2022); *see also Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1099-100 (N.D. Cal. 2013); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018) ("[C]ircumstantial evidence can be sufficient to support a finding of actual knowledge.").



██████████████████████████████████████ Decl. ¶¶ 19, 20. ████████████████████ *Id.* ███████████████████████████ *Id.* In other words, the newly disclosed information suggests ████████████████████, ████████████████████ .

Under these circumstances, the limited information Plaintiffs seek about the newly disclosed activity is both "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The information is central to Plaintiffs' claims, satisfying the relevance test. *Cf. Riverport Ins. Co. v. State*

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

*Farm Fire & Cas. Co.*, 2018 WL 6435883, at *2 (D. Nev. Dec. 6, 2018) (Koppe, J.) (explaining that "relevance remains broad in scope" under Rule 26). And Rule 26's six proportionality factors are satisfied here, too: "(1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Alvarado-Herrera v. Acuity*, 2022 WL 18108429, at *2 (D. Nev. Nov. 8, 2022) (Koppe, J.). The case involves important issues surrounding one of the world's largest financial institutions allegedly aiding and abetting a $500 million Ponzi scheme. The Court recognizes that "several million dollars in potential damages" weighs in favor of finding discovery is proportional, *see id.*; this case involves far more than that. Wells Fargo "is better positioned to obtain the information sought and has the resources to do so." *See id.* And because Plaintiffs seek only a narrow, targeted category of documents, plus information already provided by email, any burden that Wells Fargo would endure in producing them is modest.

**A. Wells Fargo should be required to supplement its document production pursuant to Requests for Production Nos. 14-17, 21, and 25.**

Request for Production Nos. 14-17, 21, and 25 seek, among other things, documents and communications relating to Wells Fargo's inquiry into suspected or possible improper banking activity relating to Beasley's accounts—including any alerts triggered on the accounts, internal communications, and investigation files. *See* Ex. 1 at 10-11. To the extent Wells Fargo personnel—█ ███████████████████████████████—examined Beasley's accounts, made notes or communicated about Beasley's activity, or addressed (automated or employee-generated) alerts relating to Beasley's banking activity, documents reflecting those actions are responsive.

As noted, Plaintiffs seek only a narrow supplemental search and production. Plaintiffs ask for Wells Fargo to produce (1) the ████████████████ communications, sent or received within five days of ██████████████████, concerning Beasley or his accounts, (2) any system files that reflect ██████████████████████████, and (3) if applicable, the corresponding file relating for any previously undisclosed investigation, (automated or employee-

generated) alert, or other action taken by Wells Fargo relating to Beasley that are uncovered by the search. Decl. ¶ 23.

As for Wells Fargo's claim of burden, it has failed to articulate one. Its position is that discovery is closed, so it need not do anything despite its late disclosure of potentially key witnesses. Decl. ¶ 24; *see also* Ex. 11 at 223-34. This undeveloped burden argument is premised merely on "conclusory statements by counsel," and so it should be rejected. *See Alvarado-Herrera*, 2022 WL 18108429, at *2 ("assertions of undue burden must be supported by a declaration or other evidence, and conclusory statements are insufficient") (citing *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016)).

The Court should accordingly compel Wells Fargo to conduct the requested supplemental search and produce the results.

**B. Wells Fargo should also be required to supplement its answer to Plaintiffs' Interrogatory No. 2.**

Plaintiffs' Interrogatory No. 2 asks Wells Fargo to identify "each person who reviewed *or* interacted with [Beasley's attorney trust or firm operating account] *or* took action Relating to anti-money laundering (AML), Bank Secrecy Act (BSA), Know Your Customer (KYC), due diligence (including enhanced due diligence), risk ratings, wire approval, or monitoring for unusual, suspicious, or unlawful activity." Ex. 5 at 186 (emphasis added).

██████████████████████████████████████████████ fall squarely within the scope of the interrogatory because, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ Because Wells Fargo's current answer to Interrogatory No. 2 omits these individuals and because ████████████████████████████████████████, Wells Fargo should be ordered to supplement its previous answer. *See* Fed. R. Civ. P. 26(e)(1); *see also* Ex. 6 at 195-97. Otherwise, Plaintiffs will be limited in their ability to use critical information ████████ ████████ at trial.

To be clear, supplementing its prior response would impose virtually no burden on Wells Fargo, since it has already produced ████████████████████████████████████████████████

████████████████████████████████████████████. *See* Decl. ¶ 19. All Wells Fargo has to do is put ████████████████ in an amended and verified answer to Interrogatory No. 2. Any claim of burden by Wells Fargo is therefore baseless. *See Paulo v. Williams*, 2021 WL 6973771, at *2 (D. Nev. Nov. 8, 2021) (Koppe, J.) (finding "a vague statement regarding burden" insufficient to substantiate a claim of burden); *Alvarado-Herrera*, 2022 WL 18108429, at *2 (similar).

