Daniel C. Girard (*pro hac vice*)
Jordan Isern (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
(415) 981-4800 (tel.)
(415) 981-4846 (fax)
dgirard@girardsharp.com
jisern@girardsharp.com

Eric H. Gibbs (*pro hac vice*)
David K. Stein (*pro hac vice*)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
ehg@classlawgroup.com
ds@classlawgroup.com

Interim Co-Lead Counsel

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No.: 2:22-cv-00529-GMN-NJK<br><br>**APPENDIX OF EXHIBITS TO PLAINTIFFS' MOTION TO COMPEL**<br><br>**Volume I of I**<br><br>**EXHIBITS 1-11**<br><br>Judge:      Hon. Gloria M. Navarro<br><br>                Hon. Nancy J. Koppe |

**APPENDIX OF EXHIBITS**

| Ex. # | Description | Appendix |
|---|---|---|
| 1 | Plaintiffs' First Set of Requests for Production of Documents | Vol. I, Pages 1-14 |
| 2 | Defendant Wells Fargo Bank, N.A.'s Responses to Plaintiffs' First Set of Requests for Production | Vol. I, Pages 15-83 |
| 3 | Defendant Wells Fargo Bank, N.A.'s Supplemental Responses to Plaintiffs' First Set of Requests for Production | Vol. I, Pages 84-149 |
| 4 | Defendant Wells Fargo Bank, N.A.'s Second Supplemental Responses to Plaintiffs' First Set of Requests for Production | Vol. I, Pages 150-182 |
| 5 | Plaintiffs' First Set of Interrogatories | Vol. I, Pages 183-188 |
| 6 | Defendant Wells Fargo Bank N.A.'s Responses to Plaintiffs' First Set of Interrogatories | Vol. I, Pages 189-200 |
| 7 | Plaintiffs' March 21, 2025, Meet and Confer Letter to Defendant Wells Fargo Bank N.A. | Vol. I, Pages 201-204 |
| 8 | Defendant Wells Fargo Bank N.A.'s March 27, 2025, Meet and Confer Letter to Plaintiffs | Vol. I, Pages 205-207 |
| 9 | Plaintiffs' July 17, 2025, Meet and Confer Letter to Defendant Wells Fargo Bank N.A. | Vol. I, Pages 208-211 |
| 10 | Plaintiffs' and Defendant Wells Fargo Bank N.A.'s E-Mail Correspondence between Mach 17, 2025, and March 27, 2025 | Vol. I, Pages 212-220 |
| 11 | Plaintiffs' and Defendant Wells Fargo Bank N.A.'s E-Mail Correspondence between May 6, 2025, and August 8, 2025 | Vol. I, Pages 221-242 |

APPENDIX OF EXHIBITS TO PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:22-cv-00529-GMN-NJK

# EXHIBIT 1

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
apolk@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

Eric Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Iudis Sominskaia (pro hac vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
ids@classlawgroup.com

*Interim Co-Lead Counsel*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No. 2:22-cv-00529-GMN-NJK<br><br>Assigned for All Purposes to:<br>Hon. Gloria M. Navarro<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Barrett Henzel, Allan L Carso, Gary W. Lundin, Joshua Luekenga, Craig Rodney Michaelis, Bryce Kelly, Clint McDaniel, and Dan McDaniel, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), request that Defendant Wells Fargo Bank, N.A., ("Wells Fargo") produce documents responsive to these requests ("Requests"), including all non-identical copies, as they are kept in the usual course of business or labeled and organized to correspond with the categories of the Requests, within 30 days of

1

service, with responses to Daniel C. Girard, Esq., Girard Sharp LLP, 601 California Street, Suite 1400, San Francisco, CA 94108.

### DEFINITIONS

1.    "Account(s)" means the J&J Account(s), Beasley Account(s), and Personal Account(s).

2.    "Applicable Period" means November 1, 2016, through August 1, 2022.

3.    "Beasley" means Matthew Wade Beasley, along with any of his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

4.    "Beasley Accounts" means any and all accounts maintained by You and held by, for, in the name of, for the benefit of, or on behalf of, Beasley or the Beasley Entities as defined herein, including but not limited to the Interest on Lawyers' Trust Account ("IOLTA") account ending in 5598 and the business checking accounts ending in 5580 and 8898.

5.    "Beasley Entities" means Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Beasley.

6.    "Communication(s)" means the transmittal of information (in the form of acts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, text messages (whether by SMS, applications such as "WhatsApp," or otherwise), messages, instant messaging applications, notes, e-mails and memoranda, along with any attachments or enclosures thereto. The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

7.    "Concerning" shall mean relating to, referring to, in connection with, in respect of, describing, evidencing, or constituting.

8.    "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense. It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all

"documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered. Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so- called "erased" or "deleted" computer information that may be susceptible to retrieval.

9.    "J&J Accounts" means any and all accounts maintained by You and held by, for, in the name of, for the benefit of, or on behalf of, any or all of Judd and the J&J Entities as defined herein.

10.    "J&J Conspirators" means some or all of the following persons and entities, whether acting individually or collectively: the J&J Entities, the Beasley Entities, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC,  JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., and Monty Crew LLC.

11.    "J&J Conspirator Accounts" means any and all accounts maintained by You and held by, for, in the name of, for the benefit of, or on behalf of, any or all the J&J Conspirators.

12.    "J&J Entities" means J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors,

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO. 2:22-CV-00529-GMN-NJK

**Vol. 1, Page 4**

trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Judd.

13. "Judd" means Jeffrey J. Judd, along with any of his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

14. "Person" means any individual, corporation, partnership, joint venture, association, limited liability company, governmental agency, or other entity.

15. "Personal Account(s)" means any account, including but not limited to joint spousal accounts, maintained by You and held by, for, in the name of, for the benefit of, or on behalf of, Judd, Beasley, Christopher Ronn Humphries, Shane Michael Jager, Jason Myers Jongeward, Roland Tanner, Denny Seybert, and/or Anthony Michael Alberto, Jr., or any manager, member, officer or director of the J&J Entities or the Beasley Entities.

16. "Receiver" means Geoff Winkler, the receiver appointed by the Court in *SEC v. Beasley*, 2:22-cv-00612-JCM-EJY, and any of his attorneys, employees, agents, or representatives.

17. The terms "You," "Your," "Yours" or "Wells Fargo" mean Wells Fargo Bank, N.A. including its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf.

18. For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests for Production of Documents set forth herein (the "Request" or "Requests").

## INSTRUCTIONS

1. All Documents shall be identified by the Request(s) to which they are primarily responsive or be produced as they are maintained in the usual course of business.

2. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of a current or former employee, that were created during or that relate or refer to the Applicable Period, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, or web-based email systems such as Gmail, Yahoo, etc.

4

3.    You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, text messages (whether by SMS, applications such as "WhatsApp," or otherwise), intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing files, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

4.    Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

5.    Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

6.    Documents attached to each other should not be separated; separate Documents should not be attached to each other.

7.    Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO. 2:22-CV-00529-GMN-NJK

8.      If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request or part thereof, for each such Document, You must:

- Identify the type, title and subject matter of the Document;

- State the place, date, and manner of preparation of the Document;

- Identify all authors, addressees, and recipients of the Document, including information about such Persons to assess the privilege asserted; and

- Identify the legal privilege(s) and the factual basis for the claim.

9.      Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 8 above must be provided.

10.     To the extent a Document sought herein was at one time, but is no longer, in your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of. In each  instance, Identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, Identify each Person having knowledge of the circumstances of the disposition, and Identify each Person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests are to be identified and produced.

11.     These Requests do not seek, and expressly exclude, Suspicious Activity Reports (SARs) and any Document or portion thereof that indicates that a SAR was or was not filed.

**MANNER OF PRODUCTION**

1.      Documents shall be produced in the manner described in the operative ESI and Document Production Protocol, incorporated herein by reference.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.      Account opening Documents concerning the Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, including:

6

  i. Signature cards;

  ii. Deposit account agreements;

  iii. Wire transfer authorization agreements;

  iv. Funds transfer request authorizations;

  v. Post-account opening reviews;

  vi. Know Your Customer Documents (including those relating to client profiles and risk ratings);

  vii. Documentation on which transactions to expect; and

  viii. Customer Identification Program (CIP) Documents.

2. Account records concerning the Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, including:

  i. Monthly statements;

  ii. Historical account balance information;

  iii. Deposit slips;

  iv. Records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits);

  v. Records for and copies of checks, both deposited and drawn;

  vi. Records reflecting cash activity;

  vii. Insufficient funds reports and/or overdraft reports;

  viii. Weekly or monthly wire activity detail reports;

  ix. Weekly automated clearing house (or "ACH") transaction activity reports;

  x. Funds flow reports;

  xi. Written estimations of anticipated account activity and customer income source;

  xii. Administrative or custodial agreements between the holder of the Beasley Accounts and You; and

  xiii. Agreements or contracts concerning each Beasley Account, including with respect to fees related to or charged or waived.

7

3.      Documents and Communications concerning Beasley, Judd, or the J&J Conspirators predating the opening of the respective Beasley Accounts, the J&J Accounts, and the J&J Conspirator Accounts .

4.      Customer files concerning Beasley (and the Beasley Accounts), Judd (and the J&J Accounts), and the J&J Conspirators (and the J&J Conspirator Accounts).

5.      Documents sufficient to show and the identity and job titles of all personnel at the Wells Fargo branches located at 6585 N. Decatur Blvd., Las Vegas, NV,  2531 Anthem Village Drive, Henderson, NV, and 1985 E 7000 S Salt Lake City, UT.

6.      The personnel file of Virginia Arreola as well as any regional banking district manager, account manager, branch manager, service manager, personal banker, relationship manager, business relationship support associate or other similarly titled Wells Fargo employee with responsibilities at any time concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

7.      Policies and procedures (including employee training materials) concerning IOLTAs.

8.      Communications between or among Wells Fargo and the State Bar of Nevada (including any employee or representative thereof) concerning IOLTAs, Beasley, or the Beasley Accounts.

9.      Documents and Communications concerning interest accrued on the Beasley Accounts, including Documents and Communications relating to IOLTA remittance reports.

10.      Documents and Communications concerning Wells Fargo revenues or profits attributable to the Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts.

11.      Documents and Communications sufficient to show Wells Fargo employee incentives (financial or otherwise) relating to the amount of funds held in Wells Fargo accounts.

12.      Branch performance reports concerning revenues, profits, or the amount of funds in the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

13.      Compliance-related policies and procedures (including employee training materials) concerning Wells Fargo demand deposit accounts, including but not limited to "Know Your Customer" policies and procedures; Financial Industry Regulatory Authority ("FINRA") "Know Your Customer" requirements; account maintenance and monitoring regulations, 31 C.F.R. §§1020.220(a)(1),(2); account due diligence; Bank Secrecy Act requirements, 12 C.F.R. § 21.21; Federal Financial Institutions Council

(FFIEC) Bank Secrecy Anti Money Laundering Manual compliance; policies and procedures concerning transactional "red flags;" policies and procedures concerning the termination of account relationships; customer exit policies; and policies and procedures concerning wire transfers, electronic fund transfers, and check deposits and withdrawals; policies and procedures concerning risk evaluations and referrals.

14.    Documents and Communications concerning suspected or possible unlawful or improper account activity concerning Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Conspirators, or the J&J Conspirator Accounts.

15.    Documents and Communications concerning any risk assessment of Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

16.    Alerts, reports, and other Documents generated by or accessible from the "Actimize" banking activity monitoring system concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

17.    Alerts, reports, and other Documents generated by or accessible from any banking activity monitoring system other than Actimize (including without limitation Fiserv FraudLink and Radar World Check) concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

18.    Documents concerning software requirement specifications for Actimize or any other banking activity monitoring system used by Wells Fargo.

19.    Documents not otherwise requested identifying the systems and processes used by Wells Fargo in the ordinary course of business to identify potentially unlawful or improper banking activity.

20.    Balance Fluctuation Reports listing information relating to the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

21.    Documents and Communications not otherwise requested concerning any inquiry or investigation You undertook with respect to any Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts during the Applicable Period, including at or before account opening.

9

22.     Any electronic record or log showing each time a Wells Fargo employee accessed Wells Fargo's electronic systems in connection with a Beasley Account, a J&J Account, or a J&J Conspirator Account, including the time, date, branch, and location of such access.

23.     Wells Fargo surveillance videos showing external and internal locations on the dates and times Beasley visited any Wells Fargo branch office.

24.     Documents identifying all approved manners of internal communication and notation (including within Wells Fargo systems, email, and instant messaging) concerning Wells Fargo customers or accounts.

25.     Communications between or among Wells Fargo employees concerning Beasley or the Beasley Entities or transactional activity related thereto, including any notes or comments recorded in internal systems.

26.     Communications between or among Wells Fargo employees concerning Judd, the J&J Entities, or any of the J&J Conspirators, including any notes or comments recorded in internal systems.

27.     Communications between or among Wells Fargo and Beasley or the Beasley Entities.

28.     Communications between or among Wells Fargo and Judd, the J&J Entities, or any of the J&J Conspirators.

29.     Communications with any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, including but not limited to subpoenas or requests for information, concerning Beasley or the Beasley Accounts, including without limitation any governmental entity's requests for documents or information and Your response(s) thereto.

30.     Communications with any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, including but not limited to subpoenas or requests for information, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, including without limitation any governmental entity's requests for documents or information and Your response(s) thereto.

31.     Communications between or among Wells Fargo employees concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal

10

regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Beasley or the Beasley Accounts, and Documents relating thereto.

32.    Communications between or among Wells Fargo employees concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, and Documents relating thereto.

33.    Communications between or among Wells Fargo and any person not employed by Wells Fargo concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Beasley or the Beasley Accounts, and Documents relating thereto.

34.    Communications between or among Wells Fargo and any person not employed by Wells Fargo concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, and Documents relating thereto.

35.    Documents produced by You to a governmental entity (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or Receiver concerning Beasley or the Beasley Accounts.

36.    Documents produced by You to a governmental entity (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or Receiver concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

37.    Your Document retention protocols.

Dated: July 29, 2022                    By: /s/ Daniel C. Girard

Daniel C. Girard (pro hac vice)

11

Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
apolk@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

By: */s/ David K. Stein*
Eric Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Iudis Sominskaia (pro hac vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
eg@classlawgroup.com
ids@classlawgroup.com

By: */s/ Jason K. Kellogg*
Jeffrey C. Schneider (pro hac vice)
Jason K. Kellogg (pro hac vice)
Marcelo Diaz-Cortes (pro hac vice)
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Blvd.
Citigroup Center, 22nd Floor
Miami, FL 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789
jcs@lklsg.com
jk@lklsg.com
md@lklsg.com

By: */s/ Robert L. Brace*
Robert L. Brace (pro hac vice)
**LAW OFFICES OF ROBERT L. BRACE**
1807 Santa Barbara St.
Santa Barbara, CA 93101

12

Telephone: (805) 886-8458
rlbrace@rusty.lawyer

*Interim Co-Lead Counsel*

By: */s/ Miles N. Clark*
Miles N. Clark (NBN 13848)
**KNEPPER & CLARK LLC**
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
(702) 856-7430
miles.clark@knepperclark.com

*Liaison Counsel*

13

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO. 2:22-CV-00529-GMN-NJK

**Vol. 1, Page 14**

# EXHIBIT 2

Joseph G. Went
Nevada Bar No. 9220
Sydney R. Gambee
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702-669-4600
Fax: 702-669-4650
jgwent@hollandhart.com
srgambee@hollandhart.com

K. Issac deVyver (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
MCGUIREWOODS
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200
Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

*Attorneys for Wells Fargo Bank, N.A.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No. 2:22-cv-00529-GMN-NJK |
| | **DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** |

**PROPOUNDING PARTY:** **PLAINTIFFS BARRETT HENZEL, ALLAN L. CARSO, GARY W. LUNDIN, JOSHUA LUEKENGA, CRAIG RODNEY MICHAELIS, BRYCE KELLY, CLINT MCDANIEL, AND DAN MCDANIEL**

**RESPONDING PARTY:** **DEFENDANT WELLS FARGO BANK, N.A.**

**SET NO.:** **ONE**

Pursuant to Federal Rules of Civil Procedure 26 and 34, and by and through their undersigned counsel, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") responds to Plaintiffs' Barrett Henzel, Allan L. Carso, Gary W. Lundin, Joshua Luekenga, Craig Rodney Michaelis, Bryce Kelly, Clint McDaniel, And Dan McDaniel ("Plaintiffs") Requests for Production of Documents Set One ("Requests"), as follows:

<u>**PRELIMINARY STATEMENT AND OBJECTIONS TO**</u>

<u>**DEFINITIONS/INSTRUCTIONS**</u>

1.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf. It is, for example, unclear what would constitute someone "purporting to act on his behalf." Wells Fargo will interpret "Beasley" to refer to Matthew Wade Beasley alone.

2.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley Accounts" insofar as it includes Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including without limitation, Beasley. It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the Beasley Law Group, PC, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation. In Wells Fargo's responses and objections, "Beasley Accounts" means the accounts held in the name of Matthew Wade Beasley and Beasley Law Group alone.

3.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley Entities" insofar as it includes Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf. It is disproportionately burdensome to expect Wells Fargo to search for and produce information related to any employee that may every have worked at Beasley Law Group, PC, and it is also unclear what constitutes an

"associated or related" company. Wells Fargo will interpret "Beasley Entities" to refer to Beasley Law Group alone.

4. Wells Fargo objects to Plaintiffs' definition of "Communication(s)" as overbroad and disproportionality burdensome on Wells Fargo in that it purports to require Wells Fargo to search for and provide information about intangibles such as oral "acts" or "ideas" that are not rendered to writing. Rather, this appears to seek electronic information about any contact or attempted contact between two people, which would not be relevant or proportional to collect.

5. Wells Fargo objects to Plaintiffs' definition of "Document(s)" as overbroad and disproportionately burdensome on Wells Fargo. This definition specifically includes materials that are inherently burdensome to collect from such as "any on-site or off-site backup or so-called 'erased' or 'deleted' computer information that may be susceptible to retrieval," and Plaintiffs have made no showing of any such need. Wells Fargo will not search for information contained on backup media. Wells Fargo will define "Documents," including "electronically stored information," as that term is used in Rule 34 of the Federal Rules of Civil Procedure and, where it agrees to produce documents in response to these requests, Wells Fargo will conduct reasonable and proportional searches for relevant, responsive electronically stored information.

6. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Accounts" insofar as it includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors, trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf. It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation. Wells Fargo will identify below the nature and

scope of the searches it will conduct related to requests involving the "J&J Accounts" in response to the individual requests below, where appropriate.

7. Wells Fargo objects to Plaintiffs' overbroad definition of "Judd" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf. In Wells Fargo's responses and objections, "Judd" means Jeffrey J. Judd and does not include his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

8. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Conspirators" insofar as it is vague, overbroad, and disproportionately burdensome on Wells Fargo for requesting information related to "some or all" of dozens of individuals or entities. It is unduly burdensome and disproportional on Wells Fargo to require Wells Fargo to search for and produce information related to dozens of individuals or entities, some of which may have had tangential, if any, involvement in the matters at issue in this litigation. Wells Fargo will identify below the nature and scope of the searches it will conduct related to requests involving the "J&J Conspirators" in response to the individual requests below, where appropriate.

9. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Conspirator Accounts" as described above in its objection to Plaintiffs' definition of "J&J Conspirators." Moreover, it is unduly burdensome and disproportional on Wells Fargo to require Wells Fargo to search for and produce information related to any account held by dozens of individuals or entities, some of which may have had tangential, if any, involvement in the matters at issue in this litigation. Wells Fargo will identify below the nature and scope of the searches it will conduct related to requests involving the "J&J Conspirator Accounts" in response to the individual requests below, where appropriate.

10. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Entities" insofar as it includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors, trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Judd. It is overbroad and

disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation Wells Fargo will identify below the nature and scope of the searches it will conduct related to requests involving the "J&J Entities" in response to the individual requests below, where appropriate.

11.    Wells Fargo objects to the definition of "Personal Account(s)" as vague, overbroad, and disproportionately burdensome on Wells Fargo as it seeks information related to any account held by the "manager, member, officer or director" of a number of different entities without defining who those specific entities or individuals would be. Wells Fargo will interpret this to refer to Judd, Beasley, Christopher Ronn Humphries, Shane Michael Jager, Jason Myers Jongeward, Roland Tanner, Danny Seybert, and/or Anthony Michael Alberto alone.

12.    Wells Fargo objects to the terms "You," "Your," "Yours," and Wells Fargo as vague, overly broad, and disproportionately burdensome on Wells Fargo in that it purports to also seek information related to Wells Fargo's "present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf."  Wells Fargo will interpret this Request to refer to Wells Fargo Bank, N.A. alone.

13.    Wells Fargo objects to Instruction 2 as vague, overbroad, and disproportionately burdensome on Wells Fargo in that it seeks documents in the control of former employees that no longer have a relationship with Wells Fargo, as well as documents that "relate" or "refer" to the Applicable Time Period rather than just those that were created during that time period. Wells Fargo will search for documents from Wells Fargo Bank, N.A. and its current employees to the extent Wells Fargo otherwise agrees to do so in response to a particular request.

14.    Wells Fargo objects to Instruction 3 as overbroad, unduly burdensome, and disproportional in that it specifically requests that Wells Fargo produce deleted documents, which is unreasonable and disproportionate to the case. Wells Fargo also does not agree to search for or

produce information from backup tapes. Wells Fargo will search for and produce information from Wells Fargo Bank, N.A.'s current systems and employees to the extent Wells Fargo otherwise agrees to do so in response to a particular request below.

15. Wells Fargo objects to Instruction 4 as overly broad, unduly burdensome, and disproportionate to the extent it seeks "original" documents and duplicates that are "bound or stapled in the same manner as the original." Wells Fargo will produce its documents as kept in the ordinary course of business as required by the Federal Rules of Civil Procedure.

16. Wells Fargo objects to instruction 5 as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks all documents that "mention, discuss, refer to, explain, or concern one or more" documents that are otherwise sought for in the Requests, as well as documents that "accompany" anything else sought in the Requests. Wells Fargo could not reasonably search for or produce all such documents that may relate or discuss another responsive document that Wells Fargo agrees to produce. Wells Fargo does not agree to search for or produce documents in response to this instruction.

17. Wells Fargo objects to Instructions 6 and 7 insofar as they seek attachments, linked Documents, or appendices outside of custodial files. Wells Fargo will produce family members, including embedded documents, from its custodial collections.

18. Wells Fargo objects to Instruction 8 as it purports to require more from Wells Fargo to prepare a privilege log than the requirements set forth in the Federal Rules of Civil Procedure. Wells Fargo will produce a privilege log that identifies information withheld on the basis of privilege created before the Complaint was filed in this matter that provides sufficient information for Plaintiffs to evaluate the nature of the claim.

19. Wells Fargo objects to Instruction 9 as it would prevent Wells Fargo from redacting documents for other types of privilege, like the Bank Examination Privilege, relevance, and/or confidentiality, which information Wells Fargo is either not obligated to produce or is specifically prohibited from producing by applicable law. It would also be disproportionately burdensome on Wells Fargo to require Wells Fargo to log every redaction made for any reason other than privilege,

such as PII redactions.  To the extent Wells Fargo withholds information by redactions, the text of the redaction will make clear the basis for withholding the information.

20.    Wells Fargo objects to Instruction 10 because it imposes obligations beyond those required by the Federal Rules of Civil Procedure and the Court's Orders. Specifically, Wells Fargo objects to providing information regarding every document deleted or destroyed during the ordinary course of business and before litigation was anticipated, as it is not feasible to do so, Wells Fargo had no duty to retain materials prior to anticipating litigation, and providing such information imposes an undue burden, is disproportionate, and is not relevant to a claim or defense. Wells Fargo will not search for or produce information in response to this instruction.

21.    Wells Fargo objects to Plaintiffs' manner of production, as there is no operative ESI Protocol in place.  If an agreed ESI protocol is entered, Wells Fargo will produce in the format required by the agreed ESI protocol.  If no agreed ESI protocol is entered, Wells Fargo will produce electronically stored information in the following format, which is a reasonably useable format, pursuant to Rule 34(b)(2)(E)(ii):

1.  Single page TIFF images

2.  A Concordance .DAT file that contains the following fields, where available in the native application:

Custodian
AllCustodians
BegBates
EndBates
BegAttach
EndAttach
Author
Date and Time Created
Date and Time Last Modified
Date and Time Sent
Email From
Email To
Email CC
Email BCC
Email Subject
File Name
Native File Path (only for Excel spreadsheets)
Text File Path

Md5Hash

3. Opticon Image Load File

4. Extracted text in a document level .txt file for non-redacted documents that were originally kept in electronic form and where extracted text is available and OCR in a document level .txt file for redacted documents or non-redacted documents that do not contain extracted text.

5. Native links will be provided for Excel documents with a TIFF placeholder.

6. All productions of documents originally maintained in hard copy or image format will be in the following format:

    a.  Single page TIFF images

    b.  A Concordance .DAT file that contains the following fields:

       BegBates
       EndBates
       BegAttach
       EndAttach
       Custodian

Productions from databases or applications may be in different, such as native Excel or another reasonably useable format depending on the database.

22.  Wells Fargo began producing documents responsive to these requests on October 7, 2022, and it will provide rolling productions until the end of the document discovery period.

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Account opening Documents concerning the Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, including:

 i. Signature cards;

 ii. Deposit account agreements;

 iii. Wire transfer authorization agreements;

 iv. Funds transfer request authorizations;

 v. Post-account opening reviews;

 vi. Know Your Customer Documents (including those relating to client profiles and

  risk ratings);

 vii. Documentation on which transactions to expect; and

 viii. Customer Identification Program (CIP) Documents.

**RESPONSE TO REQUESTS FOR PRODUCTION NO. 1:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "Know Your Customer" and "Customer Identification Program (CIP)" are not defined and subject to various interpretations as to their meaning.

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, which Wells Fargo objects to for the reasons stated in its objections to the definitions. Wells Fargo further objects to this Request as vague and ambiguous because the term "Judd Accounts" is not defined. In responding to this Request, "Judd Accounts" means those accounts in the name of Jeffrey Judd. This Request is also vague insofar as it seeks "Documentation on which transactions to expect," which does not specify the categories of information sought with sufficient particularity to allow Wells Fargo to search for or produce information in response to this portion of the Request.

Wells Fargo further objects to the Request as not relevant nor proportional to the needs of

this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive in scope by targeting dozens of accounts, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties, particularly at this stage of the litigation before the Court has ruled on Wells Fargo's pending motion to dismiss Plaintiffs' complaint.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo agrees to produce (1) signature cards, (2) deposit account agreements, (3) monthly statements, (4) deposit slips, (5) withdrawal slips (6) records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits), and (7) records for and copies of checks in Response to Requests Nos. 1 and 2 for the accounts identified in Wells Fargo's June 16, 2022 Certified Statement in *SEC v. Matthew Beasley et. al.*, No 2:22-cv-00612. Wells Fargo began a rolling production on October 7, and will continue rolling productions until the close of the discovery period.

