Daniel C. Girard (*pro hac vice*)
Jordan Isern (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
(415) 981-4800 (tel.)
(415) 981-4846 (fax)
dgirard@girardsharp.com
jisern@girardsharp.com

Eric H. Gibbs (*pro hac vice*)
David K. Stein (*pro hac vice*)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
ehg@classlawgroup.com
ds@classlawgroup.com

*Interim Co-Lead Counsel*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| *In re J&J Investment Litigation* | Case No.: 2:22-cv-00529-GMN-NJK<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Judge:    Hon. Gloria M. Navarro<br>            Hon. Nancy J. Koppe |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

    I.    FACTUAL BACKGROUND ...................................................................... 2

    II.    PROCEDURAL HISTORY ......................................................................... 2

        A.    Litigation .................................................................................... 2

        B.    Settlement Efforts ....................................................................... 4

OVERVIEW OF THE SETTLEMENT ........................................................................................ 4

    III.    THE SETTLEMENT CLASS MEMBERS .................................................. 4

    IV.    ADMINISTRATION, NOTICE, AND PLAN OF DISTRIBUTION ........................... 5

    V.    ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS ......................................... 5

    VI.    SCOPE OF RELEASES ............................................................................. 6

    VII.    RECEIVER APPROVAL PROCESS ........................................................... 6

ARGUMENT ................................................................................................................................. 6

    VIII.    THE PROPOSED SETTLEMENT MERITS APPROVAL UNDER RULE 23(E) AND THE *CHURCHILL* FACTORS. ............................................................. 7

        A.    Class Plaintiffs and their counsel adequately represented the class (Rule 23(e)(2)(A)). .................................................................. 8

        B.    The proposed Settlement is the product of arm's length, non-collusive negotiations (Rule 23(e)(2)(B) and *Churchill* Factor 5). ..................................... 9

        C.    The quality of relief to the class weighs in favor of approval (Rule 23(e)(2)(C) and *Churchill* Factors 1-4, 6). .............................................................. 11

            1.    The Settlement provides favorable relief for the proposed class (*Churchill* Factors 4 and 6). ........................................................ 11

            2.    Continued litigation would entail cost, risk, and delay (Rule 23(e)(2)(C)(i) and *Churchill* Factors 1, 2, and 3). .................................. 13

            3.    The Settlement provides for an effective distribution of proceeds to the class (Rule 23(e)(2)(C)(ii)). .......................................... 14

            4.    The terms of the proposed attorneys' fees request support preliminary approval (Rule 23(e)(2)(C)(iii)). ............................................... 15

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

5.  Other agreements pertaining to the Settlement (Rule 23(e)(2)(C)(iv))... 16

D.  The Settlement treats all Settlement Class Members equitably (Rule 23(e)(2)(D)). ................................................................................................... 17

IX.  THE COURT IS LIKELY TO BE ABLE TO CERTIFY THE CLASS FOR SETTLEMENT. ............................................................................................ 18

A.  Rule 23(a)'s requirements are likely met. ............................................. 18

B.  Rule 23(b)(3)'s requirements are likely met. ........................................ 20

X.  THE COURT SHOULD APPROVE THE FORM AND PLAN FOR DISSEMINATING NOTICE TO THE CLASS. ............................................ 22

A.  The Court should adopt the parties' proposed notice program. .......... 22

B.  The Court should adopt the proposed Settlement schedule. ............... 23

CONCLUSION ........................................................................................................... 24

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ............................................................................................... 21

*Beck-Ellman v. Kaz USA, Inc.*
2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ............................................................ 5

*Briseño v. Henderson*
998 F.3d 1014 (9th Cir. 2021) .............................................................................. 10

*Camenisch v. Umpqua Bank*
2022 WL 17740285 (N.D. Cal. Dec. 16, 2022) .............................................. 19, 21

*Chang v. Wells Fargo Bank*
2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) ....................................................... 12

*Churchill Vill., L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ....................................................................... 7, 9, 11

*Cottle v. Plaid Inc.*
340 F.R.D. 356 (N.D. Cal. 2021) ........................................................................... 5

*Daniels v. Aria Resort & Casino, LLC*
2023 WL 2634613 (D. Nev. Mar. 23, 2023) ......................................... 7, 9, 13, 15

*Dempsey v. Smith's Food & Drug Ctrs., Inc.*
2025 WL 3551993 (D. Nev. Dec. 10, 2025) ........................................................... 7

*DZ Rsrv. v. Meta Platforms, Inc.*
96 F.4th 1223 (9th Cir. 2024) .............................................................................. 20

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974) ............................................................................................. 22

*Evans v. Zions Bancorporation, N.A.*
2022 WL 16815301 (E.D. Cal. Nov. 8, 2022) ................................................. 16, 17

*Gonzales v. Lloyds TSB Bank*
2007 WL 9711433 (C.D. Cal. May 2, 2007) ........................................................ 19

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*
242 F.R.D. 568 (W.D. Wash. 2007) ..................................................................... 22

*Greene v. Jacob Transp. Servs., LLC*
2017 WL 4158605 (D. Nev. Sept. 19, 2017) ........................................................ 20

*Hefler v. Wells Fargo & Co.*
2018 WL 6619983 (N.D. Cal. Dec. 17, 2018) ........................................................ 7

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

*In re Apple Inc. Device Performance Litig.*
    50 F.4th 769 (9th Cir. 2022) ...................................................................................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) ............................................................................ 7, 10, 11

*In re First All. Mortg. Co.*
    471 F.3d 977 (9th Cir. 2006) ...................................................................................... 21

*In re Google Assistant Priv. Litig.*
    2026 WL 326809 (N.D. Cal. Feb. 6, 2026) .................................................................. 16

*In re HCV Prison Litig.*
    2020 WL 806170 (D. Nev. Feb. 18, 2020) ................................................................... 18

*In re Health S. Corp. Sec. Litig.*
    334 F. App'x 248 (11th Cir. 2009) .............................................................................. 16

*In re Hyundai & Kia Fuel Econ. Litig.*
    926 F.3d 539 (9th Cir. 2019) ................................................................................ 20, 21

*In re MGM Mirage Sec. Litig.*
    708 F. App'x 894 (9th Cir. 2017) ................................................................................ 10

*In re Online DVD-Rental Antitrust Litig.*
    779 F.3d 934 (9th Cir. 2015) ................................................................................ 16, 23

*In re Woodbridge Invests. Litig.*
    2021 WL 6618678 (C.D. Cal. Sept. 3, 2021) ............................................................... 15

*Jenson v. First Trust Corp.*
    2008 WL 11338161 (C.D. Cal. June 9, 2008) ......................................................... 12, 16

*Jimenez v. Allstate Ins. Co.*
    765 F.3d 1161 (9th Cir. 2014) .................................................................................... 19

*Kim v. Allison*
    8 F.4th 1170 (9th Cir. 2021) .................................................................................. 7, 10

*Kristensen v. Credit Payment Servs.*
    12 F. Supp. 3d 1292 (D. Nev. 2014) ........................................................................... 18

*La Caria v. Northstar Location Servs., LLC*
    2020 WL 2771185 (D. Nev. May 28, 2020) ...................................................... 18, 19, 22

*Loomis v. Slendertone Distribution, Inc.*
    2021 WL 873340 (S.D. Cal. Mar. 9, 2021) .................................................................. 17

*Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................ 13

iv

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

*Parsons v. Ryan*
   754 F.3d 657 (9th Cir. 2014) .................................................................................................. 19

*Ray v. Nat'l Collegiate Athletic Ass'n*
   2026 WL 310066 (E.D. Cal. Feb. 5, 2026) ........................................................................ 16

*Rodriguez v. W. Publishing Corp.*
   563 F.3d 948 (9th Cir. 2009) .................................................................................................. 9

*Sesto v. Prospect CharterCARE, LLC*
   2019 WL 2394251 (D.R.I. June 6, 2019) .......................................................................... 15

*Small v. Univ. Med. Ctr. of S. Nev.*
   2019 WL 3063509 (D. Nev. May 29, 2019) ...................................................................... 10

*Takiguchi v. MRI Int'l, Inc.*
   2016 WL 1091090 (D. Nev. Mar. 21, 2016) ............................................................... 19, 21

*Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*
   2025 WL 26770 (S.D. Fla. Jan. 3, 2025) ........................................................................... 15

*Tyson Foods, Inc. v. Bouaphakeo*
   577 U.S. 442 (2016) ............................................................................................................. 20

*Tyus v. Wendy's of Las Vegas, Inc.*
   407 F. Supp. 3d 1088 (D. Nev. 2019) ........................................................... 18, 19, 20, 21

*Vizcaino v. Microsoft Corp.*
   290 F.3d 1043 (9th Cir. 2002) ............................................................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ............................................................................................................. 19

*Wolin v. Jaguar Land Rover N. Am., LLC*
   617 F.3d 1168 (9th Cir. 2010) ............................................................................................ 19

**Rules**

Fed. R. Civ. Pro. 23 ..................................................................................................... passim

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

**Introduction**

This consolidated class action against Wells Fargo Bank, N.A., arises from a Ponzi scheme masterminded by Nevada attorney Matthew Beasley.[1] The parties have reached a $50 million, non-reversionary settlement. If approved, the settlement will dispose of these cases in their entirety, along with a companion action by federal equity Receiver Geoff Winkler. Class Plaintiffs bring this motion to initiate the court-approval process under Rule 23(e).

These cases were fully litigated over three years, through document discovery, 26 depositions, briefing on discovery disputes, Wells Fargo's motion to dismiss and motion for summary judgment, Plaintiffs' motion for class certification, and reciprocal *Daubert* motions. There were three mediation sessions over a three-year period before Robert Meyer, an experienced JAMS mediator. Plaintiffs' counsel and the Receiver all support the settlement, believing it represents a fair compromise of sharply disputed claims. Considering the substantial settlement amount, the fulsome record, the inherently risky nature of the claims, and the deliberate nature of the settlement negotiations, there is every indication that the settlement is the product of arms' length, non-collusive negotiations.

The settlement is conditioned on this Court's approval as to the compromise of class claims. As to the compromise of receivership claims, the settlement is conditioned on the approval of Judge Silva in *SEC v. Beasley*, No. 2:22-cv-00062-CDS-EJY (D. Nev.) (the "SEC Action"). As to timing and coordination of the approval processes in each court, to avoid potentially confusing class members, the parties propose that notice to class members only issue upon *the later of* an order granting preliminary approval in the Class Action and an order granting preliminary approval in the SEC Action.

Because the settlement bears all the indicia of fairness, Class Plaintiffs respectfully request that the Court enter an order finding that, under Rule 23(e)(1), it will "likely be able" to approve the settlement, directing notice in form and manner proposed below, and tentatively certifying the settlement class. After notice has been given to the class, Class Plaintiffs will move for final approval of the settlement and, under Rule 23(e), for an award of attorneys' fees and expenses.

---

[1] Beasley pleaded guilty to five counts of wire fraud relating to the J&J Ponzi scheme. His sentencing is currently scheduled for July 16, 2026. *See United States v. Beasley*, No. 2:23-cr-00066-JAD-DJA (D. Nev.).

1

**Background**

**I.     Factual Background**

Matthew Beasley, a Las Vegas-area attorney, operated a Ponzi scheme from 2017 to 2022. ECF No. 37, ¶¶ 29, 31. Working alongside Jeffrey Judd and several other individuals to promote the scheme, Beasley tricked investors into believing that they could invest funds to be loaned to personal-injury plaintiffs awaiting receipt of settlement payments. *Id.* ¶ 30. In truth, there were no settlements to invest in. *Id.* Beasley and his associates diverted and commingled investor money to gamble and to purchase real estate, expensive cars, and other luxury goods. Declaration of Geoff Winkler (the "Receiver Decl."), attached as Exhibit 3, ¶ 3. Beasley also recycled payments from newer investors to pay false "returns" to earlier investors. *Id*. Following a dramatic standoff, Beasley was arrested by the FBI in March 2022, and the scheme collapsed. ECF No. 37, ¶¶ 35-36.

Over the course of the scheme, the funds that Beasley raised primarily flowed through his law firm's attorney trust account (or "IOLTA") maintained at Wells Fargo. Receiver Decl. ¶ 3. Class Plaintiffs allege that Wells Fargo became aware of Beasley's red flag banking activity but continued to accept new deposits and execute transfers, sustaining the scheme. *E.g.*, ECF No. 37, ¶¶ 3-10. For its part, Wells Fargo has mounted a strenuous defense, maintaining it did nothing wrong.

Plaintiffs Allan Carso, Barrett Henzel, Craig Rodney Michaelis, Bryce Kelly, Gary Lundin, Joshua Luekenga, Clint McDaniel, and Dan McDaniel are among the hundreds of investors in Beasley's Ponzi scheme who suffered losses (collectively, "Class Plaintiffs"). *Id.*, ¶¶ 37-91.

**II.    Procedural History**

**A.     Litigation**

These actions were filed in March and April 2022. They were consolidated under Local Rule 42-1(b) and assigned to the Hon. Gloria M. Navarro and Magistrate Judge Nancy J. Koppe on May 10, 2022. ECF No. 21. In their consolidated complaint, Class Plaintiffs sue Wells Fargo for (1) violations of the Nevada Uniform Fiduciaries Act; (2) aiding and abetting breach of fiduciary duty; (3) aiding and abetting fraud; and (4) negligence. ECF No. 37.

Wells Fargo also faces claims brought by Geoff Winkler, the court-appointed Receiver (the "Receiver," together with Class Plaintiffs, "Plaintiffs") on behalf of the business entities created by

2

Beasley and Judd to further the Ponzi scheme. *See Winkler v. Wells Fargo Bank, N.A.*, No. 2:23-cv-00703-GMN-NJK (the "Receiver Action"). The Receiver, like Class Plaintiffs, sues Wells Fargo for aiding and abetting the Ponzi scheme. *Id.* at ECF No. 1 ¶ 2.

After the class action lawsuits were consolidated, Wells Fargo moved to dismiss all the claims, ECF No. 39, and moved to stay discovery pending the resolution of its motion to dismiss, ECF No. 44. Magistrate Judge Koppe denied a motion to stay discovery on September 28, 2022. ECF No. 53. And Judge Navarro largely denied Wells Fargo's motion to dismiss on March 18, 2023. ECF No. 74.