The Court should compel Wells Fargo to supplement its answer to Interrogatory No. 2 to (i) incorporate by reference (under Rule 33(d)) ████████, and (ii) list ████████████████████ ████████████████████████ in way that links them to ████████████████████████.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant the motion to compel.

Dated: August 22, 2025                           Respectfully submitted,


                                                 /s/ Emily Beale
                                                 Emily Beale (pro hac vice)
                                                 **GIBBS MURA LLP**
                                                 136 Madison Avenue, Suite 541
                                                 New York, NY 10016
                                                 Telephone: (510) 350-9700
                                                 Facsimile: (510) 350-9701
                                                 eb@classlawgroup.com

                                                 David K. Stein (pro hac vice)
                                                 Eric H. Gibbs (pro hac vice)
                                                 Spencer Hughes (pro hac vice)
                                                 **GIBBS MURA LLP**
                                                 1111 Broadway, Suite 2100
                                                 Oakland, CA 94607
                                                 Telephone: (510) 350-9700
                                                 Facsimile: (510) 350-9701
                                                 ds@classlawgroup.com
                                                 ehg@classlawgroup.com
                                                 shughes@classlawgroup.com

                                                 Daniel C. Girard (pro hac vice)
                                                 Jordan Isern (pro hac vice)
                                                 **GIRARD SHARP LLP**
                                                 601 California Street, Suite 1400

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jisern@girardsharp.com

Robert L. Brace (pro hac vice)
**LAW OFFICES OF ROBERT L. BRACE**
1807 Santa Barbara St.
Santa Barbara, CA 93101
Telephone: (805) 886-8458
rlbrace@rusty.lawyer

*Interim Co-Lead Counsel*

Miles N. Clark (NBN 13848)
**LAW OFFICES OF MILES N. CLARK LLC**
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
(702) 856-7430
miles@milesclarklaw.com

*Liaison Counsel*

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

**APPENDIX**

REQUEST FOR PRODUCTION NO. 14

Documents and Communications concerning suspected or possible unlawful or improper account activity concerning Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Conspirators, or the J&J Conspirator Accounts.

WELLS FARGO'S SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "suspected or possible unlawful or improper account activity" is not defined and subject to various interpretations as to its meaning. *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive because it seeks Documents and Communications about more than 40 individuals or businesses, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, the Request is not narrowly tailored or limited because it seeks all documents and communications regarding any possible "unlawful or improper account activity" related to dozens of accounts, which will encompass documents that do not have any relevance to Plaintiffs' claims in the complaint. *Guerrero v. Wharton*, No. 216CV01667GMNNJK, 2017 WL 7314240, at *5 (D. Nev. Mar. 30, 2017) ("As a rule, requests for 'any and all' documents or communications are facially overbroad.") (citing *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020)). Additionally, such information is highly confidential.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo legal counsel may have been involved in responding to any allegations of improper activity in the referenced accounts.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for Currency Transaction Reports ("CTRs"), alerts and investigation files maintained in Wells Fargo's Financial Crimes Platform ("FCP"), customer complaints maintained in ECMPS, investigation files maintained in Universal Workstation, wire investigation documents maintained in PEGA, notes related to recommendation to exit customer relationship ("RECR") determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts that are associated with Anthony Alberto and Larry Jeffery, and to produce the responsive,

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances. Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-privileged documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

REQUEST FOR PRODUCTION NO. 15

Documents and Communications concerning any risk assessment of Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

WELLS FARGO'S SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the term "risk assessment" is not defined and subject to various interpretations as to its meaning.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

*See e.g.*, *Sinanyan v. Luxury Suites Int'l*, LLC, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. For example, on scope, Plaintiffs' Request is not narrowly tailored or limited because it seeks all "Documents and Communications concerning *any* risk assessment . . ." and includes documents which may not have any relation to the claims at issue or the allegations in Plaintiffs' complaint. It is overly expansive in scope by targeting dozens of entities and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. section 5318, pursuant to 12 C.F.R. section 21.11, 31 C.F.R. section 103.18, 31 U.S.C. section 5318(g)(2)(A)(i) and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as this Request

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

could encompass communications with Wells Fargo's legal counsel seeking or providing advice with respect to these accounts.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, as well as for alerts and investigation files maintained in FCP, related to the Agreed Accounts and to produce the responsive, non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search.