**REQUEST FOR PRODUCTION NO. 2:**

Account records concerning the Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, including:

    i. Monthly statements;

    ii. Historical account balance information;

iii. Deposit slips;

iv. Records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits);

v. Records for and copies of checks, both deposited and drawn;

vi. Records reflecting cash activity;

vii. Insufficient funds reports and/or overdraft reports;

viii. Weekly or monthly wire activity detail reports;

ix. Weekly automated clearing house (or "ACH") transaction activity reports;

x. Funds flow reports;

xi. Written estimations of anticipated account activity and customer income source;

xii. Administrative or custodial agreements between the holder of the Beasley Accounts and You; and

xiii. Agreements or contracts concerning each Beasley Account, including with respect to fees related to or charged or waived.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, which Wells Fargo objects to for the reasons stated in its objections to the definitions. Wells Fargo further objects to this Request as vague and ambiguous because the term "Judd Accounts" is not defined.  In responding to this Request, "Judd Accounts" means those accounts in the name of Jeffrey Judd.

Wells Fargo further objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive in scope by targeting dozens of accounts, *without any temporal limitation*, and imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Wells Fargo objects on the basis that this Request seeks production of confidential,

business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo agrees to produce (1) signature cards, (2) deposit account agreements, (3) monthly statements, (4) deposit slips, (5) withdrawal slips (6) records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits), and (7) records for and copies of checks in Response to Requests Nos. 1 and 2 for the accounts identified in Wells Fargo's June 16, 2022 Certified Statement in *SEC v. Matthew Beasley et. al.*, No 2:22-cv-00612. Wells Fargo began a rolling production on October 7 and will continue producing documents on a rolling basis until the close of the discovery period.

**REQUEST FOR PRODUCTION NO.3:**

Documents and Communications concerning Beasley, Judd, or the J&J Conspirators predating the opening of the respective Beasley Accounts, the J&J Accounts, and the J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO.3:**

Wells Fargo objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive in scope because it seeks Documents and Communications about more than 40 individuals or businesses, *without any temporal limitation*, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of J&J Conspirators, Beasley Accounts, the J&J Accounts, the J&J Conspirator Accounts, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential,

business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Subject to the foregoing objections Wells Fargo responds as follow: Wells Fargo will search the custodial files of Erin Connelly, Justin Rollins, Virginia de la Torre, Vanessa Duran, Amber Dahlhaus, and Stephen Nelson for the period November 1, 2016 through March 21, 2022, and will search for documents related to Wells Fargo's relationship with Matthew Beasley, the Beasley Law Group, Jeffrey Judd, J&J Consulting Services, Inc., J&J Consulting Services, Inc., and J and J Purchasing LLC. Wells Fargo intends to use search terms to identify potentially responsive records from those files, and Wells Fargo will disclose those search terms to Plaintiffs within a reasonable time of finalizing those terms. Beyond these searches, Wells Fargo will not conduct additional searches for documents responsive to this Request on the basis of its objections.

**REQUEST FOR PRODUCTION NO. 4:**

Customer files concerning Beasley (and the Beasley Accounts), Judd (and the J&J Accounts), and the J&J Conspirators (and the J&J Conspirator Accounts).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Wells Fargo objects to the Request as not proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive is scope by targeting dozens of accounts, *without any temporal limitation*, regardless of the subject matter, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions. Wells Fargo also objects to this Request as vague given that Plaintiffs do not define what categories of information they seek in "Customer Files."

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege in light of the fact that the term "customer file" is undefined and vague and may encompass privileged information included in such a file, like information generated or provided by attorneys.

In response to this Request, Wells Fargo agrees to produce (1) signature cards, (2) deposit account agreements, (3) monthly statements, (4) deposit slips, (5) withdrawal slips (6) records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits), and (7) records for and copies of checks that it is also producing in Response to Requests Nos. 1 and 2 for the accounts identified in Wells Fargo's June 16, 2022 Certified Statement in *SEC v. Matthew Beasley et. al.*, No 2:22-cv-00612. Further, Wells Fargo will search for additional documents across custodians identified in Request No. 3. Wells Fargo began a rolling production on October 7 and will continue this production until complete.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to show and the identity and job titles of all personnel at the Wells Fargo branches located at 6585 N. Decatur Blvd., Las Vegas, NV, 2531 Anthem Village Drive, Henderson, NV, and 1985 E 7000 S Salt Lake City, UT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Wells Fargo objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive in scope by seeking information regarding *every* current or former employee at the Wells Fargo branch located at 6585 N. Decatur Blvd., Las Vegas, NV, at 2531 Anthem Village Drive, Henderson, NV, and at 1985 E 7000 S. Salt Lake City, UT, regardless of whether they ever interacted with Beasley, Judd, or any other J&J Conspirator, and *without any temporal limitation*. Thus, the Request imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties, including employees and former employees, and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo further objects to this Request on grounds that it seeks the personal, confidential, and private information of its present and former employees and/or third parties, which information is protected by a right to privacy under applicable state and/or federal law, which Wells Fargo is not authorized to waive. There is no reason to disclose such irrelevant and immaterial information when weighed against the interests of Wells Fargo and/or other parties, and Plaintiffs have not made any showing establishing a right to obtain such information. Responsive documents are being withheld on the basis of this objection.

Wells Fargo does not agree to search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 6:**

The personnel file of Virginia Arreola as well as any regional banking district manager, account manager, branch manager, service manager, personal banker, relationship manager,

business relationship support associate or other similarly titled Wells Fargo employee with responsibilities at any time concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Wells Fargo objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive is scope by seeking the personnel file for Virginia Arreola, as well as *"any"* regional banking district manager, account manager, branch manager, service manager, personal banker, relationship manager, business relationship support associate or other similarly titled Wells Fargo employee with responsibilities "*at any time"* concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, *without any temporal limitation*, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. It would be a disproportional burden on Wells Fargo to force Wells Fargo to search for every employee that may ever have interacted with one of the dozens of accounts that Plaintiffs have sought information for, and then to provide the personnel files for those individuals. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the ground that the Request is vague and ambiguous, in that the term "personnel file" is not defined and is therefore subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties, including employees and former employees, and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as

appropriate.

Wells Fargo further objects to this Request on grounds that it seeks the personal, confidential, and private information of its present and former employees and/or third parties which is protected by a right to privacy under applicable state and/or federal law, which Wells Fargo is not authorized to waive, there is no reason to disclose such irrelevant and immaterial information when weighed against the interests of Wells Fargo and/or other parties, and Plaintiffs have not made any showing establishing a right to obtain such information. Responsive documents are being withheld on the basis of this objection.

Wells Fargo does not agree to search for produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 7:**

Policies and procedures (including employee training materials) concerning IOLTAs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. Because there is no time limitation, the Requests unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *See Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought "any and all" documents without a time limitation). Moreover, as drafted, this would necessarily include any email that was every sent to any one of the thousands of Wells Fargo employees that may have referenced a policy or procedure relating to IOLTAs, as well as any email updates to such policies.

On scope, this Request is overly expansive by seeking all policies and procedures merely *"concerning"* IOLTA accounts and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Additionally, Plaintiffs fail to identify the specific aspects of "IOLTA" account

17

obligations they request Wells Fargo produce that are relevant to the allegations in support of their claims. Thus, as drafted, this Request would encompass all e-mails and irrelevant policies and procedures that have any impact on IOLTA accounts which, for example, would include policies and procedures governing all depository accounts. Such a request is unreasonable and overbroad. *Krause v. Nev. Mut. Ins. Co.*, No. 2:12-CV-00342-JCM, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014) ("[T]he scope of discovery is not without limits…courts must regulate the breadth of sweeping or contentious discovery."); *Voggenthaler v. Maryland Square, LLC*, No. 2:08-CV-01618-RCJ, 2011 WL 112115, at *8 (D. Nev. Jan. 13, 2011), *on reconsideration in part*, No. 1:08-CV-L618-RCJ-GWF, 2011 WL 902338 (D. Nev. Feb. 28, 2011) ("Discovery should be controlled to "prevent 'fishing expeditions' or an undirected rummaging through bank books and records for evidence of some unknown wrongdoing."), Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, and sensitive business information. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 8:**

Communications between or among Wells Fargo and the State Bar of Nevada (including

18

any employee or representative thereof) concerning IOLTAs, Beasley, or the Beasley Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Wells Fargo objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Instead, they seek every communication that any member of Wells Fargo may ever have had with respect to any IOLTA account, regardless of whether those communications have anything to do with the matters at issue in this litigation. Additionally, this Request is overly expansive is scope by seeking *every* communication between Wells Fargo and the Nevada State Bar *generally*, regardless of whether the communication has any relevance to the parties in this case. Further, this document is overly expansive on time as there is *no temporal limitation*. As such, this Request imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek from Wells Fargo in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 9:**

Documents and Communications concerning interest accrued on the Beasley Accounts, including Documents and Communications relating to IOLTA remittance reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Wells Fargo objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive is scope by seeking all "Documents and Communications concerning interest accrued on the Beasley Accounts . . ." *without a temporal limitation*, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo agrees to produce account statements for the accounts identified in Wells Fargo's June 16, 2022 Certified Statement in *SEC v. Matthew Beasley et. al.*, No. 2:22-cv-00612, which Wells Fargo already agreed to produce in response to Requests Nos. 1 and 2. Wells Fargo does not agree to search for or produce additional documents.

**REQUEST FOR PRODUCTION NO. 10:**

Documents and Communications concerning Wells Fargo revenues or profits attributable to the Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous,

in that the terms "revenues" and "profits" are not defined and subject to various interpretations as to its meaning. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for the production of information not relevant to the claims or defenses in the litigation and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive because it seeks Documents and Communications about more than 40 individuals or businesses, *without any temporal limitation*, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, Plaintiffs' Request is not narrowly tailored or limited because it seeks *all* "Documents and Communications concerning Wells Fargo revenues or profits attributable to the Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts" which includes documents that have no relation to the aiding and abetting claims, or other claims, at issue or the allegations in Plaintiffs' Complaint. _Strohmeyer v. Belanger_, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing _Crawford–El v. Britton_, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); _Guerrero v. Wharton_, No. 216CV01667GMNNJK, 2017 WL 7314240, at *5 (D. Nev. Mar. 30, 2017) ("As a rule, requests for 'any and all' documents or communications are facially overbroad.") (citing _Gopher Media, LLC v. Spain_, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020). _Morrison v. Quest Diagnostics Inc._, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (finding document requests "entirely overbroad" because it sought the "the entirety of your file" on an individual).

Further, the phrase "attributable to" is vague and overbroad. Indeed, this Request is disproportional to the needs of the case, and there is nothing to indicate that Plaintiffs need this information adequately support their claims in this case. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. Since there is no time limitation, the Request unreasonably asks Wells Fargo to search for documents

dating back to Wells Fargo's initial formation. *See Casun Inv., A.G. v. Ponder*, No. 216CV02925JCMGWF, 2017 WL 3925417, at *4 (D. Nev. Sept. 6, 2017) ("Generally, a discovery request without any temporal or other reasonable limitation is objectionable on its face as overly broad.") (citing *Sanchez Ritchie v. Sempra Energy*, 2015 WL 12914435, at *2 (S.D. Cal. March 30, 2015); *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought "any and all" documents without a time limitation); *Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (same).

Wells Fargo further objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo does not agree to search for or produce documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 11:**

Documents and Communications sufficient to show Wells Fargo employee incentives (financial or otherwise) relating to the amount of funds held in Wells Fargo accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the term "incentives" is not defined and subject to various interpretations as to its meaning, including in particular what would constitute a non-financial incentive. Further, this Request includes Plaintiffs' overbroad definition of "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses and will impose an undue

burden on Wells Fargo that outweighs any benefit to the parties. In particular, the Request seeks information related to unspecified "funds" in unspecified Wells Fargo accounts. On scope, Plaintiffs' Request is not narrowly tailored because it is not limited to specific employees or the accounts at issue and seeks documents and communication that do not have any relation to the claims or defenses at issue in the complaint. *Russo v. Lopez*, No. 2:11-CV-00284-PMP, 2012 WL 1463591, at *1 (D. Nev. Apr. 27, 2012) (Discovery does "not permit a party to sweepingly request all documents of a certain type to ensure that nothing relevant is left out."); *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594 (D. Nev. 2016) (finding document request was overbroad because it sought "all" medical files). Indeed, this Request is disproportional to the needs of the case, and there is nothing to indicate that Plaintiffs need this information adequately support their theory that Wells Fargo allegedly aided and abetted the Ponzi scheme.

On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *See Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it did not include a time limitation); *Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (same).

Wells Fargo further objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo does not agree to search for or produce documents on the basis of these objections

**REQUEST FOR PRODUCTION NO. 12:**

Branch performance reports concerning revenues, profits, or the amount of funds in the

Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "performance reports," "revenues" and "profits" are not defined and subject to various interpretations as to its meaning. *Walker v. N. Las Vegas Police Dep't*, No. 214CV01475JADNJK, 2016 WL 8732300, at *3 (D. Nev. May 13, 2016) ("[C]ourts in the District of Nevada make clear that search terms must be "narrowly tailored to particular issues" and that "[i]ndiscriminate terms, such as a defendant's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.").

Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. *See e.g.*, *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought "any and all" documents without a time limitation); *Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (same).

On scope, the Request is not narrowly tailored or limited because it seeks all performance reports *"concerning"* the "Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts," which will encompass documents that do not have any relevance to the claims or defenses at issue in the complaint. *See Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D 495 (D. Nev. 2016) ("courts have the duty to pare down overbroad discovery requests."). Any revenues or profits of a branch does not establish that Wells Fargo had actual knowledge of, or substantially assisted with, the alleged Ponzi scheme.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek from Wells Fargo in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request.

Wells Fargo further responds that it has already produce documents showing the amount of funds in these accounts in response to Requests Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 13:**

Compliance-related policies and procedures (including employee training materials) concerning Wells Fargo demand deposit accounts, including but not limited to "Know Your Customer" policies and procedures; Financial Industry Regulatory Authority ("FINRA") "Know Your Customer" requirements; account maintenance and monitoring regulations, 31 C.F.R. §§ 1020.220(a)(1),(2); account due diligence; Bank Secrecy Act requirements, 12 C.F.R. § 21.21; Federal Financial Institutions Council (FFIEC) Bank Secrecy Anti Money Laundering Manual compliance; policies and procedures concerning transactional "red flags;" policies and procedures concerning the termination of account relationships; customer exit policies; and policies and procedures concerning wire transfers, electronic fund transfers, and check deposits and withdrawals; policies and procedures concerning risk evaluations and referrals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Wells Fargo objects to this Request on the basis that the terms "Know Your Customer,"

"due diligence," "red flags," and "risk evaluations and referrals" are vague, ambiguous, and undefined.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On subject matter, the Request seeks all policies and procedures that relate to approximately thirteen different topics, any one of which could encompass voluminous results. On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation.).

On scope, the inclusion of "employee training materials" is overbroad, particularly as the Request seeks documents regarding a variety of different categories (*i.e.*, deposit accounts, account maintenance, account monitoring, account due diligence, account terminations, "red flags," risk evaluations, etc.), and does not specify which Wells Fargo employees it is referencing. A majority of the training materials regarding these topics will have no relevance to the claims and defenses at issue in this case. Similarly, the inclusion of policies and procedures concerning the termination of account relationships and customer exit policies is overbroad and irrelevant. These policies have no relevance to the claims or defenses at issue in this case. There are no allegations of, or claims related to, termination of customer accounts by Wells Fargo; thus, this Request calls for the production of information that imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Further, Plaintiffs fail to identify the specific aspects of "Know Your Customer" obligations they request Wells Fargo produce that are directly relevant to the allegations in support of their aiding and abetting (among other) claims. For instance, Plaintiffs cite to 31 C.F.R. § 1022.220(a)(2), which identifies the information that a "bank must obtain, at minimum, . . . from

the customer" including name, date of birth for individuals, address, and identification number. Yet, Plaintiffs' complaint does not allege any facts asserting that Wells Fargo failed to obtain this information, or that the information it allegedly did obtain on these specific data points were indicative of fraud. Without any allegations implicating these "Know Your Customer" obligations or identifying the specific facets of Wells Fargo's anti-money laundering compliance program that it allegedly failed to comply with, and without limiting the scope of the Request to any particular accounts, the requested information is not relevant to Plaintiffs' claims in this case and will impose an undue burden on Wells Fargo that outweighs any benefit to the Parties. *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-CV-00342-JCM, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014) ("[T]he scope of discovery is not without limits… courts must regulate the breadth of sweeping or contentious discovery."); *Randolph v. Gittere*, No. 308CV00650LRHCLB, 2020 WL 2572532, at *2 (D. Nev. May 20, 2020) ("[C]ourts do not allow a petitioner to "use federal discovery for fishing expeditions to investigate mere speculation." (quoting *Calderon v. United States Dist. Ct. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)).

Wells Fargo also objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Indeed, Wells Fargo's internal procedures are proprietary and highly confidential, and given their sensitivity it would be disproportionately harmful on Wells Fargo to produce policies that are not narrowly tailored and are otherwise irrelevant to the matters at issue in this litigation.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as

some of these policies and procedures may reflect the legal advice of Wells Fargo's attorneys regarding the method and procedures used to respond to particular situations covered by those policies.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 14:**

Documents and Communications concerning suspected or possible unlawful or improper account activity concerning Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Conspirators, or the J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "suspected or possible unlawful or improper account activity" is not defined and subject to various interpretations as to its meaning. *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive because it seeks Documents and Communications about more than 40

individuals or businesses, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See e.g.*, *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it did not include a time limitation); *Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (same). On scope, the Request is not narrowly tailored or limited because it seeks all documents and communications regarding *any* possible "unlawful or improper account activity" related to dozens of accounts, which will encompass documents that do not have any relevance to Plaintiffs' claims in the complaint. *Guerrero v. Wharton*, No. 216CV01667GMNNJK, 2017 WL 7314240, at *5 (D. Nev. Mar. 30, 2017) ("As a rule, requests for 'any and all' documents or communications are facially overbroad.") (citing *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020)).

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo legal counsel may have been involved in responding to any allegations of improper activity in the referenced accounts.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo

29

anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 15:**

Documents and Communications concerning any risk assessment of Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the term "risk assessment" is not defined and subject to various interpretations as to its meaning. *See e.g.*, *Sinanyan v. Luxury Suites Int'l*, LLC, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. For example, on scope, Plaintiffs' Request is not narrowly tailored or limited because it seeks all "Documents and Communications concerning *any* risk assessment . . ." and includes documents which may not have any relation to the claims at issue or the allegations in Plaintiffs' complaint. It is overly expansive in scope by targeting dozens of entities, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. On time, Plaintiffs have made no attempt to limit the time and scope of this Request. There is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No.

214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation.); *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (same).

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. section 5318, pursuant to 12 C.F.R. section 21.11, 31 C.F.R. section 103.18, 31 U.S.C. section 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as this Request could encompass communications with Wells Fargo's legal counsel seeking or providing advice with respect to these accounts.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 16:**

Alerts, reports, and other Documents generated by or accessible from the "Actimize" banking activity monitoring system concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

31

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," and "investigation files" are not defined and subject to various interpretations as to their meaning. *See, e.g.*, *Sinanyan v. Luxury Suites Int'l*, LLC, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought "any and all" documents without a time limitation).

On scope, this Request is overly expansive by seeking all alerts and reports generated by "Actimize" regarding more than 40 individuals or businesses and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence."). The Request is also overbroad and overly expansive in that it seeks information concerning "any related investigation files."

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo's legal counsel may have been involved in any investigation into or about the accounts alleged to be at issue in this litigation.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 17:**

Alerts, reports, and other Documents generated by or accessible from any banking activity monitoring system other than Actimize (including without limitation Fiserv FraudLink and Radar World Check) concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," "banking activity monitoring system" and "any related

investigation files" are not defined and subject to various interpretations as to its meaning. *See e.g.*, *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought "any and all" documents without a time limitation).

On scope, this Request is overly expansive by seeking all "[a]lerts, reports, and other Documents generated by or accessible from any banking activity monitoring system. . ." for more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence.").

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R.

§21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as it would necessarily include any documents by or communications with members of Wells Fargo's legal department.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 18:**

Documents concerning software requirement specifications for Actimize or any other banking activity monitoring system used by Wells Fargo.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "software requirement" and "banking activity monitoring system" are not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the

term "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it did not include a time limitation).

On scope, this Request is overly expansive by seeking all "Documents concerning software requirement specifications" for *any* Wells Fargo banking monitoring system and imposes a burden on Wells Fargo that outweighs any benefit to the parties. And it is not clear how software requirements for Wells Fargo bank monitoring system have any relation to the claims or defenses in the complaint. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*." (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998).

Wells Fargo objects to this Request on the basis that it is improper "discovery on discovery." There is no claim or defense in this action related to Wells Fargo's "software requirement specifications for Actimize or any other banking activity monitoring system used by Wells Fargo," so this request seeks information that is completely unrelated to any claims or defenses.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates

confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 19:**

Documents not otherwise requested identifying the systems and processes used by Wells Fargo in the ordinary course of business to identify potentially unlawful or improper banking activity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrases "not otherwise requested identifying the systems and processes" and "unlawful or improper banking activity" are not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive). Further, this Request includes Plaintiffs' overbroad definition of "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought "any and all" documents without a time limitation). Additionally, such information is highly confidential.

On scope, this Request is overly expansive by seeking all documents identifying "systems and processes" Wells Fargo uses to identify *any* potentially unlawful activity and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, as drafted, this Request seeking information regarding unlawful actives that have *no relation* to Plaintiffs' allegations in this case (*i.e.* are unrelated to the Ponzi scheme). *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly.*") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998).

Wells Fargo objects to this Request on the basis that it is improper "discovery on discovery." There is no claim or defense in this action related to Wells Fargo's "systems and processes used by Wells Fargo in the ordinary course of business to identify potentially unlawful or improper banking activity," so this Request seeks information that is completely unrelated to any claims or defenses.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

Wells Fargo objects to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of its objections.

**REQUEST FOR PRODUCTION NO. 20:**

Balance Fluctuation Reports listing information relating to the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous,

in that the term "Balance Fluctuation Reports" is not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive); *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. Since there is no time limitation, it unreasonably asks Wells Fargo to search for documents dating back to Wells Fargo's initial formation. *Guillen v. B.J.C.R. LLC*, 341 F.R.D. 61, 71 (D. Nev. 2022) (objection to discovery request sustained as overbroad because it sought "any and all" documents without a time limitation).

On scope, this Request is overly expansive by seeking all "Balance Fluctuation Reports" relating to the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, which includes more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. This Request, seeking "Balance Fluctuation Reports" for dozens of accounts, would include documents that are not relevant to the Plaintiffs' claims in this case. *See Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998).

Wells Fargo agreed to produce monthly statements in response to Requests Nos. 1, 2, and

39

4. These monthly statements contain daily ending balance information. Regarding any additional information Plaintiffs seek in response to this Request, Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims, cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 21:**

Documents and Communications not otherwise requested concerning any inquiry or investigation You undertook with respect to any Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts during the Applicable Period, including at or before account opening.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "Documents and Communications not otherwise requested" and the terms "inquiry" and "investigation" are not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive); *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is extremely overbroad in scope, calls for production of information not relevant to the claims or defenses, and will impose an undue

burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the scope of this Request and is overly expansive by seeking all "inquiries and investigations" relating to *any* Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, which consists of more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, as drafted, this Request seeking documents and communications for dozens of accounts, and would include documents that are not relevant to Plaintiffs' claims in this case. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, 'not reasonably calculated to lead to the discovery of admissible evidence.'").

Wells Fargo objects to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. § 103.18, 31 U.S.C. §5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as the broad scope of the request above would necessarily include any documents created by or communications with a member of Wells Fargo's legal team or outside counsel team relating to an investigation into the allegations underlying this matter.

Wells Fargo invites Plaintiffs to meet and confer about the underlying information they seek in this Request, including how it can be narrowly tailored to Plaintiffs' allegations and claims,

41

cover a reasonable time frame, and mitigate the burden imposed on Wells Fargo. Wells Fargo anticipates it will be able to provide a supplemental response and produce documents responsive to this Request within thirty (30) days of the parties reaching an agreement on the parameters of this Request. Until that meet and confer occurs, Wells Fargo does not agree to search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 22:**

Any electronic record or log showing each time a Wells Fargo employee accessed Wells Fargo's electronic systems in connection with a Beasley Account, a J&J Account, or a J&J Conspirator Account, including the time, date, branch, and location of such access.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "Any electronic record or log" and "electronic systems" are not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See, e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive); *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous).

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. *Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation.). On scope, the Request carte blanche seeks a log showing *every single instance* where any employee at Wells Fargo, at any time, accessed a Wells Fargo system in

42

connection with a Beasley Account, a J&J Account, or a J&J Conspirator Account, which consists of dozens of accounts. This Request has no relation to the claims or defenses in this litigation, and such a search would impose an undue burden on Wells Fargo that outweighs any benefit to the parties. The simple fact that any employee may have accessed a Wells Fargo system in connection with one of the accounts has no bearing on the matters at issue here.  Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo does not agree to search for or produce documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 23:**

Wells Fargo surveillance videos showing external and internal locations on the dates and times Beasley visited any Wells Fargo branch office.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation).

On scope, the Request seeks video surveillance footage of *every time* Beasley visited *any* Wells Fargo branch. It would be a disproportional and undue burden on Wells Fargo to attempt to identify every single instance in which Beasley may have gone to or visited any Wells Fargo branch at any geographic location at any time and then search for and produce any videos associated with those dates and locations.  This Request does not relate in any way to the allegations or claims asserted in the complaint. Indeed, there are no claims or allegations that

Beasley engaged in potentially illicit activity related to the alleged Ponzi scheme every time he was physically present at a branch, and it is not clear how surveillance footage would help Plaintiffs support their claims and allegations in the complaint.

Wells Fargo does not agree to search for or produce documents on the basis of the objections stated above.

**REQUEST FOR PRODUCTION NO. 24:**

Documents identifying all approved manners of internal communication and notation (including within Wells Fargo systems, email, and instant messaging) concerning Wells Fargo customers or accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period Plaintiffs seek this information for. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request does not relate in any way to the allegations or claims asserted in the complaint.  Indeed, what constitutes an "approved" manner of communication will not provide any assistance to Plaintiffs in resolving the claims at issue in this case, and it would otherwise be disproportional and unduly burdensome on Wells Fargo to identify all such documents related to customer or account communication policies or procedures.  Further, this Request includes Plaintiffs' overbroad definition of "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is improper "discovery on discovery." There is no claim or defense in this action related to Wells Fargo's "software requirement specifications for Actimize or any other banking activity monitoring system used by

Wells Fargo," so this Request seeks information that is completely unrelated to any claims or defenses.