The parties then engaged in thorough discovery on a coordinated basis. Joint Declaration of Counsel ("Counsel Decl."), attached as Exhibit 2, ¶ 11. Plaintiffs' counsel reviewed tens of thousands of documents and deposed 17 current and former Wells Fargo employees and Wells Fargo's Rule 30(b)(6) designee. *Id*. ¶ 12. Class Counsel served five sets of interrogatories and three sets of requests for admission. *Id*. For its part, Wells Fargo served five sets of requests for production, four sets of interrogatories, and a set of requests for admission, and it deposed all eight Class Plaintiffs. *Id*. ¶ 13. Wells Fargo also served third-party discovery on the *former* named plaintiffs (who were not named in the Consolidated Class Action Complaint), on the LLCs some Class Plaintiffs formed for investment purposes, and on other investors in the Ponzi scheme. *Id*. ¶ 14. Class Counsel represented these non-parties for discovery purposes. *Id*. The parties resolved many of their disputes through negotiation. *Id*. ¶¶ 12-14. There were nevertheless six discovery motions presented to Magistrate Judge Koppe. *Id*.; *see also* ECF Nos. 62, 69, 96, 148, 172, 268.

Concurrently with fact discovery, Plaintiffs retained a banking-industry expert, an expert on IOLTAs, and the Receiver's chief forensic accountant as an expert on damages. Counsel Decl. ¶ 16. Wells Fargo retained a banking expert and a forensic accounting expert. *Id*. The parties exchanged opening and rebuttal reports and deposed each of the opposing party's experts. *Id*. Wells Fargo also deposed the Receiver. *Id*. ¶ 15.

After the completion of fact and expert discovery, the parties fully briefed Class Plaintiffs' motion for class certification. ECF No. 188. Wells Fargo then moved to strike the declaration of Receiver Geoff Winkler (filed in support of Class Plaintiffs' class certification motion), ECF No. 204, and moved for summary judgment, ECF No. 219. The parties fully briefed those motions. The parties

3

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

also briefed four motions to exclude expert testimony. *See* ECF Nos. 246, 201, 208, 264. These motions remained pending as of August 27, 2025, the date that the Court granted the parties' joint stipulation to stay the case to mediate. ECF No. 272.

### B.    Settlement Efforts

Over the course of the litigation, the parties participated in three separate mediation sessions with Robert A. Meyer of JAMS. Counsel Decl. ¶ 19. After mediating unsuccessfully in October 2023 and February 2024, the parties mediated again with Mr. Meyer on October 1, 2025. *Id*. The parties reached an agreement in principle at the close of the final session. *Id*. Following that initial agreement, the parties negotiated the Settlement Agreement, attached as Exhibit 1 (the "Settlement"), and logistics of settlement approval. *Id*. ¶ 20.

**Overview of the Settlement**

The Settlement is among Class Plaintiffs, the Settlement Class Members, the Receiver, and Wells Fargo, and it disposes of all the claims in the Class Action and Receiver Action. Wells Fargo will pay $50 million for the benefit of Settlement Class Members, to be distributed, net of court-approved attorneys' fees and costs, *pro rata* according to loss, as provided by the Receiver's distribution plan in the SEC Action.

### III.    The Settlement Class Members

The proposed Settlement Class is defined as "All natural and legal persons who invested in a J&J Entity lawsuit settlement contract between January 2017 and March 2022 and who incurred a loss of their principal investment (in whole or in part) as determined by the Receiver pursuant to his court-appointed duties and as identified in the Receiver's official records submitted to the Court in the SEC Action."[2] Settlement § 1.12. The Settlement Class explicitly incorporates the Receiver's net loss determinations, a narrower definition than in the Consolidated Complaint. *See* ECF No. 37, ¶ 190 ("All natural and legal persons who invested in a J&J Entity lawsuit settlement contract between January

---

[2] Excluded from the Settlement Class are Wells Fargo and the Relevant Non-Parties as defined in the Class Action Complaint; their parents, affiliates, subsidiaries, legal representatives, predecessors, successors, assigns, and employees; and any judge to whom the Class Action or Receiver Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons. Settlement § 1.12.

4

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

2017 and March 2022."). *See Beck-Ellman v. Kaz USA, Inc.*, 2013 WL 1748729, at \*1 & n.1 (S.D. Cal. Jan. 7, 2013) (modifying the class definition and granting preliminary approval); *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 379 (N.D. Cal. 2021) (granting preliminary approval of a settlement class that was both broader and narrower than the class in the operative complaint based on discovery).

## IV.   Administration, Notice, and Plan of Distribution

To reduce expense and limit investor confusion, the parties will rely on the information and administrative work done by the Receiver and his agent, Stretto, Inc. The Receiver has compiled investor addresses and performed a forensic investigation to determine the amount lost by each Settlement Class Member. Receiver Decl. ¶¶ 5-8; *see also* SEC Action, ECF Nos. 821, 845. The Receiver notified each investor of their loss determination and allowed them to confirm or contest the conclusion. Receiver Decl. ¶ 9. If a claim determination is contested and not resolved informally, the dispute will be submitted to Judge Silva in the SEC Action. *Id.*; SEC Action ECF Nos. 821, 845. The parties will rely on the Receiver's loss determinations to distribute net settlement funds, except that any investor who failed to make a claim in the SEC Action will get a second chance under the terms of the Settlement. Settlement §§ 5.1.1, 5.1.2.

Notice will be given by mail and email, using addresses compiled by the Receiver. *Id.* § 7.4; Receiver Decl. ¶ 13. The Receiver will also post the notice on the Receivership website. Settlement § 7.4. To avoid overtaxing the Receiver's resources, the parties will rely on Stretto to give notice to government officials under the Class Action Fairness Act, mail notice, receive opt outs, and perform any payment support tasks requested by the Receiver. *E.g.*, Settlement §§ 5.2, 6.1, 7.7, 11.1.2, 11.1.6, 12.1.4; Declaration of Justin Hughes (the "Hughes Decl."), attached as Exhibit 4, ¶ 6.

## V.   Attorneys' Fees, Costs, and Service Awards

Pursuant to Fed. R. Civ. Pro. 23(h), Class Counsel will request attorneys' fees not to exceed $16.665 million, or 33.33% of the $50 million settlement fund, reimbursement of expenses up to $900,000, and individual awards of $10,000 to each of the eight Class Representatives in recognition of their service. Settlement §§ 16.1, 16.4. The motion will be made 30 days after notice is mailed and 30 days before the objection deadline, giving Class Members sufficient time to react to the motion. *Id.* § 16.2.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

## VI.   Scope of Releases

In exchange for the benefits provided under the Settlement, Class Plaintiffs, Settlement Class Members, the Receiver, and the J&J Entities in Receivership will release and be barred from reasserting claims against Wells Fargo "that in any way concern, arise out of, or relate to in any way to the following: any claims arising from or relating to the J&J Investment Scheme, including the claims, events, transactions, or circumstances that were or could have been alleged in the Class Action, the Receiver Action, or the SEC Action, based on the facts alleged or which arise out of or relate to facts alleged." *Id*. § 1.45. Class Members will have an opportunity to opt out of the Settlement after receiving notice, and any Class Member who opts out will not share in the Settlement or be subject to the release or the bar order. *Id*. § 11.1.5.