REQUEST FOR PRODUCTION NO. 16

Alerts, reports, and other Documents generated by or accessible from the "Actimize" banking activity monitoring system concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

WELLS FARGO'S SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," and "investigation files" are not defined and subject to various interpretations as to their meaning. *See, e.g.*, *Sinanyan v. Luxury Suites Int'l*, LLC, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Wells Fargo also objects to the phrase "generated by or accessible from the 'Actimize' banking activity monitoring system" as vague and ambiguous, because Actimize is a third-party software that can be customized to perform a variety of different functions, and thus it is unclear what reports Plaintiffs' seek. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive by seeking all alerts and reports generated by "Actimize" regarding more than 40 individuals or businesses and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*,

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence."). The Request is also overbroad and overly expansive in that it seeks information concerning "any related investigation files." Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo's legal counsel may have been involved in any investigation into or about the accounts alleged to be at issue in this litigation.

Wells Fargo hereby further responds as follows: Wells Fargo uses Actimize to generate and store CTRs. Wells Fargo will produce CTRs related to the Agreed Accounts dated between November 1, 2016 and May 21, 2022 in response to this Request. With respect to non-Actimize systems, Wells Fargo agrees to search for alerts and investigation files maintained in FCP, customer complaints maintained in ECMPS, investigation files maintained in Universal Workstation, wire investigation

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

documents maintained in PEGA, notes related to RECR determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts associated with Anthony Alberto and Larry Jeffery, and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances. Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

privileged documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

REQUEST FOR PRODUCTION NO. 17

Alerts, reports, and other Documents generated by or accessible from any banking activity monitoring system other than Actimize (including without limitation Fiserv FraudLink and Radar World Check) concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

WELLS FARGO'S SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," "banking activity monitoring system" and "any related investigation files" are not defined and subject to various interpretations as to its meaning. See e.g., *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On scope, this Request is overly expansive by seeking all "[a]lerts, reports, and other Documents generated by or accessible from any banking activity monitoring system. . ." for more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition,

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

"not reasonably calculated to lead to the discovery of admissible evidence."). Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i) and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as it would necessarily include any documents by or communications with members of Wells Fargo's legal department.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, alerts and investigation files maintained in FCP, customer complaints maintained in ECMPS, investigation files maintained in Universal Workstation, wire investigation documents maintained in PEGA, notes related RECR determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts associated with Anthony Alberto and Larry Jeffery, and

to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances. Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-privileged documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

REQUEST FOR PRODUCTION NO. 21

Documents and Communications not otherwise requested concerning any inquiry or investigation You undertook with respect to any Beasly Accounts, J&J Accounts, or J&J Conspirator Accounts during the Applicable Period, including at or before account opening.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

WELLS FARGO'S SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "Documents and Communications not otherwise requested" and the terms "inquiry" and "investigation" are not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive*); Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is extremely overbroad in scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the scope of this Request and is overly expansive by seeking all "inquiries and investigations" relating to any Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, which consists of more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, as drafted, this Request seeking documents and communications for dozens of accounts, and would include documents that are not relevant to Plaintiffs' claims in this case. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, 'not reasonably calculated to lead to the discovery of admissible evidence.'").

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

Wells Fargo objects to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. § 103.18, 31 U.S.C. §5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as the broad scope of the request above would necessarily include any documents created by or communications with a member of Wells Fargo's legal team or outside counsel team relating to an investigation into the allegations underlying this matter.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, alerts and investigation files maintained in FCP, customer complaints maintained in ECMPS, investigation files maintained in Universal Workstation, wire investigation documents maintained in PEGA, notes related RECR determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts associated with Anthony Alberto and Larry Jeffery, and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to

28

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances. Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-privileged documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

REQUEST FOR PRODUCTION NO. 25

Communications between or among Wells Fargo employees concerning Beasley or the Beasley Entities or transactional activity related thereto, including any notes or comments recorded in internal systems.

WELLS FARGO'S RESPONSE TO REQUEST FOR PRODUCTION NO. 25

Wells Fargo objects to the Request as not proportional to the needs of this case. In particular, Plaintiffs' Request for all "Communications between or among Wells Fargo employees" about Beasley or the Beasley Entities—or any transactional activity relate thereto—could conceivably encompass every communication and every internal report Wells Fargo has ever produced referencing these individuals and entities, without any limitation to a reasonable number of custodians within Wells Fargo. Plaintiffs have made no effort to limit this Request to documents that relate in any way to their claims asserted in the complaint. It is overly expansive in scope by providing *temporal limitation*, and

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of Beasley Entities and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding Beasley or the Beasley Law Group. Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including all applicable prohibitions of disclosure.