Wells Fargo does not agree to search for or produce documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 25:**

Communications between or among Wells Fargo employees concerning Beasley or the Beasley Entities or transactional activity related thereto, including any notes or comments recorded in internal systems.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Wells Fargo objects to the Request as not proportional to the needs of this case. In particular, Plaintiffs' Request for all "Communications between or among Wells Fargo employees" about Beasley or the Beasley Entities—or any transactional activity relate thereto—could conceivably encompass every communication and every internal report Wells Fargo has ever produced referencing these individuals and entities, without any limitation to a reasonable number of custodians within Wells Fargo. Plaintiffs have made no effort to limit this Request to documents that relate in any way to their claims asserted in the complaint. It is overly expansive in scope by providing *temporal limitation*, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of Beasley Entities and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this request seeks disclosure of

45    Case No. 2:22-cv-00529-GMN-NJK

information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding Beasley or the Beasley Law Group. Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including all applicable prohibitions of disclosure.

Wells Fargo will search the custodial files of Erin Connelly, Justin Rollins, Virginia de la Torre, Vanessa Duran, Amber Dahlhaus, and Stephen Nelson from November 1, 2016 through March 21, 2022 for documents related to Wells Fargo's relationship with Beasley and Beasley Law Group. Wells Fargo intends to use search terms to identify potentially responsive records from those files, and Wells Fargo will disclose those search terms to Plaintiffs within a reasonable time of finalizing those terms. Beyond these searches, Wells Fargo will not conduct additional searches for documents responsive to this Request on the basis of its objections.  Wells Fargo will begin its production of documents in response to this Request by mid-January and will continue a rolling production until the end of the document discovery period.

**REQUEST FOR PRODUCTION NO. 26:**

Communications between or among Wells Fargo employees concerning Judd, the J&J Entities, or any of the J&J Conspirators, including any notes or comments recorded in internal systems.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Wells Fargo objects to the Request as not proportional to the needs of this case. In particular, Plaintiffs' Request for all "Communications between or among Wells Fargo employees" about Judd, the J&J Entities, or any of the J&J Conspirators could conceivably encompass every communication and every internal report Wells Fargo has ever produced

referencing these individuals and entities, without any limitation to a reasonable number of custodians within Wells Fargo. Plaintiffs have made no effort to limit this Request to documents that relate in any way to their claims asserted in the complaint. It is overly expansive in scope by targeting *dozens of* different J&J Entities, *without any temporal limitation*, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of J&J Entities, J&J Conspirators, and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as any such searches would necessarily include communications with Wells Fargo's legal department related to these individuals or entities.

Wells Fargo will search the custodial files of Erin Connelly, Justin Rollins, Virginia de la Torre, Vanessa Duran, Amber Dahlhaus, and Stephen Nelson from November 1, 2016 through March 21, 2022 for documents related to Wells Fargo's relationship with Jeffrey Judd, J&J Consulting Services, Inc., J&J Consulting Services, Inc., and J and J Purchasing LLC. Wells Fargo intends to use search terms to identify potentially responsive records from those files, and Wells Fargo will disclose those search terms to Plaintiffs within a reasonable time of finalizing those terms. Beyond these searches, Wells Fargo will not conduct additional searches for documents responsive to this Request on the basis of its objections.  Wells Fargo will begin its production of documents in response to this Request by mid-January and will continue a rolling production until the end of the document discovery period.

**REQUEST FOR PRODUCTION NO. 27:**

Communications between or among Wells Fargo and Beasley or the Beasley Entities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the Beasley Entities and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects on the basis that this Request is not proportional to the needs of the case because it is overly expansive in time and scope and imposes a burden on Wells Fargo that outweighs any benefit to the Parties. By its terms, this Request, for example, seeks any exchange of information, words, numbers, pictures, charts, studies, or graphs by *any* means of transmission between Wells Fargo and the Beasley Law Group, including any of its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Beasley. Many of these documents would be completely unrelated to the claims and defenses in this case and thus are outside the scope of proper discovery under Rule 26. Further, the Request is not limited to a reasonable number of custodians or sources, and instead seeks documents and communications from *any* Wells Fargo employee that may every have corresponded with a representative of those accounts.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo will search the custodial files of Erin Connelly, Justin Rollins, Virginia de la Torre, Vanessa Duran, Amber Dahlhaus, and Stephen Nelson from November 1, 2016 through

March 21, 2022 for documents related to Wells Fargo's relationship with Beasley and the Beasley Law Group. Wells Fargo intends to use search terms to identify potentially responsive records from those files, and Wells Fargo will disclose those search terms to Plaintiffs within a reasonable time of finalizing those terms. Beyond these searches, Wells Fargo will not conduct additional searches for documents responsive to this Request on the basis of its objections. Wells Fargo will begin its production of documents in response to this Request by mid-January and will continue a rolling production until the end of the document discovery period.

**REQUEST FOR PRODUCTION NO. 28:**

Communications between or among Wells Fargo and Judd, the J&J Entities, or any of the J&J Conspirators.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects on the basis that this Request is not proportional to the needs of the case because it is overly expansive in time and scope and imposes a burden on Wells Fargo that outweighs any benefit to the Parties. By its terms, this Request, for example, seeks any exchange of information, words, numbers, pictures, charts, studies, or graphs by *any* means of transmission between Wells Fargo, and the J&J Entities, and J&J Conspirators, including J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger

Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf. Many of these documents would be completely unrelated to the claims and defenses in this case and thus are outside the scope of proper discovery under Rule 26. Further, the Request is not limited to a reasonable number of custodians or sources, and instead seeks documents and communications from any Wells Fargo employee that may every have corresponded with a representative of those accounts.  It would be a disproportional and undue burden on Wells Fargo to identify every employee within Wells Fargo that may have communicated with or about any one of these entities or individuals, and then to review and produce such communications.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo will search the custodial files of Erin Connelly, Justin Rollins, Virginia de la Torre, Vanessa Duran, Amber Dahlhaus, and Stephen Nelson from November 1, 2016 through March 21, 2022 for documents related to Wells Fargo's relationship with Jeffrey Judd, J&J Consulting Services, Inc., J&J Consulting Services, Inc., and J and J Purchasing LLC. Wells Fargo intends to use search terms to identify potentially responsive records from those files, and Wells Fargo will disclose those search terms to Plaintiffs within a reasonable time of finalizing those terms. Beyond these searches, Wells Fargo will not conduct additional searches for documents responsive to this Request on the basis of its objections.  Wells Fargo will begin its production of

documents in response to this Request by mid-January and will continue a rolling production until the end of the document discovery period.

**REQUEST FOR PRODUCTION NO. 29:**

Communications with any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, including but not limited to subpoenas or requests for information, concerning Beasley or the Beasley Accounts, including without limitation any governmental entity's requests for documents or information and Your response(s) thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time

limitation.). On scope, the Request carte blanche seeks all communications from any government agency related to Beasley or the Beasley Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder.  Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo does not agree to search for or produce documents on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 30:**

Communications with any governmental agency (meaning a state or federal regulatory or

law enforcement agency or self-regulatory body) or any other governmental or investigative entity, including but not limited to subpoenas or requests for information, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, including without limitation any governmental entity's requests for documents or information and Your response(s) thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request carte blanche seeks all communications from any government agency related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a

Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set

forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of its objections.

**REQUEST FOR PRODUCTION NO. 31:**

Communications between or among Wells Fargo employees concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Beasley or the Beasley Accounts, and Documents relating thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts," and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees regarding any inquiry by the government related to Beasley or the Beasley

Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder.  Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 32:**

Communications between or among Wells Fargo employees concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, and Documents relating thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees regarding any inquiry by the government related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige

57

Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells

Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 33:**

Communications between or among Wells Fargo and any person not employed by Wells Fargo concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Beasley or the Beasley Accounts, and Documents relating thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts" and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees and any person not employed by Wells Fargo regarding any inquiry by the government related to Beasley or the Beasley Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their

behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo does not agree to search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

Communications between or among Wells Fargo and any person not employed by Wells Fargo concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body)

or any other governmental or investigative entity, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, and Documents relating thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees and any person not employed by Wells Fargo regarding any inquiry by the government related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny

Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 35:**

Documents produced by You to a governmental entity (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or Receiver concerning Beasley or the Beasley Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts" and the term "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request carte blanche seeks all documents produced by Wells Fargo to the government or any Receiver related to Beasley or the Beasley Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting

or authorized to act on their behalf, even if the documents have no relation to the allegations or claims asserted in the Complaint. The simple fact that Wells Fargo produced documents to an agency has no bearing on the matters at issue here, and otherwise that discovery is not proportionally tailored to the matters at issue in this litigation.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo does not agree to search for or produce documents in response to this Request on the basis of these objections.

**REQUEST FOR PRODUCTION NO. 36:**

Documents produced by You to a governmental entity (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or Receiver concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery

from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On time, there is no time specification or limitation identifying the relevant time period for which Plaintiffs seek this information. *See Morrison v. Quest Diagnostics Inc.*, No. 214CV01207RFBPAL, 2016 WL 362346, at *7 (D. Nev. Jan. 27, 2016) (objection to discovery request sustained as overbroad because it did not include any time limitation). On scope, the Request carte blanche seeks all documents produced by Wells Fargo to the government or any Receiver related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting

65                                    Case No. 2:22-cv-00529-GMN-NJK

or authorized to act on their behalf, even if the documents have no relation to the allegations or claims asserted in the Complaint. The simple fact that Wells Fargo produced documents to an agency has no bearing on the matters at issue here, and otherwise that discovery is not proportionally tailored to the matters at issue in this litigation.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo does not agree to search for or produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 37:**

Your Document retention protocols.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Wells Fargo objects to this Request on the basis that it is overbroad and irrelevant, particularly as the Request seeks documents for any and all categories, *without a temporal limitation*. Moreover, these policies have no relevance to the claims or defenses at issue in this case. There are no allegations of, or claims related to, improper document retention by Wells Fargo; thus, this Request calls for the production of information that imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Wells Fargo objects to this Request on the basis that it is improper "discovery on discovery." There is no claim or defense in this action related to Wells Fargo's retention policies, so this Request seeks information that is completely unrelated to any claims or defenses.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo objects on the basis that this Request seeks production of confidential and business proprietary information.

Wells Fargo does not agree to search for or produce documents in response to this Request.

DATED: November 10, 2022                    Respectfully submitted,

                                            **MCGUIREWOODS LLP**


By:    /s/ K. Issac deVyver
       K. Issac deVyver (*pro hac vice*)
       Alicia A. Baiardo (*pro hac vice*)
       Anthony Q. Le (*pro hac vice*)
       MCGUIREWOODS LLP
       Two Embarcadero Center, Suite 1300
       San Francisco, CA 94111
       Phone: 415-844-9944
       Fax: 415-844-9922
       kdevyver@mcguirewoods.com
       abaiardo@mcguirewoods.com
       ale@mcguirewoods.com

       Joseph G. Went
       Nevada Bar No. 9220
       Sydney R. Gambee
       Nevada Bar No. 14201
       HOLLAND & HART LLP
       9555 Hillwood Drive, 2nd Floor
       Las Vegas, NV 89134
       Phone: 702.669.4600
       Fax: 702.669.4650
       jgwent@hollandhart.com
       srgambee@hollandhart.com

       *Attorneys for Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2022, a true and accurate copy of **Defendant Wells Fargo Bank, N.A.'s Responses to Plaintiffs' First Set of Requests for Production** was served on counsel below via e-mail.

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
dgirard@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

*Interim Co-Lead Counsel*

Eric H. Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Emily Beale (pro hac vice)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
ds@classlawgroup.com
eg@classlawgroup.com
eb@classlawgroup.com

*Interim Co-Lead Counsel*

Jeffrey C. Schneider (pro hac vice)
Jason K. Kellogg (pro hac vice)
Marcelo Diaz-Cortes (pro hac vice)
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
Citigroup Center, 22nd Floor
Miami, FL 33131
jcs@lklsg.com
jk@lklsg.com
md@lklsg.com

*Interim Co-Lead Counsel*

Robert L. Brace (pro hac vice)
Maria Fernanda Elosu (pro hac vice)
LAW OFFICES OF ROBERT L. BRACE
1807 Santa Barbara St.
Santa Barbara, CA 93101
rlbrace@rusty.lawyer
mariaelosulaw@gmail.com

*Interim Co-Lead Counsel*

Miles N. Clark (NBN 13848)
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
miles.clark@knepperclark.com

*Liaison Counsel*

/s/ K. Issac deVyver
K. Issac deVyver

# EXHIBIT 3

Joseph G. Went
Nevada Bar No. 9220
Sydney R. Gambee
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702-669-4600
Fax: 702-669-4650
jgwent@hollandhart.com
srgambee@hollandhart.com

K. Issac deVyver (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
MCGUIREWOODS
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200
Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

*Attorneys for Wells Fargo Bank, N.A.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No. 2:22-cv-00529-GMN-NJK |
| | **DEFENDANT WELLS FARGO BANK, N.A.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** |

**PROPOUNDING PARTY:  PLAINTIFFS BARRETT HENZEL, ALLAN L. CARSO, GARY W. LUNDIN, JOSHUA LUEKENGA, CRAIG RODNEY MICHAELIS, BRYCE KELLY, CLINT MCDANIEL, AND DAN MCDANIEL**

**RESPONDING PARTY:    DEFENDANT WELLS FARGO BANK, N.A.**

**SET NO.:              ONE**

Pursuant to Federal Rules of Civil Procedure 34 and 26(e)(1), Defendant Wells Fargo Bank, N.A. ("Wells Fargo") supplements its responses to Plaintiffs' Barrett Henzel, Allan L. Carso, Gary W. Lundin, Joshua Luekenga, Craig Rodney Michaelis, Bryce Kelly, Clint McDaniel, And Dan McDaniel ("Plaintiffs") Requests for Production of Documents Set One ("Requests"), as follows:

**PRELIMINARY STATEMENT AND OBJECTIONS TO**

**DEFINITIONS/INSTRUCTIONS**

1.    Wells Fargo objects to the term "Applicable Period" as the parties already negotiated the applicable period. In Wells Fargo's responses and objections, the "Applicable Period" means November 1, 2016 to May 21, 2022.

2.    Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.  It is, for example, unclear what would constitute someone "purporting to act on his behalf."  Wells Fargo will interpret "Beasley" to refer to Matthew Wade Beasley alone.

3.    Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley Accounts" insofar as it includes Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including without limitation, Beasley.  It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the Beasley Law Group, PC, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation.  Wells Fargo will interpret "Beasley Accounts" to refer to the Beasley Law Firm IOLTA (*5598), Beasley Law Group PC (*5580), Beasley Law Group PC (*8898), Matthew Beasley (*1115), and Matthew Beasley (Safe Deposit Box) (*1224).

4.    Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley Entities" insofar as it includes Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf. It is disproportionately

burdensome to expect Wells Fargo to search for and produce information related to any employee that may every have worked at Beasley Law Group, PC, and it is also unclear what constitutes an "associated or related" company.  Wells Fargo will interpret "Beasley Entities" to refer to Beasley Law Group alone.

5.    Wells Fargo objects to Plaintiffs' definition of "Communication(s)" as overbroad and disproportionality burdensome on Wells Fargo in that it purports to require Wells Fargo to search for and provide information about intangibles such as oral "acts" or "ideas" that are not rendered to writing.  Rather, this appears to seek electronic information about any contact or attempted contact between two people, which would not be relevant or proportional to collect.

6.    Wells Fargo objects to Plaintiffs' definition of "Document(s)" as overbroad and disproportionately burdensome on Wells Fargo insofar as it includes information contained in backup media. Wells Fargo will define "Documents," including "electronically stored information," as that term is used in Rule 34 of the Federal Rules of Civil Procedure and, where it agrees to produce documents in response to these requests, Wells Fargo will conduct reasonable and proportional searches for relevant, responsive electronically stored information.

7.    Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Accounts" insofar as it includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors, trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf.  It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation. Wells Fargo will interpret "J&J Accounts" to mean J&J Consulting Services, Inc. (*0153) and J&J Purchasing LLC (*7037).

8. Wells Fargo objects to Plaintiffs' overbroad definition of "Judd" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf. In Wells Fargo's responses and objections, "Judd" means Jeffrey J. Judd and does not include his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

9. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Conspirators" insofar as it is vague, overbroad, and disproportionately burdensome on Wells Fargo for requesting information related to "some or all" of dozens of individuals or entities. It is unduly burdensome and disproportional on Wells Fargo to require Wells Fargo to search for and produce information related to dozens of individuals or entities, some of which may have had tangential, if any, involvement in the matters at issue in this litigation. Wells Fargo will interpret "J&J Conspirators" to mean individuals or entities included on the list attached as **Exhibit A** (the "Agreed Accounts").

10. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Conspirator Accounts" as described above in its objection to Plaintiffs' definition of "J&J Conspirators." Moreover, it is unduly burdensome and disproportional on Wells Fargo to require Wells Fargo to search for and produce information related to any account held by dozens of individuals or entities, some of which may have had tangential, if any, involvement in the matters at issue in this litigation. Wells Fargo will interpret "J&J Conspirators Accounts" to mean the Agreed Accounts.

11. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Entities" insofar as it includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors, trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Judd. It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation. Wells

Fargo will interpret J&J Entities to mean J&J Consulting Services, Inc. (*0153) and J&J Purchasing LLC (*7037).

12.    Wells Fargo objects to the definition of "Personal Account(s)" as vague, overbroad, and disproportionately burdensome on Wells Fargo as it seeks information related to any account held by the "manager, member, officer or director" of a number of different entities without defining who those specific entities or individuals would be.  Wells Fargo will interpret this to refer to the Agreed Accounts.

13.    Wells Fargo objects to the terms "You," "Your," "Yours," and Wells Fargo as vague, overly broad, and disproportionately burdensome on Wells Fargo in that it purports to also seek information related to Wells Fargo's "present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf."  Wells Fargo will interpret this Request to refer to Wells Fargo Bank, N.A. alone.

14.    Wells Fargo objects to Instruction 1 as unduly burdensome and asks Wells Fargo to identify documents we are producing by Request, which is not required by Federal Rule of Civil Procedure 34.  Wells Fargo will produce documents as they are kept in the usual course of business.

15.    Wells Fargo objects to Instruction 2 as vague, overbroad, and disproportionately burdensome on Wells Fargo in that it seeks documents in the control of former employees that no longer have a relationship with Wells Fargo, as well as documents that "relate" or "refer" to the Applicable Time Period rather than just those that were created during that time period.  Wells Fargo will conduct reasonable searches for information within its control within the Applicable Time Period.

16.    Wells Fargo objects to Instruction 3 as overbroad, unduly burdensome, and disproportional in that it specifically requests that Wells Fargo produce deleted documents, which is unreasonable and disproportionate to the case.  Wells Fargo also does not agree to search for or produce information from backup tapes.  Wells Fargo will search for and produce information from Wells Fargo Bank, N.A.'s current systems and employees to the extent Wells Fargo otherwise agrees to do so in response to a particular request below.

17.     Wells Fargo objects to Instruction 4 as overly broad, unduly burdensome, and disproportionate to the extent it seeks "original" documents and duplicates that are "bound or stapled in the same manner as the original." Wells Fargo will produce its documents as kept in the ordinary course of business as required by the Federal Rules of Civil Procedure.

18.     Wells Fargo objects to Instructions 5 and 7 on the ground that they seek privileged attachments. Wells Fargo will produce attachments in accordance with section 5(n) of the ESI Protocol (attached as **Exhibit B**).

19.     Wells Fargo objects to Instruction 8 as it purports to require more from Wells Fargo to prepare a privilege log than the requirements set forth in the Federal Rules of Civil Procedure. Wells Fargo will produce a privilege log in accordance with section 5(p) of the ESI protocol.

20.     Wells Fargo objects to Instruction 9 as it would prevent Wells Fargo from redacting documents for other types of privilege, like the Bank Examination Privilege, relevance, and/or confidentiality, which information Wells Fargo is either not obligated to produce or is specifically prohibited from producing by applicable law. It would also be disproportionately burdensome on Wells Fargo to require Wells Fargo to log every redaction made for any reason other than privilege, such as PII redactions. To the extent Wells Fargo withholds information by redactions, the text of the redaction will make clear the basis for withholding the information.

21.     Wells Fargo objects to Instruction 10 because it imposes obligations beyond those required by the Federal Rules of Civil Procedure and the Court's Orders. Specifically, Wells Fargo objects to providing information regarding every document deleted or destroyed during the ordinary course of business and before litigation was anticipated, as it is not feasible to do so, Wells Fargo had no duty to retain materials prior to anticipating litigation, and providing such information imposes an undue burden, is disproportionate, and is not relevant to a claim or defense. Wells Fargo will not search for or produce information in response to this instruction.

22.     Wells Fargo will produce documents pursuant to the ESI protocol agreed to by the parties and attached as Exhibit B.

**REQUEST FOR PRODUCTION NO. 1:**

Account opening Documents concerning the Beasley Accounts, the Judd Accounts, and

the J&J Conspirator Accounts, including:

      i. Signature cards;

      ii. Deposit account agreements;

      iii. Wire transfer authorization agreements;

      iv. Funds transfer request authorizations;

      v. Post-account opening reviews;

      vi. Know Your Customer Documents (including those relating to client profiles and risk ratings);

      vii. Documentation on which transactions to expect; and

      viii. Customer Identification Program (CIP) Documents.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, which Wells Fargo objects to for the reasons stated in its objections to the definitions. Wells Fargo further objects to this Request as vague and ambiguous because the term "Judd Accounts" is not defined. In responding to this Request, "Judd Accounts" means those accounts in the name of Jeffrey Judd. This Request is also vague insofar as it seeks "Documentation on which transactions to expect," which does not specify the categories of information sought with sufficient particularity to allow Wells Fargo to search for or produce information in response to this portion of the Request.

Wells Fargo further objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive in scope by targeting dozens of accounts and imposes a burden on Wells Fargo that outweighs any benefit to the parties, particularly at this stage of the litigation before the Court has ruled on Wells Fargo's pending motion to dismiss Plaintiffs' complaint.

Wells Fargo objects on the basis that this Request seeks production of confidential,

business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce (1) signature cards, (2) deposit account agreements, (3) monthly statements, (4) deposit slips, (5) withdrawal slips (6) records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits), and (7) records for and copies of checks for the Agreed Accounts dated between November 1, 2016 to May 21, 2022.

**REQUEST FOR PRODUCTION NO. 2:**

Account records concerning the Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, including:

    i. Monthly statements;

    ii. Historical account balance information;

    iii. Deposit slips;

    iv. Records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits);

    v. Records for and copies of checks, both deposited and drawn;

    vi. Records reflecting cash activity;

8    Case No. 2:22-cv-00529-GMN-NJK

DEFENDANT WELLS FARGO BANK, N.A.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION    **Vol. 1, Page 92**

vii. Insufficient funds reports and/or overdraft reports;

viii. Weekly or monthly wire activity detail reports;

ix. Weekly automated clearing house (or "ACH") transaction activity reports;

x. Funds flow reports;

xi. Written estimations of anticipated account activity and customer income source;

xii. Administrative or custodial agreements between the holder of the Beasley Accounts and You; and

xiii. Agreements or contracts concerning each Beasley Account, including with respect to fees related to or charged or waived.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of Beasley Accounts, the Judd Accounts, and the J&J Conspirator Accounts, which Wells Fargo objects to for the reasons stated in its objections to the definitions. Wells Fargo further objects to this Request as vague and ambiguous because the term "Judd Accounts" is not defined. In responding to this Request, "Judd Accounts" means those accounts in the name of Jeffrey Judd.

Wells Fargo further objects to the Request as not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive in scope by targeting dozens of accounts and imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce (1) signature cards, (2) deposit account agreements, (3) monthly statements, (4) deposit slips, (5) withdrawal slips (6) records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits), and (7) records for and copies of checks for the Agreed Accounts dated between November 1, 2016 and May 21, 2022. Wells Fargo also agrees to search for and produce any weekly or monthly wire activity detail reports, automated clearing house reports, or fund flow reports for the Agreed Accounts dated between November 1, 2016 to May 21, 2022 identified using the search terms disclosed to Plaintiffs across the custodians Wells Fargo has agreed to search and produce in Request 3, as well as any additional custodians that Wells Fargo agrees to search in this litigation.

**REQUEST FOR PRODUCTION NO. 4:**

Customer files concerning Beasley (and the Beasley Accounts), Judd (and the J&J Accounts), and the J&J Conspirators (and the J&J Conspirator Accounts).

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Wells Fargo objects to the Request as overbroad in time and scope and not proportional to the needs of this case.  In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Additionally, this Request is overly expansive is scope by targeting dozens of accounts regardless of the subject matter and imposes a burden on Wells Fargo that outweighs any benefit to the parties.  Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions. Wells Fargo also objects to this Request as vague given that Plaintiffs do not define what categories of information they seek in "Customer Files."

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected

confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege in light of the fact that the term "customer file" is undefined and vague and may encompass privileged information included in such a file, like information generated or provided by attorneys.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce (1) signature cards, (2) deposit account agreements, (3) monthly statements, (4) deposit slips, (5) withdrawal slips (6) records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits), (7) records for and copies of checks, and (8) account notes for the Agreed Accounts. Further, Wells Fargo will search for additional documents across custodians identified in Request No. 3 for the time period between November 1, 2016 and May 21, 2022 and, as noted in Wells Fargo's February 3, 2023 letter to Plaintiffs, it is currently evaluating additional custodians to search, whose names it will provide to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to show and the identity and job titles of all personnel at the Wells Fargo branches located at 6585 N. Decatur Blvd., Las Vegas, NV, 2531 Anthem Village Drive, Henderson, NV, and 1985 E 7000 S Salt Lake City, UT.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Wells Fargo objects to the Request as overbroad in time and scope and not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this

Request to documents that relate in any way to the claims or defenses in this case.  Additionally, this Request is overly expansive in scope by seeking information regarding *every* current or former employee at the Wells Fargo branch located at 6585 N. Decatur Blvd., Las Vegas, NV, at 2531 Anthem Village Drive, Henderson, NV, and at 1985 E 7000 S. Salt Lake City, UT, regardless of whether they ever interacted with Beasley, Judd, or any other J&J Conspirator. Thus, the Request imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties, including employees and former employees, and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo further objects to this Request on grounds that it seeks the personal, confidential, and private information of its present and former employees and/or third parties, which information is protected by a right to privacy under applicable state and/or federal law, which Wells Fargo is not authorized to waive.  There is no reason to disclose such irrelevant and immaterial information when weighed against the interests of Wells Fargo and/or other parties, and Plaintiffs have not made any showing establishing a right to obtain such information. Responsive documents are being withheld on the basis of this objection.

Wells Fargo hereby further responds as follows: Wells Fargo has provided a list of the personnel who would have interacted with customers in the ordinary course of business during the time period of November 1, 2016 through May 21, 2022, at the following branches: (1) 6585 N. Decatur Blvd., Las Vegas, NV, (2) 2531 Anthem Village Drive, Henderson, NV, and (3) 1985 E 7000 S Salt Lake City, UT.  *See* WF_JJ_00023339.

**REQUEST FOR PRODUCTION NO. 7:**

Policies and procedures (including employee training materials) concerning IOLTAs.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

12    Case No. 2:22-cv-00529-GMN-NJK

DEFENDANT WELLS FARGO BANK, N.A.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION    **Vol. 1, Page 96**

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties.  Plaintiffs have made no attempt to limit the scope of this Request.

On scope, this Request is overly expansive by seeking all policies and procedures merely *"concerning"* IOLTA accounts and imposes a burden on Wells Fargo that outweighs any benefit to the parties.  Additionally, Plaintiffs fail to identify the specific aspects of "IOLTA" account obligations they request Wells Fargo produce that are relevant to the allegations in support of their claims.  Thus, as drafted, this Request would encompass all e-mails and irrelevant policies and procedures that have any impact on IOLTA accounts which, for example, would include policies and procedures governing all depository accounts.  Such a request is unreasonable and overbroad. *Krause v. Nev. Mut. Ins. Co.*, No. 2:12-CV-00342-JCM, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014) ("[T]he scope of discovery is not without limits…courts must regulate the breadth of sweeping or contentious discovery."); *Voggenthaler v. Maryland Square, LLC*, No. 2:08-CV-01618-RCJ, 2011 WL 112115, at *8 (D. Nev. Jan. 13, 2011), *on reconsideration in part*, No. 1:08-CV-L618-RCJ-GWF, 2011 WL 902338 (D. Nev. Feb. 28, 2011) ("Discovery should be controlled to "prevent 'fishing expeditions' or an undirected rummaging through bank books and records for evidence of some unknown wrongdoing.").

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, and sensitive business information. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Indeed, Wells Fargo's internal procedures are proprietary and highly confidential, and given their sensitivity it would be disproportionately harmful on Wells Fargo to produce policies that are not

narrowly tailored and are otherwise irrelevant to the matters at issue in this litigation. Wells Fargo is not withholding documents on the basis of this objection.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce policies and procedures related to IOLTA accounts in place between November 1, 2016 and May 21, 2022, and Wells Fargo will conduct a reasonable search for and produce training materials related to IOLTA accounts that were provided to each of the custodians for which Wells Fargo is collecting custodial data for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 8:**

Communications between or among Wells Fargo and the State Bar of Nevada (including any employee or representative thereof) concerning IOLTAs, Beasley, or the Beasley Accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Wells Fargo objects to the Request as overbroad in time and scope and not relevant nor proportional to the needs of this case. In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case. Instead, they seek every communication that any member of Wells Fargo may ever have had with respect to any IOLTA account, regardless of whether those communications have anything to do with the matters at issue in this litigation. Additionally, this Request is overly expansive is scope by seeking *every* communication between Wells Fargo and the Nevada State Bar *generally*, regardless of whether the communication has any relevance to the parties in this case. As such, this Request imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313.

Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce responsive, non-privileged documents and communications between or among Wells Fargo and the State Bar of Nevada regarding the Beasley Law Group IOTLA account ending in *5598, including IOLTA remittance reports and any overdraft reports, for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 9:**

Documents and Communications concerning interest accrued on the Beasley Accounts, including Documents and Communications relating to IOLTA remittance reports.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Wells Fargo objects to the Request as overbroad in time and scope and not relevant nor proportional to the needs of this case.  In particular, Plaintiffs have made no effort to limit this Request to documents that relate in any way to the claims or defenses in this case.  Additionally, this Request is overly expansive is scope by seeking all "Documents and Communications concerning interest accrued on the Beasley Accounts . . ." and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce IOLTA remittance reports submitted to the Nevada State Bar for the Beasley Law Group IOLTA account ending in *5598, as well as Wells Fargo account

statements showing the interest payment for the Beasley Law Group IOLTA account ending in *5598 between the period from November 1, 2016 to May 21, 2022. Wells Fargo does not agree to search for or produce additional documents on the basis of its objections.

**REQUEST FOR PRODUCTION NO. 10:**

Documents and Communications concerning Wells Fargo revenues or profits attributable to the Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "revenues" and "profits" are not defined and subject to various interpretations as to its meaning. Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for the production of information not relevant to the claims or defenses in the litigation and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive because it seeks Documents and Communications about more than 40 individuals or businesses and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, Plaintiffs' Request is not narrowly tailored or limited because it seeks "Documents and Communications concerning Wells Fargo revenues or profits attributable to the Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts" which includes documents that have no relation to the aiding and abetting claims, or other claims, at issue or the allegations in Plaintiffs' Complaint. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019 ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *Guerrero v. Wharton*, No. 216CV01667GMNNJK, 2017 WL 7314240, at *5 (D. Nev. Mar. 30, 2017) ("As a rule, requests for 'any and all' documents or communications are facially overbroad.") (citing *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020). *Morrison v. Quest Diagnostics Inc.*, No.

214CV01207RFBPAL, 2016 WL 362346, at \*7 (D. Nev. Jan. 27, 2016) (finding document requests "entirely overbroad" because it sought the "the entirety of your file" on an individual).

Further, the phrase "attributable to" is vague and overbroad. Indeed, this Request is disproportional to the needs of the case, and there is nothing to indicate that Plaintiffs need this information adequately support their claims in this case.

Wells Fargo further objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo further responds as follows: Plaintiffs seek documents concerning profitability, revenue, and "branch performance reports" related to certain relevant accounts and dispute that the documents produced or agreed to be produced will provide sufficient information. Based on its current investigation, Wells Fargo has not found reports or other document reflecting revenue or profit attributable to individual accounts. Thus, Wells Fargo has not located documents responsive to this request. To the extent Wells Fargo has collected fees or other amounts from the Agreed Accounts between November 1, 2016 and May 21, 2022, those transactions would be reflected on the account statements. Wells Fargo is continuing to investigate this request and will update Plaintiffs if additional responsive documents are located.

**REQUEST FOR PRODUCTION NO. 11:**

Documents and Communications sufficient to show Wells Fargo employee incentives (financial or otherwise) relating to the amount of funds held in Wells Fargo accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the term "incentives" is not defined and subject to various interpretations as to its meaning, including in particular what would constitute a non-financial incentive. Further, this Request includes Plaintiffs' overbroad definition of "Documents" and "Communications," which Wells

Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. In particular, the Request seeks information related to unspecified "funds" in unspecified Wells Fargo accounts. On scope, Plaintiffs' Request is not narrowly tailored because it is not limited to specific employees or the accounts at issue and seeks documents and communication that do not have any relation to the claims or defenses at issue in the complaint. *Russo v. Lopez*, No. 2:11-CV-00284-PMP, 2012 WL 1463591, at *1 (D. Nev. Apr. 27, 2012) (Discovery does "not permit a party to sweepingly request all documents of a certain type to ensure that nothing relevant is left out."); *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594 (D. Nev. 2016) (finding document request was overbroad because it sought "all" medical files). Indeed, this Request is disproportional to the needs of the case, and there is nothing to indicate that Plaintiffs need this information adequately support their theory that Wells Fargo allegedly aided and abetted the Ponzi scheme.

Wells Fargo further objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo hereby further responds as follows: Wells Fargo will conduct a reasonable search for and produce documents sufficient to show employee incentives for branch employees who worked at branches, to the extent they exist and are in the time period from November 1, 2016 to May 21, 2022, and concern the types of accounts that are included in the Agreed Accounts.

**REQUEST FOR PRODUCTION NO. 12:**

Branch performance reports concerning revenues, profits, or the amount of funds in the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

/ /

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "performance reports," "revenues" and "profits" are not defined and subject to various interpretations as to its meaning. *Walker v. N. Las Vegas Police Dep't*, No. 214CV01475JADNJK, 2016 WL 8732300, at *3 (D. Nev. May 13, 2016) ("[C]ourts in the District of Nevada make clear that search terms must be "narrowly tailored to particular issues" and that "[i]ndiscriminate terms, such as a defendant's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.").

Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties.  On scope, the Request is not narrowly tailored or limited because it seeks all performance reports *"concerning"* the "Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts," which will encompass documents that do not have any relevance to the claims or defenses at issue in the complaint. *See Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D 495 (D. Nev. 2016) ("courts have the duty to pare down overbroad discovery requests."). Any revenues or profits of a branch does not establish that Wells Fargo had actual knowledge of, or substantially assisted with, the alleged Ponzi scheme.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo further responds as follows: Plaintiffs seek documents concerning "branch performance reports" concerning profitability, revenue, and "amount of funds" related to certain

relevant accounts and dispute that the documents produced or agreed to be produced will provide sufficient information. Based on its current investigation, Wells Fargo has not found reports or other document reflecting revenue or profit attributable to individual accounts. Thus, Wells Fargo has not located documents responsive to this request. To the extent Wells Fargo has collected fees or other amounts from the Agreed Accounts between November 1, 2016 and May 21, 2022, those transactions would be reflected on the account statements. Wells Fargo is continuing to investigate this request and will update Plaintiffs if additional responsive documents are located.

**REQUEST FOR PRODUCTION NO. 13:**

Compliance-related policies and procedures (including employee training materials) concerning Wells Fargo demand deposit accounts, including but not limited to "Know Your Customer" policies and procedures; Financial Industry Regulatory Authority ("FINRA") "Know Your Customer" requirements; account maintenance and monitoring regulations, 31 C.F.R. §§ 1020.220(a)(1),(2); account due diligence; Bank Secrecy Act requirements, 12 C.F.R. § 21.21; Federal Financial Institutions Council (FFIEC) Bank Secrecy Anti Money Laundering Manual compliance; policies and procedures concerning transactional "red flags;" policies and procedures concerning the termination of account relationships; customer exit policies; and policies and procedures concerning wire transfers, electronic fund transfers, and check deposits and withdrawals; policies and procedures concerning risk evaluations and referrals.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Wells Fargo objects to this Request on the basis that the terms "Know Your Customer," "due diligence," "red flags," and "risk evaluations and referrals" are vague, ambiguous, and undefined.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On subject matter, the Request seeks all policies and procedures that relate to approximately thirteen different topics, any one of which could encompass voluminous results.

On scope, the inclusion of "employee training materials" is overbroad, particularly as the

Request seeks documents regarding a variety of different categories (*i.e.*, deposit accounts, account maintenance, account monitoring, account due diligence, account terminations, "red flags," risk evaluations, etc.), and does not specify which Wells Fargo employees it is referencing. A majority of the training materials regarding these topics will have no relevance to the claims and defenses at issue in this case. Similarly, the inclusion of policies and procedures concerning the termination of account relationships and customer exit policies is overbroad and irrelevant. These policies have no relevance to the claims or defenses at issue in this case. There are no allegations of, or claims related to, termination of customer accounts by Wells Fargo; thus, this Request calls for the production of information that imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Further, Plaintiffs fail to identify the specific aspects of "Know Your Customer" obligations they request Wells Fargo produce that are directly relevant to the allegations in support of their aiding and abetting (among other) claims. For instance, Plaintiffs cite to 31 C.F.R. § 1022.220(a)(2), which identifies the information that a "bank must obtain, at minimum, . . . from the customer" including name, date of birth for individuals, address, and identification number. Yet, Plaintiffs' complaint does not allege any facts asserting that Wells Fargo failed to obtain this information, or that the information it allegedly did obtain on these specific data points were indicative of fraud. Without any allegations implicating these "Know Your Customer" obligations or identifying the specific facets of Wells Fargo's anti-money laundering compliance program that it allegedly failed to comply with, and without limiting the scope of the Request to any particular accounts, the requested information is not relevant to Plaintiffs' claims in this case and will impose an undue burden on Wells Fargo that outweighs any benefit to the Parties. *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-CV-00342-JCM, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014) ("[T]he scope of discovery is not without limits… courts must regulate the breadth of sweeping or contentious discovery."); *Randolph v. Gittere*, No. 308CV00650LRHCLB, 2020 WL 2572532, at *2 (D. Nev. May 20, 2020) ("[C]ourts do not allow a petitioner to "use federal discovery for fishing expeditions to investigate mere speculation." (quoting *Calderon v. United States Dist. Ct. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)).

21

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Indeed, Wells Fargo's internal procedures are proprietary and highly confidential, and given their sensitivity it would be disproportionately harmful on Wells Fargo to produce policies that are not narrowly tailored and are otherwise irrelevant to the matters at issue in this litigation. Wells Fargo is not withholding documents on the basis of this objection. Additionally, to the extent that documents contain personally identifying information of customers, Wells Fargo may redact the information but does not anticipate withholding documents on the basis of this objection.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as some of these policies and procedures may reflect the legal advice of Wells Fargo's attorneys regarding the method and procedures used to respond to particular situations covered by those policies.

Wells Fargo hereby further responds as follows: Wells Fargo will conduct a reasonable search for relevant (1) Anti-Money Laundering policies and procedures, (2) Financial Crimes Investigations policies and procedures, (3) Customer Due Diligence policies and procedures, (4) Account Opening policies and procedures, and (5) policies and procedures regarding account deposits and wire transfers, that were in place between November 1, 2016 and May 21, 2022. Further, concurrently herewith (or soon thereafter), Wells Fargo is producing the following policies and procedures that were in place between November 1, 2016 and May 21, 2022: Anti-Money Laundering Investigations – Best Practices and Guidance - Investigations and Suspicious Activity Reports; AML Investigations – SAR Form Guidance and Procedures; Anti-Money Laundering Investigations Compliance Manual; AML Unusual Activity Referral (UAR); FinCEN Suspicious Activity Report (FinCEN SAR) Electronic Filing Instructions; External Fraud Investigations Guidance; and Preliminary Investigations & SAR Operations Group Procedures.

//

**REQUEST FOR PRODUCTION NO. 14:**

Documents and Communications concerning suspected or possible unlawful or improper account activity concerning Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Conspirators, or the J&J Conspirator Accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "suspected or possible unlawful or improper account activity" is not defined and subject to various interpretations as to its meaning. *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive because it seeks Documents and Communications about more than 40 individuals or businesses, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, the Request is not narrowly tailored or limited because it seeks all documents and communications regarding any possible "unlawful or improper account activity" related to dozens of accounts, which will encompass documents that do not have any relevance to Plaintiffs' claims in the complaint. *Guerrero v. Wharton*, No. 216CV01667GMNNJK, 2017 WL 7314240, at *5 (D. Nev. Mar. 30, 2017) ("As a rule, requests for 'any and all' documents or communications are facially overbroad.") (citing *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020)). Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting

potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo legal counsel may have been involved in responding to any allegations of improper activity in the referenced accounts.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for Currency Transaction Reports ("CTRs"), as well as for alerts and investigation files maintained in Wells Fargo's Financial Crimes Platform ("FCP"), related to the Agreed Accounts and to produce the responsive, non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search.

**REQUEST FOR PRODUCTION NO. 15:**

Documents and Communications concerning any risk assessment of Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the term "risk assessment" is not defined and subject to various interpretations as to its meaning. *See e.g., Sinanyan v. Luxury Suites Int'l*, LLC, No. 2:15-CV-225-GMN-VCF, 2016 WL

24

1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. For example, on scope, Plaintiffs' Request is not narrowly tailored or limited because it seeks all "Documents and Communications concerning *any* risk assessment . . ." and includes documents which may not have any relation to the claims at issue or the allegations in Plaintiffs' complaint. It is overly expansive in scope by targeting dozens of entities and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. section 5318, pursuant to 12 C.F.R. section 21.11, 31 C.F.R. section 103.18, 31 U.S.C. section 5318(g)(2)(A)(i) and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as this

Request could encompass communications with Wells Fargo's legal counsel seeking or providing advice with respect to these accounts.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, as well as for alerts and investigation files maintained in FCP, related to the Agreed Accounts and to produce the responsive, non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search.

**REQUEST FOR PRODUCTION NO. 16:**

Alerts, reports, and other Documents generated by or accessible from the "Actimize" banking activity monitoring system concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," and "investigation files" are not defined and subject to various interpretations as to their meaning. *See, e.g.*, *Sinanyan v. Luxury Suites Int'l*, LLC, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Wells Fargo also objects to the phrase "generated by or accessible from the 'Actimize' banking activity monitoring system" as vague and ambiguous, because Actimize is a third-party software that can be customized to perform a variety of different functions, and thus it is unclear what reports Plaintiffs' seek.  Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive by seeking all alerts and reports generated by "Actimize" regarding more than 40 individuals or businesses and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev.

Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence."). The Request is also overbroad and overly expansive in that it seeks information concerning "any related investigation files." Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo's legal counsel may have been involved in any investigation into or about the accounts alleged to be at issue in this litigation.

Wells Fargo hereby further responds as follows: Wells Fargo uses Actimize to generate and store CTRs. Wells Fargo will produce CTRs related to the Agreed Accounts dated between November 1, 2016 and May 21, 2022 in response to this Request. Wells Fargo continues to search for responsive documents and will update its response to this Request if additional responsive

27

documents are located.

**REQUEST FOR PRODUCTION NO. 17:**

Alerts, reports, and other Documents generated by or accessible from any banking activity monitoring system other than Actimize (including without limitation Fiserv FraudLink and Radar World Check) concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," "banking activity monitoring system" and "any related investigation files" are not defined and subject to various interpretations as to its meaning. *See e.g.*, *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request.  On scope, this Request is overly expansive by seeking all "[a]lerts, reports, and other Documents generated by or accessible from any banking activity monitoring system. . ." for more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to

28

the discovery of admissible evidence.").  Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i) and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as it would necessarily include any documents by or communications with members of Wells Fargo's legal department.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, as well as for alerts and investigation files maintained in FCP, related to the Agreed Accounts and to produce the responsive, non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search.

**REQUEST FOR PRODUCTION NO. 19:**

Documents not otherwise requested identifying the systems and processes used by Wells Fargo in the ordinary course of business to identify potentially unlawful or improper banking activity.

**SUPPLEMTNAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous,

in that the phrases "not otherwise requested identifying the systems and processes" and "unlawful or improper banking activity" are not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive). Further, this Request includes Plaintiffs' overbroad definition of "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On scope, this Request is overly expansive by seeking all documents identifying "systems and processes" Wells Fargo uses to identify *any* potentially unlawful activity and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, as drafted, this Request seeking information regarding unlawful actives that have *no relation* to Plaintiffs' allegations in this case (*i.e.* are unrelated to the Ponzi scheme). *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998). Additionally, such information is highly confidential.

Wells Fargo objects to this Request on the basis that it is improper "discovery on discovery." There is no claim or defense in this action related to Wells Fargo's "systems and processes used by Wells Fargo in the ordinary course of business to identify potentially unlawful or improper banking activity," so this Request seeks information that is completely unrelated to any claims or defenses.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act,

15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, as well as for alerts and investigation files maintained in FCP, related to the Agreed Accounts and to produce the responsive, non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search.

**REQUEST FOR PRODUCTION NO. 20:**

Balance Fluctuation Reports listing information relating to the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the term "Balance Fluctuation Reports" is not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive); *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, and the J&J Conspirators, which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties.  On scope, this Request is overly expansive by seeking all "Balance Fluctuation Reports" relating to the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, which includes more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. This Request, seeking "Balance Fluctuation Reports" for dozens of accounts, would include documents that are not relevant to the Plaintiffs' claims in this case. *See Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998).

Wells Fargo hereby further responds as follows: Wells Fargo's January 27, 2023 and January 30, 2023 productions included balance fluctuation reports identified through custodial email searches, and Wells Fargo agrees to produce any other balance fluctuation reports related to the Agreed Accounts identified through additional custodial email searches.  Wells Fargo is investigating whether it can provide additional information regarding the contents of historical reports regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022 without an undue burden, and if so will agree to produce those records.

**REQUEST FOR PRODUCTION NO. 29:**

Communications with any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, including but not limited to subpoenas or requests for information, concerning Beasley or the Beasley Accounts, including without limitation any governmental entity's requests for documents or information and Your response(s) thereto.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts" and

"Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all communications from any government agency related to Beasley or the Beasley Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are

not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 30:**

Communications with any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, including but not limited to subpoenas or requests for information, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, including without limitation any governmental entity's requests for documents or information and Your response(s) thereto.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all communications from any government agency related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting

35

potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 31:**

Communications between or among Wells Fargo employees concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental

or investigative entity, concerning Beasley or the Beasley Accounts, and Documents relating thereto.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts," and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees regarding any inquiry by the government related to Beasley or the Beasley Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or

was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 32:**

Communications between or among Wells Fargo employees concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, and Documents relating thereto.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees regarding any inquiry by the government related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 33:**

Communications between or among Wells Fargo and any person not employed by Wells Fargo concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Beasley or the Beasley Accounts, and Documents relating thereto.

/ /

/ /

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts" and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees and any person not employed by Wells Fargo regarding any inquiry by the government related to Beasley or the Beasley Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 34:**

Communications between or among Wells Fargo and any person not employed by Wells Fargo concerning any inquiry, subpoena, or request for information issued by any governmental agency (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or any other governmental or investigative entity, concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, and Documents relating thereto.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose

42    Case No. 2:22-cv-00529-GMN-NJK

an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all communications between or among Wells Fargo employees and any person not employed by Wells Fargo regarding any inquiry by the government related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the communications have no relation to the allegations or claims asserted in the Complaint.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates

confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it seeks information protected from discovery by the Bank Examiner Privilege or by agency regulation, including the prohibition by the Federal Reserve Bank of the disclosure of confidential supervisory information set forth at 12 C.F.R. § 261.20, the prohibition by the OCC of the disclosure of non-public OCC information set forth at 12 C.F.R. §§ 4.31 et seq., and the prohibition of the CFPB of the disclosure of confidential information set forth at 12 C.F.R. §§ 1070.40 et seq. Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege, as this Request would necessarily encompass communications with or between members of Wells Fargo's legal department regarding any outstanding inquiries and the response thereto.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 35:**

Documents produced by You to a governmental entity (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or Receiver concerning Beasley or the Beasley Accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of "Beasley Accounts" and the term "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all documents produced by Wells Fargo to the government or any Receiver related to Beasley or the Beasley Accounts, which includes the Beasley Law Group, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the documents have no relation to the allegations or claims asserted in the Complaint. The simple fact that Wells Fargo produced documents to an agency has no bearing on the matters at issue here, and otherwise that discovery is not proportionally tailored to the matters at issue in this litigation.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are

DEFENDANT WELLS FARGO BANK, N.A.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION    **Vol. 1, Page 129**

not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 36:**

Documents produced by You to a governmental entity (meaning a state or federal regulatory or law enforcement agency or self-regulatory body) or Receiver concerning Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Wells Fargo objects to this Request on the basis that it is overbroad and calls for production of documents not relevant to the claims or defenses at issue in this action, particularly insofar as the Request includes Plaintiffs' overbroad definition of the J&J Entities, the J&J Accounts, the J&J Conspirators, the J&J Conspirator Accounts, and the term "Documents," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo further objects to this Request on the grounds that it seeks "cloned" discovery from government agencies without any limitation or consideration for the claims and defenses in this lawsuit. *Wollam v. Wright Medical Group, Inc.*, 2011 WL 1899774 * 1 (D. Colo. 2011) (the name of "cloned" or "piggybacking" discovery stems from "the fact that the plaintiffs are attempting to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

Wells Fargo objects to this Request on the basis that it is extremely overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, the Request carte blanche seeks all documents produced by Wells Fargo to the government or any Receiver related to Judd, the J&J Entities, the J&J Accounts, the J&J Conspirators, or the J&J Conspirator Accounts, which includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting

Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company, the Judd Irrevocable Trust, as well as all their present and former officers, directors, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, JL2 Investments, LLC, Rocking Horse Properties LLC, Triple Threat Basketball, LLC, ACAC LLC, FD Consulting Corp., Capital Core Financial, Inc., J & D Consulting Firm Inc., Prestige Consulting LLC (d/b/a Prestige Legal Funding), CR6 LLC, Red Hills Investments, Inc., Battle Born Funding LLC, Ruger Investments Inc., Ruger Investments RM Inc., American Colocation Services, Inc., Black Rock Business Services, LLC, Christopher Ronn Humphries, Shane Michael Jager, Larry Jeffery Jason Myers Jongeward, Roland Tanner, Denny Seybert, Jason A. Jenne, Seth Johnson, Christopher M. Madsen, Richard R. Madsen, Mark A. Murphy, Cameron Rohner, Warren Rosegreen, Anthony Michael Alberto, Jr., Monty Crew LLC, and Beasley Law Group PC, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, even if the documents have no relation to the allegations or claims asserted in the Complaint. The simple fact that Wells Fargo produced documents to an agency has no bearing on the matters at issue here, and otherwise that discovery is not proportionally tailored to the matters at issue in this litigation. Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. § 5318, pursuant to 12 C.F.R. § 21.11, 31 C.F.R. § 103.18, 31 U.S.C. § 5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to conduct a reasonable search for and produce non-privileged, pre-complaint contacts from governmental

organizations regarding the Agreed Accounts for the time period between November 1, 2016 and May 21, 2022.

**REQUEST FOR PRODUCTION NO. 37:**

Your Document retention protocols.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Wells Fargo objects to this Request on the basis that it is overbroad and irrelevant, particularly as the Request seeks documents for any and all categories, without a temporal limitation. Moreover, these policies have no relevance to the claims or defenses at issue in this case. There are no allegations of, or claims related to, improper document retention by Wells Fargo; thus, this Request calls for the production of information that imposes a burden on Wells Fargo that outweighs any benefit to the parties.

Wells Fargo objects to this Request on the basis that it is improper "discovery on discovery." There is no claim or defense in this action related to Wells Fargo's retention policies, so this Request seeks information that is completely unrelated to any claims or defenses.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the attorney work-product doctrine or attorney-client privilege.

Wells Fargo objects on the basis that this Request seeks production of confidential and business proprietary information.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

48    Case No. 2:22-cv-00529-GMN-NJK

DEFENDANT WELLS FARGO BANK, N.A.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION    **Vol. 1, Page 132**

Wells Fargo further responds as follows: Wells Fargo agrees to conduct a reasonable search for the document retention policy and retention schedule that apply generally across the bank for the time period between November 1, 2016 and May 21, 2022.

DATED: February 24, 2023                    Respectfully submitted,

                                            **MCGUIREWOODS LLP**


By:   /s/ K. Issac deVyver
      K. Issac deVyver (*pro hac vice*)
      Alicia A. Baiardo (*pro hac vice*)
      Anthony Q. Le (*pro hac vice*)
      MCGUIREWOODS LLP
      Two Embarcadero Center, Suite 1300
      San Francisco, CA 94111
      Phone: 415-844-9944
      Fax: 415-844-9922
      kdevyver@mcguirewoods.com
      abaiardo@mcguirewoods.com
      ale@mcguirewoods.com

      Joseph G. Went
      Nevada Bar No. 9220
      Sydney R. Gambee
      Nevada Bar No. 14201
      HOLLAND & HART LLP
      9555 Hillwood Drive, 2nd Floor
      Las Vegas, NV 89134
      Phone: 702.669.4600
      Fax: 702.669.4650
      jgwent@hollandhart.com
      srgambee@hollandhart.com

      *Attorneys for Wells Fargo Bank, N.A.*

**EXHIBIT "A"**

| Individual/Entity | Account Number |
|---|---|
| Anderson Dairy Creamery, LLC | *1189 |
| Anthem Assets, LLC | *4485 |
| Beasley Law Firm IOLTA | *5598 |
| Beasley Law Group PC | *5580 |
| Beasley Law Group PC | *8898 |
| Bugraiders Pest Control | *0377 |
| Christopher R. Humphries | *0829 |
| CJ Investments, LLC | *6358 |
| Infused, LLC | *6474 |
| J&J Consulting Services, Inc. | *0153 |
| J&J Purchasing LLC | *7037 |
| Jager Capital LLC | *6508 |
| Jager Family Trust | *9335 |
| Jason Jongeward/Eco Battery | *3314 |
| JCH Consulting, LLC | *1243 |
| Jessica & Christopher Humphries | *2164 |
| Jessica & Christopher Humphries | *5547 |
| Jessica Humphries | *8722 |
| JL2 Investments, LLC | *7152 |
| Matthew Beasley, Matthew W. Beasley | *1115 |
| Matthew Beasley (Safe Deposit Box) | *1224 |
| Nevada Pro Pest Control | *1132 |
| Nevada Pro Pest Control | *6540 |
| ORC Holdings, LLC | *2818 |
| Pride Pest Control | *9178 |
| Roland Tanner | *0540 |
| Shane and Karsen Jager | *3003 |
| Shane Jager; Brooklyn Jager | *2826 |
| Shane M. Jager; Karsen and Willow Jager | *4143 |
| Shea, Jessica, & Chris Humphries | *0829 |
| Stirling Consulting, LLC | *6558 |
| Triple Threat Basketball | *2948 |
| Triple Threat Basketball | *9671 |
| Triple Threat Basketball | *3578 |

**EXHIBIT B**

Eric H. Gibbs (*pro hac vice*)
David K. Stein (*pro hac vice*)
Emily Beale (*pro hac vice*)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607

Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
eb@classlawgroup.com

Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Makenna Cox (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

*Interim Co-Lead Counsel*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No.: 2:22-cv-00529-GMN-NJK<br><br>Assigned for All Purposes to:<br>Hon. Gloria M. Navarro<br><br>**[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL** |

The following ESI Stipulation and [Proposed] Order ("ESI Protocol), is entered into between (1) Plaintiffs Barrett Henzel, Allan L. Carso, Gary W. Lundin, Joshua Luekenga, Bryce Kelly, Rodney Craig Michaelis, Clint McDaniel, and Dan McDaniel (collectively, "Plaintiffs") and (2) Defendant Wells Fargo Bank, N.A. in this above-captioned case (the "Lawsuit").

To expedite discovery in the Lawsuit, pursuant to this Court's authority and with the consent of the Parties, it is agreed:

**1.  PURPOSE**

This Order shall govern discovery of electronically stored information ("ESI") in this Lawsuit as a Supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**2.  COOPERATION**

**Proportionality.** The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(2)(C) must be applied in this Lawsuit.

**3.  SEARCH & COLLECTION PROCEDURES**

Should the producing party employ a search term process to identify and/or compile potentially responsive custodial data, the producing party shall  inform the requesting party of the selected search terms and the custodians over which those terms are to be applied within thirty days of serving written responses to the relevant Requests for Production. The parties shall meet and confer in good faith regarding the search terms and methodology and reserve the right to seek appropriate relief from the Court. If the producing party elects to identify responsive documents through the use of technology-assisted review or the like, the producing party shall disclose such intent to the requesting party, and the parties shall thereafter confer regarding the scope and use of such methods. Nothing herein precludes a requesting party from requesting additional searches or subsequent modifications of the search terms and process for good cause.

**4. PRODUCTION MEDIA & PROTOCOL**

The production media for document productions shall be secure FTP link provided via email at the time a production letter is emailed, unless the parties agree otherwise. If the parties agree, production media may be a CD-ROM, DVD, external hard drive (with standard PC compatible

1

interface), or USB drive, so long as such production media is sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of production media (or in the case of FTP productions, each production transmittal letter) shall include: (1) text referencing that it was produced in *In re J&J Investment Litigation*, (2) the production date, and (3) the Bates number range of the materials contained on such production media item.

## 5. PRODUCTION FORMATS

**a. Production Format.** Unless the parties agree to a different format, documents should be produced in .tiff or searchable .pdf format and named according to the Bates number of the corresponding image. Each .tiff or .pdf file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to custodial emails shall be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder. All images should be provided in a single-page Group IV TIFF or searchable PDF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced .tiff or .pdf image. These .tiff or .pdf images should be provided in a separate folder and the number of TIFF or PDF files per folder should be limited to 1,000 files.

**b. Production of Excel.** Unless such materials contain privileged information, spreadsheets, audio files, photos, video files, and Excel shall be produced in Native Format. If the files, however, contain privileged information, they need not be produced in Native Format but shall be produced with the extracted text and metadata fields set forth in this Order, and in redacted format, except to the extent the extracted text or metadata fields are themselves redacted. If a party in good faith believes the native file is necessary for interpretation of the document, the parties shall work together to determine a plan for handling the text that needs to be redacted.

**c. Mobile and Handheld Device Documents and Data.** If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or

handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production and production format of any responsive documents and data contained on any mobile or handheld device. Pending such meet and confer and agreement all such data will be preserved.

    **d. Text Files.** All unredacted documents should be provided with complete document-level extracted text files, where extracted text is available. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder or included in the same folder as the corresponding images. The number of TXT files per folder should be limited to 1,000 files.

    **e. Other Native File Production.**

        i.    The parties shall meet and confer to discuss requests for the production of other files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court.

        ii.    A placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in native format. The placeholder should include the words "Document produced in native format."

        iii.    In the event a document is produced in Native and that document requires redaction, the redacted document shall be produced. ESI produced in native format shall be produced with all the metadata contained in or associated with that file to the extent technologically possible.

        iv.    Extracted text taken from native files shall be provided at a document level. There shall be one text file per document, using the same name as the beginning Bates number (Document ID) of the document. The extracted text file for a document shall reside in the same location (file directory) as the

images for that document. The text file associated with any redacted document shall exclude redacted text (*i.e.*, the producing party can OCR the redacted image of the unstructured ESI and replace the original extracted text).

**f.   Color.** ESI containing color (for example, graphs, pictures, or color marketing materials) shall be produced as color images for each such document if color is necessary to reasonably understand the content of the ESI. Otherwise, a party may request the producing party to produce particular documents or categories of documents in color where reasonable. A party shall not be precluded from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties shall meet and confer in good faith to try to resolve it.

**g.   De-duplication.** The parties shall make reasonable efforts to de-duplicate ESI. Exact duplicate documents shall be de-duplicated horizontally across custodians. ESI shall be considered duplicative if it has the same content including metadata and where the family of documents are all exact duplicates. If a producing party elects to de-duplicate horizontally, all custodians who were in possession of de-duplicated document must be identified in the Custodians metadata field in Exhibit A.

**h.   Confidentiality Endorsements.** The producing party must brand any confidentiality or similar endorsements in a corner of the images pursuant to the protective order entered in this Lawsuit. Those endorsements must be in a consistent font type and size.

**i.   Email Threading.** To reduce the volume of entirely duplicative content within email threads, the parties may utilize "email thread suppression." As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string, provided that all previous emails in the thread reflect full sender, recipient, and date and time stamp

4

information, and provided that the software used to identify these "non-inclusive" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced. For purposes of this paragraph, only email messages in which the parent document, senders and recipients (including blind copy), and all attachments are exactly the same shall be considered duplicates. Email thread suppression may not be used where any of the emails or attachments included in the thread are withheld or redacted.

**j. Custodian Designations in De-duplicated Production.** To the extent that deduplication is used, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication shall nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial. The custodian associated with the first copy of a document processed shall be considered the primary custodian for that document (the custodian who shall be used as the basis for determining which other collected documents are duplicates). Each production shall include an "All Custodian" field listing of every custodian or source collected for production and who/which possessed a duplicate document and where the document was deduplicated during processing. The "All Custodian" field shall be updated by the producing party via an overlay file if rolling collections result in changes to the field post-production.

**k. Handwritten Notes, Track Changes or Other Alterations**. If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, handwritten note, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting, or redlining. The requesting party may request production of a color copy (in native or otherwise) of a document if it determines that such a color copy shall assist in deriving the meaning of the document and the request is otherwise reasonable and proportional. If a document contains track changes and/or comments, the producing party shall image the document showing the tracked

5

changes and/or comments.

**l.   Metadata Fields and Processing.** Each of the metadata and index fields set forth in Exhibit A shall be produced for that document, to the extent such metadata is available. If the producing party becomes aware of an issue extracting a category of agreed-upon metadata, the producing party must notify the other party and meet and confer to arrive at a mutually acceptable resolution of the issue.

**m.   Parent-Child Relationships.** Parent-child relationships refer to the association between an attachment and its parent document. Parent-child relationships must be preserved. Family relationships often exist between an email and its attachments, but can also be found amongst stand-alone documents and files originally contained within that parent document, which may subsequently be de-embedded as part of discovery processing.

**n.   Attachments.** The parties agree to produce complete custodial emails and custodial stand-alone files with embedded documents when any part of the that email (including parents or attachments) or stand-alone file (including embedded documents) is responsive. Attachments, enclosures, and/or exhibits to any parent custodial emails or custodial stand-alone files should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits. If a document is entirely withheld on the basis of privilege, such that the producing party asserts privilege over a portion but not all of the files in a family, the producing party shall produce a Bates numbered slip sheet that contains the following language: "Document Withheld on the Basis of Privilege." Slip sheets need not be produced for fully privileged document families.

**o.   Redaction.** The parties agree that where ESI items need to be redacted, they shall be produced solely in .pdf or .tiff with each redaction clearly indicated, except in cases where the documents cannot be rendered to .pdf or .tiff in a readable manner (such as spreadsheets). In that case, the document may be redacted natively as long as a pristine copy of the original document is maintained. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content, where reasonably feasible. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate

6

manner for the Producing party to produce the unredacted portion of the content.

If a party redacts documents or ESI, the redaction shall be clearly visible on the face of the document to the extent possible, e.g., "PII," or "PHI."

**p. Privilege and Privilege Logs.** The parties agree that the following privileged communications or documents need not be included in a privilege log: (a) work product of outside legal counsel; (b) any internal communications by a party's outside law firm; (c) communications with the outside law firm that postdate the filing of the initial class complaint(s); and (d) communications or work product by internal employees and members of the legal department prepared to assist in the response to this litigation that postdate the filing of the initial class complaint(s).

If only part of a document contains privileged information, the responding party shall redact only the allegedly privileged information and produce the remainder of the document or ESI. Within 30 days of each production, the producing party shall provide a privilege log in excel format pursuant to Rule 26(b)(5) for all ESI withheld on the basis of privilege and required to be included on a privilege log.

**q. Load Files.** Documents must be provided with (1) a delimited metadata file (.dat or .txt); (2) an image load file; and (3) a text file.

**r. Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover.

**6. SPECIAL ESI ISSUES**

**a. Hidden Text.** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments. For any document which the requesting party reasonably believes includes hidden content, tracked changes or edits, comments, notes, or other similar information viewable within the native file, at a requesting party's reasonable request, the producing party shall provide the native file, or if possible an image file of a version showing the hidden content, if there is such content. A party shall not be precluded from objecting to such requests as unreasonable in

7

number, timing, or scope.

    **b. Production of Structured Data.** Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static format. The parties agree to identify the specific databases, by name, that contain the information that parties produce, and meet and confer regarding the format of production.

    **c. Objections.** Nothing in this Stipulation and Proposed Order shall be interpreted to waive any objections to the relevance, responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden or overbreadth of document requests.

    **d. No Waiver of Rights Regarding Review.** By entering this Order, a party is not giving up its right to review its documents for privilege or any other reason (including to identify non-responsive documents) and the existence of this Order cannot be used to compel a party to produce documents without review.

# EXHIBIT A

## Metadata Fields

The following default fields shall be provided for all documents in the production.

| Field Name | Description |
|---|---|
| Begin Bates | Beginning Bates Number of the Email, Application File, or Paper Document |
| End Bates | Ending Bates Number of the Email, Application File, or Paper Document |
| | |
| Bates Beg Attachment | Bates Beg for family |
| Bates End Attachment | Bates End for Family |
| Att Count | Number of attachments to an email |
| | |
| Confidentiality | Field populated with the appropriate confidentiality designation for the Document. |
| Custodian | Multi-value field for custodians identified during collection. All documents should have a custodian value present. |
| All Custodians | Identification of all custodians the producing party agreed to produce and where a duplicate of the Document was sourced and de-duplicated when processing the documents. |
| | |

## A. Metadata Fields

The following metadata fields associated with emails, attachments and non-email files will be exchanged, where available. Any privileged metadata associated with any redacted documents may be withheld from the production.

| Field Name | Email or Non-Email | Description |
|---|---|---|
| Subject/Title | Email | Subject line of the email |
| File Extension | Non-Email | File extension |
| Sent Date | Email | Email Sent date |
| Received Date | Email | Email Received date |

9

| | | |
|---|---|---|
| Created Date | Non-Email | Date Application File was created. Note that Created Date may be subject to change during collection or processing as a result of auto date function or other processes. |
| Modified Date | Non-Email | Date Application File was last modified |
| Modified Time | Non-Email | Time Application File was last modified |
| Author/From | Both | Author of the Application File or sender of the Email |
| Recipient/To | Email | Recipients of the Email |
| Copyee | Email | CCs of the Email |
| BCC | Email | BCCs of the Email |
| File Type | Both | Email, Spreadsheet, Word Processing Document, etc. |
| Path to Native | Both | Location of the native file within the Production |
| Path to Text | Both | Location of the extracted text file within the Production |
| Email Received Time | Email | Time Email was received |
| File Created Time | Non-Email | Time Application File was created |
| Hash Value | Non-mail | Value commonly used to de-duplicate files or identify duplicates |

10

Dated: December 1, 2022

Respectfully submitted,

By: */s/ Miles N. Clark*

Miles N. Clark (NBN 13848)
**LAW OFFICES OF MILES N. CLARK, LLC**
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
(702) 856-7430
miles@milesclarklaw.com

*Liaison Counsel*

Eric H. Gibbs (*pro hac vice*)
David K. Stein (*pro hac vice*)
Emily Beale (*pro hac vice*)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
eg@classlawgroup.com
eb@classlawgroup.com

Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Makenna Cox (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

Jeffrey C. Schneider (*pro hac vice*)
Jason K. Kellogg (*pro hac vice*)
Marcelo Diaz-Cortes (*pro hac vice*)
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
100 SE 2nd Street
Miami Tower, 36th Floor
Miami, FL 33131
Telephone: (305) 403-8788

11

[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL
CASE NO. 2:22-CV-00529-GMN-NJK

**Vol. 1, Page 146**

Facsimile: (305) 403-8789
jcs@lklsg.com
jk@lklsg.com
md@lklsg.com

Robert L. Brace (*pro hac vice*)
Maria Fernanda Elosu (*pro hac vice*)
**LAW OFFICES OF ROBERT L. BRACE**
1807 Santa Barbara St.
Santa Barbara, CA 93101
Telephone: (805) 886-8458
rlbrace@rusty.lawyer
mariaelosulaw@gmail.com

*Interim Co-Lead Counsel for the Proposed Class*


By: */s/ Joseph G. Went*

Joseph G. Went (NBN 9220)
Sydney R. Gambee (NBN 14201)
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
jgwent@hollandhart.com
srgambee@hollandhart.com

By: */s/ K. Issac deVyer*

K. Issac deVyer (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
**MCGUIREWOODS**
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200
Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

*Attorneys for Defendant*

12

[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL
CASE NO. 2:22-CV-00529-GMN-NJK

**[PROPOSED] ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: _____, 2022

_____
Honorable Nancy J. Koppe
United States District Court

.

13

[PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL
CASE NO. 2:22-CV-00529-GMN-NJK

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2022, a true and accurate copy of **Defendant Wells Fargo Bank, N.A.'s Supplemental Responses to Plaintiffs' First Set of Requests for Production** was served on counsel below via e-mail.

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
dgirard@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

*Interim Co-Lead Counsel*

Jeffrey C. Schneider (pro hac vice)
Jason K. Kellogg (pro hac vice)
Marcelo Diaz-Cortes (pro hac vice)
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
Citigroup Center, 22nd Floor
Miami, FL 33131
jcs@lklsg.com
jk@lklsg.com
md@lklsg.com

*Interim Co-Lead Counsel*

Miles N. Clark (NBN 13848)
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
miles.clark@knepperclark.com

*Liaison Counsel*

Eric H. Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Emily Beale (pro hac vice)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
ds@classlawgroup.com
eg@classlawgroup.com
eb@classlawgroup.com

*Interim Co-Lead Counsel*

Robert L. Brace (pro hac vice)
Maria Fernanda Elosu (pro hac vice)
LAW OFFICES OF ROBERT L. BRACE
1807 Santa Barbara St.
Santa Barbara, CA 93101
rlbrace@rusty.lawyer
mariaelosulaw@gmail.com

*Interim Co-Lead Counsel*

/s/ K. Issac deVyver
K. Issac deVyver

# EXHIBIT 4

Joseph G. Went
Nevada Bar No. 9220
Sydney R. Gambee
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702-669-4600
Fax: 702-669-4650
jgwent@hollandhart.com
srgambee@hollandhart.com

K. Issac deVyver (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
MCGUIREWOODS LLP
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Phone: 415.844.9944
Fax: 415.844.9922
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

*Attorneys for Wells Fargo Bank, N.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No. 2:22-cv-00529-GMN-NJK |
| | **DEFENDANT WELLS FARGO BANK, N.A.'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** |

**PROPOUNDING PARTY:  PLAINTIFFS BARRETT HENZEL, ALLAN L. CARSO, GARY W. LUNDIN, JOSHUA LUEKENGA, CRAIG RODNEY MICHAELIS, BRYCE KELLY, CLINT MCDANIEL, AND DAN MCDANIEL**

**RESPONDING PARTY:   DEFENDANT WELLS FARGO BANK, N.A.**

**SET NO.:          ONE**

Pursuant to Federal Rules of Civil Procedure 34 and 26(e)(1), Defendant Wells Fargo Bank, N.A. ("Wells Fargo") supplements its responses to Plaintiffs' Barrett Henzel, Allan L. Carso, Gary W. Lundin, Joshua Luekenga, Craig Rodney Michaelis, Bryce Kelly, Clint McDaniel, And Dan McDaniel ("Plaintiffs") Requests for Production of Documents Set One ("Requests"), as follows:

## PRELIMINARY STATEMENT AND OBJECTIONS TO DEFINITIONS/INSTRUCTIONS

1.      Wells Fargo objects to the term "Applicable Period" as the parties already negotiated the applicable period. In Wells Fargo's responses and objections, the "Applicable Period" means November 1, 2016 to May 21, 2022.

2.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.  It is, for example, unclear what would constitute someone "purporting to act on his behalf."  Wells Fargo will interpret "Beasley" to refer to Matthew Wade Beasley alone.

3.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley Accounts" insofar as it includes Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including without limitation, Beasley.  It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the Beasley Law Group, PC, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation.  Wells Fargo will interpret "Beasley Accounts" to refer to the Beasley Law Firm IOLTA (*5598), Beasley Law Group PC (*5580), Beasley Law Group PC (*8898), Matthew Beasley (*1115), and Matthew Beasley (Safe Deposit Box) (*1224).

4.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley Entities" insofar as it includes Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf. It is disproportionately

burdensome to expect Wells Fargo to search for and produce information related to any employee that may every have worked at Beasley Law Group, PC, and it is also unclear what constitutes an "associated or related" company. Wells Fargo will interpret "Beasley Entities" to refer to Beasley Law Group alone.

5. Wells Fargo objects to Plaintiffs' definition of "Communication(s)" as overbroad and disproportionality burdensome on Wells Fargo in that it purports to require Wells Fargo to search for and provide information about intangibles such as oral "acts" or "ideas" that are not rendered to writing. Rather, this appears to seek electronic information about any contact or attempted contact between two people, which would not be relevant or proportional to collect.

6. Wells Fargo objects to Plaintiffs' definition of "Document(s)" as overbroad and disproportionately burdensome on Wells Fargo insofar as it includes information contained in backup media. Wells Fargo will define "Documents," including "electronically stored information," as that term is used in Rule 34 of the Federal Rules of Civil Procedure and, where it agrees to produce documents in response to these requests, Wells Fargo will conduct reasonable and proportional searches for relevant, responsive electronically stored information.

7. Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Accounts" insofar as it includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors, trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf. It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation. Wells Fargo will interpret "J&J Accounts" to mean J&J Consulting Services, Inc. (*0153) and J&J Purchasing LLC (*7037).

8.    Wells Fargo objects to Plaintiffs' overbroad definition of "Judd" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf. In Wells Fargo's responses and objections, "Judd" means Jeffrey J. Judd and does not include his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

9.    Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Conspirators" insofar as it is vague, overbroad, and disproportionately burdensome on Wells Fargo for requesting information related to "some or all" of dozens of individuals or entities.   It is unduly burdensome and disproportional on Wells Fargo to require Wells Fargo to search for and produce information related to dozens of individuals or entities, some of which may have had tangential, if any, involvement in the matters at issue in this litigation.  Wells Fargo will interpret "J&J Conspirators" to mean individuals or entities included on the list attached as **Exhibit A** (the "Agreed Accounts").

10.    Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Conspirator Accounts" as described above in its objection to Plaintiffs' definition of "J&J Conspirators." Moreover, it is unduly burdensome and disproportional on Wells Fargo to require Wells Fargo to search for and produce information related to any account held by dozens of individuals or entities, some of which may have had tangential, if any, involvement in the matters at issue in this litigation. Wells Fargo will interpret "J&J Conspirators Accounts" to mean the Agreed Accounts.

11.    Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Entities" insofar as it includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors,  trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Judd.  It is overbroad and disproportionately burdensome to require Wells Fargo to produce documents and information for every account related to any employee that may ever have worked at the J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation. Wells

Fargo will interpret J&J Entities to mean J&J Consulting Services, Inc. (*0153) and J&J Purchasing LLC (*7037).

12.    Wells Fargo objects to the definition of "Personal Account(s)" as vague, overbroad, and disproportionately burdensome on Wells Fargo as it seeks information related to any account held by the "manager, member, officer or director" of a number of different entities without defining who those specific entities or individuals would be.  Wells Fargo will interpret this to refer to the Agreed Accounts.

13.    Wells Fargo objects to the terms "You," "Your," "Yours," and Wells Fargo as vague, overly broad, and disproportionately burdensome on Wells Fargo in that it purports to also seek information related to Wells Fargo's "present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf."  Wells Fargo will interpret this Request to refer to Wells Fargo Bank, N.A. alone.

14.    Wells Fargo objects to Instruction 1 as unduly burdensome and asks Wells Fargo to identify documents we are producing by Request, which is not required by Federal Rule of Civil Procedure 34.  Wells Fargo will produce documents as they are kept in the usual course of business.

15.    Wells Fargo objects to Instruction 2 as vague, overbroad, and disproportionately burdensome on Wells Fargo in that it seeks documents in the control of former employees that no longer have a relationship with Wells Fargo, as well as documents that "relate" or "refer" to the Applicable Time Period rather than just those that were created during that time period.  Wells Fargo will conduct reasonable searches for information within its control within the Applicable Time Period.

16.    Wells Fargo objects to Instruction 3 as overbroad, unduly burdensome, and disproportional in that it specifically requests that Wells Fargo produce deleted documents, which is unreasonable and disproportionate to the case.  Wells Fargo also does not agree to search for or produce information from backup tapes.  Wells Fargo will search for and produce information from Wells Fargo Bank, N.A.'s current systems and employees to the extent Wells Fargo otherwise agrees to do so in response to a particular request below.

17.    Wells Fargo objects to Instruction 4 as overly broad, unduly burdensome, and disproportionate to the extent it seeks "original" documents and duplicates that are "bound or stapled in the same manner as the original." Wells Fargo will produce its documents as kept in the ordinary course of business as required by the Federal Rules of Civil Procedure.

18.    Wells Fargo objects to Instructions 5 and 7 on the ground that they seek privileged attachments. Wells Fargo will produce attachments in accordance with section 5(n) of the ESI Protocol.

19.    Wells Fargo objects to Instruction 8 as it purports to require more from Wells Fargo to prepare a privilege log than the requirements set forth in the Federal Rules of Civil Procedure. Wells Fargo will produce a privilege log in accordance with section 5(p) of the ESI protocol.

20.    Wells Fargo objects to Instruction 9 as it would prevent Wells Fargo from redacting documents for other types of privilege, like the Bank Examination Privilege, relevance, and/or confidentiality, which information Wells Fargo is either not obligated to produce or is specifically prohibited from producing by applicable law. It would also be disproportionately burdensome on Wells Fargo to require Wells Fargo to log every redaction made for any reason other than privilege, such as PII redactions. To the extent Wells Fargo withholds information by redactions, the text of the redaction will make clear the basis for withholding the information.

21.    Wells Fargo objects to Instruction 10 because it imposes obligations beyond those required by the Federal Rules of Civil Procedure and the Court's Orders. Specifically, Wells Fargo objects to providing information regarding every document deleted or destroyed during the ordinary course of business and before litigation was anticipated, as it is not feasible to do so, Wells Fargo had no duty to retain materials prior to anticipating litigation, and providing such information imposes an undue burden, is disproportionate, and is not relevant to a claim or defense. Wells Fargo will not search for or produce information in response to this instruction.

22.    Wells Fargo will produce documents pursuant to the ESI protocol agreed to by the parties.

**REQUEST FOR PRODUCTION NO. 14:**

Documents and Communications concerning suspected or possible unlawful or improper

account activity concerning Beasley, the Beasley Accounts, Judd, the J&J Entities, the J&J Conspirators, or the J&J Conspirator Accounts.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "suspected or possible unlawful or improper account activity" is not defined and subject to various interpretations as to its meaning. *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive because it seeks Documents and Communications about more than 40 individuals or businesses, without any temporal limitation, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Further, the Request is not narrowly tailored or limited because it seeks all documents and communications regarding any possible "unlawful or improper account activity" related to dozens of accounts, which will encompass documents that do not have any relevance to Plaintiffs' claims in the complaint. *Guerrero v. Wharton*, No. 216CV01667GMNNJK, 2017 WL 7314240, at *5 (D. Nev. Mar. 30, 2017) ("As a rule, requests for 'any and all' documents or communications are facially overbroad.") (citing *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 6741675, at * 3 (S.D. Cal. Nov. 17, 2020)). Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance.

Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo legal counsel may have been involved in responding to any allegations of improper activity in the referenced accounts.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for Currency Transaction Reports ("CTRs"), alerts and investigation files maintained in Wells Fargo's Financial Crimes Platform ("FCP"), customer complaints maintained in ECMPS, investigation files maintained in Universal Workstation, wire investigation documents maintained in PEGA, notes related to recommendation to exit customer relationship ("RECR") determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts that are associated with Anthony Alberto and Larry Jeffery, and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using

8    Case No. 2:22-cv-00529-GMN-NJK

DEFENDANT WELLS FARGO BANK, N.A.'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION    **Vol. 1, Page 158**

the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances. Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-privileged documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

**REQUEST FOR PRODUCTION NO. 16:**

Alerts, reports, and other Documents generated by or accessible from the "Actimize" banking activity monitoring system concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," and "investigation files" are not defined and subject to various interpretations as to their meaning. *See, e.g.*, *Sinanyan v. Luxury Suites Int'l*, LLC, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the

term "statement of accounts" was vague and ambiguous). Wells Fargo also objects to the phrase "generated by or accessible from the 'Actimize' banking activity monitoring system" as vague and ambiguous, because Actimize is a third-party software that can be customized to perform a variety of different functions, and thus it is unclear what reports Plaintiffs' seek.  Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. On scope, this Request is overly expansive by seeking all alerts and reports generated by "Actimize" regarding more than 40 individuals or businesses and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly.*") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence."). The Request is also overbroad and overly expansive in that it seeks information concerning "any related investigation files." Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i), and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting

Wells Fargo objects on the basis that this Request seeks production of confidential,

10

business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as Wells Fargo's legal counsel may have been involved in any investigation into or about the accounts alleged to be at issue in this litigation.

Wells Fargo hereby further responds as follows: Wells Fargo uses Actimize to generate and store CTRs. Wells Fargo will produce CTRs related to the Agreed Accounts dated between November 1, 2016 and May 21, 2022 in response to this Request. With respect to non-Actimize systems, Wells Fargo agrees to search for alerts and investigation files maintained in FCP, customer complaints maintained in ECMPS, investigation files maintained in Universal Workstation, wire investigation documents maintained in PEGA, notes related to RECR determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts associated with Anthony Alberto and Larry Jeffery, and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to conduct searches of the following custodians or boxes

11

for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances.  Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-privileged documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

**REQUEST FOR PRODUCTION NO. 17:**

Alerts, reports, and other Documents generated by or accessible from any banking activity monitoring system other than Actimize (including without limitation Fiserv FraudLink and Radar World Check) concerning the Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, and any related investigation files, Documents, and Communications.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the terms "alerts," "reports," "banking activity monitoring system" and "any related investigation files" are not defined and subject to various interpretations as to its meaning. *See e.g.*, *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley

Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is overbroad in time and scope, calls for production of information not relevant to the claims or defenses in this litigation, and will impose an undue burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the time and scope of this Request. On scope, this Request is overly expansive by seeking all "[a]lerts, reports, and other Documents generated by or accessible from any banking activity monitoring system. . ." for more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly*.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence."). Additionally, such information is highly confidential.

Wells Fargo objects and declines to respond to the extent this Request seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. §103.18, 31 U.S.C. §5318(g)(2)(A)(i) and applicable regulatory guidance. Wells Fargo will, on the basis of this objection, withhold documents that reveal that a SAR was or was not filed or will redact such information and will provide a log of documents it is withholding or redacting

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the regulations promulgated thereunder, and 16 C.F.R. Part 313. Responsive documents are not being withheld on the basis of this objection, but otherwise

protected confidential information may be redacted as appropriate.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as it would necessarily include any documents by or communications with members of Wells Fargo's legal department.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, alerts and investigation files maintained in FCP, customer complaints maintained in ECMPS, investigation files maintained in Universal Workstation, wire investigation documents maintained in PEGA, notes related RECR determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts associated with Anthony Alberto and Larry Jeffery, and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive,

14                                                    Case No. 2:22-cv-00529-GMN-NJK

relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances. Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-privileged documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

**REQUEST FOR PRODUCTION NO. 21:**

Documents and Communications not otherwise requested concerning any inquiry or investigation You undertook with respect to any Beasley Accounts, J&J Accounts, or J&J Conspirator Accounts during the Applicable Period, including at or before account opening.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Wells Fargo objects to this Request on the ground that the Request is vague and ambiguous, in that the phrase "Documents and Communications not otherwise requested" and the terms "inquiry" and "investigation" are not defined and subject to various interpretations as to its meaning. Responsive documents are not being withheld on the basis of this objection. *See e.g.*, *Racings Optics, Inc. v. Aevoe Corp.*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL 3912848, at *2 (D. Nev. July 19, 2016) (sustaining objection that terms, such as "testing" and "using" were vague and ambiguous because it was unclear what type of testing would be responsive*); Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-CV-225-GMN-VCF, 2016 WL 1171504, at *2 (D. Nev. Mar. 24, 2016) (sustaining objection that the term "statement of accounts" was vague and ambiguous). Further, this Request includes Plaintiffs' overbroad definition of Beasley Accounts, J&J Accounts, the J&J Conspirators, and the terms "Documents" and "Communications," which Wells Fargo objects to for the reasons stated in its objections to the definitions.

Wells Fargo objects to this Request on the basis that it is extremely overbroad in scope, calls for production of information not relevant to the claims or defenses, and will impose an undue

burden on Wells Fargo that outweighs any benefit to the parties. Plaintiffs have made no attempt to limit the scope of this Request and is overly expansive by seeking all "inquiries and investigations" relating to any Beasley Accounts, the J&J Accounts, or the J&J Conspirator Accounts, which consists of more than 40 individuals or businesses, and imposes a burden on Wells Fargo that outweighs any benefit to the parties. Indeed, as drafted, this Request seeking documents and communications for dozens of accounts, and would include documents that are not relevant to Plaintiffs' claims in this case. *Strohmeyer v. Belanger*, No. 314CV00661RCJWGC, 2019 WL 4060894, at *5 (D. Nev. Aug. 28, 2019) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *U.S. ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) (denying motion to compel discovery of defendant's documents because it was considered "a fishing expedition, 'not reasonably calculated to lead to the discovery of admissible evidence.'").

Wells Fargo objects to this Request to the extent it seeks disclosure of information relating to statutory and regulatory requirements for detecting and reporting potentially suspicious transaction activity as described in 31 U.S.C. §5318, pursuant to 12 C.F.R. §21.11, 31 C.F.R. § 103.18, 31 U.S.C. §5318(g)(2)(A)(i) and applicable regulatory guidance.

Wells Fargo objects on the basis that this Request seeks production of confidential, business proprietary, or other non-public protected information of third parties and, thus, creates confidentiality concerns under federal and state statutes, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 and the regulations promulgated thereunder.

Wells Fargo objects to this Request to the extent it requests information, communications, or material that is protected by the work-product doctrine or attorney-client privilege, as the broad scope of the request above would necessarily include any documents created by or communications with a member of Wells Fargo's legal team or outside counsel team relating to an investigation into the allegations underlying this matter.

Wells Fargo hereby further responds as follows: Wells Fargo agrees to search for CTRs, alerts and investigation files maintained in FCP, customer complaints maintained in ECMPS,

investigation files maintained in Universal Workstation, wire investigation documents maintained in PEGA, notes related RECR determinations from EEMS, responses to law enforcement inquiries from 1SUM, and due diligence reviews from Alacra related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search. Wells Fargo also agrees to produce information from HOGAN identifying the risk rating associated with the Agreed Accounts. Wells Fargo also agrees to search for CTRs and the same categories of information in FCP, ECMPS, Universal Workstation, PEGA, EEMS, 1SUM, Alacra, and HOGAN risk rating data for the DDA accounts associated with Anthony Alberto and Larry Jeffery, and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 and May 21, 2022 found in that search. Wells Fargo is searching the above-listed systems by enterprise customer number, EIN/TIN/SSN, transaction (after identifying the transactions using the applicable customer information), and/or account number as appropriate for the particular system being searched. Wells Fargo also agrees to use the search terms listed in **Exhibit B (titled "FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: Kelly Monroe-Elliott, Taryn Lippert, James DiCaprio, Justin Rhodes, Katelyn Verdelli, LERequest@wellsfargo.com, recommendationtoexitcustrel@wellsfargo.com, and wireinvestigations@wellsfargo.com. Wells Fargo also agrees to use the search terms listed in **Exhibit C (titled "Narrowed FCI Search Terms")** to conduct searches of the following custodians or boxes for documents related to the Agreed Accounts and to produce the responsive, relevant, and non-privileged documents dated between November 1, 2016 to May 21, 2022 found in that search: William Sherman and FCI@wellsfargo.com. If Wells Fargo identifies additional systems that house alerts or investigation files related to the Agreed Accounts, Wells Fargo will disclose those systems to Plaintiffs and either produce the responsive, relevant, and non-privileged documents identified in that search or meet and confer with Plaintiffs regarding those systems as appropriate under the circumstances. Wells Fargo has already produced many of these documents, and Wells Fargo will continue to produce additional responsive, relevant, and non-privileged

documents identified during its reasonable and diligent inquiry for documents responsive to this request on a rolling basis until the close of fact discovery.

DATED: July 7, 2023                                    Respectfully submitted,

**MCGUIREWOODS LLP**

By:    */s/ K. Issac deVyver*
K. Issac deVyver (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
MCGUIREWOODS LLP
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Phone: 415-844-9944
Fax: 415-844-9922
kdevyver@mcguirewoods.com
abaiardo@mcguirewoods.com
ale@mcguirewoods.com

Joseph G. Went
Nevada Bar No. 9220
Sydney R. Gambee
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
jgwent@hollandhart.com
srgambee@hollandhart.com

*Attorneys for Wells Fargo Bank, N.A.*

## Exhibit A: Agreed Accounts

| Individual/Entity | Account Number |
|---|---|
| Anderson Dairy Creamery, LLC | *1189 |
| Anthem Assets, LLC | *4485 |
| Beasley Law Firm IOLTA | *5598 |
| Beasley Law Group PC | *5580 |
| Beasley Law Group PC | *8898 |
| Bugraiders Pest Control | *0377 |
| Christopher R. Humphries | *0829 |
| CJ Investments, LLC | *6358 |
| Infused, LLC | *6474 |
| J&J Consulting Services, Inc. | *0153 |
| J&J Purchasing LLC | *7037 |
| Jager Capital LLC | *6508 |
| Jager Family Trust | *9335 |
| Jason Jongeward/Eco Battery | *3314 |
| JCH Consulting, LLC | *1243 |
| Jessica & Christopher Humphries | *2164 |
| Jessica & Christopher Humphries | *5547 |
| Jessica Humphries | *8722 |
| JL2 Investments, LLC | *7152 |
| Matthew Beasley, Matthew W. Beasley | *1115 |
| Matthew Beasley (Safe Deposit Box) | *1224 |
| Nevada Pro Pest Control | *1132 |
| Nevada Pro Pest Control | *6540 |
| ORC Holdings, LLC | *2818 |
| Pride Pest Control | *9178 |
| Roland Tanner | *0540 |
| Shane and Karsen Jager | *3003 |
| Shane Jager; Brooklyn Jager | *2826 |
| Shane M. Jager; Karsen and Willow Jager | *4143 |
| Shea, Jessica, & Chris Humphries | *0829 |
| Stirling Consulting, LLC | *6558 |
| Triple Threat Basketball | *2948 |
| Triple Threat Basketball | *9671 |
| Triple Threat Basketball | *3578 |

**Exhibit B: FCI Search Terms**

(Beasley w/2 Law)
(Matt* w/2 Beasley)
(Jeff* w/2 Judd)
(Shane w/2 Jager)
"J&J Consulting Services"
"J&J Purchasing"
"J and J Consulting Services"
"J and J Purchasing"
"@beasleylawgroup.com"
IOLTA
(Warren w/2 Rosegreen)
(Chris* w/2 Humphries)
(Mark w/2 Murphy)
"J&J"
"J & J"
"J& J"
"J &J"
"JandJ"
"J and J"
"*@beasleylawgrouplv.com"

chrishump@hotmail.com
jessiecoon@hotmail.com
CTANDY1229@GMAIL.COM
jtandy1@gmail.com
Rolandstanner@gmail.com
jjppk@aol.com
JEFFBARCA@AOL.COM
KARSENJAGER1@GMAIL.COM
WILLOWJAGER@YAHOO.COM
jason.jcd@gmail.com
ljongeward@gmail.com

Matthew.beasley.305@my.csun.edu
kcm1943@gmail.com
Swskbj@gmail.com
sheahumphries11@gmail.com
wrosegreen@yahoo.com
jagerrealestate@yahoo.com
mark@beyondbeancounting.com







jessicahumphrieslaw@gmail.com
BALLERKJ14@GMAIL.COM
BROOKLYNJAGER7@GMAIL.COM
virginia@beyondbeancounting.com
markmurphy2720@yahoo.com
matthew@beasleylawgrouplv.com
stirlingconsulting1@gmail.com
jeffreyjudd13@icloud.com



**Exhibit C: Narrowed FCI Search Terms**

(Beasley w/2 Law)
(Matt* w/2 Beasley)
(Jeff* w/2 Judd)
(Shane w/2 Jager)
"J&J Consulting Services"
"J&J Purchasing"
"J and J Consulting Services"
"J and J Purchasing"
"@beasleylawgroup.com"
IOLTA
(Warren w/2 Rosegreen)
(Chris* w/2 Humphries)
(Mark w/2 Murphy)
"*@beasleylawgrouplv.com"



chrishump@hotmail.com
jessiecoon@hotmail.com
CTANDY1229@GMAIL.COM
jtandy1@gmail.com
Rolandstanner@gmail.com
jjppk@aol.com
JEFFBARCA@AOL.COM
KARSENJAGER1@GMAIL.COM
WILLOWJAGER@YAHOO.COM
jason.jcd@gmail.com
ljongeward@gmail.com
Matthew.beasley.305@my.csun.edu
kcm1943@gmail.com
Swskbj@gmail.com
sheahumphries11@gmail.com
wrosegreen@yahoo.com
jagerrealestate@yahoo.com

EXHIBIT C – NARROWED FCI SEARCH TERMS          **Vol. 1, Page 176**

mark@beyondbeancounting.com



EXHIBIT C – NARROWED FCI SEARCH TERMS    **Vol. 1, Page 177**



EXHIBIT C – NARROWED FCI SEARCH TERMS    **Vol. 1, Page 178**

EXHIBIT C – NARROWED FCI SEARCH TERMS    **Vol. 1, Page 179**

jessicahumphrieslaw@gmail.com
BALLERKJ14@GMAIL.COM
BROOKLYNJAGER7@GMAIL.COM
virginia@beyondbeancounting.com
markmurphy2720@yahoo.com
matthew@beasleylawgrouplv.com
stirlingconsulting1@gmail.com
jeffreyjudd13@icloud.com

EXHIBIT C – NARROWED FCI SEARCH TERMS          **Vol. 1, Page 180**

EXHIBIT C – NARROWED FCI SEARCH TERMS   **Vol. 1, Page 181**

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, this document, **DEFENDANT WELLS FARGO BANK, N.A.'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**, was served on counsel below by submitting via electronic mail to the names and electronic mail addresses listed below:

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Adam E. Polk (pro hac vice)
Thomas Watts (pro hac vice)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com
tomw@girardsharp.com
*Interim Co-Lead Counsel*

Eric H. Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Kyla J. Gibboney (pro hac vice)
Amy M. Zeman (pro hac vice)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
ds@classlawgroup.com
ehg@classlawgroup.com
kjg@classlawgroup.com
amz@classlawgroup.com
*Interim Co-Lead Counsel*

Robert L. Brace (pro hac vice)
Maria Fernanda Elosu (pro hac vice)
LAW OFFICES OF ROBERT L. BRACE
1807 Santa Barbara St.
Santa Barbara, CA 93101
rlbrace@rusty.lawyer
mariaelosulaw@gmail.com
*Interim Co-Lead Counsel*

Emily Beale (pro hac vice)
GIBBS LAW GROUP LLP
43 West 43rd Street, Suite 52
New York, NY 10036
eb@classlawgroup.com
*Interim Co-Lead Counsel*

Miles N. Clark (NBN 13848)
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
miles.clark@knepperclark.com
*Liaison Counsel*

/s/ K. Issac deVyver
K. Issac deVyver

# EXHIBIT 5

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
apolk@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

Eric Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Emily Beale (pro hac vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
eb@classlawgroup.com

*Interim Co-Lead Counsel*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No. 2:22-cv-00529-GMN-NJK |
| | **PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

Pursuant to Federal Rules of Civil Procedure 33, Plaintiffs Barrett Henzel, Allan L. Carso, Gary W. Lundin, Joshua Luekenga, Craig Rodney Michaelis, Bryce Kelly, Clint McDaniel, and Dan McDaniel, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), request that Defendant Wells Fargo Bank, N.A., ("Wells Fargo") answer the following interrogatories in writing, under oath, within 30 days of service of this request. Each interrogatory is subject to the definitions set forth below.

1

## DEFINITIONS

1.    "Applicable Period" means November 1, 2016, through August 1, 2022.

2.    "Beasley" means Matthew Wade Beasley, along with any of his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

3.    "Beasley Entities" means Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Beasley.

4.    "J&J Conspirators" means some or all of the following persons and entities, whether acting individually or collectively: the J&J Entities, the Beasley Entities, Beasley, Judd, PAJ Consulting Inc., BJ Holdings LLC, Stirling Consulting, L.L.C., CJ Investments LLC, Triple Threat Basketball, LLC, Christopher Ronn Humphries, Shane Michael Jager, Warren Rosegreen, and Mark Murphy.

5.    "J&J Entities" means J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors, trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Judd.

6.    "Judd" means Jeffrey J. Judd, along with any of his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

7.    "Relating to" means consisting of, referring to, reflecting, arising out of or being in any way or manner legally, factually, or logically connected with the matter discussed.

## INTERROGATORIES

1.    Identify each account maintained by Wells Fargo and held by, for, in the name of, for the benefit of, or on behalf of, Beasley, Judd, or any other J&J Conspirator at any point during the Applicable Period by stating:

    a.  The account number;

    b.  The account name;

c.  The account owner(s);

d.  The account beneficial owner(s);

e.  The account signatories;

f.  The account opening date;

g.  The account opening branch location and Wells Fargo branch number;

h.  The Wells Fargo employee(s) assigned to or given responsibility for the account, including without limitation the account officer, relationship manager, or the employee who opened the account;

i.  The account type;

j.  The email address(es) associated with the account; and

k.  The account closing date, if applicable.

2.  For each account responsive to Interrogatory No. 1, identify by name, branch or department, and job title, each person who reviewed or interacted with the account or took action Relating to anti-money laundering (AML), Bank Secrecy Act (BSA), Know Your Customer (KYC), due diligence (including enhanced due diligence), risk ratings, wire approval, or monitoring for unusual, suspicious, or unlawful activity.

3.  Identify each line of credit opened or maintained by Wells Fargo and held by, for, in the name of, for the benefit of, or on behalf of, Beasley, Judd, or another J&J Conspirator at any point during the Applicable Period by stating:

a.  The line of credit or account number;

b.  The line of credit opening date;

c.  The line of credit account guarantor(s);

d.  The line of credit authorized signer(s);

e.  The line of credit authorized user(s);

f.  The line of credit opening branch location and Wells Fargo branch number;

g.  The Wells Fargo employee(s) assigned to or given responsibility for the account or line of credit;

h.  The line of credit type;

3

i. The email address(es) associated with the line of credit; and

j. The line of credit closing date, if applicable.

Dated: December 14, 2022

By: */s/ Daniel C. Girard*

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
apolk@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

By: */s/ David K. Stein*
Eric Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Emily Beale (pro hac vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
eg@classlawgroup.com
eb@classlawgroup.com

By: */s/ Jason K. Kellogg*
Jeffrey C. Schneider (pro hac vice)
Jason K. Kellogg (pro hac vice)
Marcelo Diaz-Cortes (pro hac vice)
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
100 SE 2nd Street
Miami Tower, 36th Floor
Miami, FL 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789
jcs@lklsg.com
jk@lklsg.com

4

md@lklsg.com

By: */s/ Robert L. Brace*
Robert L. Brace (pro hac vice)
**LAW OFFICES OF ROBERT L. BRACE**
1807 Santa Barbara St.
Santa Barbara, CA 93101
Telephone: (805) 886-8458
rlbrace@rusty.lawyer

*Interim Co-Lead Counsel*

By: */s/ Miles N. Clark*
Miles N. Clark (NBN 13848)
**Law Offices of Miles N. Clark, LLC**
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
(702) 856-7430
miles@milesclarklaw.com

*Liaison Counsel*

5

# EXHIBIT 6

Joseph G. Went
Nevada Bar No. 9220
Sydney R. Gambee
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702-669-4600
Fax: 702-669-4650
jgwent@hollandhart.com
srgambee@hollandhart.com

K. Issac deVyver (*pro hac vice*)
Alicia A. Baiardo (*pro hac vice*)
Anthony Q. Le (*pro hac vice*)
MCGUIREWOODS
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200
Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

*Attorneys for Wells Fargo Bank, N.A.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No. 2:22-cv-00529-GMN-NJK |
| | **DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:  PLAINTIFFS BARRETT HENZEL, ALLAN L. CARSO, GARY W. LUNDIN, JOSHUA LUEKENGA, CRAIG RODNEY MICHAELIS, BRYCE KELLY, CLINT MCDANIEL, AND DAN MCDANIEL**

**RESPONDING PARTY:    DEFENDANT WELLS FARGO BANK, N.A.**

**SET NO.:     ONE**

1

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") responds to Plaintiffs' Barrett Henzel, Allan L. Carso, Gary W. Lundin, Joshua Luekenga, Craig Rodney Michaelis, Bryce Kelly, Clint McDaniel, and Dan McDaniel ("Plaintiffs") First Set of Interrogatories ("Interrogatories"), as follows:

## PRELIMINARY STATEMENT AND OBJECTIONS TO DEFINITIONS

1.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf. It is, for example, unclear what would constitute someone "purporting to act on his behalf." Wells Fargo also objects to the extent that determining whether someone was purporting to act on Beasley's behalf or was authorized to act on Beasley's behalf requires a legal conclusion. Wells Fargo will interpret "Beasley" to refer to Matthew Wade Beasley alone.

2.      Wells Fargo objects to Plaintiffs' overbroad definition of "Beasley Entities" insofar as it includes Beasley Law Group PC, a Nevada professional corporation, as well as all its present and former officers, directors, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Beasley. It is overbroad and disproportionately burdensome to require Wells Fargo to search for and provide information for every account related to any employee that may ever have worked at the Beasley Law Group, PC, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation. It is also unclear what constitutes an "associated or related" company. Wells Fargo also objects to the extent that determining whether someone was purporting to act on the Beasley Entities' behalf or was authorized to act on the Beasley Entities' behalf requires a legal conclusion. Wells Fargo will interpret "Beasley Entities" to refer to Beasley Law Group alone.

3.      Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Conspirators" insofar as it is vague, overbroad, and disproportionately burdensome on Wells Fargo for requesting information related to "some or all" of dozens of individuals or entities. It is unduly burdensome and disproportional on Wells Fargo to require Wells Fargo to search for and provide information

2

Case No. 2:22-cv-00529-GMN-NJK

DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO
PLAINTIFFS' FIRST SET OF INTERROGATORIES

related to dozens of individuals or entities, some of which may have had tangential, if any, involvement in the matters at issue in this litigation.  Wells Fargo will identify below the nature and scope of the searches it will conduct related to requests involving the "J&J Conspirators" in response to the individual requests below, where appropriate.

4.    Wells Fargo objects to Plaintiffs' overbroad definition of "J&J Entities" insofar as it includes J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, as well as all their present and former officers, directors, trustees, beneficiaries, employees, agents, affiliates, associated or related companies, and any persons or entities acting or authorized to act on their behalf, including, without limitation, Judd.  It is overbroad and disproportionately burdensome to require Wells Fargo to search for and provide information for every account related to any employee that may ever have worked at the J&J Consulting Services, Inc., a Nevada corporation; J&J Consulting Services, Inc., an Alaska corporation; J and J Purchasing LLC, a Florida limited liability company; and the Judd Irrevocable Trust, and much of that information would not assist Plaintiffs in resolving the matters at issue in this litigation.  Wells Fargo also objects to the extent that determining whether someone was purporting to act on the J&J Entities' behalf or was authorized to act on the J&J Entities' behalf requires a legal conclusion. Wells Fargo will identify below the nature and scope of the searches it will conduct.

5.    Wells Fargo objects to Plaintiffs' overbroad definition of "Judd" insofar as it includes his agents, employees, attorneys, or anyone acting or purporting to act of his behalf. Wells Fargo also objects to the extent that determining whether someone was purporting to act on Judd's behalf or was authorized to act on Judd's behalf requires a legal conclusion. In Wells Fargo's responses and objections, "Judd" means Jeffrey J. Judd and does not include his agents, employees, attorneys, or anyone acting or purporting to act of his behalf.

6.    Notwithstanding Plaintiffs' overbroad and vague definitions for the accounts at issue in these Interrogatories, Wells Fargo agrees to answer these Interrogatories for the accounts identified in Wells Fargo's June 16, 2022 Certified Statement in *SEC v. Matthew Beasley et. al.*,

No. 2:22-cv-00612, as well as for PAJ Consulting, Inc. and BJ Holdings LLC (collectively referred to herein as the "Accounts").

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1

Identify each account maintained by Wells Fargo and held by, for, in the name of, for the benefit of, or on behalf of, Beasley, Judd, or any other J&J Conspirator at any point during the Applicable Period by stating:

a. The account number;

b. The account name;

c. The account owner(s);

d. The account beneficial owner(s);

e. The account signatories;

f. The account opening date;

g. The account opening branch location and Wells Fargo branch number;

h. The Wells Fargo employee(s) assigned to or given responsibility for the account, including without limitation the account officer, relationship manager, or the employee who opened the account;

i. The account type;

j. The email address(es) associated with the account; and

k. The account closing date, if applicable.

### RESPONSE TO INTERROGATORY NO. 1

Wells Fargo objects to this Interrogatory on the basis that it is overbroad, unduly burdensome, and seeks information not relevant and not proportional to the claims or defenses at issue in this action, particularly as it includes Plaintiffs' overbroad definition of Beasley, Judd, and J&J Conspirator, which Wells Fargo objects to for the reasons stated in its Objections to the Definitions.  As set forth below, Wells Fargo will not agree to produce documents that would be

sufficient to show this level of information for every account subject to Plaintiffs' Interrogatory Number 1 on these grounds but rather only for the accounts Wells Fargo has agreed to search in response to Plaintiffs' Requests for Production.

Specifically with respect to subpart (j), Wells Fargo further objects to this Interrogatory on the basis it is overbroad, unduly burdensome, and seeks information not relevant and not proportional to the claims or defenses at issue in this action, particularly as it includes Plaintiffs' overbroad definition of Beasley, Judd, and J&J Conspirator, which Wells Fargo objects to for the reasons stated in its Objections to the Definitions. To the extent Plaintiffs seek something more narrow, Wells Fargo invites Plaintiffs to clarify the scope of the Request.

Wells Fargo further objects to subpart (h) of the Interrogatory as vague and ambiguous, as it requests the names of the employees "assigned to or given responsibility" for various accounts, including the "account officer, relationship manager, or the employee who opened the account." The terms and phrases used in this subpart are not defined, are subject to various meanings, and are not terms necessarily used by Wells Fargo internally. For example, employees who open accounts are not necessarily "assigned to" or "given responsibility" with respect to the account, and their relationship to that account could be limited to the sole action of opening the account. Wells Fargo invites Plaintiffs to clarify the scope of the Request.

Subject to and without waiving these objections, Wells Fargo responds that the answers to this Interrogatory may be determined by examining Wells Fargo's business records and the burden of deriving the answers to this Interrogatory is substantially the same for Plaintiffs. Fed. R. Civ. P. 33(d). Wells Fargo therefore refers Plaintiffs to the documents that Wells Fargo has agreed to search for and produce in response to Plaintiffs' First Set of Requests for Production for the Accounts, specifically documents titled "Business Account Application," "Customer Account Application," and "Relationship Change Application," and "Certification Regarding Beneficial Owners of Legal Entity Customers," as well as the forthcoming production(s) of documents that will include e-mail communications, customer account notes, and reports from Wells Fargo's internal database Hogan. To the extent an answer exists for an Account to which Wells Fargo has

not objected, it will be contained in one of the foregoing documents.  Wells Fargo reserves the right to supplement this response as discovery continues.

**INTERROGATORY NO. 2**

For each account responsive to Interrogatory No. 1, identify by name, branch or department, and job title, each person who reviewed or interacted with the account or took action Relating to anti-money laundering (AML), Bank Secrecy Act (BSA), Know Your Customer (KYC), due diligence (including enhanced due diligence), risk ratings, wire approval, or monitoring for unusual, suspicious, or unlawful activity.

**RESPONSE TO INTERROGATORY NO. 2**

Wells Fargo objects to this Interrogatory on the basis that it is overbroad, unduly burdensome, and seeks information not relevant and not proportional to the claims or defenses at issue in this action, particularly as it includes Plaintiffs' overbroad definition of Beasley, Judd, and J&J Conspirator, which Wells Fargo objects to for the reasons stated in its Objections to the Definitions.  As set forth below, Wells Fargo will not agree to produce documents that would be sufficient to show this level of information for every account subject to Plaintiffs' Interrogatory Number 1 on these grounds but rather only for the accounts Wells Fargo has agreed to search in response to Plaintiffs' Requests for Production.

Specifically with respect to subpart (j), Wells Fargo further objects to this Interrogatory on the basis it is overbroad, unduly burdensome, and seeks information not relevant and not proportional to the claims or defenses at issue in this action, particularly as it includes Plaintiffs' overbroad definition of Beasley, Judd, and J&J Conspirator, which Wells Fargo objects to for the reasons stated in its Objections to the Definitions.  To the extent Plaintiffs seek something more narrow, Wells Fargo invites Plaintiffs to clarify the scope of the Request.

Wells Fargo also objects to this Interrogatory as vague, ambiguous, overly broad, and seeking information not relevant to this case, rendering the request not proportional to the needs of this case.  Several terms in this Interrogatory are undefined and subject to different meanings, such as "reviewed or interacted with," "due diligence," "risk ratings," "monitoring for unusual,

DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO
PLAINTIFFS' FIRST SET OF INTERROGATORIES

suspicious, or unlawful activity." Further, when combined, these vague and ambiguous terms lead to absurdly overbroad results. Read literally, this Interrogatory seeks the identity of every employee that had any interaction of any type with the Accounts at any time. For example, a bank teller who assists a customer with depositing a check into one of the Accounts will necessarily "interact with" the Account. This would present an unreasonable and undue burden on Wells Fargo to search for information that is unlikely relevant to this case and therefore not proportional to the needs of the case.

Wells Fargo further objects to this Interrogatory as requesting information that implicates the SAR privilege. In particular, this Request seeks information Wells Fargo is legally prohibited from disclosing, acknowledging or admitting the existence of under the Bank Secrecy Act ("BSA") and related provisions. *See* 12 C.F.R. § 21.11(k), 31 C.F.R. § 1020.320(e)(1)(i), and 31 U.S.C. § 5318(g); *see also* 75 Fed. Reg. 75593, 75595 (Dec. 3, 2010). Providing names and titles of employees who "reviewed or interacted with" the accounts with respect to SAR investigations would necessarily reveal the bank's process for determining whether to file a SAR and indeed may reveal whether or not one exists—all of which is protected from disclosure. *See, e.g.*, *Zeitlin v. Bank of America, N.A.*, 2021 WL 2595102, *3 (D. Nev. June 24, 2021) (holding documents created "in the context of the SAR/no-SAR decision-making process" are protected, as are documents that contain a "SAR/no-SAR narrative"). Wells Fargo will not agree to identify employees who interacted with the Accounts for the purposes of a SAR investigation, to the extent any exist, based on its SAR privilege objection.

Subject to and without waiving these objections, Wells Fargo responds that the employees who interacted with the Accounts can be determined by examining Wells Fargo's business records and the burden of deriving the answer to this Interrogatory is substantially the same for Plaintiffs. Fed. R. Civ. P. 33(d). Wells Fargo therefore refers Plaintiffs to the documents that Wells Fargo has agreed to search for and produce in response to Plaintiffs' First Set of Requests for Production for the Accounts, specifically those titled "Business Account Application," "Customer Account Application," and "Outgoing Wire Transfer Request," as well as the forthcoming production(s) of

documents that will include e-mail communications reflecting employees who interacted with the Accounts.

**INTERROGATORY NO. 3**

Identify each line of credit opened or maintained by Wells Fargo and held by, for, in the name of, for the benefit of, or on behalf of, Beasley, Judd, or another J&J Conspirator at any point during the Applicable Period by stating:

a. The line of credit or account number;

b. The line of credit opening date;

c. The line of credit account guarantor(s);

d. The line of credit authorized signer(s);

e. The line of credit authorized user(s);

f. The line of credit opening branch location and Wells Fargo branch number;

g. The Wells Fargo employee(s) assigned to or given responsibility for the account or line of credit;

h. The line of credit type;

i. The email address(es) associated with the line of credit; and

j. The line of credit closing date, if applicable.

**RESPONSE TO INTERROGATORY NO. 3**

Wells Fargo objects to this Interrogatory on the basis that it is vague, ambiguous, overbroad, and seeks information not relevant to the claims or defenses at issue in this action and therefore are not proportional to the needs of this case. The Interrogatory is vague and ambiguous because the term "line of credit" is not defined and is subject to different meanings. For example, it cannot be discerned from the Interrogatory whether Plaintiffs seek information for credit cards, personal loans, commercial loans, mortgages, automobile loans, or other credit-based products.

First, the Interrogatory includes Plaintiffs' overbroad definition of Beasley, Judd, and J&J Conspirator, which Wells Fargo objects to for the reasons stated in its Objections to the Definitions and further objects because it is unduly burdensome, not relevant and not proportional. These

definitions are exceedingly broad and purport to encompass people and entities that may not even be tangentially related to the issues in this case. Second, the Interrogatory requests detailed information about dozens of accounts that have not been properly identified. The Interrogatory would require Wells Fargo to divine who may be included in the broad definitions and then scour its systems for accounts. Third, information responsive to this Interrogatory is not relevant to the allegations in this case, which implicate transfers of funds between deposit accounts. Thus, the Interrogatory poses imposes a burden on Wells Fargo that outweighs any benefit to the parties and is not proportional to the needs of the case.

Wells Fargo further objects to the extent the Interrogatory seeks information not within the control of Wells Fargo Bank, N.A. These Interrogatories have been propounded on Wells Fargo Bank, N.A., and these responses do not purport to respond on behalf of any other Wells Fargo entity that may have information responsive to this Interrogatory.

Based on these objections, Wells Fargo will not agree to search for or provide information responsive to this Interrogatory.

DATED: January 27, 2023          Respectfully submitted,

**MCGUIREWOODS LLP**


By:   */s/ K. Issac deVyver*
        K. Issac deVyver (*pro hac vice*)
        Alicia A. Baiardo (*pro hac vice*)
        Anthony Q. Le (*pro hac vice*)
        MCGUIREWOODS LLP
        Two Embarcadero Center, Suite 1300
        San Francisco, CA 94111
        Phone: 415-844-9944
        Fax: 415-844-9922
        kdevyver@mcguirewoods.com
        abaiardo@mcguirewoods.com
        ale@mcguirewoods.com

        Joseph G. Went
        Nevada Bar No. 9220
        Sydney R. Gambee
        Nevada Bar No. 14201
        HOLLAND & HART LLP
        9555 Hillwood Drive, 2nd Floor
        Las Vegas, NV 89134
        Phone: 702.669.4600
        Fax: 702.669.4650
        jgwent@hollandhart.com
        srgambee@hollandhart.com

        *Attorneys for Wells Fargo Bank, N.A.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 27, 2023, a true and accurate copy of **Defendant Wells Fargo Bank, N.A.'s Responses to Plaintiffs' First Set of Interrogatories** was served on counsel below via e-mail.

Daniel C. Girard (pro hac vice)
Jordan Elias (pro hac vice)
Makenna Cox (pro hac vice)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
dgirard@girardsharp.com
jelias@girardsharp.com
mcox@girardsharp.com

*Interim Co-Lead Counsel*

Jeffrey C. Schneider (pro hac vice)
Jason K. Kellogg (pro hac vice)
Marcelo Diaz-Cortes (pro hac vice)
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
201 South Biscayne Blvd.
Citigroup Center, 22nd Floor
Miami, FL 33131
jcs@lklsg.com
jk@lklsg.com
md@lklsg.com

*Interim Co-Lead Counsel*

Miles N. Clark (NBN 13848)
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
miles.clark@knepperclark.com

*Liaison Counsel*

Eric H. Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Emily Beale (pro hac vice)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
ds@classlawgroup.com
ehg@classlawgroup.com
eb@classlawgroup.com

*Interim Co-Lead Counsel*

Robert L. Brace (pro hac vice)
Maria Fernanda Elosu (pro hac vice)
LAW OFFICES OF ROBERT L. BRACE
1807 Santa Barbara St.
Santa Barbara, CA 93101
rlbrace@rusty.lawyer
mariaelosulaw@gmail.com

*Interim Co-Lead Counsel*

/s/ K. Issac deVyver
K. Issac deVyver

11

Case No. 2:22-cv-00529-GMN-NJK

DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO
PLAINTIFFS' FIRST SET OF INTERROGATORIES

# EXHIBIT 7



# GIRARD SHARP

March 21, 2025

**VIA EMAIL**

K. Issac deVyver
Alicia A. Baiardo
Anthony Q. Le
**MCGUIREWOODS LLC**
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200 / Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

Joseph G. Went
Sydney R. Gambee
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702-669-4600 / Fax: 702-669-4650
jgwent@hollandhart.com
srgambee@hollandhart.com

Re:    *In re J&J Investment Litigation*, Case No. 2:22-cv-00529-GMN-NJK (D. Nev.)

Counsel:

We write to follow up on our meet and confer call on March 20, 2025.

**Topic 1 (Banker Notes).** Plaintiffs inquired about the December 6, 2024, production of "additional notes" related to the Agreed Accounts. *See* ECF No. 156 at 9-10. Wells Fargo confirmed that this production was the entirety of the production that it stated was forthcoming in its opposition to Plaintiffs' motion to compel. *Id.* Plaintiffs inquired as to what these documents were if "not 'banker's notes[,]'" *id.*, and offered to send Wells Fargo examples. Examples are WF_JJ_00113254 and WF_JJ_00113210. Wells Fargo stated these documents are likely "customer needs assessments," but agreed to follow up with Plaintiffs to confirm, as well as identify the system from which these documents were produced and why they appear to be in different formats.

Additionally, Wells Fargo confirmed that it completed its search of SVP and Hogan for banker notes and has not identified any other systems in which banker notes would be stored. Wells Fargo agreed to confirm whether it has completed its searches for banker notes. Plaintiffs request that Wells Fargo respond with the above information that it agreed to provide by March 26, so that it is far enough in advance of the April 1 deadline for a motion to compel that the parties can address next steps, if necessary.

K. Issac deVyver
March 21, 2025
Page 2 of 3

**Topic 2 (Access Logs).** Plaintiffs stated that they believe logs showing which Wells Fargo employees accessed the listed accounts,[1] when, which accounts, and (if available) what Wells Fargo personnel did would be relevant to Wells Fargo's knowledge in this case. Plaintiffs stated that they understand Wells Fargo's objections are based on relevance and proportionality. Plaintiffs asked whether there was any way to reduce burdens, such as by producing logs excluding IT personnel, but the parties concluded that this compromise was not viable. The parties appear to be at impasse on this issue.

**Topic 3 (Stephen Nelson's Personnel File).** Plaintiffs reiterated that, based on Matthew Beasley's text message to Stephen Nelson saying, "Hopefully you didn't get another bad mark" (as well as other text messages cited in the motion to compel and the context of the messages), Plaintiffs expect that Nelson's personnel file may contain relevant information. Wells Fargo proposed that it review Nelson's personnel file to determine whether there was a "bad mark," as Beasley described. Plaintiffs suggest that Wells Fargo evaluate whether there is anything else relevant in Nelson's file, such as records of any kind of disciplinary action, references to customer gifts (either received by Nelson or given to a customer by Nelson), mention of inappropriate interactions with customers, discussion of the volume of activity that Nelson handled, or any documentation of Nelson's interactions with Beasley. Plaintiffs request that Wells Fargo report its findings no later than March 26 so that it is far enough in advance of the April 1 deadline for a motion to compel that the parties can address next steps, if necessary.

**Topic 4 (Financial Crimes Analytics, Financial Crimes Operational Support, and Preliminary Investigations & SAR Operating Group).** Wells Fargo represented that it has conducted a reasonable investigation and has not found relevant, responsive documents concerning these additional groups. Wells Fargo stated that its understanding is that the system in which pertinent documents would be found is FCP. Wells Fargo also stated that it had not run searches on the custodial files of Wells Fargo personnel in these groups. Plaintiffs agreed to evaluate the information that Wells Fargo has provided.

**Topic 5 (Automated Alerts RFAs).** Plaintiffs described these RFAs as simple, confirmatory RFAs. Wells Fargo disagreed, suggesting that they are vague and ambiguous. Plaintiffs offered to clarify, and Wells Fargo did not request any specific clarifications. But Wells Fargo proposed that it provide wording that it could admit, which would be similar to Wells Fargo's Rule 30(b)(6) designee's testimony. Plaintiffs agreed that this approach would be productive. Plaintiffs request that Wells Fargo provide its proposed wording no later than March 26 so that it is enough in advance of the April 1 deadline for a motion to compel that Plaintiffs have time to evaluate and, if necessary, follow up.

---

[1] The accounts listed in the motion to compel were: Beasley Law IOLTA (5598), Beasley Law (5580), Beasley Law (8898), J&J Consulting (0153), J&J Purchasing (7037), Jager Capital (6508), and Stirling Consulting (6558).

K. Issac deVyver
March 21, 2025
Page 3 of 3

      **Topics 6-10.** Plaintiffs confirmed that we do not intend to pursue these topics further at this time. We reserve the right to revisit these topics for good cause.

      Please let us know if you would like to discuss any of the above.


              Sincerely,


              Tom Watts

cc: Plaintiffs' Counsel of Record

# EXHIBIT 8

**McGuireWoods**

**McGuireWoods LLP**
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Tel 412.667.6000
Fax 412.667.6050
www.mcguirewoods.com

**K. Issac deVyver**
Direct: 412.667.7988
kdevyver@mcguirewoods.com
Fax: 412.667.7976

March 27, 2025

**VIA EMAIL ONLY**

Tom Watts, Esq.
GIRARD SHARP
601 California Street
Suite 1400
San Francisco, CA 94108
tomw@girardsharp.com

Re:    *In re J&J Investment Litigation*
         <u>USDC, District of Nevada, No. 2:22-cv-00529-GMN-NJK</u>

Counsel:

    We write to follow-up on our meet and confer call on March 20, 2025 and your letter dated March 21, 2025.  We are making an effort to resolve all of the issues raised, as set forth below.

    **Topic 1 (Banker Notes).**  As we have discussed the term "banker notes" is a specific term referring to a specific type of record that is visible in Wells Fargo's system, SVP, and is stored in Wells Fargo's system, Hogan. To be clear, that system is not the only system within Wells Fargo that contains account notes related to customers input by a Wells Fargo employee, but it is the system that contains the "banker notes" as we refer to the term.  Wells Fargo completed its production of banker notes stored in Hogan long ago. Wells Fargo has also conducted a reasonable search for and produced records from other systems within Wells Fargo that may contain notes input by Wells Fargo employees regarding customers.  Wells Fargo has not identified any account note systems that contain information related to the customers at issue in this case that it has refused to search or produce. You correctly note in your March 20, 2025 letter that our supplemental search for documents relating to your request for "banker notes" (referenced in ECF 156 in section IV.1) is complete.  These documents are not stored in Hogan as "banker notes" but are more generally referred to as "customer needs assessments," which we understand are visible in SVP but stored in ECPR (enterprise customer profile ref-cs).  These were produced at bates range WF_JJ_00112192 to WF_JJ_00113269.  We understand the formats differ based on the how they were pulled. We have identified two additional spreadsheets from ECPR which will be produced in short order that contain responses to additional needs assessments questions, in which case our production will be complete.

    **Topic 2 (Access Logs).**  As we have stated in prior meet and confer discussions, our understanding is that such records are extremely voluminous and provide little probative value, as

Tom Watts, Esq.
March 27, 2025
Page 2

data is captured in fractions of seconds and includes any access to an account. Further, we are investigating whether access log records even exist for the accounts you note in your letter: Beasley Law IOLTA (5598), Beasley Law (5580), Beasley Law (8898), J&J Consulting (0153), J&J Purchasing (7037), Jager Capital (6508), and Stirling Consulting (6558). To the extent that we are able to locate such documents, we are willing to produce them in order to resolve this issue. However, we want to make clear that we are working to locate such documents, and it is possible that we will not locate anything to produce. Further, as we have stated that such information is not probative to the claims here, we will oppose any requests for further discovery as a result of production of any access logs. As we have noted, these logs generally contain an extreme amount of data that we do not believe is relevant to the claims here.

**Topic 3 (Stephen Nelson's Personnel File).** As discussed during our March 20, 2025 meet and confer, we have reviewed Stephen Nelson's personnel file, and we can confirm that there is no reference to any "bad mark" as stated in your March 21, 2025 letter. Further, there is no reference to any disciplinary action, customer gifts, inappropriate interactions with customers, discussion of the volume of activity that Nelson handled, nor any documentation of Nelson's interactions with Beasley, as you set forth in your letter. We trust that this resolves the issue.

**Topic 5 (Automated Alerts RFAs).** As discussed during our March 20, 2025 meet and confer call and outlined in your March 21, 2025 letter, we propose the below language to resolve this issue and our concerns about the objectionable language in the as-served RFAs.

Proposed language: Admit that during the period beginning January 2017 and continuing through March 2022, as confirmed by Wells Fargo's Rule 30(b)(6) witness, Wells Fargo's investigation did not identify any automated or system-generated alerts for transactions related to the Specified Accounts.

Proposed response: Admitted.

We understand that this addresses all remaining outstanding issues for discussion. Please let us know if there are any additional issues outstanding on your end, so that we can work to address them and attempt to reach a reasonable compromise.

Yours truly,

*/s/ K. Issac deVyver*

K. Issac deVyver

cc:    Karla L. Johnson
       Alicia A. Baiardo
       Anthony Q. Le
       Joseph G. Went
       Sydney R. Gambee

# EXHIBIT 9

# GibbsMura
## A LAW GROUP

July 17, 2025

**VIA EMAIL**

K. Issac deVyver
Alicia A. Baiardo
Anthony Q. Le
**MCGUIREWOODS LLC**
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Phone: 310.315.8200 / Fax: 310.315.8210
KdeVyver@mcguirewoods.com
ABaiardo@mcguirewoods.com
ALe@mcguirewoods.com

Joseph G. Went
Sydney R. Gambee
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702-669-4600 / Fax: 702-669-4650
jgwent@hollandhart.com
srgambee@hollandhart.com

    Re:    *In re J&J Investment Litigation*, Case No. 2:22-cv-00529-GMN-NJK (D. Nev.)

Counsel,

We write to follow up on our calls of June 12, 2025, and July 14, 2025, concerning Wells Fargo's production of access logs (WF_JJ_00114017) and related information.

**Interrogatory No. 2.** On our most recent call, you stated that Wells Fargo declines to supplement its response to Interrogatory No. 2. As you know, Plaintiffs had requested that Wells Fargo supplement its response to (a) include the newly provided employee information in your email of July 3, 2025, and (b) incorporate by reference the recently produced access log (WF_JJ_00114017). To justify Wells Fargo's position, you stated that there is no evidence these employees "took action" with respect to Beasley's accounts. But Interrogatory No. 2 requests identification of "each person *who reviewed or interacted with the account <u>or took action</u>*." Wells Fargo's position is therefore untenable. If Wells Fargo refuses to supplement its response, we will file a motion to compel. <u>Please let us know promptly whether Wells Fargo will reconsider its position.</u>

**Search for Related Documents and Information.** In our email of July 9, 2024, Plaintiffs asked to discuss "what, if any, efforts Wells Fargo has made to collect information and documents concerning [six] employees' access of the relevant Beasley accounts." On our July 14 call, you refused to answer the question about the scope of your investigation and claimed work

1111 Broadway, Suite 2100, Oakland, CA 94607
☎ 510 350 9700
🖨 510 350 9701
www.ClassLawGroup.com

**Vol. 1, Page 209**

Issac deVyver
July 17, 2025
Page 2 of 3

product protection precluded you from explaining how this information had not been provided over the past few years until after the close of discovery and dispositive motion briefing.

You did say that these employees had not appeared in your previous investigations and that you were unaware until recently that they had interacted with Beasley's trust account. You asked us to provide requested searches for documents for consideration. For the employees listed in our July 9 email,[1] we request that Wells Fargo search for and produce:

- All communications (including emails and instant messages, and any attachments) that they sent or received concerning Beasley or his accounts within five days of the access date(s) listed in WF_JJ_00114017. (These communications are responsive to Requests for Production Nos. 14-17, 21, and 25.)
- All files and other information within (or accessible through) FCP and any other systems and programs that the employees may have used in connection with interacting with Beasley's attorney trust account which reflects or relates to why they interacted with his account. Wells Fargo is in the better position to determine what specific systems and programs to search, and how, given the limited information we have concerning these employees. We ask that Wells Fargo provide transparency on the searches it conducts, in addition to producing the responsive documents. (These documents are responsive to Requests for Production Nos. 14-17, and 21.)
- To the extent that either of the above searches reveals that previously undisclosed investigations, alerts (automated or manual), or other actions occurred relating to Relevant Accounts, we ask that Wells Fargo produce the complete file relating to those undisclosed events.
- To the extent that Wells Fargo is unable to locate any documents responsive to the above, we ask that Wells Fargo produce documents sufficient to identify each employee's job responsibilities and duties at the time they accessed Beasley's accounts.

We trust that you will recognize that this represents a narrow ask, that we are not asking for a deposition or other burdensome efforts at this time, and so we hope that Wells Fargo will agree to promptly undertake these searches and productions. We would like to have this fully resolved within the next 30 days. If we can have an agreement on this front, we do not intend to seek to formally reopen discovery or otherwise seek court intervention. If Wells Fargo refuses to conduct

---

[1]

1111 Broadway, Suite 2100, Oakland, CA 94607
☎ 510 350 9700
🖷 510 350 9701
www.ClassLawGroup.com

Issac deVyver
July 17, 2025
Page 3 of 3

the requested searches and productions, we will file a motion to compel. <u>Please let us know whether Wells Fargo will conduct these searches, and complete them by August 18, 2025, by Thursday, July 24.</u>[2]

**Preservation.** Given your statement that you were not previously aware of these employees' interactions with Beasley's trust account, we ask that you confirm that Wells Fargo's longstanding preservation efforts have encompassed these individuals and activities and that there has been no loss of documents or communications during the pendency of the litigation. <u>Please let us know by Thursday, July 24.</u>

Regards,

Emily Beale

Emily Beale

cc: Plaintiffs' Counsel of Record

---

[2] Additionally on our July 14 call, you confirmed you had not identified any other systems that would create a log. You also stated that you would not provide whether departments like FCI have their own ███████████ without further insight on the information's responsiveness. <u>We are willing to defer this issue for now, reserving all rights.</u>

1111 Broadway, Suite 2100, Oakland, CA 94607
510 350 9700
510 350 9701
www.ClassLawGroup.com

# EXHIBIT 10

**Emily Beale**

| | |
|---|---|
| **From:** | Johnson, Karla L. <KJohnson@mcguirewoods.com> |
| **Sent:** | Thursday, March 27, 2025 9:49 PM |
| **To:** | Tom Watts |
| **Cc:** | deVyver, K. Issac; Baiardo, Alicia A.; White, Molly M.; Le, Anthony Q.; Jason Kellogg; Marcelo Diaz-Cortes; Daniel Girard; Jordan Isern; rusty@pistolcreekranch.com; Emily Beale; David Stein; Joseph Went; srgambee@hollandhart.com; Foss, Anita M. |
| **Subject:** | RE: In re J&J — further meet and confer |
| **Attachments:** | 2025-03-27 deVyver to Watts response to March 21 letter(203333972.1).pdf |

Tom,

Please see the attached.

Thanks,

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

**From:** Tom Watts <tomw@girardsharp.com>
**Sent:** Wednesday, March 26, 2025 10:40 PM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Cc:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Emily Beale <eb@classlawgroup.com>; David Stein <ds@classlawgroup.com>
**Subject:** Re: In re J&J — further meet and confer

**EXTERNAL EMAIL; use caution with links and attachments**

Understood, thanks for the update.

**Tom Watts**
**GIRARD | SHARP**
601 California Street, Suite 1400
San Francisco, CA 94108
415.544.6439 (office)
650.580.9075 (mobile)
tomw@girardsharp.com

www.girardsharp.com

This email and its attachments may be attorney-client privileged or attorney work product. If you are not the intended recipient, please do not copy or distribute it, but instead please delete it and notify us by email or telephone (415.981.4800). Thank you.

On Mar 26, 2025, at 7:20 PM, Johnson, Karla L. <KJohnson@mcguirewoods.com> wrote:

EXTERNAL EMAIL

Hi Tom,

We are working on these issues and will be providing a response tomorrow.

Thanks,
Karla

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

---

**From:** Tom Watts <tomw@girardsharp.com>
**Sent:** Saturday, March 22, 2025 1:50 AM
**To:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>
**Cc:** Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Emily Beale <eb@classlawgroup.com>; David Stein <ds@classlawgroup.com>
**Subject:** Re: In re J&J — further meet and confer

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Counsel,

Please see attached letter.

**Tom Watts**
**GIRARD | SHARP**

601 California Street, Suite 1400
San Francisco, CA 94108
415.544.6439 (office)
650.580.9075 (mobile)
tomw@girardsharp.com
www.girardsharp.com

This email and its attachments may be attorney-client privileged or attorney work product. If you are not the intended recipient, please do not copy or distribute it, but instead please delete it and notify us by email or telephone (415.981.4800). Thank you.

On Mar 18, 2025, at 8:28 AM, Tom Watts <tomw@girardsharp.com> wrote:

Issac,

We can make Thursday 11 am ET work. I'll send an invite.

As far as the topics to cover, like I said, we primarily want to confirm status as to each topic in the motion to compel. For example, the first topic was banker notes. Our understanding is that there was a further production after the motion to compel was fully briefed that included banker notes. We'd like to discuss the nature and scope of that production, and depending on the answers, the banker note issue may be moot (or may not). The second topic was access logs. Our understanding is that the parties simply disagree on the relevance of the requested documents and are at impasse. We'd like to confirm that Wells Fargo understands our position on relevance, disagrees, and will not produce any of the requested logs.

Basically, we'd like to go through each topic to confirm where we are. We expect that Wells Fargo can be prepared to discuss status on the call. If there are compromises proposed, we understand that Wells Fargo may need time to consider.

I can also confirm that we don't need to talk about the topics numbered 6 and 7 in Wells Fargo's opposition to the motion to compel (RFA 13 and rog verifications).

**Tom Watts**
**GIRARD | SHARP**
601 California Street, Suite 1400
San Francisco, CA 94108
415.544.6439 (office)
650.580.9075 (mobile)
tomw@girardsharp.com
www.girardsharp.com

3

This email and its attachments may be attorney-client privileged or attorney work product. If you are not the intended recipient, please do not copy or distribute it, but instead please delete it and notify us by email or telephone (415.981.4800). Thank you.

On Mar 18, 2025, at 5:58 AM, deVyver, K. Issac <KdeVyver@mcguirewoods.com> wrote:

EXTERNAL EMAIL
Tom,

I can't do today because I have a deposition.  Are you free earlier in the day on Thursday?  We could do 11AMET—1PM ET, if that works for you.  Otherwise, Monday is pretty open.

In terms of Wells Fargo's meet and confer with the Receiver, we will just set that up separately since it does not involve Plaintiffs.

The Magistrate Judge was very clear that the parties need to engage in a meaningful meet and confer.  Simply telling us that you want us to review and be prepared to discuss "the prior briefing," when much has changed and some of these issues appear to be moot, is not, our view, good faith on Plaintiffs' part or consistent with the Court's directive.  This is particularly true when, as the Court held, Plaintiffs failed to engaged in a meaningful meet and confer last time and we don't really know your compromise positions—if any—on these issues.  The message you are sending is that you have no desire to reach an agreement and plan to just refile the same motion.  If you want to go that route that is your prerogative, but again I do not think that is consistent with the Magistrate's Judge's directive.  You should also expect we will be primarily listening on the call and then going back to our colleagues and client after because its not reasonable for you to expect that we will go back and analyze 60+page of briefing (and hundreds of pages of attachments) without any direction on what you want to cover and then expect a discussion about compromises on the spot.

Issac

**K. Issac deVyver**
Partner
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
T:  +1 412 667 7988
M: +1 724 831 8764
F:  +1 412 667 7976
kdevyver@mcguirewoods.com

4

Bio | VCard | www.mcguirewoods.com

<~WRD0000.jpg>

**From:** Tom Watts <tomw@girardsharp.com>
**Sent:** Monday, March 17, 2025 7:06 PM
**To:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>
**Cc:** Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Emily Beale <eb@classlawgroup.com>; David Stein <ds@classlawgroup.com>
**Subject:** Re: In re J&J — further meet and confer

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Are you available at all tomorrow? We're not available during that window on Thursday, but given the turnaround time on this motion, we'd like to avoid postponing to next week if we can.

As an initial matter, we'd like to discuss substantially all the issues in the motion, though on some issues we'd just like to confirm our understanding of where things currently stand. It is possible that the parties will reach agreement that some of the issues are now moot based on that confirmation.

Depending on when the meet and confer is set, we may or may not be able to cover the Receiver-Wells Fargo issues on the same call, but I understand your preference to cover them on the same call and will accommodate if scheduling allows.

**Tom Watts**
**GIRARD | SHARP**
601 California Street, Suite 1400
San Francisco, CA 94108
415.544.6439 (office)
650.580.9075 (mobile)
tomw@girardsharp.com
www.girardsharp.com

5

This email and its attachments may be attorney-client privileged or attorney work product. If you are not the intended recipient, please do not copy or distribute it, but instead please delete it and notify us by email or telephone (415.981.4800). Thank you.

On Mar 17, 2025, at 3:16 PM, deVyver, K. Issac <KdeVyver@mcguirewoods.com> wrote:

<mark>EXTERNAL EMAIL</mark>
Tom,

We cannot do Wednesday or Friday, but we can do Thursday between 1 and 5PM ET.  In order to facilitate a good faith and productive meet and confer, we ask that Plaintiffs send a list of the issues they wish to discuss.  Much has changed since the briefing, including the Rule 30(b)(6) deposition of Wells Fargo, that appears to have changed/mooted some of these discovery disputes.  We need to understand what is at issue.

Would also like to use this time to meet and confer with the Receiver on Wells Fargo's motion to compel, including specifically the work product issue flagged by the Judge.  In our view, the issues are:  (1) what notes and memoranda (including "email" notes and memoranda) exist, including how many documents exist, when were they created. and who was involved in their creation (2) what is the Receiver's basis for claiming work product over each of these documents, and (3) is the Receiver intending to produce a log of these allegedly privileged documents and, if not, what is the basis not doing so.

Issac

**K. Issac deVyver**
Partner
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
T:  +1 412 667 7988
M: +1 724 831 8764
F:  +1 412 667 7976
kdevyver@mcguirewoods.com
Bio | VCard | www.mcguirewoods.com

6

<~WRD0001.jpg>

---

**From:** Tom Watts <tomw@girardsharp.com>
**Sent:** Monday, March 17, 2025 3:57 PM
**To:** Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Emily Beale <eb@classlawgroup.com>; David Stein <ds@classlawgroup.com>
**Subject:** In re J&J — further meet and confer

**EXTERNAL EMAIL; use caution with links and attachments**

Counsel,

In light of the Court's order on Plaintiffs' motion to compel, ECF No. 196, please provide your availability to meet and confer this week regarding the subjects of the motion to compel. Among other times, Plaintiffs are available on Wednesday starting at 12:30 pm PT or Friday starting at 12 pm PT.

**Tom Watts**
**GIRARD | SHARP**
601 California Street, Suite 1400
San Francisco, CA 94108
415.544.6439 (office)
650.580.9075 (mobile)
tomw@girardsharp.com
www.girardsharp.com

This email and its attachments may be attorney-client privileged or attorney work product. If you are not the intended recipient, please do not copy or distribute it,

7

but instead please delete it and notify us by email or telephone (415.981.4800). Thank you.

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

8

# EXHIBIT 11

## Emily Beale

| | |
|---|---|
| **From:** | David Stein |
| **Sent:** | Friday, August 8, 2025 4:58 PM |
| **To:** | deVyver, K. Issac; Emily Beale; Johnson, Karla L.; White, Molly M.; Baiardo, Alicia A.; Le, Anthony Q.; Haines, Kelsey D.; Farley, Alexandra S.; Foss, Anita M. |
| **Cc:** | Jason Kellogg; Marcelo Diaz-Cortes; Daniel Girard; Jordan Isern; rusty@pistolcreekranch.com; Spencer Hughes |
| **Subject:** | RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A. |

Issac,

In light of Wells Fargo's position (declining to provide any further information or documents responsive to the issues discussed while insisting on unacceptable terms for any potential stipulation), Plaintiffs see no prospect for resolving this dispute informally. We therefore intend to seek relief from the Court.  If Wells Fargo decides to reassess its position, or believes further discussion would be helpful, please let us know promptly.

I will not respond to the various statements in your lengthy email with which we disagree. Suffice it to say, Wells Fargo is the one that delayed producing the access logs until long after discovery had closed, and Wells Fargo never before identified these financial-crimes and fraud employees accessing Beasley's IOLTA. Our expectation was that when Wells Fargo discovered this oversight, Wells Fargo would promptly and voluntarily correct it. Instead, Wells Fargo has been unwilling to explain how its past searches failed to identify this activity, or what the activity involved, while also refusing to look for any additional information or documents. We deem this position to be unacceptable.

Sincerely,

Dave Stein (he/him) | Partner

**GIbbsMura**

1111 Broadway, STE 2100
Oakland, CA 94607
Phone: (510) 350-9715
Fax: (510) 350-9700
ds@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

**From:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>
**Sent:** Wednesday, August 6, 2025 7:20 AM
**To:** Emily Beale <eb@classlawgroup.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>;

Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Dave,

I am following up on our meet and confer call from yesterday, August 5, 2025, to discuss Emily Beale's July 17, 2025 letter.  We discussed potential compromises for Interrogatory No. 2 as well as Plaintiff's request that Wells Fargo perform new custodial searches for the six additional employees identified in footnote 1 of the July 17 letter.  Our view, as articulated to you and your colleagues multiple times, is that discovery is closed.  These are not issues that were raised during the discovery period or in Plaintiffs' (and the Receiver's) motion to compel last Fall.  Even if they had been raised, the Court's order denying the motion to compel gave Plaintiff 30 days to refile the motion – Plaintiff did not refile and that deadline has long since expired.  Also, we produced the access log with the caution that, first, it was overly broad and not relevant and, second, that Wells Fargo would not agree to undertake additional discovery arising from the production of that log.  Plaintiff (and the Receiver) accepted those terms when they did not move to compel and instead accepted the log.  In other words, if Plaintiffs were not agreeable to accepting the log with the caveat that there would be no additional discovery, then Plaintiffs should have moved to compel within the Court's deadline, not accepted the log and then waited many months to raise additional issues.  Wells Fargo's position is that the parties have an enforceable discovery agreement that Plaintiffs are violating by seeking additional discovery.

Turning to the specific discovery items, you requested that Wells Fargo supplement Interrogatory No. 2 (which was not part of the motion to compel) and I unequivocally indicated that Wells Fargo will not agree to do so.  In addition to the fact that discovery is closed, we have no basis to believe that the six employees "reviewed or interacted with the account[s] or took action" relating to anti-money laundering.  As we cautioned before production, access as reflected on the log does not equate to relevant interaction with the accounts.  The only way to make that determination would be to interview the employees, pull their email, etc. and we will not agree to do that.  Discovery is closed.  Further, despite producing hundreds of thousands of pages of documents and conducting more than 30 depositions, these employees have never come up and we have no reason to believe they have discoverable information—nor do Plaintiffs.  And, as I noted on the call, Wells Fargo objected to Interrogatory No. 2 based on the breadth that it would include any employee that had any interaction of any kind with an account – regardless of whether that interaction was relevant to Plaintiffs' claims – and those objections stand.  If Plaintiffs took issue with that objection, they needed to move the Court to overrule it during the discovery period, and they did not.

We discussed a possible stipulation as a compromise.  As I noted, Wells Fargo will not agree to stipulate to anything along the lines that these employees have no relevant information or that their names did not come up in our investigation in this case – the former we would not know is true unless we spoke to the employees and pulled their email and the latter is work product.  I can represent that, as part of our good faith investigation, we have not come across the names of these employees to the best of my knowledge but that is not something we are willing to include in a stipulation.  Among other reasons, attorneys' investigations do not equate to facts known by the parties.  We discussed a simple stipulation that matched the employee's name to their employee identification number, as referenced on the log.  That is something that we would consider and you agreed to send along a draft.  We will not, however, consider a stipulation that permits Plaintiffs to imply certain facts about these employees and their knowledge—facts that we have no idea are true or not.  If that is what Plaintiffs seek, then you may consider the meet and confer concluded.

As for the balance of Plaintiffs' requests, which consist of requests for Wells Fargo to run custodial searches for the six employees, as I indicated this is not something that we will consider.  I noted that we have already conducted multiple searches for documents in FCP related to Beasley and his promoters (as agreed by the parties) and we have no reason to believe that additional searches for these custodian or in FCP would yield responsive documents—nor do Plaintiffs. At your Plaintiffs' request, we checked and then re-checked Wells Fargo's systems multiple time and conducted multiple searches.  Wells Fargo has produced thousands of FCI

related documents, Plaintiffs have deposed 8  FCI employees and a Rule 30(b)(6) deponent.   There is no evidence to suggest that additional relevant FCI investigations were conducted with regard to Beasley and not produced.  Certainly if you have a reasonable compromise we will consider it, but I really do not see one and you did not have any to propose on our call.  You suggested we agree to a stipulation on Interrogatory No. 2 and "kick the can" on other issues.  As I indicated on the call, my current thinking is the stipulation referenced above would be resolution of **all issues**.  If cannot reach an agreement, then I see no value in "kicking the can"  and we certainly are not going to agree these discovery issue should be addressed later in the case when the parties are on the eve of rulings on class certification and summary judgment.

We will wait to receive your stipulation and position on the remaining discovery issues.

Thank you,
Issac


## K. Issac deVyver

Partner
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
T:  +1 412 667 7988
M: +1 724 831 8764
F:  +1 412 667 7976
kdevyver@mcguirewoods.com
Bio | VCard | www.mcguirewoods.com

---

**From:** deVyver, K. Issac
**Sent:** Monday, July 21, 2025 3:41 PM
**To:** 'Emily Beale' <eb@classlawgroup.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Emily,

I spoke to Dan and Jeff briefly about this discovery issue today and I am going to have a follow-up directly with Dave.  I assume this puts the deadline in your letter in abeyance until Dave and I speak but if you believe otherwise, let me know.

Issac

## K. Issac deVyver
Partner
McGuireWoods LLP

Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
T:  +1 412 667 7988
M: +1 724 831 8764
F:  +1 412 667 7976
kdevyver@mcguirewoods.com
Bio | VCard | www.mcguirewoods.com

---

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Thursday, July 17, 2025 6:26 PM
**To:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**EXTERNAL EMAIL; use caution with links and attachments**

Issac and Karla,

Thank you for the call earlier this week. Please see the attached correspondence.

Regards,

Emily Beale (she/her) | Associate



136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

---

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Monday, July 14, 2025 1:52 PM
**To:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D.

4

<KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Hi Issac – thanks for letting us know. Talk to you at 2:15.

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

---

**From:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>
**Sent:** Monday, July 14, 2025 1:48 PM
**To:** Emily Beale <eb@classlawgroup.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Emily,

We are running about 15 minutes behind, but we will be on at 2:15PM ET.  Apologies for the delay.

Thanks,
Issac

**K. Issac deVyver**
Partner
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
T:  +1 412 667 7988
M: +1 724 831 8764
F:  +1 412 667 7976

5

kdevyver@mcguirewoods.com
Bio | VCard | www.mcguirewoods.com

From: Emily Beale <eb@classlawgroup.com>
Sent: Friday, July 11, 2025 4:02 PM
To: Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
Cc: Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
Subject: RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**EXTERNAL EMAIL; use caution with links and attachments**

Hi Karla – how does 2ET on Monday work for you?

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

From: Johnson, Karla L. <KJohnson@mcguirewoods.com>
Sent: Thursday, July 10, 2025 6:01 PM
To: Emily Beale <eb@classlawgroup.com>; David Stein <ds@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
Cc: Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
Subject: RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Hi Emily,

We are generally available on Monday to discuss.  Let us know what times might work on your end.

Thanks,

6

Karla

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

---

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Wednesday, July 9, 2025 5:49 PM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**EXTERNAL EMAIL; use caution with links and attachments**

Karla,

Thank you for providing this information.

On our meet and confer last month, you stated that you were unaware of the existence of any other logs maintained by Wells Fargo that memorialize employees accessing accounts using systems ▮▮▮▮▮▮▮▮—and you said you would confirm there are no other log types with your client. You also stated that you would inquire whether departments like FCI have their own unique ▮▮▮▮▮▮▮▮. We ask that you provide this information.

Additionally, we request that Wells Fargo supplement its response to Interrogatory No. 2 to include the employee information that you provided by email on 7/3. In the amended response, Wells Fargo should also affirmatively specify that the access log document (WF_JJ_00114017) is incorporated into its response per Rule 33(d).

Finally, we request to further meet and confer on the new information provided, specifically the access of Beasley's IOLTA by the below listed employees. We have concerns that these individuals—many of whom appear to have been in FCI at the time—and their access to Beasley's IOLTA are now only being disclosed for the first time months after the close of discovery and years after the initial request. We have conducted a search through Wells Fargo's produced documents and have found no indication that Wells Fargo has produced any document or information about these individuals and their work in connection with Beasley's IOLTA. We would like to discuss what, if any, efforts Wells Fargo has made to collect information and documents concerning these employees' access of the relevant Beasley accounts. Please let us know your availability for a call.



Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

---

**From:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Sent:** Thursday, July 3, 2025 3:14 PM
**To:** Emily Beale <eb@classlawgroup.com>; David Stein <ds@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Emily,

We followed up on your various requests. The report is an ███████████ . ███████████████████ ███████████████████████ designates which store would receive sales credit for products/services and is for sales tracking purposes. We understand that when hired employees would be assigned an ████████████ to their profile. ██████ is the team that completed our data pull request for this, and ██████████████ ████████████████████ .

Finally, below is information for the various employees you requested:



Thank you,
Karla

8

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Tuesday, July 1, 2025 10:34 AM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; David Stein <ds@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Thanks, Karla. We appreciate it and look forward to hearing from you in the coming days.

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

**From:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Sent:** Monday, June 30, 2025 5:43 PM
**To:** Emily Beale <eb@classlawgroup.com>; David Stein <ds@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Emily,

9

We are working on it.  We will be back to you as soon as we can.


Thanks,
Karla


**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

---

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Monday, June 30, 2025 5:42 PM
**To:** David Stein <ds@classlawgroup.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**EXTERNAL EMAIL; use caution with links and attachments**

Karla and Issac,


Following up on my email below.


Regards,


Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com


This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

---

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Thursday, June 26, 2025 5:32 PM
**To:** David Stein <ds@classlawgroup.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M.

<AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Karla and Issac – following up on Wells Fargo's position on the items discussed on our meet and confer.

Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

**From:** David Stein <ds@classlawgroup.com>
**Sent:** Friday, June 20, 2025 5:18 PM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; Emily Beale <eb@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Thank you

Dave Stein (he/him) | Partner

**GibbsMura**

1111 Broadway, STE 2100
Oakland, CA 94607
Phone: (510) 350-9715
Fax: (510) 350-9700
ds@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

11

**From:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Sent:** Friday, June 20, 2025 1:55 PM
**To:** David Stein <ds@classlawgroup.com>; Emily Beale <eb@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

We are still waiting to hear from our client. We expect to be back to you on these issues next week.

Thanks,
Karla

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

**From:** David Stein <ds@classlawgroup.com>
**Sent:** Friday, June 20, 2025 4:52 PM
**To:** Emily Beale <eb@classlawgroup.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**EXTERNAL EMAIL; use caution with links and attachments**

Karla & Issac, Emily has been out this week but I don't believe we've received an update from you on the below matter. When can we expect to hear from you?

Dave Stein (he/him) | Partner

**GibbsMura**

1111 Broadway, STE 2100
Oakland, CA 94607
Phone: (510) 350-9715
Fax: (510) 350-9700
ds@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby

notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Thursday, June 12, 2025 3:33 PM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Karla and Issac – appreciate the call earlier.

I write to briefly confirm our discussion:

- In response to our first question below, you stated that the scope of the log presumably reflects employee access ███████ ███, and you are unaware of any other logs maintained for accessing accounts using other systems. You state that you will confirm this with your client and let us know if that's not right.
- In response to our second question, you stated that you will check with your client about the meaning of ██ ██████ and let us know what you learn, including whether departments like FCI, have their own unique ██████
- In response to our third question, you stated that the custodian ██████ is an internal team that assists with data requests. We asked that you let us know the name of that team, and you stated you would consider that request and get back to us.
- In response to our final question, we stated our position that the information requested falls within the scope of Interrogatory No. 2, and that Wells Fargo's response to that request remains subject to Rule 26's supplementation requirement. We also told you that we endeavored to keep our information request narrow, so as to minimize any burden on Wells Fargo in providing this information. You stated that you would review Interrogatory No. 2 and get back to us on whether Wells Fargo would provide the requested information.

Finally, you said that you will likely be able to get back to us either tomorrow or, more likely, next week. We look to hearing from you.

Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

13

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Thursday, June 12, 2025 8:00 AM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Thanks, Karla. I'll send over an invite for 1PT/4ET. Please forward as needed.

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

**From:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Sent:** Thursday, June 12, 2025 7:42 AM
**To:** Emily Beale <eb@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

That works for us.  Thanks, Emily.

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Wednesday, June 11, 2025 4:48 PM

**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Hi Karla – how does 1PT/4ET tomorrow work?

Thanks,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

---

**From:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Sent:** Wednesday, June 11, 2025 12:56 PM
**To:** Emily Beale <eb@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Hi Emily,

What is your availability tomorrow for a call?

Thanks,
Karla

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693

15

kjohnson@mcguirewoods.com

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Monday, June 9, 2025 6:34 PM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Karla,

Thank you for confirming. We have a few questions about the document and would like to schedule a call to discuss. I have previewed our initial questions below as a starting point. Please let us know your availability this week.

-   What is the scope of the information logged in the spreadsheet? E.g., does the log show all activity within one particular system?
-   What is the meaning of ███████████████████████████ ?
-   The metadata for the access log states that the custodian is ███████ – what does this stand for?
-   For the following ████████████████████████████████ what is the employee name, branch or department, and job title associated with each ID number?



Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that

16

any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

---

**From:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Sent:** Thursday, June 5, 2025 2:23 PM
**To:** Emily Beale <eb@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Emily – Thank you, and my apologies for the delay. Wells Fargo has completed its reasonable search for and production of access logs as agreed to in response to Plaintiffs' Motion to Compel. Wells Fargo has not identified any additional access log documents or entries beyond that which it has produced, and we are not withholding any access logs on the basis of privilege other the particular entries redacted in WF_JJ_00114017.

Let me know if you have any questions.

Thanks,
Karla

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

---

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Thursday, June 5, 2025 9:59 AM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**EXTERNAL EMAIL; use caution with links and attachments**

Karla,

Following up on my email below.

Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

17

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

**From:** Emily Beale
**Sent:** Monday, June 2, 2025 6:50 PM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Karla,

We write to follow up on Wells Fargo's production of May 16, 2025, concerning access logs. We ask that Wells Fargo confirm that it has completed its search and production of access logs and that it is not withholding any documents or information on the basis of privilege beyond what is indicated in Wells Fargo's Ninth Privilege Log.

Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Friday, May 9, 2025 4:09 PM
**To:** Johnson, Karla L. <KJohnson@mcguirewoods.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q.

<ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Karla,

Thank you for confirming. We will look for Wells Fargo's production next week.

Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541
New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

---

**From:** Johnson, Karla L. <KJohnson@mcguirewoods.com>
**Sent:** Friday, May 9, 2025 3:54 PM
**To:** Emily Beale <eb@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Emily,

To follow-up, we expect to produce responsive documents next week as requested.

Thank you,
Karla

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

19

**From:** Johnson, Karla L.
**Sent:** Tuesday, May 6, 2025 6:09 PM
**To:** 'Emily Beale' <eb@classlawgroup.com>; deVyver, K. Issac <KdeVyver@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** RE: In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

Hi Emily,

We are still in the process of searching for responsive documents.  As agreed, we will produce the documents if we find them.  We expect to have a further update this week.

Thanks,
Karla

**Karla L. Johnson**
Partner
McGuireWoods LLP
T:  +1 412 667 7927 | M: +1 724 986 3693
kjohnson@mcguirewoods.com

**From:** Emily Beale <eb@classlawgroup.com>
**Sent:** Friday, May 2, 2025 1:24 PM
**To:** deVyver, K. Issac <KdeVyver@mcguirewoods.com>; Johnson, Karla L. <KJohnson@mcguirewoods.com>; White, Molly M. <MWhite@mcguirewoods.com>; Baiardo, Alicia A. <ABaiardo@mcguirewoods.com>; Le, Anthony Q. <ALe@mcguirewoods.com>; Haines, Kelsey D. <KHaines@mcguirewoods.com>; Farley, Alexandra S. <AFarley@mcguirewoods.com>; Foss, Anita M. <AFoss@mcguirewoods.com>
**Cc:** Jason Kellogg <jk@lklsg.com>; Marcelo Diaz-Cortes <md@lklsg.com>; Daniel Girard <dgirard@girardsharp.com>; Jordan Isern <jisern@girardsharp.com>; rusty@pistolcreekranch.com; David Stein <ds@classlawgroup.com>; Spencer Hughes <shughes@classlawgroup.com>
**Subject:** In re J&J Inv. Litig./Winkler v. Wells Fargo Bank, N.A.

**EXTERNAL EMAIL; use caution with links and attachments**

Counsel,

We write to follow up on your March 27, 2025, letter concerning access logs. In the letter, you stated that you were investigating whether access log records exist and would produce documents for the enumerated accounts if located. We request that Wells Fargo provide an update on its search and production of the account access logs by next Tuesday, May 6. We also ask that Wells Fargo complete its search and any production by May 16.

Regards,

Emily Beale (she/her) | Associate

**GibbsMura**

136 Madison Avenue, Suite 541

20

New York, NY 10016
Phone: (510) 340-4732
Fax: (510) 350-9701
eb@classlawgroup.com
www.classlawgroup.com

This message is intended only for the addressee, and may contain information that is privileged or confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or agent of the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited; and you are asked to notify us immediately by return email, or by telephone at (510) 350-9700. Thank you.

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*