## VII.   Receiver Approval Process

Because the Settlement implicates the interests of both the stakeholders in the Receivership in addition to those of Class Members, it requires both courts' approval. The Receiver is submitting an approval motion in the SEC Action concurrently with Class Plaintiffs' filing of this motion. Receiver Decl. ¶ 16; *see also* Settlement §§ 2.4.1, 2.4.2. The Court in the SEC Action will hear any objections from individuals other than Class Members (such as creditors and net-winning investors). This Court will hear any Class Member objections. Settlement §§ 12.1.2, 12.2.2. To the extent that there are any objections in either the SEC Action or the Class Action, the parties will inform the other court. Counsel Decl. ¶ 24.

## Argument

A class action may be settled only with the Court's approval. Fed. R. Civ. P. 23(e). The preliminary approval stage is governed by Rule 23(e)(1). The Court may preliminarily approve the settlement only if it concludes that it will "likely" be able to (a) certify the class for purposes of judgment and (b) approve the parties' settlement as fair, reasonable, and adequate. If it grants preliminary approval, the Court must then direct notice in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1)(B).

Whether a settlement merits approval as fair, reasonable, and adequate is guided by the elements in Rule 23(e)(2). Supplementing those Rule 23(e) elements are the "*Churchill* factors." *See*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

*generally Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Daniels v. Aria Resort & Casino, LLC*, 2023 WL 2634613, at \*2-3 (D. Nev. Mar. 23, 2023) (Navarro, J.) (applying both Rule 23 and *Churchill* factors); *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).[3] Courts must also scrutinize settlements for evidence of collusion between plaintiff's counsel and the defendant. *Dempsey v. Smith's Food & Drug Ctrs., Inc.*, 2025 WL 3551993, at \*3 (D. Nev. Dec. 10, 2025) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Class Plaintiffs explain below why the Settlement merits approval, under both Rule 23(e)(2) and the *Churchill* factors, and why there is no evidence of collusion under *Bluetooth*, before later explaining why the class satisfies the requirements for class certification and why the proposed notice plan is sufficient.

**VIII.    The proposed Settlement merits approval under Rule 23(e) and the *Churchill* factors.**

To assess whether a proposed settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs courts to consider: (1) the adequacy of representation; (2) whether the proposal was negotiated at arm's length; (3) the adequacy of the relief provided by the settlement; and (4) whether the agreement treats class members equitably. *See* Fed. R. Civ. P. 23(e)(2).

In *Churchill Village, L.L.C. v. General Electric*, the Ninth Circuit also articulated the following list of additional factors for approving class settlements:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

---

[3] Before Rule 23 was amended in December 2018, federal courts of appeal developed their own multifactor tests to evaluate class settlements. *See, e.g.*, *Churchill*, 361 F.3d at 575. The 2018 Advisory Committee recognized the continuing application of these factors, explaining that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), Advisory Committee's Notes. Accordingly, courts apply the framework of amended Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*4 (N.D. Cal. Dec. 17, 2018).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

governmental participant; and (8) the reaction of the class members to the proposed settlement.[4]

361 F.3d at 575. Applying Rule 23(e)(2) and the *Churchill* factors indicates that the Court will likely be able to approve the Settlement as fair, reasonable, and adequate. For the sake of efficiency, Class Plaintiffs apply each element of Rule 23(e)(2) below, while addressing the relevant *Churchill* factors as they overlap with those elements.

### A.    Class Plaintiffs and their counsel adequately represented the class (Rule 23(e)(2)(A)).

Under Rule 23(e)(2)(A), the first factor is the adequacy of representation by the class representatives and attorneys. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), Advisory Committee's Notes.

Class Plaintiffs diligently represented the class and actively participated in the litigation and discovery over the past several years, including by responding to written discovery requests and producing thousands of pages of documents. Counsel Decl. ¶¶ 13, 32. Each Class Plaintiff gave a full day deposition. *Id*. Throughout, they have remained in contact with counsel, monitored the litigation, and acted with the interests of the class in mind. *Id*. ¶ 32.

Class Counsel have also adequately represented the class. They have vigorously prosecuted this case for the past four years. Their work includes opposing Wells Fargo's motion to dismiss, as well as briefing on six discovery motions, class certification, summary judgment, four *Daubert* motions, and a motion to strike the Receiver's declaration. *Id*. ¶¶ 9, 17. Class Counsel vigorously pursued discovery, taking 17 depositions of current and former Wells Fargo employees and Wells Fargo's Rule 30(b)(6) designee (after months of contentious negotiations over the scope of document discovery and Rule 30(b)(6) topics), and the analysis of tens of thousands of pages of documents. *Id*. ¶ 12. Class Counsel subpoenaed former Wells Fargo employees, third-party banks, the State Bar of Nevada, and the Department of Justice. *Id*. ¶ 14. Wells Fargo served subpoenas on the former named plaintiffs, the Class

---

[4] *Churchill* Factor 7 (the presence of a governmental participant) is inapplicable here. Factor 8 (the reaction of class members) does not apply now because it is best considered after notice of the settlement is sent to class members. Class Plaintiffs will address the eighth *Churchill* factor at the final approval stage, after class members have had the opportunity to opt-out from or object to the settlement.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

Plaintiffs' investment LLCs, and other investors. *Id*. ¶ 13. Class Counsel represented these non-parties for the purposes of Wells Fargo's subpoenas and negotiated the scope of discovery with Wells Fargo. *Id*. Class Counsel engaged well-qualified experts who issued initial reports and (in two instances) rebuttal reports. *Id*. ¶ 16. Class Counsel deposed Wells Fargo's experts and defended the depositions of Plaintiffs' experts. *Id*. As part of these efforts, Class Counsel advanced over 19,000 hours in attorney time, amounting to over $14.5 million at counsel's hourly rates, on behalf of the class and with no assurance that those expenses would ever be reimbursed. *Id*. ¶ 30.

The Court should thus find that Rule 23(e)(2)(A) weighs in favor of approval.

**B.      The proposed Settlement is the product of arm's length, non-collusive negotiations (Rule 23(e)(2)(B) and *Churchill* Factor 5).**

The second Rule 23(e)(2) element asks the Court to evaluate whether the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This element is a "procedural" concern, that "look[s] to the conduct of litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Committee's Notes. Relatedly, the fifth *Churchill* factor evaluates the extent of discovery completed and the stage of the proceedings at which settlement was achieved. 361 F.3d at 575.

Here, the Settlement is the result of good faith, arm's-length bargaining between experienced attorneys representing Class Plaintiffs, the Receiver, and Wells Fargo. The parties reached a settlement after more than three and a half years of contentious litigation and three separate mediation sessions in front of an experienced JAMS mediator. Counsel Decl. ¶ 19. The negotiations accordingly "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(A)-(B), Advisory Committee's Notes. And, as recounted in the previous section, the settlement follows years of hard-fought litigation featuring considerable motion practice and the completion of fact and expert discovery. Counsel Decl. ¶¶ 18, 19. Since the parties all "had a good grasp on the merits of their case before settlement talks began," this factor too weighs in favor of approval. *Daniels*, 2023 WL 2634613, at *3 (quoting *Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)).

In addition to the Rule 23(e)(2) and *Churchill* factors, the Court can readily conclude that the Settlement is not the product of collusion, applying the heightened scrutiny required under *In re*

9

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

*Bluetooth*, 654 F.3d at 947. *See id.* (signs of collusion include when class counsel receives a disproportionate portion of the settlement, the presence of a clear sailing agreement, and when fees not awarded revert back to the defendant); *Kim*, 8 F.4th at 1179 (courts must not only consider the *Churchill* factors but also apply heightened scrutiny to the terms of proposed attorney's fees and the settlement for signs of collusion). First, there is no evidence of "explicit collusion" as the Settlement was reached with the help of a professional mediator at the conclusion of the Parties' third attempt to reach a settlement. *See In re Bluetooth*, 654 F.3d at 948 (while not dispositive, presence of mediator does weigh in favor of finding the settlement is not collusive); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (mediator's presence supported district court's finding that the settlement was non-collusive); Counsel Decl. ¶ 19. Additionally, the Settlement calls for payment of a substantial non-reversionary fund. Settlement § 3.1.3.

While Wells Fargo takes no position as to Plaintiffs' Counsel's requested attorneys' fees, that does not amount to a clear sailing provision. *See In re MGM*, 708 F. App'x at 897 n.4 ("settlement provision providing that Defendants 'shall take no position' as to Plaintiffs fee application" was not clear sailing provision because it "neither set a ceiling for the amount of fees Plaintiffs could request … nor provided for the payment of fees separate and apart from class funds"). Even if treated as a clear sailing provision, it does not mean the settlement is collusive. When a class-action settlement includes a clear sailing provision, a court has a "heightened duty to peer into the provision and scrutinize closely the relationship between attorney's fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Briseño v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021) (quoting *In re Bluetooth*, 654 F.3d at 948). Class Counsel's proposed fee award is not disproportionate to the recovery of the Class because the contemplated fees as a percentage of the fund are within the commonly accepted range of reasonable attorneys' fees in the Ninth Circuit. *See Small v. Univ. Med. Ctr. of S. Nev.*, 2019 WL 3063509, at *2 (D. Nev. May 29, 2019) (approving an award of fees of 33% of the maximum settlement amount); *In re MGM Int'l Resorts Data Breach Litig.*, No. 20-cv-00376-GMN-NJK, ECF No. 262 at 5 (D. Nev. June 18, 2025) (Navarro, J.) (awarding 30% of settlement fund).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

The Court should thus conclude that "the settlement is not the product of collusion among the negotiating parties" and find that Rule 23(e)(2)(B) and *Churchill* Factor 5 weigh in favor of approval. *In re Bluetooth*, 654 F.3d at 947.

**C.    The quality of relief to the class weighs in favor of approval (Rule 23(e)(2)(C) and *Churchill* Factors 1-4, 6).**

The third Rule 23(e) factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Note.

Likewise, five of the *Churchill* factors consider the strength of Class Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; and the experience and views of counsel. *See* 361 F.3d at 575.

**1.    The Settlement provides favorable relief for the proposed class (*Churchill* Factors 4 and 6).**

Two of the *Churchill* factors consider the amount offered in settlement and the experience and views of counsel. *See* 361 F.3d at 575. Here, the Settlement is for $50 million, delivering a substantial monetary recovery. The Settlement Fund represents a sizeable portion of what the class might have hoped to recover from Wells Fargo had it prevailed at trial and, in the experience of Class Counsel, is an outstanding result in an aid-and-abetting case.

Plaintiffs' Counsel estimate recoverable damage at trial of approximately $121.95 million, considering offsets and other factors. Counsel Decl. ¶ 27. The $50 million recovery for the Settlement Class represents, in Class Counsel's estimation, roughly 41% of the damages Class Plaintiffs stood to recover at trial. *Id*. It bears emphasis that a jury (assuming Class Plaintiffs survive summary judgment and prevail on class certification) could return a verdict for less in damages or none at all.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

The recovery here thus compares favorably with recent settlements in similar cases, where recoveries of 25% or less of the class's total potential recovery have been the norm. The table below shows comparable settlements in the Ninth Circuit, analyzing the settlement recoveries as a percentage of the net-loss amount potentially recoverable at trial.

| Case | Recoverable Investor Net Loss | Settlement | % Recovery |
|---|---|---|---|
| *In re J&J Investment Litigation*, No. 22-cv-00529 (D. Nev.) | $121.95 million | $50 million | 41% |
| *Chang v. Wells Fargo Bank*, No. 19-CV-01973-HSG (N.D. Cal.) | $30 – $100 million[5] | $3.75 million[6] | 4 – 13% |
| *Jenson v. First Trust Corp.*, No. 05-cv-03124-ABC (C.D. Cal.) | $91.5 million[7] | $8.5 million[8] | 9% |
| *McNamara v. Wells Fargo Bank*, No. 21-cv-1245-TWR (S.D. Cal.) | $294 million[9] | $33 million[10] | 11% |
| *Neilson v. Union Bank*, No. 02-cv-06942-MMM (C.D. Cal.) | $200+ million[11] | $26.5 million[12] | 13%[13] |

[5] ECF No. 129 at 10-11 (estimating out-of-pocket losses at just over $100 million but noting that up to $70 million being held by the receivership estate could ultimately be returned to investors as well).

[6] *Chang*, 2023 WL 6961555, at *2 (N.D. Cal. Oct. 19, 2023) (disregarding funds held by receivership estate, "the total settlement amount of $3.75 million represents approximately 3.75% of total estimated losses").

[7] *Jenson*, 2008 WL 11338161, at *1 n.2 (C.D. Cal. June 9, 2008) ("the net-loss suffered by the Class is approximately $91.5 million").

[8] *Id.* at 6.

[9] ECF No. 383 at 25 n.19 (explaining that class plaintiffs sought $294 million in compensatory damages).

[10] *Id.* at 25.

[11] ECF No. 308 at 2 ("Plaintiffs allege that more than $200,000,000 of [$600,000,000 received from investors] has never been returned").

[12] *Id.* at 5-6 ($26.5 million settlement fund to compensate both class and non-class investors for all claims, including aiding-and-abetting claims).

[13] *Id.* at 26 ("The proposed settlement amount thus represents approximately 13% of the damages the class sought to recover on the aiding and abetting claims").

12

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

| Case | Recoverable Investor Net Loss | Settlement | % Recovery |
|---|---|---|---|
| *Gonzalez v. Lloyds TSB Bank*, No. 06-cv-01433-VBF (C.D. Cal.) | $90 million[14] | $17.04 million[5] | 19% |
| *Evans v. ZB, N.A.*, No. 2:17-cv-01123 (E.D. Cal.) | $55 million[15] | $14 million | 25% |
| *Camenisch v. Umpqua Bank*, No. 20-cv-5905-PCP (N.D. Cal.) | $149.4 million[16] | $55 million[17] | 37% |

In short, the proposed Settlement represents an outstanding recovery for the class. In Class Counsel's decades of experience, this is an exceptional result, weighing in favor of approval. Class Counsel Decl. ¶ 26; *see also Daniels*, 2023 WL 2634613, at *4.

**2.    Continued litigation would entail cost, risk, and delay (Rule 23(e)(2)(C)(i) and *Churchill* Factors 1, 2, and 3).**

Under Rule 23(e)(2)(C)(i), the benefits of settlement are weighed against the costs, risk, delay of trial and appeals. Fed. R. Civ. P. 23(e)(2)(C)(i). Likewise, the first three *Churchill* factors consider (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial. 361 F.3d at 575. Approving a settlement is "preferable to lengthy and expensive litigation with uncertain results" unless the settlement would provide "clearly inadequate" relief. *Daniels*, 2023 WL 2634613, at *2 (quoting *Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Class Counsel are intimately familiar with the strengths and weaknesses of this case. The Court largely denied Wells Fargo's motion to dismiss. ECF No. 74. Class Counsel marshalled evidence in support of class certification, *see* ECF Nos. 188, 217, and in opposition to summary judgment, *see* ECF No. 250. As of the date the Settlement was reached, numerous motions remained pending before the Court, including Class Plaintiffs' motion for class certification (ECF No. 188), Wells Fargo's motion to

---

[14] ECF No. 189 at 5-6, *adopted by* ECF No. 197.

[15] ECF No. 105 at 10.

[16] ECF No. 472 at 14-15.

[17] *Id.* at 9-10.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

strike the declaration of Geoff Winkler from Class Plaintiffs' class certification motion (ECF No. 204), Wells Fargo's motion for summary judgment (ECF No. 219), Plaintiffs' motion to exclude Wells Fargo's expert Karl Jarek (ECF No. 246), Wells Fargo's motions to exclude Plaintiffs' experts David A. Clark, John Hall, and Kenneth Simmons (ECF Nos. 201, 208, 264), and Plaintiffs' motion to compel discovery (ECF No. 270). Class Counsel recognize that continued litigation against Wells Fargo poses substantial risk.

Following the Court's ruling on the motion of class certification, there is a risk that either party would have appealed the decision under Rule 23(f) or that Wells Fargo would move to decertify the class. And, had Class Plaintiffs prevailed on both class certification and summary judgment, the parties would have needed to brief motions *in limine*, prepare for trial, conduct the trial, and then brief any subsequent appeals. Each stage would have added risk and necessarily imposed delay and costs before relief could be provided to the defrauded investors. The Settlement avoids these risks, delays and expenditures, and it offers substantial relief now.

**3.      The Settlement provides for an effective distribution of proceeds to the class (Rule 23(e)(2)(C)(ii)).**

Rule 23(e)(2)(C)(ii) examines "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The parties agree that the Receiver will be responsible for distributing the Settlement fund, consistent with the process approved by the court in the SEC Action. Settlement § 5.1.6.

Since his appointment as receiver in June 2022, the Receiver and his staff have undertaken an extensive forensic accounting and have traced the Ponzi scheme's flow of funds. Receiver Decl. ¶¶ 5, 6; *see also* SEC Action, ECF No. 792. The Receiver gave each investor notice of a tentative claim determination according to his forensic accounting and an opportunity to contest the determination. Receiver Decl. ¶ 9; *see also* SEC Action, ECF Nos. 792, 821, 845. If a claim determination is contested and not resolved informally, the dispute will be submitted to Judge Silva in the SEC Action. Receiver Decl. ¶ 9; SEC Action ECF Nos. 821, 845.

The Settlement will distribute the net recovery based on the Receiver's court-approved claim determinations. Settlement § 5.1.6. No new claim will be required to receive a distribution, but if a

14

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

Settlement Class Member missed their opportunity to respond in the SEC Action, they will get a second chance to submit a claim during the notice period. *Id.* §§ 5.1.1, 5.1.2. All Class Members will have the opportunity to participate in the Settlement. After the claims process is completed, the Receiver will distribute the Settlement Funds *pro rata* in proportion to each Settlement Class Member's documented loss in the Ponzi scheme. Receiver Decl. ¶ 11.

Similar approaches are routinely approved in cases where a receiver or trustee was previously in place to marshal assets and make distributions to defrauded investors. *See, e.g.*, *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 2025 WL 26770, at *2 (S.D. Fla. Jan. 3, 2025) (approving distribution in accordance with plan of the court-appointed receiver); *In re Woodbridge Invests. Litig.*, 2021 WL 6618678, at *2-3 (C.D. Cal. Sept. 3, 2021) (appointing the bankruptcy trustee to implement the class notice program and distribute funds); *Sesto v. Prospect CharterCARE, LLC*, 2019 WL 2394251, at *5-6 (D.R.I. June 6, 2019) (approving notice plan effected by a court-appointed receiver).

### 4. The terms of the proposed attorneys' fees request support preliminary approval (Rule 23(e)(2)(C)(iii)).

Next, Rule 23(e)(2)(C)(iii) looks at "the terms of any proposed award of attorney's fees, including timing of payment." In common fund cases, the Ninth Circuit benchmark for a fee award is 25% of the fund. *See Daniels*, 2023 WL 2634613, at *5. A court may approve a higher percentage based on "(1) the result achieved; (2) the risk involved in the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases." *Id.* (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002)).

Here, Plaintiffs' Counsel will seek up to 33.33% of the Settlement fund, which will be paid only upon final approval in this case and an approval order in the SEC Action.[18] Settlement §§ 2.7, 16.1. The strength of the settlement here, in the face of challenging and risky litigation against a defendant who mounted a spirited and skilled opposition, justifies an upward departure from the benchmark. As discussed, the settlement provides favorable relief for the Ponzi scheme victims—providing a percentage of recovery well above the mean. *See supra* § I.C.1. And Plaintiffs' Counsel obtained this

---

[18] This award of attorneys' fees also includes the fees for Class Counsel and counsel in the Receiver Action.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

recovery in the face of considerable risk. *See supra* § I.C.2. Plaintiffs' Counsel employed their skill, knowledge, and experience to plead viable claims, develop the necessary evidence, and position investors for a strong class recovery. The fee they seek is in line with awards in other aiding and abetting cases. *See, e.g.*, *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *11-15 (C.D. Cal. June 9, 2008) (award of 33%); *In re Silvergate Bank*, No. 3:23-cv-01406-RBM-BLM, ECF No. 92 (S.D. Cal. Feb. 16, 2026) (same); *McNamara v. Wells Fargo & Co.*, No. 3:21-cv-01245-TWR-DDL, ECF No. 395 (S.D. Cal. Mar. 26, 2026) (same); *Evans v. Zions Bancorporation, N.A.*, 2022 WL 16815301, at *6-7 (E.D. Cal. Nov. 8, 2022) (award of 30%).

At the preliminary approval stage, the terms of the proposed attorneys' fees are reasonable and support initial approval of the Settlement. The decision to award the full fee or a lesser amount is reserved to the Court on full briefing.

### 5. Other agreements pertaining to the Settlement (Rule 23(e)(2)(C)(iv)).

An additional factor for consideration under Rule 23(e)(2)(C) is the existence of any agreements required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the Settlement Agreement contains a common provision in class action settlements: if a sufficient threshold of investors opt out, Wells Fargo will have the right to terminate the Settlement Agreement. Settlement § 13.3. The confidential threshold amounts appear in a separate, confidential Opt-Out Termination Agreement. Counsel Decl. ¶ 25; Settlement § 13.5. Plaintiffs will submit the confidential agreement in camera for the Court's review upon request.  The threshold is often treated as confidential "to encourage settlement and discourage third parties from soliciting class members to opt out" and because it is not material to class members' decisions to either participate or opt out. *In re Health S. Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009); *Ray v. Nat'l Collegiate Athletic Ass'n*, 2026 WL 310066, at *1 (E.D. Cal. Feb. 5, 2026); *see, e.g.*, *In re Google Assistant Priv. Litig.*, 2026 WL 326809, at *1 (N.D. Cal. Feb. 6, 2026) (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015)).

There are no other agreements under Rule 23(e)(3).

16

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

**D.    The Settlement treats all Settlement Class Members equitably (Rule 23(e)(2)(D)).**

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Committee's Notes.

Here, the Settlement treats all Settlement Class Members equitably. The Settlement Fund will be distributed consistently with the Receiver's distribution plan in the SEC Action. *See supra* § I.C.3; Settlement § 5.1.6. The Receiver intends to distribute the Settlement Fund (and the other funds he has marshalled) following a *pro rata* distribution plan. Receiver Decl. ¶ 11. Other courts have found such *pro rata* distribution plans to be fair and reasonable and to treat investors equitably. *See, e.g.*, *Evans*, 2022 WL 16815301, at *5 (approving a distribution scheme where "all class members are entitled to pro rata monetary relief based on their respective net loss"); *Loomis v. Slendertone Distribution, Inc.*, 2021 WL 873340, at *8 (S.D. Cal. Mar. 9, 2021) (*pro rata* distribution plan treats class members equitably). Further, the vast majority of investors (i.e., class members) have already completed the claims procedures, and the limited number of class members who have not submitted a claim will get another chance during the notice period. Receiver Decl. ¶¶ 9, 10; Settlement § 5.1.2.

Finally, though the Class Representatives will move for service awards, the extra payments are in recognition for their efforts on behalf of the class, and the Ninth Circuit permits such awards. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785-86 (9th Cir. 2022) (reaffirming that "reasonable incentive awards . . . are permitted" (quotation omitted)). Here, Class Counsel will seek service awards of $10,000 for each Class Representative. Settlement § 16.4. The Class Representatives' service was not conditioned on receiving such awards, which they understand are entirely within the Court's discretion. Counsel Decl. ¶ 31. The Class Representatives made substantial contributions to the litigation, including responding to multiple sets of interrogatories, producing thousands of pages of documents, and appearing for searching, full-day depositions. *Id*. ¶ 32. Class Counsel will offer a more detailed showing in support of their motion at the next stage. In sum, the Settlement Class Members are

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

treated equitably under the Settlement, and the Court should find that Rule 23(e)(2)(D) weighs in favor of approval.

## IX.     The Court is likely to be able to certify the class for settlement.

To obtain class certification, Class Plaintiffs must satisfy the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) as well as Rule 23(b)(3) (common questions predominate over individual issues, and class treatment is the superior method for handling the case). The Court is likely to be able to grant certification of the Settlement Class for many of the reasons explained in Class Plaintiffs' motion for class certification. *See* ECF No. 188.

As a preliminary matter, the Settlement Class definition meets the requirement that "any valid proposed class must be ascertainable based on objective criteria, and the proposed class definition should describe a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *In re HCV Prison Litig.*, 2020 WL 806170, at *4 (D. Nev. Feb. 18, 2020) (quotation omitted); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (similar). The criteria for Settlement Class inclusion are objective, not subjective, and members of the Settlement Class have been identified by the Receiver. Receiver Decl. ¶ 7.

### A.     Rule 23(a)'s requirements are likely met.

The proposed Settlement Class satisfies each requirement of Rule 23(a).

*Numerosity.* Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." In general, numerosity is satisfied "when the class size exceeds forty members." *Tyus v. Wendy's of Las Vegas, Inc.*, 407 F. Supp. 3d 1088, 1097 (D. Nev. 2019) (Navarro, J.); *La Caria v. Northstar Location Servs., LLC*, 2020 WL 2771185, at *3 (D. Nev. May 28, 2020) (Navarro, J.) ("[A] forty–member class is often regarded as sufficient to meet the numerosity requirement."). Numerosity is satisfied here because the Settlement Class includes over 900 persons. Receiver Decl. ¶ 7.

*Commonality.* Rule 23(a)(2) requires that there be one or more "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied when class members' claims "depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*,

765 F.3d 1161, 1165 (9th Cir. 2014) (quotation omitted). "'[E]ven a single common question will do' for the purposes of Rule 23(a)(2)." *Tyus*, 407 F. Supp. 3d at 1098 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Commonality is readily satisfied in cases like this one, because a bank's liability for aiding and abetting turns on questions common to the class. *See, e.g.*, *Takiguchi v. MRI Int'l, Inc.*, 2016 WL 1091090, at *3-5 (D. Nev. Mar. 21, 2016) (common issues included whether Ponzi scheme existed and whether defendants aided and abetted the fraud); *Camenisch v. Umpqua Bank*, 2022 WL 17740285, at *8-9 (N.D. Cal. Dec. 16, 2022) (common issues included whether there was a global fraud and whether defendant knew about the fraud); *Gonzales v. Lloyds TSB Bank*, 2007 WL 9711433, at *4 (C.D. Cal. May 2, 2007) (commonality satisfied by investor claims that defendant bank aided and abetted Ponzi scheme). Here, like in those cases, common questions raised by Class Plaintiffs' claims include whether material facts were concealed from investors; the presence or absence of a fiduciary duty; whether the conduct at issue breached fiduciary duties; whether the alleged aider and abettor knew of the primary actor's misconduct; whether the alleged aider and abettor's actions or inactions amounted to substantial assistance; and the fact and amount of damages. Because the answers to these questions—favorable or unfavorable—will be the same for all Settlement Class Members, the Court should find that commonality is satisfied here.

**Typicality.** Rule 23(a)(3) requires that the "claims or defenses" of the Class Representatives "are typical of the claims or defenses" of the members of the Settlement Class. To assess this element, courts analyze "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *La Caria*, 2020 WL 2771185, at *5 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)). But "[t]he named plaintiff's injuries need not be 'identically positioned' with those of the class to satisfy the typicality requirement." *Tyus*, 407 F. Supp. 3d at 1098 (quoting *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014)).

In this case, all Settlement Class Members' claims arise from the same alleged conduct on the part of Wells Fargo: maintaining Beasley's accounts, processing his deposits and transactions, and

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

facilitating Beasley's scheme. Because all members of the Settlement Class claim to have lost money due to this same conduct, and because each Class Representative is among those who invested in the scheme (and lost money when it collapsed), the Class Plaintiffs' claims are typical. *See Greene v. Jacob Transp. Servs., LLC*, 2017 WL 4158605, at *4 (D. Nev. Sept. 19, 2017) (Navarro, J.) (finding typicality satisfied when "the proposed class has conceivably been injured by the same course of conduct" as the named plaintiffs).

*Adequacy.* Rule 23(a)(4)'s adequacy requirement includes two parts: "(1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." *Tyus*, 407 F. Supp. 3d at 1099 (quotation omitted). As discussed above, Plaintiffs' counsel and the Class Plaintiffs have adequately represented the class, satisfying this requirement. *See supra* § I.A.

### B.     Rule 23(b)(3)'s requirements are likely met.

The Court should also find that Rule 23(b)(3)'s requirement will likely be met here, too. Its components—predominance and superiority—are both satisfied here.

*Predominance.* Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). It assesses "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). But "predominance does not require that all questions be common." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024). Moreover, in a settlement, the Court is not required to examine whether the case would "present intractable management problems" at trial in analyzing predominance. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc) (citation omitted).

There are many classwide, common questions of fact and law governing Settlement Class Members' claims here. For example, to prevail on their claims under Nevada law, Class Plaintiffs would be required to prove that: (1) Beasley defrauded Class Plaintiffs or breached fiduciary duties to Class Plaintiffs; (2) Wells Fargo allegedly knew sufficient facts to be held liable (either because it knew of Beasley's wrongdoing or knew enough that its actions in continuing to service Beasley's accounts

amounted to bad faith); (3) Wells Fargo nevertheless continued to service his accounts, accepting deposits and processing transfers; and (4) Class Plaintiffs suffered damages as a result. *See* ECF No. 74 at 7-8, 13. The core disputes therefore center on Wells Fargo's common corporate practice affecting all Settlement Class Members—its decision to continue banking Beasley throughout the Ponzi scheme.

This type of case is routinely certified, since "a uniform corporate practice . . . carries great weight for certification purposes." *Tyus*, 407 F. Supp. 3d at 1101 (quotation omitted). As many courts have held, such claims are not subject to individual variation because they focus on the conduct of the defendant, not the class members' conduct. *See In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (affirming certification of class claims for aiding and abetting fraud); *Camenisch*, 2022 WL 17740285, at *9 ("the critical and central question of whether Umpqua had knowledge of the alleged scheme can be decided based on common evidence"); *Takiguchi*, 2016 WL 1091090, at *11 ("Whether Sterling Escrow was aware of its role in promoting a fraud and knowingly assisted the other defendants in committing the fraud are clearly common questions subject to class certification.").[19] The Court should find that predominance is likely to be satisfied here.

***Superiority.*** Finally, Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Preliminarily, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord In re Hyundai & Kia*, 926 F.3d at 556-57 ("manageability is not a concern in certifying a settlement class"). The applicable Rule 23(b)(3) factors to be considered in the superiority analysis are: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.

There are no individual actions filed by Settlement Class Members, such that the first two factors favor a finding of superiority. Counsel Decl. ¶ 32. Class Plaintiffs have coordinated their

---

[19] *See also* ECF No. 188 at 22-27 (describing additional common questions of law and fact and explaining their predominance over individual issues).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

efforts with the Receiver to maximize efficiencies. *Id.* ¶ 11; *see also* ECF No. 110. And because every Settlement Class Member will receive notice and an opportunity to opt out of the Class, "any class member who wishes to bring an individual case in hopes of recovering greater damages may do so." *La Caria*, 2020 WL 2771185, at *8. In addition, the District of Nevada is a proper venue because the scheme originated in the Las Vegas area, the relevant bank branches are in Las Vegas, and class members are mostly from Nevada or nearby states. Receiver Decl. ¶ 3; *see Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 574 (W.D. Wash. 2007) ("[I]t is desirable to litigate the claims of this case in Washington state, where all named Plaintiffs and class members reside or resided.").

For these reasons, and because individual claim prosecution would be expensive, needlessly delay resolution, and potentially lead to inconsistent rulings, the Court should conclude that Rule 23(b)(3)'s superiority requirement is satisfied here, too.

\* \* \*

For the reasons set forth above, the Settlement Class meets all criteria of Rule 23(a) and Rule 23(b), and the Court should preliminarily find that certification of the Settlement Class is appropriate.

**X.      The Court should approve the form and plan for disseminating notice to the class.**

Under Rule 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. The Court must ensure that it directs the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). That means that "individual notice" should be sent "to all [class] members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quotation omitted).

**A.      The Court should adopt the parties' proposed notice program.**

The Settlement's Notice Program satisfies these requirements. *See* Settlement, Ex. 1. The Notice will be sent directly to all persons who fall within the Class definition. Settlement § 7.4. The plan for distributing notice ensures the best notice practicable. The Receiver has maintained a database of investors and their contact information, including email addresses and mailing addresses, and has recently completed a claims process in the SEC Action. Receiver Decl. ¶¶ 8, 9. Notices will be mailed

22

to those class members for whom the Receiver has a mailing address, and notice will be sent by email for all other class members. Settlement § 7.4; Hughes Decl. ¶ 6; *see also In re Online DVD-Rental*, 779 F.3d at 946 (notice sent through U.S. mail and email is sufficient). The Receiver will also publish the notice and final approval hearing date on the Receiver's website, which he has maintained since the beginning of the Receivership in 2022 and serves as a resource for class members. Settlement § 7.4; Receiver Decl. ¶ 15.

The Court should also approve the Claim Form and claims process. The Settlement incorporates the Receiver's claims process, and Settlement Class Members who have an allowed claim in the SEC Action will be entitled to payment here without needing to make a second claim. Settlement § 5.1.1. Any Settlement Class Members who did not submit a claim in the SEC Action will have the opportunity to submit a claim here (using the Claim Form previously approved for use in the SEC Action). *Id.* § 5.1.2.

The parties respectfully request that the Court approve and adopt their proposed notice program as described in the Settlement and Ex. 1, as it constitutes the best practicable notice under the circumstances and satisfies due process and all other applicable requirements.

**B.    The Court should adopt the proposed Settlement schedule.**

Finally, the parties request that the Court set the following proposed schedule for disseminating notice and holding a final approval hearing:

| Event | Deadline |
|---|---|
| Deadline for disseminating Class Notice | 30 days after the later of an order granting preliminary approval in the Class Action and an order granting preliminary approval in the SEC Action |
| Deadline for Class Plaintiffs' motion seeking final settlement approval and award of attorneys' fees and cost reimbursements | 60 days after the later of an order granting preliminary approval in the Class Action and an order granting preliminary approval in the SEC Action |
| Deadline for Class Members to object or opt out of Settlement | 90 days after the later of an order granting preliminary approval in the Class Action and an order granting preliminary approval in the SEC Action |

23

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

| Deadline for replies in support of final approval motion | 7 days before final approval hearing |
| --- | --- |
| Final approval hearing | At least 30 days after the deadline for class members to object or opt out of Settlement |

Concurrently with settlement-approval efforts pending before this Court, the parties to the Settlement are also seeking approval in the SEC Action. The Receiver, who is seeking a bar order, will be requesting approval from Judge Silva in the SEC Action. Settlement § 2.4.2.

### Conclusion

Class Plaintiffs respectfully request that the Court preliminarily approve the Settlement that the parties have reached. A proposed order is attached as Exhibit 5.

Dated: April 27, 2026                           Respectfully submitted,


/s/ *Daniel C. Girard*
Daniel C. Girard (pro hac vice)
Jordan Isern (pro hac vice)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jisern@girardsharp.com

Eric H. Gibbs (pro hac vice)
David K. Stein (pro hac vice)
Spencer S. Hughes (pro hac vice)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com
ehg@classlawgroup.com
shughes@classlawgroup.com


Emily Beale (pro hac vice)
**GIBBS MURA LLP**
136 Madison Ave, Suite 541

24

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK

New York, NY 10016
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
eb@classlawgroup.com

Robert L. Brace (pro hac vice)
**LAW OFFICES OF ROBERT L. BRACE**
1807 Santa Barbara St.
Santa Barbara, CA 93101
Telephone: (805) 886-8458
rlbrace@rusty.lawyer

*Interim Co-Lead Counsel*

Miles N. Clark (NBN 13848)
**LAW OFFICES OF MILES N. CLARK LLC**
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
(702) 856-7430
miles@milesclarklaw.com

*Liaison Counsel*

25

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:22-cv-00529-GMN-NJK