Wells Fargo will search the custodial files of Erin Connelly, Justin Rollins, Virginia de la Torre, Vanessa Duran, Amber Dahlhaus, and Stephen Nelson from November 1, 2016 through March 21, 2022 for documents related to Wells Fargo's relationship with Beasley and Beasley Law Group. Wells Fargo intends to use search terms to identify potentially responsive records from those files, and Wells Fargo will disclose those search terms to Plaintiffs within a reasonable time of finalizing those terms. Beyond these searches, Wells Fargo will not conduct additional searches for documents responsive to this Request on the basis of its objections. Wells Fargo will begin its production of documents in response to this Request by mid-January and will continue a rolling production until the end of the document discovery period.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

INTERROGATORY NO. 2

For each account responsive to Interrogatory No. 1, identify by name, branch or department, and job title, each person who reviewed or interacted with the account or took action Relating to anti-money laundering (AML), Bank Secrecy Act (BSA), Know Your Customer (KYC), due diligence (including enhanced due diligence), risk ratings, wire approval, or monitoring for unusual, suspicious, or unlawful activity.

WELLS FARGO'S RESPONSE TO INTERROGATORY NO. 2

Wells Fargo objects to this Interrogatory on the basis that it is overbroad, unduly burdensome, and seeks information not relevant and not proportional to the claims or defenses at issue in this action, particularly as it includes Plaintiffs' overbroad definition of Beasley, Judd, and J&J Conspirator, which Wells Fargo objects to for the reasons stated in its Objections to the Definitions. As set forth below, Wells Fargo will not agree to produce documents that would be sufficient to show this level of information for every account subject to Plaintiffs' Interrogatory Number 1 on these grounds but rather only for the accounts Wells Fargo has agreed to search in response to Plaintiffs' Requests for Production.

Specifically with respect to subpart (j), Wells Fargo further objects to this Interrogatory on the basis it is overbroad, unduly burdensome, and seeks information not relevant and not proportional to the claims or defenses at issue in this action, particularly as it includes Plaintiffs' overbroad definition of Beasley, Judd, and J&J Conspirator, which Wells Fargo objects to for the reasons stated in its Objections to the Definitions. To the extent Plaintiffs seek something more narrow, Wells Fargo invites Plaintiffs to clarify the scope of the Request.

Wells Fargo also objects to this Interrogatory as vague, ambiguous, overly broad, and seeking information not relevant to this case, rendering the request not proportional to the needs of this case. Several terms in this Interrogatory are undefined and subject to different meanings, such as "reviewed or interacted with," "due diligence," "risk ratings," "monitoring for unusual, suspicious, or unlawful activity." Further, when combined, these vague and ambiguous terms lead to absurdly overbroad results. Read literally, this Interrogatory seeks the identity of every

31

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

employee that had any interaction of any type with the Accounts at any time. For example, a bank teller who assists a customer with depositing a check into one of the Accounts will necessarily "interact with" the Account. This would present an unreasonable and undue burden on Wells Fargo to search for information that is unlikely relevant to this case and therefore not proportional to the needs of the case.

Wells Fargo further objects to this Interrogatory as requesting information that implicates the SAR privilege. In particular, this Request seeks information Wells Fargo is legally prohibited from disclosing, acknowledging or admitting the existence of under the Bank Secrecy Act ("BSA") and related provisions. *See* 12 C.F.R. § 21.11(k), 31 C.F.R. § 1020.320(e)(1)(i), and 31 U.S.C. § 5318(g); *see also* 75 Fed. Reg. 75593, 75595 (Dec. 3, 2010). Providing names and titles of employees who "reviewed or interacted with" the accounts with respect to SAR investigations would necessarily reveal the bank's process for determining whether to file a SAR and indeed may reveal whether or not one exists—all of which is protected from disclosure. *See, e.g., Zeitlin v. Bank of America, N.A.*, 2021 WL 2595102, *3 (D. Nev. June 24, 2021) (holding documents created "in the context of the SAR/no-SAR decision-making process" are protected, as are documents that contain a "SAR/no-SAR narrative"). Wells Fargo will not agree to identify employees who interacted with the Accounts for the purposes of a SAR investigation, to the extent any exist, based on its SAR privilege objection.

Subject to and without waiving these objections, Wells Fargo responds that the employees who interacted with the Accounts can be determined by examining Wells Fargo's business records and the burden of deriving the answer to this Interrogatory is substantially the same for Plaintiffs. Fed. R. Civ. P. 33(d). Wells Fargo therefore refers Plaintiffs to the documents that Wells Fargo has agreed to search for and produce in response to Plaintiffs' First Set of Requests for Production for the Accounts, specifically those titled "Business Account Application," "Customer Account Application," and "Outgoing Wire Transfer Request," as well as the forthcoming production(s) of documents that will include e-mail communications reflecting employees who interacted with the Accounts.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK